# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| THERISA D. ESCUE, BILLY R. ESCUE, JR., KIM SCHELBE, and BRIAN P. WEATHERILL, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>    v.<br><br>UNITED WHOLESALE MORTGAGE, LLC, UWM HOLDINGS CORPORATION, SFS HOLDING CORP., and MATHEW RANDALL ISHBIA,<br><br>          Defendants. | Case No. 2:24-cv-10853-BRM-DRG<br><br>Hon. Brandy R. McMillion,<br>United States District Judge<br><br>Hon. David R. Grand,<br>United States Magistrate Judge |

**PLAINTIFFS' SUPPLEMENTAL STATEMENT REGARDING THEIR RESPONSES TO THE CIVIL COVER SHEET RELATING TO LR 83.11**

When filing this class action lawsuit asserting RICO claims (among others), Plaintiffs and the undersigned complied with Local Rule 83.11, correctly stating that no companion case exists. Defendants now call that into question by citing a 2022 antitrust case entitled *United Wholesale Mortg., LLC v. America's Moneyline, Inc.*, Case No. 22-10228 (hereinafter, the "*Moneyline* Litigation"), referring to same as a "potential related case." (Defendants' Notice of Potential Related Case, ECF No. 10, PageID.133.) Respectfully, Defendants are wrong for myriad reasons—the *Moneyline* Litigation is not in any way a companion case within the meaning of Local Rule 83.11, as explained below:

1

1.  Plaintiffs and the putative class are borrowers from across the United States who secured mortgages from Defendants through so-called "independent" mortgage brokers, with those brokers ostensibly finding the most competitively priced mortgage options.

2.  But as extensively pled in Plaintiffs' Complaint, those mortgage brokers were not actually "independent," and they did not actually secure (or even endeavor to locate) the most competitively priced mortgage options.

3.  Instead, Defendants illegally colluded with thousands of those "independent" mortgage brokers, seeing to it that they breached their fiduciary duties owed to Plaintiffs (and hundreds of thousands of other unsuspecting borrowers), costing them billions of dollars by funneling to Defendants all—or nearly all—of their mortgages, despite other, more competitively priced mortgage options being available. (*See, e.g.,* Complaint, ECF No. 1, PageID.75–76, at ¶¶ 210–212.) That is to say, the brokers' "independent" label was without substantive meaning. But Defendants led borrowers to believe otherwise, saying for example:

> Mortgage brokers are completely independent. They are not captive or connected to my company [Defendants] or any company. They are independently shopping. . . . We [Defendants] really believe that the best place for a borrower to get a loan, that's at an independent mortgage broker. [(*Id.* at PageID.5, at ¶ 5.)]

4.  As Plaintiffs allege: "To further the scheme to defraud," Defendants: (1) "repeatedly misrepresented and concealed the relationship between itself and brokers," (2) "disseminated false information about the independence of brokers," (3) "funded

2

trade associations to amplify UWM's deceptive public messages," (4) "offered and provided things of value to induce brokers to funnel business to UWM," (5) "conspired and agreed with brokers for them to withhold from their clients material information," and (6) "infiltrated the fiduciary relationship between brokers and homebuyers to corrupt their independence, which UWM repeatedly represented was essential to the operation of the wholesale mortgage market." (Complaint, ECF No. 1, PageID.78–79, at ¶ 222.) And Plaintiffs (residents of North Carolina, Tennessee, and Florida) now seek to hold Defendants accountable for having violated federal fraud and racketeering statutes, state bribery laws, the federal Real Estate Settlement Procedures Act, and state deceptive practices laws.

5. By contrast, the *Moneyline* Litigation is not a class action and does not involve Plaintiffs or other *borrowers*; it instead focuses upon a single *broker* headquartered in California—America's Moneyline, Inc.—attempting to avoid the terms of a Wholesale Broker Agreement, with Moneyline presently arguing that the Wholesale Broker Agreement runs afoul of state and/or federal antitrust laws.

6. In its original counterclaim, Moneyline claimed it was induced into executing the Wholesale Broker Agreement through fraudulent promises of non-enforcement. *United Wholesale Mortg., LLC v. Am.'s Moneyline, Inc.*, 647 F. Supp. 3d 587, 593 (E.D. Mich. 2022). That claim did not relate to the thousands of instances of fraud perpetrated on *borrowers* alleged in the Complaint *in this case*, but rather a single instance of alleged fraud perpetrated *on a broker* based on specific

3

conversations between executives at Moneyline and United Wholesale Mortgage, LLC ("UWM"). *Moneyline*, 647 F. Supp. 3d at 593–94.

7. Then, in its first amended counterclaim, Moneyline asserted that it suffered an antitrust injury as a broker, arguing that provisions of the Wholesale Broker Agreement constitute an unreasonable restraint of trade and an attempt to monopolize the wholesale mortgage market in violation of Sections 1 and 2 of the Sherman Act and state antitrust laws. 2024 WL 1349301. Litigation regarding that first amended counterclaim continues to proceed, with a motion for reconsideration now pending.

8. As the foregoing demonstrates, the *Moneyline* Litigation is not a class action, does not have borrowers as parties, is not brought on behalf of borrowers, and involves claims by a single broker (Moneyline) concerning the enforcement of a Wholesale Broker Agreement between that broker and UWM.

9. Conversely, this case is a class action brought by borrowers, no brokers are parties to this case (and, indeed, in this case are alleged co-conspirators with UWM), and this case is challenging Defendants' pattern and practice of having brokers abandon their duties to borrowers by funneling all or nearly all of their business to Defendants, thereby cheating hundreds of thousands of borrowers across the country out of billions of dollars in excess fees and costs that they paid to finance their homes.

10. The relevant portion of Local Rule 83.11 provides: "Companion cases are cases in which it appears that . . . (i) substantially similar evidence will be offered at trial, or (ii) the same or related parties are present and the cases arise out of the same

4

transaction or occurrence."

11. In the context of FED. R. CIV. P. 13, the Sixth Circuit applies the "same transaction or occurrence" standard by "determining whether the issues of law and fact raised by the claims are largely the same and whether substantially the same evidence would support or refute both claims." *Bauman v. Bank of Am., N.A.*, 808 F.3d 1097, 1102 (6th Cir. 2015). Notably, "partial overlap in issues of law and fact" is insufficient to compel a finding that two cases arise from the same transaction or occurrence. *Id.*

12. Given the divergent parties, alleged misconduct, and the distinct claims as between this case (filed by borrowers to challenge a scheme undertaken by Defendants and brokers as their coconspirators) and the *MoneyLine* Litigation (filed by a single broker and not involving borrowers), it is facially apparent that the "issues of law and fact raised by the claims are [not] largely the same." *Bauman*, 808 F.3d at 1102. Indeed, in view of the broad distinctions between the two actions, it is clear that distinct evidence will be offered at trial. *See Banacki v. OneWest Bank, FSB*, 276 F.R.D. 567, 571 (E.D. Mich. 2011) ("the complaints in the [purported companion] cases reveal that factual and legal issues among the cases are markedly distinct from those presented in [the present action], and as such, will require the submission of distinct evidence"). In short, as between the two actions, the parties are different, the claims are different, the identities and situation of the alleged victims are different, the witnesses are different, and the scopes of the two cases are vastly different by orders of magnitude.

13. Last, the mere fact that the Wholesale Broker Agreement will be an exhibit in this case cannot reasonably meet the standard under Local Rule 83.11. As a threshold matter, that document is not relevant here because of its antitrust implications (as in the *Moneyline* Litigation); rather, it was but one of the many ways in which Defendants accomplished their scheme to aid and abet "independent" brokers' breaches of their fiduciary obligations and violate a number of federal and state laws. But as fundamentally, such (minimally) "partial overlap"—the mere relevance of a single document in two cases—is insufficient to deem this case a "companion" to the *Moneyline* Litigation, as Plaintiffs in this case will present a far broader and distinct set of evidence regarding Defendants' illegal scheme to disseminate false information about the purported "independence" of brokers, and their corresponding conspiracy to breach the fiduciary duties owed to Plaintiffs and thousands of other borrowers.

14. In short, the *Moneyline* Litigation is not even remotely a "companion case" to this nationwide, 103-page class action complaint based on entirely different facts and asserting claims under the RICO act, 18 U.S.C. §§ 1961-68, the Real Estate Settlement Procedures Act, 12 U.S.C. 2601 *et seq.*, state consumer protection statutes, and the common law of fraud, breach of fiduciary duty, and unjust enrichment. That the trials may have a single, overlapping exhibit hardly satisfies the Local Rule under these circumstances. Accordingly, Plaintiffs and the undersigned properly complied with Local Rule 83.11, as the instant action is not a companion case to *United*

*Wholesale Mortg., LLC v. America's Moneyline, Inc.* (Case No. 22-10228).[1]

          Respectfully submitted,

          */s/ Brandon C. Hubbard*
          **DICKINSON WRIGHT PLLC**
          Brandon C. Hubbard (P71085)
          500 Woodward Avenue, Suite 4000
          Detroit, Michigan 48226
          Tel.: (517) 371-1730
          bhubbard@dickinsonwright.com

          **BOIES SCHILLER FLEXNER LLP**
          John T. Zach
          Marc Ayala
          David L. Simons
          Andrew P. Steinmetz
          55 Hudson Yards
          New York, New York 10001
          Tel.: (212) 446-2300

          Tyler Ulrich
          100 SE Second Street, Suite 2800
          Miami, Florida 33131
          Tel.: (305) 357-8422

          Mark C. Mao
          44 Montgomery Street, 41st Floor
          San Francisco, California 94104
          Tel.: (415) 293-6800

May 13, 2024           *Counsel for Plaintiffs*

---

[1] As the Court is likely aware, Local Rule 83.11 "provides for ***only one*** manner by which counsel or parties should bring companion cases to the court's attention, which is 'by responding to questions on the civil cover sheet or in the electronic filing system,'" which is accomplished at the time of filing (initiating) a new case. *Darwich v. Walker*, No. 11-12190, 2011 WL 2462777, at *1 (E.D. Mich. June 21, 2011) (quoting LR 83.11(b)(7)(C)) (emphasis added). With that in mind, it is worth noting that the filing of a "notice"—as Defendants did here—is neither contemplated nor permitted by the Rule. And for reasons unknown, Defendants' Notice fails to acknowledge the "one manner" that is to be used, with Defendants choosing to strike the following, bolded language when quoting the Rule: "Counsel or a party without counsel must bring companion cases to the court's attention **by responding to the questions on the civil case cover sheet or in the electronic filing system.**")

7

**CERTIFICATE OF SERVICE**

I certify that on May 13, 2024, I caused the above to be electronically filed with the Clerk of the Court through the CM/ECF system, which will effectuate service upon all counsel of record.

>*/s/ Brandon C. Hubbard*
>*Counsel for Plaintiffs*