EXHIBIT 36

## JONES DAY

150 WEST JEFFERSON • SUITE 2100 • DETROIT, MICHIGAN 48226.4438

TELEPHONE: +1.313.733.3939 • JONESDAY.COM

DIRECT NUMBER: +1.313.230.7950
JJJONES@JONESDAY.COM

April 17, 2024

<u>VIA EMAIL & OVERNIGHT MAIL</u>

John T. Zach
Marc Ayala
David L. Simons
Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY 10001

Brandon C. Hubbard
Dickinson Wright PLLC
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226

Re:     <u>Cease and Desist Letter</u>

Dear Counsel:

We write on behalf of United Wholesale Mortgage, LLC, UWM Holdings Corporation, SFS Holding Corp., and Mathew Ishbia (collectively, "UWM")—defendants in the matter captioned *Escue, et al. v. United Wholesale Mortgage, LLC, et al.*, No. 2:24-cv-10853 (E.D. Mich.)—regarding your firm's advertising and solicitation campaign targeting UWM, its borrowers, and mortgage brokers with whom it does business, in collaboration with Hunterbrook Media, Hunterbrook Capital, and/or other related organizations ("Hunterbrook"). For the reasons set out below, we ask that Boies Schiller Flexner LLP ("Boies Schiller"), and its local counsel Dickinson Wright PLLC, immediately cease and desist these improper communications and actions. The campaign, among other things, violates multiple Rules of Professional Conduct governing attorney conduct as well as other laws and rules.

## I.     <u>Background</u>

Based on our inquiries, Boies Schiller, in connection with Hunterbrook, launched a broad-based and wide-ranging campaign to disparage UWM, initiate litigation against it, and harm its relationships with borrowers and brokers as part of a larger effort to manipulate the company's stock price so that short sellers like Hunterbrook can profit. Indeed, the coordinated campaign has

AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DETROIT
DUBAI • DUSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID • MELBOURNE
MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH • SAN DIEGO • SAN FRANCISCO
SÃO PAULO • SAUDI ARABIA • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Boies Schiller Flexner LLP
April 17, 2024
Page 2

particularly pernicious effects—the more that counsel for plaintiffs or Hunterbrook disparage UWM, the greater the profit for those doing the short selling.

On April 2, 2024, Hunterbrook published a report on its website that included false or misleading statements about UWM ("Hunterbrook Report").[1]  The Hunterbrook Report publicizes for Boies Schiller,[2] admits that Hunterbrook and Boies Schiller have "entered an agreement," and links to a solicitation for the putative class action Boies Schiller filed ("Solicitation Page," excerpted below).[3]  The Solicitation Page purports to be able to determine whether any UWM customer has been "ripped off" only by entering "the NMLS ID of your independent mortgage broker below."  From there, the page recommends Boies Schiller as counsel and provides an email address that has been specifically created by the firm to field inquiries from potential plaintiffs related to the collaboration with Hunterbrook—"UWM.investigation@bsfllp.com."



This campaign is not limited to websites, however, and also includes abusive tactics soliciting specific UWM borrowers and directing overbroad communications to mortgage brokers with whom UWM does business.  Boies Schiller, for example, sent purported preservation letters that (a) significantly overstate third-party preservation obligations at this stage of the proceeding by, among other things, suggesting that recipients must affirmatively "collect" relevant evidence,

---

[1] Matthew Termine, Sam Koppelman, William D. Cohan, & Grace Scullion, *The Lie That Helped Make UWM America's Largest Mortgage Lender*, HUNTERBROOK (Apr. 2, 2024), at https://hntrbrk.com/uwm/ (last visited Apr. 17, 2024).
[2] *Id.* ("Boies Schiller Flexner LLP, a litigation firm known for winning billions in damages from companies").
[3] *Were you Ripped Off?*, HUNTERBROOK, at https://hntrbrk.com/were-you-ripped-off/ (last visited Apr. 17, 2024).

JONES DAY

Boies Schiller Flexner LLP
April 17, 2024
Page 3

(b) improperly suggest that these parties have been "tampering" with witnesses, and (c) omit protections embodied in the federal rules for third parties.

Based on our inquiries, Boies Schiller and/or other agents are also using or approving the use of one or more private investigators to solicit clients through targeted phone calls and text messages. Those messages falsely suggest that the recently filed lawsuit has already been certified as a class action. During one call, the "private investigator" misleadingly claimed that a law firm "is going to have a class action lawsuit." And one text message claims to be for "a victim" on behalf of a "consumer protection investigation" doing "research to support a class action." These messages both mislead UWM borrowers into believing these are official communications as opposed to law firm solicitations for prospective clients and misrepresent the status of the putative class action.

## II.   Such Conduct Violates Various Rules of Professional Conduct

These communications violate multiple Rules of Professional Conduct. Boies Schiller and Dickinson Wright lawyers in *Escue* are licensed in New York, California, Michigan, and Florida, among other jurisdictions, and the firms are currently pursuing a putative class action against UWM in Michigan, making this conduct subject to the Rules of Professional Conduct of at least those four states. *See* N.Y. R.P.C. 8.5(a) ("A lawyer admitted to practice in this state is subject to the disciplinary authority of this state, regardless of where the lawyer's conduct occurs."); Cal. R.P.C. 8.5(a) (same); Fla. R.P.C. 4-8.5 (same); *see also* Mich. R.P.C. 8.5(a) ("A lawyer not admitted in this jurisdiction is also subject to the disciplinary authority of this jurisdiction if the lawyer provides or offers to provide any legal services in this jurisdiction.").

### A.   Improper Solicitation

Targeted phone calls, text messages, and other direct contacts of the type present here are improper "solicitation" under one or more of these states' ethics rules. For example, under the Michigan Rules, "[a] lawyer shall not solicit professional employment from a person with whom the lawyer has no family or prior professional relationship when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain." Mich. R.P.C. 7.3(a). The Rules define "solicit" to include "contact in person, by telephone or telegraph, by letter or other writing, or by other communication directed to a specific recipient." *Id.* The other relevant states similarly ban solicitation of specific individuals by targeted communication. *See* Cal. R.P.C. 7.3(a) (similar); N.Y. R.P.C. 7.3(a)(1) (similar); Fla. R.P.C. 4-7.18(a)(1) (similar).

Here, private investigators have been calling and texting UWM borrowers with misleading communications in some cases also masquerading as official or public service communications. Examples include:

JONES DAY

Boies Schiller Flexner LLP
April 17, 2024
Page 4

**Text Message Solicitation:** I am a private investigator working on behalf of a consumer protection investigation looking into illegally inflated mortgage costs. We believe you may have been a victim, and we are doing research to support a class action lawsuit. If you wish to be included, please call me at 727-314-3659, or contact UWM.Investigations@BSFLLP.com. They are a law firm and will explain everything to you. Thank you for your time.

**Voicemail Solicitation:** Good afternoon, this is Michelle []. I am a private investigator. I am actually trying to find Lindsay Cameron. I'm working for a law firm that is going to have a class action lawsuit against a mortgage company that illegally, um, overcharged for interest rates, fees, and costs. And that your property on Town Line Road in Lancaster, uh, that you either purchased or refinanced in January of this year, uh. If this is Lindsay give me a call if you get a chance. If it's not, and you know Lindsey and could pass this on to her I will also send you a text message. I appreciate your time. 727-314-3659. Thank you.

Direct solicitation of this kind violates the Rules of Professional Conduct. *See, e.g.*, Mich. R.P.C. 7.3, cmt. 1 ("There is a potential for abuse inherent in direct contact by a lawyer with a person known to need legal services."); *see also Shibetti v. Z Restaurant, Diner & Lounge*, 2021 WL 1738315, at *5-6 (E.D.N.Y. May 3, 2021) (finding calls to putative class members were "solicitations" in violation N.Y. R.P.C. 7.3). The text message above plainly asks about joining the class as a litigant when it says "[w]e believe you may have been a victim, and we are doing research to support a class action lawsuit. *If you wish to be included*, please call me…." That text message also references the same UWM-branded email address that Hunterbrook includes on the Solicitation Page, where Hunterbrook is directing putative class members to Boies Schiller to become litigants in the class action because they were purportedly "ripped off." The Hunterbrook Report also discusses "an agreement with BSF in exploration of a class action lawsuit against UWM seeking restitution," which links to the Solicitation Page with the UWM-branded Boies Schiller email address. And Hunterbrook publisher Sam Koppelman has been quoted repeating the same idea, soliciting for litigants' recoveries: "That's why the Hunterbrook Foundation shared research with Boies Schiller Flexner — and we hope homeowners have a path to restitution for what our analysis indicates could be substantial damages."[4] Another firm also appears to be assisting and signing up putative class members for your lawsuit as well with website advertising stating that "[a] recent class action lawsuit alleges that UWM may have violated its duty to act in

---

[4] Katie Jensen, Borrowers File Class Action Lawsuit Against UWM, NATIONAL MORTGAGE PROFESSIONAL (Apr. 3, 2024), https://nationalmortgageprofessional.com/news/borrowers-file-class-action-lawsuit-against-uwm (last visited Apr. 17, 2024).

JONES DAY

Boies Schiller Flexner LLP
April 17, 2024
Page 5

borrowers' best interests," and then telling clients to "[f]ind out if you're eligible to join the class action by filling out the form below."[5]

Improper solicitation of plaintiffs can also constitute or support cause to deny class certification, dismiss claims or parties, and/or impose other relief. *See, e.g.*, *Hamm v. TBC Corp.*, 597 F. Supp. 2d 1338, 1351 (S.D. Fla. 2009) (granting sanctions against a plaintiffs' firm for "solicitation amounting to barratry," even where plaintiffs counsel alleged the calls were for a fact "investigation"); *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1004 (11th Cir. 1997) (granting mandamus to vacate a district court's class certification based on improper plaintiffs' firm communications with putative class members prior to certification). UWM, accordingly, reserves any rights it may have to seek appropriate relief from the Court to the extent otherwise permitted under applicable law.

Notably, it is no defense that private investigators are making calls for Boies Schiller. *See, e.g.*, N.Y. R.P.C. 8.4(a) ("A lawyer or law firm shall not violate or attempt to violate [the rules of ethics], knowingly assist or induce another to do so, or do so through the acts of another."); *see also* Fla. R.P.C. 4-8.4(a) (same); Mich. R.P.C. 8.4(a) (same); Cal. R.P.C. 8.4(a) (same).

Nor are these solicitations somehow cured by a purported attorney-client relationship. Potential members of the putative class are not parties to the litigation. *See Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011) ("[N]o one in that case was 'willing to advance the novel and surely erroneous argument that a nonnamed class member is a party to the class-action litigation *before the class is certified*.'"). Before certification, the lawyers for the proposed class do not have an attorney-client relationship with the putative class members. *See Morris v. Gen. Motors Corp.*, 2010 WL 931883, at *5 (E.D. Mich. Mar. 11, 2010) ("As to persons who are potential members of a class if it is certified, … no client-lawyer relationship has been established."). Boies Schiller therefore does not represent the putative class members and the solicitation rules apply.

If you contend that you are not responsible for these communications, please identify whether you are aware of any communications by private investigators directed to borrowers, the identity of such investigators, the reason or purpose for such communications, the content of such communications, and who is funding such communications, so we can meet and confer regarding them.

**B.      Improper Notifications and Disclosures**

The website advertisements at issue here also fail to provide the disclosures, notifications, and contact information required by the ethics rules. For example, the New York Rules of Professional Conduct require all legal advertisements to include "the name, principal law office

---

[5] Console & Associates, https://www.myinjuryadvocate.com/unitedwholesalemortgage61706722 (last visited Apr. 17, 2024).

JONES DAY

Boies Schiller Flexner LLP
April 17, 2024
Page 6

address and telephone number of the lawyer or law firm whose services are being offered," N.Y. R.P.C. 7.1(h), and neither the Hunterbrook Report nor the Solicitation Page include that information. *See also* Cal. R.P.C. 7.2(c) (requiring "the name and address of at least one lawyer or law firm"); Fla. R.P.C. 4-7.12(a)(2) (requiring, among other things, "the city, town, or county of 1 or more bona fide office locations of the lawyer who will perform the services advertised"); Mich. R.P.C. 7.2(d) (requiring "the name and contact information of at least one lawyer responsible for the content of the advertisement"). Based on our inquiries, those webpages also do not include an "Attorney Advertising" label. *See, e.g.*, N.Y. R.P.C. 7.1(f). These required disclosures are necessary to protect the public from advertisements like those here. *See, e.g.*, *id.*, cmt. 5 ("The ultimate purpose of the label is to inform readers where they might otherwise be confused.").

### C.     Improper Third-Party Advertisements

Hunterbrook's advertisements for Boies Schiller in the Hunterbrook Report and on the Solicitation Page are likewise improper under rules prohibiting advertisements funded by third parties. Under the Florida Rules, for example, "[a] lawyer may not permit a nonlawyer to pay all or a part of the cost of an advertisement by that lawyer." Fla. R.P.C. 4-7.17(c). "Advertisement" is broadly defined to include "all forms of communication seeking legal employment." *See id.* 4-7.11(a). Both the Hunterbrook Report and the Solicitation Page are communications promoting Boies Schiller to potential plaintiffs, and Hunterbrook is providing these advertisements on Boies Schiller's behalf or with Boies Schiller's knowledge in violation of such rules. The Hunterbrook Report admits that Boies Schiller and Hunterbrook have "entered an agreement" suggesting the firm is well-aware of this arrangement. And it would be no defense if Boies Schiller were paying for these referrals rather than letting Hunterbrook fund the advertisements, as that too would violate ethics rules against paid referrals for attorneys. *See, e.g.*, *id.* at 4-7.17(b); N.Y. R.P.C. 7.2(a) (same); *id.* at 7.1(o) ("A lawyer shall not compensate or give anything of value to representatives of the press … in return for professional publicity in a news item.").

### D.     False and/or Misleading Statements

These communications also contain claims that are false, deceptive, or misleading. Under any applicable states' rules, a law firm cannot publish, use, disseminate, or participate in the use or dissemination of false or misleading communications. *See* N.Y. R.P.C. 7.1(a)(1) ("A lawyer or law firm shall not use or disseminate or participate in the use or dissemination of any advertisement that contains statements or claims that are false, deceptive or misleading"); Mich. R.P.C. 7.1(a) (similar); Cal. R.P.C. 7.1(a) (similar); Fla. R.P.C. 4-7.13(a) (similar); *see also id.* 4-7.14(a) (barring even "potentially misleading advertising"); Cal. Bus. & Prof. Code § 6158 (legal advertising "as a whole may not be false, misleading, or deceptive"). These rules preclude not only false or misleading affirmative statements but also misleading omissions that contravene applicable rules as well, so advertisements for a lawyer cannot "omit a fact necessary to make the statement

JONES DAY

Boies Schiller Flexner LLP
April 17, 2024
Page 7

considered as a whole not materially misleading." *See* Mich. R.P.C. 7.1(a); *see also* N.Y. R.P.C. 7.1, cmt. 3 (same); Cal. R.P.C. 7.1(a) (same); Fla. R.P.C. 4-7.13(a)(2) (same). Courts, state governments, and the FTC have become increasingly wary of such deceptive advertising practices by lawyers. *See, e.g.*, *Recht v. Morrisey*, 32 F.4th 398 (4th Cir. 2022); Press Release, FTC, *FTC Flags Potentially Unlawful TV Ads for Prescription Drug Lawsuits* (Sept. 24, 2019).

The Hunterbrook Report and associated webpages are false or misleading in a number of ways. They state, for example, that UWM is founded on a "lie," which supposedly includes, among other things, that it is deceiving borrowers by "telling homebuyers that its mortgages come from independent brokers—while turning those brokers into loyalists who send the company business regardless of price." But the Report and associated webpages ignore many of the contract terms entered into with, and the disclosures made to, borrowers during the origination process, including anti-steering disclosures, disclosures regarding broker compensation, and other selection forms. *See* 12 C.F.R. § 1026.36(e)(3). As another example, the Hunterbrook Report also distorts UWM's SEC filings. By cherry-picking quotes about UWM "bear[ing] the risk of loss associated with the misrepresentation," the Report suggests that UWM is somehow always legally responsible for broker conduct when it is clear from the filing that the discussion is merely referring to a loss in value when "the fair value of the loan may be significantly lower than expected." These are just examples of the many concerning statements in these advertisements.

Beyond the Report itself, Hunterbrook's YouTube channel also hosts a video that repeats many of the false or misleading claims above, including that UWM has "scammed" its borrowers through "what might be the biggest mortgage fraud since the financial crisis" by forcing the brokers with whom it works to "claim to shop for the best deal only to give loans to UWM time and time again" and sending borrowers to the Solicitation Page, without any mention of many of the applicable contract terms and numerous disclosures UWM or brokers provide to borrowers.[6]

The Solicitation Page misleadingly implies that it is capable of determining borrowers who were "ripped off" with the input of a single number. The private investigator solicitations also falsely imply that they are on behalf of a public "consumer protection investigation" rather than an attempt to bolster your putative class action litigation. These and other misrepresentations and omissions make the Boies Schiller/Hunterbrook campaign materially misleading and a violation of the relevant Rules of Professional Conduct.

## III.   UWM Reserves The Right To Seek Relief As A Result Of This Campaign

This coordinated attack on UWM violates multiple Rules of Professional Conduct and other prohibitions. We request that the conduct cease on a going-forward basis. In the interim, UWM reserves all rights permitted by applicable law to bring claims against any applicable party,

---

[6] Hunterbrook, *Have you been scammed by UWM?*, YOUTUBE (Apr. 2, 2024), https://www.youtube.com/watch?v=jqhsPCAablY (last visited Apr. 17, 2024).

JONES DAY

Boies Schiller Flexner LLP
April 17, 2024
Page 8

to defend against and/or seek dismissal of the claims or class certification in *Escue*, and to otherwise seek immediate relief from the *Escue* court through motion practice.

Among other claims, the conduct described may give rise to claims for tortious interference with business relations, defamation, and/or disparagement. In coordination with Hunterbrook, Boies Schiller has targeted UWM's borrowers and the brokers with whom UWM does business through letters, phone calls, and text messages, improperly and unjustifiably harming their business relationships with UWM. *See, e.g., Amphion, Inc. v. Buckeye Elec. Co.*, 285 F. Supp. 2d 943, 948–49 (E.D. Mich. 2003) (holding that a plaintiff stated a claim for tortious interference where defendant made false statements to customers "for the purpose of destroying their business") (citing Mich. R.P.C. 4.1). And because the false or misleading statements injure UWM in its "trade, business or profession" and denigrate the quality of UWM's services, the communications may also constitute both defamation per se and disparagement. *See, e.g., Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, 2016 WL 815205, at *8–11 (S.D.N.Y. Feb. 29, 2016) (granting summary judgment on plaintiff's disparagement and defamation claims, as well as relief "enjoining each of them from publishing false statements about the plaintiff on internet forums").

We believe that UWM may also be entitled to immediate relief from the *Escue* court prohibiting the improper and misleading communications with putative class members. "[T]he danger of abuse that always attends class communications—the possibility that plaintiffs might use widespread publication of their claims, disguised as class communications, to coerce defendants into settlement—is not outweighed by any need for immediate communications." *Jackson*, 130 F.3d at 1997; *see also* Manual for Complex Litigation (Fourth) § 21.12, at 248 (2004) ("Direct communications with class members, however, whether by plaintiffs or defendants, can lead to abuse."). A court has "both the duty and the broad authority" to govern improper communications by counsel, especially where direct, solicitous contact with putative class members of the type present here "crosse[s] the line into improper solicitation." *Jones v. Casey's Gen. Stores*, 517 F. Supp. 2d 1080, 1085–86 (S.D. Iowa 2007) (citation omitted). And such behavior can justify, among other things, a protective order against further solicitous behavior, *id.* (reversing a magistrate's denial of a protective order); *see also Fox v. Saginaw Cnty.*, 35 F.4th 1042, 1049–50 (6th Cir. 2022) (affirming injunction against a lawyer for "misleading and abusive communications" with class members); an order requiring removal of or changes to websites and other communications, *see Abdallah v. Coca-Cola Co.*, 186 F.R.D. 672, 678 (N.D. Ga. 1999) (ordering plaintiffs to make changes to a website causing serious harm to a defendant's reputation); the denial of class certification, *Jackson*, 130 F.3d at 1004; and/or other relief, *Shibetti*, 2021 WL 1738315, at *5, *9 (granting sanctions for "soliciting potential plaintiffs by telephone," and reserving the ability to reduce any future plaintiffs' fee award based on same).

JONES DAY

Boies Schiller Flexner LLP
April 17, 2024
Page 9

## IV.   <u>Conclusion</u>

We request that Boies Schiller and Dickinson Wright immediately cease and desist this coordinated campaign against UWM. More specifically, we ask that Boies Schiller and Dickinson Wright (1) cease any improper solicitations prohibited by law of putative class members by phone, text message, and any other direct contact; (2) cease sending overbroad or improper letters or communications as currently constituted to borrowers or brokers with whom UWM does business; (3) remove any references to Boies Schiller from the Hunterbrook Report and from the Solicitation Page; and (4) take down the Solicitation Page. Also, we would ask that your firms retain any data, documents, or information relating to communications with putative class members from investigators, lawyers, or third parties, including communications by Hunterbrook.

Additionally, we request a meet-and-confer to discuss and try to resolve these matters amicably before seeking relief from the court. To facilitate that discussion, we would ask you to identify or be prepared to identify (1) the UWM borrowers and/or brokers to which Boies Schiller or Dickinson Wright has communicated either directly or through any agents or investigators; (2) any investigators retained by Boies Schiller, Dickinson Wright, or any Hunterbrook-associated entity with Boies Schiller's knowledge to contact putative class members, UWM borrowers, and/or brokers with whom UWM does business, as well as the individuals contacted by those investigators; (3) whether Boies Schiller or Dickinson Wright approved or was aware of the contents of the Hunterbrook Report and the Solicitation Page before they were published; and (4) the contents of any agreement between Boies Schiller, Dickinson Wright, and any Hunterbrook-associated entity regarding the pending litigation.

Given the urgency of this matter, we would ask that Boies Schiller and Dickinson Wright make themselves available for a meet and confer or otherwise respond with its position next week by Wednesday, April 24, 2024. In the interim, UWM reserves any rights it may have, including but not limited to seeking emergency relief from the Court and other relief, to the extent otherwise permitted under applicable law. Thank you for your attention to these matters. We look forward to hearing from you.

Sincerely,

Jeffrey J. Jones

JONES DAY

Boies Schiller Flexner LLP
April 17, 2024
Page 10

cc:    Tyler Ulrich (Boies Schiller Flexner LLP)
       Mark C. Mao (Boies Schiller Flexner LLP)
       Andrew P. Steinmetz (Boies Schiller Flexner LLP)
       Rebekah Kcehowski (Jones Day)
       Stephen J. Cowen (Jones Day)