# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| Therisa D. Escue, Billy R. Escue, Jr., Kim Schelbe, Brian P. Weatherill, Kenneth C. Morandi, Jill Jeffries, and Daniel Singh on behalf of themselves and all others similarly situated,<br><br>      *Plaintiffs*,<br><br>v.<br><br>United Wholesale Mortgage, LLC, UWM Holdings Corporation, SFS Holding Corp., and Mathew Randall Ishbia,<br><br>      *Defendants*. | Case No. 2:24-cv-10853-BRM-DRG<br><br>Hon. Brandy R. McMillion,<br>United States District Judge<br><br>Hon. David R. Grand,<br>Magistrate Judge |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR RELIEF UNDER RULE 11, 28 U.S.C. § 1927, AND THIS COURT'S INHERENT POWER**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................. i
TABLE OF AUTHORITIES .......................................................................................... ii
    I.     This Suit Was Filed For An Improper Purpose. ................................................1
    II.    The Complaint's Core Allegations Are Frivolous And Unsupportable............4
    III.   The Complaint Advanced Frivolous Legal Contentions. .................................7

# **TABLE OF AUTHORITIES**

Page

**CASES**

*Broyles v. Cantor Fitzgerald & Co.*,
 2014 WL 6886158 (M.D. La. Dec. 8, 2014) ...........................................................7

*El-Khalil v. Tedeschi*,
 2023 WL 5827666 (E.D. Mich. Sept. 8, 2023) .......................................................4

*First Bank of Marietta v. Hartford Underwriters Ins. Co.*,
 307 F.3d 501 (6th Cir. 2002) ..................................................................................3

*In re Kunstler*,
 914 F.2d 505 (4th Cir. 1990) ..................................................................................3

*In re Verilink Corp.*,
 405 B.R. 356 (Bankr. N.D. Ala. 2009) ...................................................................7

*Jonna v. GIBF GP, Inc.*,
 2023 WL 3244832 (E.D. Mich. May 4, 2023) .......................................................1

*King v. Whitmer*,
 71 F.4th 511 (6th Cir. 2023) ...................................................................................4

*Kramer v. Tribe*,
 156 F.R.D. 96 (D.N.J. 1994), *aff'd*, 52 F.3d 315 (3d Cir. 1995) ...........................4

*Lee v. Countrywide Home Loans, Inc.*,
 692 F.3d 442 (6th Cir. 2012) ..................................................................................6

*Odish v. Apple*,
 2016 WL 931184 (E.D. Mich. Mar. 11, 2016) .......................................................3

*SEC v. Lemelson*,
 57 F.4th 17 (1st Cir. 2023) .....................................................................................1

*Silva v. Witschen*,
   19 F.3d 725 (1st Cir. 1994)..................................................................................2

*Stanford v. Corbin*,
   2011 WL 893111 (E.D. Mich. Mar. 14, 2011).......................................................3

*Teno v. Iwanski*,
   464 F. Supp. 3d 924 (E.D. Tenn. 2020).................................................................3

*Whitehead v. Food Max of Miss., Inc.*,
   332 F.3d 796 (5th Cir. 2003) .................................................................................2

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8 ...........................................................................................................7

Fed. R. Civ. P. 11 .........................................................................................................2

"UWM is the first target of a new activist short seller. Will it matter?" Nick Manes, CRAIN'S DET. BUS. (Apr. 4, 2024). Does filing a lawsuit in coordination with and in support of an activist hedge fund's short-bet against a company's stock reflect an improper purpose or other sanctionable conduct? The answer to both questions is "yes." The SEC has secured *civil penalties and injunctions* against actors who it found employed "short and distort" stock schemes for profit. *See SEC v. Lemelson*, 57 F.4th 17, 20–23 (1st Cir. 2023). Using the courts to support shorting a company's stock through a "class action" lawsuit that relies on false or unreasonable allegations—*including many that Plaintiffs' Counsel do not even want the Court to examine*, Opp. to File Unredacted Mot., ECF 29—is arguably more troubling. If such actions are blessed, attorneys could collaborate to help destroy any company's stock. This Court should put a stop to it—or at the very least hold a hearing on it.

**I.  This Suit Was Filed For An Improper Purpose.**

As UWM explained, this lawsuit was filed for an improper purpose as part of a coordinated effort to devalue UWM's stock. Motion ("Mot."), ECF 23, at 8–11.

Plaintiffs' Counsel acknowledge the coordination. They confess to having an "agreement" with "a Hunterbrook entity." Opposition ("Opp."), ECF 28, at 4.[1] They do not dispute that Hunterbrook shorted UWM's stock shortly before releasing the

---

[1] The agreement should be produced not only to the Court for "*in-camera* review," *id.*, but also to UWM. *Cf. Jonna v. GIBF GP, Inc.*, 2023 WL 3244832, at *2 (E.D. Mich. May 4, 2023) (finding Dickinson Wright engagement letter not privileged).

1

"story." Mot. 3–4. They admit to having "filed" "the instant action" based on Hunterbrook's "analysis"—"shortly after the story was published." Opp. 7. And they even procure a declaration from "an Advisor at Hunterbrook"—who, incredibly, has been "retained by counsel." Gibbons Declaration ("Decl."), ECF 28-1, at 1.

In light of these admissions, how is this course of conduct anything but improper? Plaintiffs' Counsel offer three responses, but all fail. *First*, Counsel say (without supporting declarations) that they have "complete control" over this lawsuit with "no interest . . . other than as Plaintiffs' counsel," and that "no Hunterbrook entity is paying Counsel." Opp. 4. These carefully worded statements raise more questions than they answer. Did Hunterbrook *approach* Counsel to solicit plaintiffs and file this suit? Why *did* Counsel file a few hours after Hunterbrook's report? Who *is* paying Counsel's fees? Why have Counsel *retained* "an Advisor at Hunterbrook"? Is Hunterbrook providing free "expert" witnesses? Contrary to Counsel's suggestions, a direct financial tie is not required; and representing a client's interests does not make an improper purpose proper. If A sues B to harm B for C's improper purpose, A is culpable. *See Silva v. Witschen*, 19 F.3d 725, 730 (1st Cir. 1994).

*Second*, Counsel say that the "claims are not frivolous, which itself precludes a finding [of] an improper purpose." Opp. 5–7. But that flouts the Rule's text, which lists "improper purpose" separately from frivolous "claims." Fed. R. Civ. P. 11(b)(1), (b)(2); *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 805 & n.4 (5th Cir. 2003)

2

(en banc). It also ignores precedent from this Circuit. Mot. 6 (citing *Rasmussen v. Fleetwood Enters., Inc.*, 2007 WL 1106138, at \*9 (E.D. Mich. Apr. 10, 2007) (noting that an improper purpose *alone* suffices for sanctions)); *cf. First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 519 (6th Cir. 2002) (noting that more is required only under "inherent powers"). The case Counsel cites from this Circuit confirms that an improper purpose can warrant sanctions in certain "unusual" circumstances. *Stanford v. Corbin*, 2011 WL 893111, at \*7 (E.D. Mich. Mar. 14, 2011). These *are* unusual circumstances. In any event, there *are* also objectively false or unreasonable assertions, *see infra*, which underscore the improper purpose.

*Third*, Counsel say "there is nothing improper about" the timing of the 104-page complaint alleging widespread "corruption," insisting that they just wanted to be "the first to file." Opp. 7. That explanation is disingenuous. Counsel evidently had Hunterbrook's "data analysis" *months before* the report issued. *Id.* at 24–25 (noting "over a thousand hours of [review]"). If their only concern was being "the first to file," they could have filed the complaint *before* the report issued. But, of course, they coordinated with Hunterbrook to file the complaint a few hours after the report issued, thereby aiding the short-bet against UWM's stock. The timing thus demonstrates this suit's improper purpose. *See In re Kunstler*, 914 F.2d 505, 519–20 (4th Cir. 1990); *Teno v. Iwanski*, 464 F. Supp. 3d 924, 954 (E.D. Tenn. 2020); *Odish v. Apple*, 2016 WL 931184, at \*3 (E.D. Mich. Mar. 11, 2016).

3

Counsel also attempt to defend their decisions to send "preservation" letters to scores of third-party brokers, as well as solicitations to customers. But they ignore that they also *widely distributed copies of the complaint*. *Cf. Kramer v. Tribe*, 156 F.R.D. 96, 102, 109 (D.N.J. 1994) (finding that "distributing copies" was "indicative of an improper and sanctionable motive"), *aff'd*, 52 F.3d 315 (3d Cir. 1995). They also fail to acknowledge the applicable rules of professional conduct. Mot. 10 n.3. All of this only highlights the coordinated public campaign against UWM.[2]

## II. The Complaint's Core Allegations Are Frivolous And Unsupportable.

Plaintiffs' own loan files undermine their core theory, and the lawsuit rests upon false assumptions. Mot. 11–18, 18–22. Plaintiffs have no good response.

To begin, the essence of this lawsuit is that Plaintiffs were worse off with UWM loans. But as UWM explained, because Plaintiffs cannot credibly compare their loans to others, that fundamental contention lacks support. Plaintiffs claim that any "methodological" errors cannot merit sanctions. Opp. 12. But "facially unreliable" "statistical extrapolations" are sanctionable, *King*, 71 F.4th at 524, and the purported comparisons to "similar loans" are manifestly unreliable because they

---

[2] For purposes of § 1927, Counsel also cite *El-Khalil v. Tedeschi*, 2023 WL 5827666, at *8 (E.D. Mich. Sept. 8, 2023), to say that statute does not apply to the "act of filing a complaint," *id.*, but Counsel here *also* "refus[ed] to dismiss" the complaint even after Defendants detailed their sanctionable conduct and "persist[ed] in this lawsuit." *King v. Whitmer*, 71 F.4th 511, 530 (6th Cir. 2023); *see also* Mot. 2; ECF. No. 24 at 6–7 (citing § 1927 cases). And contrary to their assertion, they have not filed a "robust," "well-supported" complaint. ECF No. 29 at 5 n.1; *infra* Parts II, III.

do not factor in FICO scores, employment history, or many other key factors. Mot. 18–22. Plaintiffs aver that the average UWM borrower's FICO score is not unusually low. Opp. 13. But average scores mean nothing, as Plaintiffs purport to compare their *individual* loans based on their *own* FICO scores with "substantially similar" loans, *which would require "substantially similar" FICO scores*.

Unable to defend their "statistical analysis," *id.* at 10, Plaintiffs then—remarkably—disclaim it, saying they need not rely on "loan-by-loan comparisons" to show injury. *Id.* at 11–12. Of course, without purportedly bad loans, they could not have brought this action merely because they disagreed with *how* their brokers selected UWM. Nor does it change the fact that their loan-by-loan theory is the crux of this lawsuit, and that theory is patently unsubstantiated.

The Opposition also fails on the Plaintiff-specific issues.[3] As for the **Escues**, Plaintiffs admit their data does not account for cash-out refinancings and this feature caused the Escues' rate to increase. Opp. 16-17; *see also* Mot. 16. While they now try to blame UWM for failing to disclose that fact, this does not make their comparison any less frivolous. As for **Schelble**, his self-employment history renders Plaintiffs' alleged comparison meritless. Plaintiffs criticize Freddie Mac's guidance on this topic, but miss the point: employment status affects loan price, and a "loan-

---

[3] Plaintiffs note that the Motion does not discuss Plaintiffs Morandi, Jeffries, and Singh. Opp. 14. That is because Defendants served it *before* the amended complaint was filed.

5

by-loan" theory of harm fails if it ignores that key factor. Mot. 17. As for **Weatherill**, Plaintiffs similarly refuse to engage with UWM's basic point that Plaintiffs' data did not factor in Weatherill's extended rate-lock, which increased the loan price and precluded any meaningful comparison. *Id.* Plaintiffs also say that Weatherill's broker contract did not disclaim his broker's obligation to shop, Opp. 16, but somehow *ignore* that the contract disclaimed any agency relationship or any guarantee of the "best terms" "available in the market." Mot. 13–14.

Plaintiffs also fail to rehabilitate their other false assertions. As for the **federal disclosures**, Plaintiffs' brokers followed anti-steering regulations that contradict Plaintiffs' assumptions about a broker's duty to present all potential loan options. Mot. 20–21. Plaintiffs do not dispute that their brokers complied with the regulations, instead arguing that the disclosures do not create a safe harbor. Opp. 18. But *Lee* did not deal with anti-steering rules; it involved common law and TILA claims with entirely different types of disclosures, and the defendant did not seek a safe harbor. *Lee v. Countrywide Home Loans, Inc.*, 692 F.3d 442, 446–53 (6th Cir. 2012). As for the **APR spreads**, Plaintiffs do not provide any cogent explanation why the complaint eschews the accepted method of comparing loan prices in favor of its own self-serving methodology. Opp. 18–20. Instead, they calculate the APR spreads of Plaintiffs not addressed by Defendants' Motion—including an unknown individual named "Stuckey." *Id.* at 19. As for the **All-In Provision**, Plaintiffs have

6

no meaningful response to the fact that the provision itself limits just two out of hundreds of possible lenders. Mot. 18.

### III. The Complaint Advanced Frivolous Legal Contentions.

The Defendants' challenges here stand largely unrebutted. Mot. 22–24. Plaintiffs argue claims under North Carolina, Ohio, Louisiana, and Alabama law remain "viable." Opp. 22–23. But Plaintiffs' North Carolina and Ohio cases pre-date *binding* precedent that forecloses their aiding-and-abetting claims. *Id.* at 23 n.13; Mot. 23–24. Plaintiffs argue their Louisiana and Alabama claims have not been "conclusively foreclos[ed]," yet offer no case rebutting the weight of authority. *See, e.g.*, *Broyles v. Cantor Fitzgerald & Co.*, 2014 WL 6886158, at *5 (M.D. La. Dec. 8, 2014); *In re Verilink Corp.*, 405 B.R. 356, 380–81 (Bankr. N.D. Ala. 2009). Plaintiffs argue that they should not be sanctioned for asserting non-viable claims because the class has not been certified and they have state subclasses. Opp. 23–24. But while Rule 8 permits alternative pleadings, it does not permit *frivolous* ones.

Defendants respectfully request that the Court dismiss the action and award attorney's fees or, at minimum, set this Motion for a hearing.

Dated: October 28, 2024  Respectfully submitted,

/s/ *Jeffrey J. Jones*
Jeffrey J. Jones (P80231)
JONES DAY
150 W. Jefferson Ave, Suite 2100
Detroit, MI 48226
(313) 733-3939
jjjones@jonesday.com

7

Rebekah B. Kcehowski
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
(412) 391-3939
rbkcehowski@jonesday.com

Stephen J. Cowen (P82688)
Amanda K. Rice (P80460)
Andrew J. Clopton (P80315)
JONES DAY
150 W. Jefferson Ave, Suite 2100
Detroit, MI 48226
(313) 733-3939
scowen@jonesday.com
arice@jonesday.com
aclopton@jonesday.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2024, I caused the foregoing document to be filed with the Clerk of the Court using CM/ECF, which will effectuate service upon all counsel of record.

/s/ *Jeffrey J. Jones*
Jeffrey J. Jones (P80231)
JONES DAY
150 W. Jefferson Ave, Suite 2100
Detroit, MI 48226
(313) 733-3939
jjjones@jonesday.com

*Counsel for Defendants*