# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

Therisa D. Escue, Billy R. Escue, Jr.,
Kim Schelble, Brian P. Weatherill,
Kenneth C. Morandi, Jill Jeffries, and
Daniel Singh on behalf of themselves
and all others similarly situated,

    Plaintiffs,

  v.

United Wholesale Mortgage, LLC,
UWM Holdings Corporation, SFS
Holding Corp., and Mathew Randall
Ishbia,

    Defendants.

Case No. 2:24-cv-10853-BRM-DRG

Hon. Brandy R. McMillion,
United States District Judge

Hon. David R. Grand,
United States Magistrate Judge

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
# DEFENDANTS' MOTION TO STRIKE

## <u>TABLE OF CONTENTS</u>

STATEMENT OF ISSUES PRESENTED.............................................................. viii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ...............................x

INTRODUCTION ................................................................................................1

ARGUMENT .......................................................................................................3

    I.     It Is Premature to Decide the Scope of the Putative Class Action. ............3

    II.    Striking the Rule 23(b)(2) Allegations Would Be Error. .........................5

    III.   Defendants' "Lack of Standing" Argument Is Meritless. .........................6

    IV.   Variations in State Law Do Not Warrant Striking
          Any Class Allegations. ...............................................................................7

    V.    Plaintiffs' RESPA Section 8 Claim Is Suitable for Class Treatment.......16

    VI.   Plaintiffs' RICO Claims Are Fit for Class Treatment.............................20

    VII.  Individual Issues Do Not Defeat Rule 23 Certification
          of the Aiding and Abetting Fiduciary Breach. .........................................23

CONCLUSION ....................................................................................................25

i

## TABLE OF AUTHORITIES

**Cases**

*Ahearn v. Mayo Clinic*,
    180 So. 3d 165 (Fla. Dist. Ct. App. 2015) ...........................................................5

*Albright v. Sherwin-Williams Co.*,
    2019 WL 5307068 (N.D. Ohio Jan. 29, 2019) ....................................................3

*Baugh v. Fed. Savings Bank*,
    337 F.R.D. 100 (D. Md. 2020) .........................................................................18

*Bearden v. Honeywell Int'l Inc.*,
    720 F. Supp. 2d 932 (M.D. Tenn. 2010) .........................................................11

*Beattie v. CenturyTel, Inc.*,
    511 F.3d 554 (6th Cir. 2007) ............................................................................12

*Belin v. Health Ins. Innovations, Inc.*,
    337 F.R.D. 544 (S.D. Fla. 2021) .......................................................................5

*Benson v. Newell Brands, Inc.*,
    2021 WL 5321510 (N.D. Ill. Nov. 16, 2021) ....................................................8

*Bentley v. Honeywell Int'l, Inc.*,
    223 F.R.D. 471 (S.D. Ohio 2004) ...................................................................12

*Bowe v. Public Storage*,
    318 F.R.D. 160 (S.D. Fla 2015) ......................................................................22

*Bowen v. Worldwide Mortg. Corp.*,
    2007 WL 9706327 (W.D. Tenn. Mar. 27, 2007) .............................................24

*Bowles v. Sabree*,
    121 F.4th 539 (6th Cir. 2024) ............................................................................2

*Bridge v. Phoenix Bond & Indem. Co.*,
    553 U.S. 639 (2008) .........................................................................................21

*Bristol Vill., Inc. v. La.-Pac. Corp.*,
    916 F.Supp.2d 357 (W.D.N.Y. 2013) ...............................................................6

ii

*Brown v. Cassens Transp. Co.*,
  546 F.3d 347 (6th Cir. 2008) ...................................................................21

*Bruhl v. Price Waterhousecoopers Int'l*,
  257 F.R.D. 684 (S.D. Fla. 2008)...............................................................24

*Chavez v. Plan Benefit Servs., Inc.*,
  108 F.4th 297 (5th Cir. 2024), *cert. denied sub nom.* 2024 WL 5011734
  (U.S. Dec. 9, 2024) .................................................................... 10, 25

*Compound Prop. Mgmt. LLC v. Build Realty, Inc.*,
  343 F.R.D. 378 (S.D. Ohio 2023)........................................... 22, 23, 24

*Cunningham v. M & T Bank Corp.*,
  2013 WL 5876337 (M.D. Pa. Oct. 30, 2013) ...................................19

*Edwards v. First Am. Corp.*,
  289 F.R.D. 296 (C.D. Cal. 2012).............................................................20

*Edwards v. First Am. Corp.*,
  798 F.3d 1172 (9th Cir. 2015) ................................................................18

*Fallick v. Nationwide Mut. Ins. Co.*,
  162 F.3d 410 (6th Cir. 1998) ...........................................................6, 23

*Fisher v. FCA US LLC*,
  712 F. Supp. 3d 930 (E.D. Mich. 2024) ..........................................7

*Fox v. Saginaw County*,
  67 F.4th 284 (6th Cir. 2023) .................................................................7

*Generation Changers Church v. Church Mut. Ins. Co.*,
  693 F. Supp. 3d 795 (M.D. Tenn. 2023) ..........................................7

*Gooch v. Life Inv'rs Ins. Co. of Am.*,
  672 F.3d 402 (6th Cir. 2012) ...........................................................5

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...........................................................9

*Hicks v. State Farm Fire & Cas. Co.*,
  965 F.3d 452 (6th Cir. 2020) ...............................................................12

*Hoving v. L. Title Ins. Co.*,
 256 F.R.D. 555 (E.D. Mich. 2009) ....................................................................14

*Huskey v. Colgate-Palmolive Co.*,
 486 F. Supp. 3d 1339 (E.D. Mo. 2020) ............................................................14

*In re Abbott Lab'ys Norvir Anti-Tr. Litig.*,
 2007 WL 1689899 (N.D. Cal. June 11, 2007)...................................................13

*In re Amcast Indus. Corp.*,
 365 B.R. 91 (Bankr. S.D. Ohio 2007) ..............................................................15

*In re AME Church Emp. Ret. Fund Litig.*,
 2023 WL 2562784 (W.D. Tenn. Mar. 17, 2023)...............................................24

*In re Chevrolet Bolt EV Battery Litig.*,
 633 F. Supp. 3d 921 (E.D. Mich. 2022) ........................................................3, 4

*In re Comm. Bank of N. Va. Mortg. Lending Practices Litig.*,
 795 F.3d 380 (3d Cir. 2015) .............................................................................18

*In re Countrywide*,
 277 F.R.D. 586 (S.D. Cal. 2011) ......................................................................22

*In re First Alliance Mortg. Co.*,
 471 F.3d 977 (9th Cir. 2006) ............................................................................22

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*,
 609 F. Supp. 3d 942 (N.D. Cal. 2022), *appeal dismissed*, 2024 WL
 4648010 (9th Cir. Aug. 5, 2024)............................................................ 9, 16, 21

*In re Mercedes-Benz Tele Aid Cont. Litig.*,
 267 F.R.D. 113 (D.N.J. 2010), *modified on reconsideration*, 2010 WL
 2976496 (D.N.J. July 22, 2010).........................................................................5

*In re Papa John's Empl. and Franchise Empl. Antitrust Litig.*,
 2019 WL 5386484, at *11 (W.D. Ky. Oct. 21, 2019) .........................................1

*In re Pork Antitrust Litig.*,
 665 F. Supp. 3d 967 (D. Minn. 2023)..................................................................8

*In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*,
 325 F.R.D. 136 (D.S.C. 2018) ..........................................................................11

iv

*In re Telectronics Pacing Sys., Inc.*,
    172 F.R.D. 27 (S.D. Ohio 1997) ................................................................8, 14

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Pracs. & Prod. Liab. Litig.*,
    2012 WL 4904412 (C.D. Cal. Sept. 20, 2012) ....................................12

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013) ........................................................3, 12

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,
    2022 WL 16729170 (11th Cir. Nov. 7, 2022) ....................................7

*JKB Daira, Inc. v. OPS-Tech., LLC*,
    2022 WL 4484146 (D. Conn. Sept. 27, 2022)....................................15

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) ..........................................................16

*Keilholtz v. Lennox Hearth Prod. Inc.*,
    268 F.R.D. 330 (N.D. Cal. 2010)......................................................13

*Khoday v. Symantec Corp.*,
    93 F. Supp. 3d 1067 (D. Minn. 2015), *as amended* (Apr. 15, 2015) ...............12

*Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*,
    2016 WL 10520133 (S.D. Ohio Dec. 15, 2016)............................8, 14

*Kirkbride v. Kroger* Co.,
    2022 WL 2703960 (S.D. Ohio July 12, 2022)................................2, 13

*Lauber v. Bellford High Sch.*,
    2012 WL 5822243 (E.D. Mich. Jan. 23, 2012) ................................11

*Lizama v. Venus Lab'ys, Inc.*,
    679 F. Supp. 3d 848 (E.D. Mo. 2023) ................................................5

*Lott v. Louisville Metro Gov't*,
    2021 WL 1031008 (W.D. Ky. Mar. 17, 2021) ................................11

*Martin v. Behr Dayton Thermal Prod. LLC*,
    896 F.3d 405 (6th Cir. 2018) ........................................................2, 10

*Maywalt v. Parker & Parsley Petroleum Co.*,
    147 F.R.D. 51 (S.D.N.Y. 1993) ............................................................................5

*Mejdrech v. Met-Coil Sys. Corp.*,
    319 F.3d 910 (7th Cir. 2003) ...........................................................................12

*Mell v. Anthem, Inc.*,
    264 F.R.D. 312 (S.D. Ohio 2009)....................................................................10

*Mod. Holdings, LLC v. Corning Inc.*,
    2015 WL 1481459 (E.D. Ky. Mar. 31, 2015) ......................................... 1, 3, 17

*Munoz v. PHH Mortg. Co.*,
    478 F. Supp. 3d 945 (E.D. Cal. 2020) .............................................................18

*Nat'l Org. for Women, Inc. v. Scheidler*,
    897 F. Supp. 1047 (N.D. Ill. 1995)..................................................................16

*Negrete v. Allianz Life Ins. Co.*,
    287 F.R.D. 590 (C.D. Cal. 2012).....................................................................22

*Oak Ridge Precision Indus. v. First Tenn. Bank Nat. Ass'n*,
    835 S.W.2d 25 (Tenn. App. 1992)....................................................................24

*Olden v. LaFarge Corp.*,
    383 F.3d 495 (6th Cir. 2004) .........................................................................6, 12

*Palombaro v. Emery Fed. Credit Union*,
    2017 WL 3437559 (S.D. Ohio Aug. 10, 2017) ..................................... 18, 19, 20

*Peel Payments, LLC v. First Data Corp.*,
    2016 WL 6407432 (W.D. Okla. Oct. 28, 2016) ...............................................15

*Pettrey v. Enterprise Title Agency, Inc.*,
    241 F.R.D. 268 (N.D. Ohio 2006) ...................................................................19

*Rankin v. Rots*,
    220 F.R.D. 511 (E.D. Mich. 2004) ..................................................................24

*Reynolds v. FCA US LLC*,
    546 F. Supp. 3d 635 (E.D. Mich. 2021) ..........................................................13

vi

*Reynolds v. Lifewatch, Inc.*,
    136 F. Supp. 3d 503 (S.D.N.Y. 2015) ................................................................4

*Rosemann v. St. Louis Bank*,
    858 F.3d 488 (8th Cir. 2017) .............................................................................15

*Seeligson v. Devon Energy Prod. Co., L.P.*,
    2020 WL 636224 (N.D. Tex. Feb. 11, 2020) ....................................................11

*Shady Grove Orthopedic Assoc. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010).............................................................................................13

*Sowders v. Scratch Fin., Inc.*,
    2023 WL 7525900 (S.D. Ohio Nov. 14, 2023). ..................................................2

*Speerly v. Gen. Motors, LLC*,
    115 F.4th 680 (6th Cir. 2024) ..............................................................................8

*Stanich v. Travelers Indem. Co.*,
    249 F.R.D. 506 (N.D. Ohio 2008) .....................................................................10

*Tait v. BSH Home Appliances Corp.*,
    289 F.R.D. 466 (C.D. Cal. 2012).......................................................................11

*Wal-Mart Stores v. Dukes*,
    564 U.S. 338 (2011).............................................................................................6

## Statutes

18 U.S.C. § 1341 ........................................................................................................21

18 U.S.C. § 1343 ........................................................................................................21

18 U.S.C. § 1346 ........................................................................................................21

18 U.S.C. § 1961 ........................................................................................................21

## Regulations

12 CFR § 1024.2 ........................................................................................................19

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.   Is it permissible for Plaintiffs to plead multiple grounds for class certification (i.e., under both Rule 23(b)(2) and 23(b)(3)?

> Plaintiffs' answer: Yes

> Defendants' answer: No

> This Court should answer: Yes

2.   Do Plaintiffs have Article III standing to represent class members from other states?

> Plaintiffs' answer: Yes

> Defendants' answer: No

> This Court should answer: Yes

3.   Do variations in state law preclude class certification?

> Plaintiffs' answer: No

> Defendants' answer: Yes

> This Court should answer: No

4.   Should the Court strike from the pleadings the class allegations under the RESPA claim in Count 3?

> Plaintiffs' answer: No

> Defendants' answer: Yes

> This Court should answer: No

5.   Should the Court strike from the pleadings the class allegations under the RICO claims in Counts 1 and 2?

Plaintiffs' answer: Yes

Defendants' answer: No

This Court should answer: Yes

6.   Do individualized issues require striking from the pleadings the common law claims?

Plaintiffs' answer: No

Defendants' answer: Yes

This Court should answer: No

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

### Standard for Motion to Strike

*Albright v. Sherwin-Williams Co.*, 2019 WL 5307068, at *17 (N.D. Ohio Jan. 29, 2019)

*Kirkbride v. Kroger* Co., 2022 WL 2703960 at *13 (S.D. Ohio July 12, 2022)

*In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 947 (E.D. Mich. 2022)

*Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*, 2016 WL 10520133, at *5–6 (S.D. Ohio Dec. 15, 2016)

### Standing

*In re Zantac (Ranitidine) Prod. Liab. Litig.*, 2022 WL 16729170, at *6 (11th Cir. Nov. 7, 2022)

### Rule 23(b)(2)

*Olden v. LaFarge Corp.*, 383 F.3d 495, 510–11 (6th Cir. 2004)

*Gooch v. Life Investors Ins. Co. of Am.,* 672 F.3d 402, 428 n. 15, 429 (6th Cir. 2012)

### Individualized Issues / Legal Variation Do Not Defeat Certification

*In re Whirlpool Corp.*, 722 F.3d at 861 (6th Cir. 2013)

*Martin v. Behr Dayton Thermal Prod. LLC*, 896 F.3d 405, 413 (6th Cir. 2018)

*Kirkbride v. Kroger* Co., 2022 WL 2703960 at *13 (S.D. Ohio July 12, 2022)

*In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 27 (S.D. Ohio 1997)

*Hoving v. L. Title Ins. Co.*, 256 F.R.D. 555, 570 (E.D. Mich. 2009)

*Benson v. Newell Brands, Inc.*, 2021 WL 5321510 (N.D. Ill. Nov. 16, 2021)

*In re Pork Antitrust Litig.*, 665 F. Supp. 3d 967, 1000 (D. Minn. 2023)

### RESPA

*Edwards v. First American Corp.*, 798 F.3d 1172, 1181 (9th Cir. 2015)

*In re Comm. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380 (3d Cir. 2015)

*Baugh v. Fed. Savings Bank*, 337 F.R.D. 100 (D. Md. 2020)

## **RICO**

*In re First Alliance Mortgage Co.*, 471 F.3d 977 (9th Cir. 2006),

*JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 986–88 (N.D. Cal. 2022)

*Compound Prop. Mgmt. LLC v. Build Realty, Inc.*, 343 F.R.D. 378, 408 (S.D. Ohio 2023)

*Nat'l Org. for Women, Inc. v. Scheidler*, 897 F. Supp. 1047, 1078 (N.D. Ill. 1995)

## **INTRODUCTION**

Motions to strike class allegations are rarely filed, and even more rarely granted.[1] And they are even more rarely granted where, as here, defendants concede that plausible grounds to certify a class have been pled for borrowers from California, Florida, North Carolina, and Tennessee. The Court will eventually receive evidence at a Rule 23 hearing to decide if Plaintiffs can pursue class-wide relief, and to determine the scope and organization of the potential class. These proceedings will occur regardless of the outcome of the motion to strike.

Defendants' motion merely targets the *scope* of these future proceedings—arguing the Court should foreclose the possibility that borrowers from additional states, or claims beyond the consumer protection counts, potentially could be included. Much of the motion focuses on arguing it is *possible* to strike certain class allegations, and that the Court *could* reach these issues now. But they have offered no compelling reason why the Court *should* decide these issues now. Waiting would not impose substantially higher discovery burdens—and regardless, at best Defendants' asserted burdens "counsel for a careful plan of discovery management, not for preemptively striking dozens of states in which viable subclasses still might

---

[1] "[S]triking a plaintiff's class allegations prior to discovery and a motion for class certification is a rare remedy." *In re Papa John's Empl. and Franchise Empl. Antitrust Litig.*, 2019 WL 5386484, at *11 (W.D. Ky. Oct. 21, 2019) (*quoting Mod. Holdings, LLC v. Corning Inc.*, 2015 WL 1481459, at *2 (E.D. Ky. Mar. 31, 2015) (collecting cases)).

be formulated." *Kirkbride v. Kroger* Co., 2022 WL 2703960 at *13 (S.D. Ohio July 12, 2022). On the other hand, preemptively striking class allegations requires assessing factual issues without evidence, something the Sixth Circuit has counseled against, including just last month.[2] Since there will be discovery into these facts anyway, there is no reason to strike *any* of the broader class allegations, all of which are plausible. Indeed, none of Defendants' objections to certification under Rule 23(b)(3) bear on whether there are significant common *factual* issues or common issues under *uniform law* across the class that could be certified under Rule 23(a) and 23(c)(4) for the benefit all class members.[3] For now, it is enough to say that Defendants' arguments about "overbreadth [of the proposed classes] may be raised again in this case after some factual development" and the court has "procedural mechanisms to prune the class" later should that be warranted. *Sowders v. Scratch Fin., Inc.*, 2023 WL 7525900, at *8–9 (S.D. Ohio Nov. 14, 2023).

---

[2] *Bowles v. Sabree*, 121 F.4th 539, 549 (6th Cir. 2024) ("[o]rdinarily, courts need more information than the pleadings provide to analyze [Rule 23] matters thoroughly. That usually entails some opportunity for the parties to gather evidence, develop a record, or depose the other side.").

[3] *See Martin v. Behr Dayton Thermal Prod. LLC*, 896 F.3d 405, 411 (6th Cir. 2018) (permitting "utilizing Rule 23(c)(4) even where predominance has not been satisfied for the cause of action as a whole.").

## ARGUMENT

### I. It Is Premature to Decide the Scope of the Putative Class Action.

Because Defendants are pursuing an extraordinary Rule 12 motion, they must accept all well-pled allegations and demonstrate the complaint itself establishes that no evidence *could possibly* support a class certification order that includes borrowers outside of CA, FL, NC, and TN, nor any federal or common law claims. *Mod. Holdings.*, 2015 WL 1481459, at *2 (noting party moving to strike has "burden of demonstrating from the face of the plaintiffs' complaint that it will be *impossible* to certify the class as alleged, regardless of the facts plaintiffs may be able to prove through discovery.").[4] But analyzing class certification almost always requires evidence. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) ("class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.").[5] "Ordinarily . . . the class determination should be predicated on evidence presented by the parties concerning the maintainability of the class action." *In re Whirlpool Corp. Front-Loading Washer*

---

[4] *See also Albright v. Sherwin-Williams Co.*, 2019 WL 5307068, at *17 (N.D. Ohio Jan. 29, 2019) (denying motion to strike nationwide class by plaintiffs from five states because "Defendants have not met their burden to establish that it would be impossible to certify either a nationwide class or five state classes."); *In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 947 (E.D. Mich. 2022) (finding it premature to strike nationwide class because "state law does not need to be universal").

[5] Emphases are added and internal quotations and citations are omitted throughout, unless otherwise noted.

3

*Prod. Liab. Litig.*, 722 F.3d 838, 851 (6th Cir. 2013).

This standard cannot be met here because, as Defendants acknowledge in their motion, most of their arguments are targeted only at (b)(3) certification of the broadest possible scope of the classes pled in the FAC. But the face of the complaint also contains *alternative* formulations of the potential subclasses that are narrower and could be certified under Rule 23(c)(5), which would moot Defendants' argument about variations in the law. Plaintiffs have also pled Rule 23(c)(4) certification (FAC ¶ 345) which could potentially moot all of Defendants' remaining arguments. But Defendants urge the Court to ignore Plaintiffs' *alternative* proposals—without the benefit of any record—because they are allegedly too broad or complex. Potential complexity alone is not enough to strike claims, as the concerns may not materialize, or they may be resolved by application of Rule 23(c)(4) or (c)(5). *See, e.g.*, *Reynolds v. Lifewatch, Inc*., 136 F. Supp. 3d 503, 518–19 (S.D.N.Y. 2015).

Deciding class certification in a multistate class also typically requires resolving choice-of-law issues. *See Mirfahisi v. Fleet Mortg. Corp.*, 450 F.3d 745, 750 (7th Cir. 2006) ("choice-of-law issues in nationwide class actions are rarely so uncomplicated that one can delineate clear winning and losing arguments at an early stage in the litigation."). Michigan's choice of law rules implicate factual considerations about state interests, where the injury-causing conduct occurred, where the relationship is centered, etc. *In re Chevrolet Bolt EV Battery Litig.*, 633 F.

4

Supp. 3d 921, 968 (E.D. Mich. 2022). Rule 23 rulings would be premature before the choice of law issues have been briefed and decided.[6]

## II.   Striking the Rule 23(b)(2) Allegations Would Be Error.

A plaintiff may plead both a Rule 23(b)(2) class for injunctive relief and a 23(b)(3) class for damages in the same complaint, as the FAC has pled here. *See* FAC ¶¶ 341–342 (alleging elements of (b)(2) and (b)(3) certification). Courts frequently certify classes under both provisions.[7] In addition, Plaintiffs alleged facts supporting injunctive relief throughout the FAC.[8] And multiple causes of action allow injunctive relief.[9] In sum, (b)(2) certification is plausible and well-pled.

---

[6] Some courts have applied one state's law to a multistate class action under similar choice-of-law principles. *See, e.g.*, *In re Mercedes-Benz Tele Aid Cont. Litig.*, 267 F.R.D. 113, 122 (D.N.J. 2010), *modified on reconsideration*, 2010 WL 2976496 (D.N.J. July 22, 2010) (finding New Jersey unjust enrichment law applied to multistate class); *Belin v. Health Ins. Innovations, Inc.*, 337 F.R.D. 544, 559–60 (S.D. Fla. 2021) (finding Florida law on unjust enrichment and aiding and abetting fiduciary breach applied to nationwide class); *see also Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 58 (S.D.N.Y. 1993) (postponing choice of law decision on state law claims because "speculative forecast of difficulties in the future [applying multiple state laws] is wholly inadequate" to deny certification when state claims factually relate to federal claim).

[7] *Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 428 n. 15, 429 (6th Cir. 2012) (certifying a (b)(2) class even when "the declaratory relief serves as a predicate for later monetary relief, which would be certified under Rule 23(b)(3)").

[8] The FAC alleges that Defendants acted uniformly towards class through uniform policies and contractual agreements with brokers, that plaintiffs suffered common injuries, and the wrongful conduct is ongoing, among other things.

[9] *See, e.g.*, *Ahearn v. Mayo Clinic*, 180 So. 3d 165, 172–73 (Fla. Dist. Ct. App. 2015) (finding FDUTPA allows class representative to seek injunction without proof of plaintiff's future injury or actual damages); *Lizama v. Venus Lab'ys, Inc.*, 679 F.

Defendants' *sole* argument to strike the (b)(2) allegations is that the "main thrust" of the FAC is allegedly for money damages under (b)(3), and therefore (b)(2) certification is allegedly barred by *Wal-Mart Stores v. Dukes*, 564 U.S. 338 (2011). This reflects a misunderstanding of *Dukes*, in which the "main thrust" of the action was relevant only because the plaintiffs sought injunctive relief and substantial individual money damages *exclusively* under (b)(2). *Dukes* did not preclude dual certification; nor have subsequent cases interpreted it that way.[10] Moreover, regardless of how Defendants characterize the main thrust of the FAC, it is not appropriate to dismiss the (b)(2) allegations on the pleadings.[11] To the extent district court opinions cited by Defendants suggest otherwise, they are incorrect.

## III.    Defendants' "Lack of Standing" Argument Is Meritless.

Plaintiffs have undisputed individual Article III standing to assert their own claims in the FAC. That alone demonstrates they can serve as class representatives for unnamed plaintiffs from other states, too, provided Rule 23 is satisfied. *See Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998). Indeed, "all

---

Supp. 3d 848, 870–72 (E.D. Mo. 2023) (denying motion to strike class, finding plaintiff has standing to seek injunction for ongoing deceptive conduct).

[10] *See Bristol Vill., Inc. v. La.-Pac. Corp.,* 916 F.Supp.2d 357, 370 (W.D.N.Y. 2013) ("*[Wal-Mart v.] Dukes* does not preclude certifying a class under Rule 23(b)(2) and *separately* certifying a class under Rule 23(b)(3)") (emphasis in original).

[11] *Olden v. LaFarge Corp.*, 383 F.3d 495, 510–11 (6th Cir. 2004) (finding disputes about the main thrust of an action do not "represent a useful expenditure of energy" because either way "the action should not be dismissed.") (quoting Wright & Miller).

circuits which have addressed whether a plaintiff can represent unnamed class members whose claims fall under different states' laws have concluded that it is a question that concerns Rule 12(b)(6) or Rule 23—not Article III." *In re Zantac (Ranitidine) Prods. Liab. Litig*., 2022 WL 16729170, at *6 (11th Cir. Nov. 7, 2022).

The district court cases cited by Defendants mostly ignore Article III and fail to address the relevant federal appellate cases. *Cf. Generation Changers Church v. Church Mut. Ins. Co.*, 693 F. Supp. 3d 795, 806 (M.D. Tenn. 2023) (identifying several of UWM's cases as examples in which courts all "make[] the same conceptual error" about standing, and noting "courts rarely deny certification simply because the class spans many states and asserts state-law claims."). Finally, Defendants' implication that the Sixth Circuit's decision in *Fox v. Saginaw County*, 67 F.4th 284 (6th Cir. 2023) supports their position is wrong, as subsequent cases confirm.[12]

## IV.   Variations in State Law Do Not Warrant Striking Any Class Allegations.

There are three main reasons to reject Defendants' argument concerning variation in state law: (1) Defendants exaggerate the alleged variance in state law; (2) even where there are differences, it is premature to determine if they would be material as applied in this case; and (3) perhaps most fundamentally, Defendants'

---

[12] *Fisher v. FCA US LLC*, 712 F. Supp. 3d 930, 939–40 (E.D. Mich. 2024); *Generation Changers Church*, 693 F. Supp. 3d at 806–07.

argument ignores that Plaintiffs plead class allegations in the alternative, and expressly reserved the right to modify class definitions as the evidence develops. FAC ¶ 334. Instead, Defendants focus on the broadest possible alternative, only to argue it is overbroad, a tactic not supported by law in this circuit.[13]

**Consumer Protection Class.** Defendants concede Plaintiffs' "home state" classes are plausibly pled—meaning there are enough factual and legal similarities across the claims of all borrowers in, for example, North Carolina that Mr. Schelble can certify the class under 23(b)(3) and plausibly prove the claims with common proof. And the same is true for the Florida plaintiff as to the Florida subclass, and so on. Defendants cannot credibly argue that *none* of the remaining 37 states' consumer protection statutes are substantially similar to *any* of the statutes from Plaintiffs' home states, given that many courts have found the opposite.[14] Nevertheless, Defendants claim there are seven material variations in the statutes.

---

[13] *Speerly v. Gen. Motors, LLC*, 115 F.4th 680, 709 (6th Cir. 2024) ("the district court can cull the class later on"). *Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*, 2016 WL 10520133, at *5–6 (S.D. Ohio Dec. 15, 2016) (noting overbreadth in class definition "may never materialize" since "Plaintiffs specifically reserved the right" to modify the class definition); *see also In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271, 294 (S.D. Ohio 1997) (grouping subclasses based on similarities of law and holding that variations within a subclass "can be managed with proper jury instructions.").

[14] *See Benson v. Newell Brands, Inc*., 2021 WL 5321510, at *9 (N.D. Ill. Nov. 16, 2021) (finding variations in statutes of CA, FL, IL, NJ, NY, MA, MI, MN, MO, and WA are "distinctions without a difference" and certifying a class represented by Illinois plaintiff); *In re Pork Antitrust Litig.*, 665 F. Supp. 3d 967, 1000 (D. Minn. 2023) (finding statutes of 28 states "sufficiently parallel" and certifying class

Scienter: In their Chart of consumer protection laws (ECF No. 31-1), Defendants claim that proving scienter under some statutes requires evidence Defendants acted, e.g., with "willful or knowing violations" (like in Tennessee for treble damages) or "intent" (California). In other states, including Florida and North Carolina, no scienter is required. A verdict form asking, in substance: "Did Defendants act with knowledge or intent? Yes__ No__" would encompass essentially all variables, because a "yes" would support liability under all statutes, and a "no" would exclude any that allegedly require intent. Separately, since Defendants claim the existing four states already cover the spectrum of different scienter elements, adding more states will not necessarily add complexity.

Reliance: Defendants assert North Carolina and California require evidence of actual reliance (at least in fraudulent misrepresentation cases);[15] Florida allegedly requires evidence a "consumer acting reasonably" would have been deceived (i.e.,

---

without named plaintiffs from each state); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022–23 (9th Cir. 1998) ("although some class members may possess slightly differing remedies based on state statute or common law, the actions asserted by the class representatives are not sufficiently anomalous to deny class certification").

[15] Defendants entirely fail to address the California UCL claim (Count 10) and therefore have not met their burden to show no other statutes are materially similar. Their Chart's assertion that California's consumer statutes require classwide proof of "[a]ctual reliance" is simply wrong. *See In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 987 (N.D. Cal. 2022), *appeal dismissed*, 2024 WL 4648010 (9th Cir. Aug. 5, 2024) (certifying UCL class because "a presumption of reliance arises . . . on behalf of all class members" if plaintiff relied).

an objective standard); and Tennessee allegedly requires evidence that "wrongful conduct proximately caused" the injury. Their Chart indicates that all other states fall into one of these same general categories of requiring either actual reliance, objective reliance, or proof of causation. Again, grouping together more statutes with the same elements as an existing statute will not add complexity.

Defendants' argument about reliance should be rejected for three additional reasons: (1) contrary to the self-serving snippets of law in Defendants' Chart, proof of reliance is either not required for omissions, can be presumed in some circumstances, or is not required for certain remedies in all states;[16] if after discovery there is a state whose standard cannot be met under the evidence developed, the class definition will be modified; (2) if there are reliance issues, classes can be certified as to liability only;[17] and (3) regardless, at a minimum, "discovery will allow the court to assess whether individual reliance is at the factual core" of any claims under

---

[16] *See, e.g.*, *Stanich v. Travelers Indem. Co.*, 249 F.R.D. 506, 518 (N.D. Ohio 2008) ("Where there are uniform presentations of allegedly misleading information, or common omissions throughout the entire class, especially through form documents, courts have found that the element of reliance may be presumed class-wide"); *Mell v. Anthem, Inc.*, 264 F.R.D. 312, 321 (S.D. Ohio 2009) (similar).

[17] *Martin*, 896 F.3d at 415 ("[C]ertification may remain 'proper' even if 'important matters' such as actual injury, causation, and damages will have to be tried separately."); *Chavez v. Plan Benefit Servs., Inc.*, 108 F.4th 297, 318 (5th Cir. 2024), *cert. denied sub nom.* 2024 WL 5011734 (U.S. Dec. 9, 2024) ("common and individual issues can be divided and tried into multi-phase trials under Rule 23(c)(4), which permits district courts to limit class treatment to particular issues and reserve other issues for individual determination.").

the facts alleged. *Bearden v. Honeywell Int'l Inc.*, 720 F. Supp. 2d 932, 942–45 (M.D. Tenn. 2010).

Limitations period; accrual; discovery rule: Thirty-one states, including Florida, North Carolina, and California, allow three years or longer, even without application of the discovery rule. As to borrowers in the remaining states with shorter statutes, Defendants' argument at most suggests that some subset of early borrowers may be excluded from the class definition before class certification—unless a tolling doctrine applies based on common proof developed in discovery, which courts have allowed.[18] Additionally, if necessary, sub-classes could be certified to include borrowers in states with different statutes of limitation or discovery rules or such differences could be addressed in  the claims administration process. Regardless, "the law is settled that '[t]he existence of a statute of limitations issue does not compel a finding that individual issues predominate over common ones.'" *Lott v. Louisville Metro Gov't*, 2021 WL 1031008, at *13 (W.D. Ky. Mar. 17, 2021) (quoting *Lauber v. Bellford High Sch.*, 2012 WL 5822243, at *9 (E.D. Mich. Jan. 23, 2012)); *see also Khoday v. Symantec Corp.*, 93 F. Supp. 3d 1067, 1091 (D. Minn.

---

[18] *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 325 F.R.D. 136, 172 (D.S.C. 2018) ("To the extent the discovery rule applies, an objective standard ('reasonably ought to have been discovered') can be utilized to determine when class members had constructive knowledge, if not actual knowledge, that a cause of action had accrued"); *Seeligson v. Devon Energy Prod. Co., L.P.*, 2020 WL 636224, at *12 (N.D. Tex. Feb. 11, 2020); *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 485–86 (C.D. Cal. 2012).

2015), *as amended* (Apr. 15, 2015) (certifying national unjust enrichment class and modifying class definition based on evidence regarding limitations period).

Remedies: Variances will not subsume the common issues. All the consumer protection statutes allow, at a minimum, actual damages. Plaintiffs will show on a classwide basis that their damages "formula calculates damages based only on their theory of liability," which is all that is required. *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 460 (6th Cir. 2020). There are numerous accepted approaches to do so. For example, actual damages equivalent to the amounts class members paid to brokers or UWM could be determined from Defendants' own records. Alternatively, contingent valuation methodology, determined through market surveys, is sound, reliable, and has been consistently recognized by courts. *See In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Pracs. & Prod. Liab. Litig.*, 2012 WL 4904412, at *4 (C.D. Cal. Sept. 20, 2012). Even if individualized damages issues exist, common issues can still predominate.[19] The issues can also be deferred to a remedies phase after adjudication of class issues, if necessary.[20]

---

[19] *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007); *Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 487 (S.D. Ohio 2004) (finding individualized issues related to causation and damages could "be handled separately after a trial"); *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003) (affirming class certification even when harm and damages are reserved for individual hearings).

[20] *In re Whirlpool Corp.*, 722 F.3d at 861 ("it remains the 'black letter rule' that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members"); *Olden*, 383 F.3d at 509 (liability can be bifurcated from issues of class damages).

Class action bars: These do not create variance because they generally do not apply in federal court. *See Shady Grove Orthopedic Assoc. v. Allstate Ins. Co.*, 559 U.S. 393, 399–400 (2010); *Reynolds v. FCA US LLC*, 546 F. Supp. 3d 635, 656–57 (E.D. Mich. 2021).

**Unjust Enrichment.** The law is materially the same across all states in the proposed 37-state unjust enrichment subclass. Courts have cautioned that "we must keep in mind that the very nature of [unjust enrichment] claims requires a focus on the gains of the defendants, not the losses of the plaintiffs. That is a universal thread throughout all common law causes of action for unjust enrichment." *In re Abbott Lab'ys Norvir Anti-Tr. Litig.*, 2007 WL 1689899, at *9 (N.D. Cal. June 11, 2007) (certifying multistate class). Defendants' cases denying certification simply illustrate that the materiality of alleged differences in unjust enrichment elements depends on the facts of each case—because for each of Defendants' examples in which the facts weighed against certification, there are contrary cases in which alleged variations in the elements or individualized issues did *not* predominate, because they were found to be "not material because they do not significantly alter the central issue or the manner of proof in this case." *Keilholtz v. Lennox Hearth Prod. Inc.*, 268 F.R.D. 330, 341 (N.D. Cal. 2010).[21]

---

[21] *See also Kirkbride*, 2022 WL 2703960, at *12 (denying motion to strike because "[d]ifferences in law do not necessarily preclude some combination of state and

**Aiding and Abetting Fiduciary Duty.** Defendants' Chart (ECF No. 31-3) does not demonstrate that variances are sufficient to either: (a) prevent Plaintiffs from representing the putative class, or (b) defeat Rule 23 certification. *See In re Telectronics*, 172 F.R.D. at 294. ***First***, asserted differences in limitations periods and scienter requirements are immaterial for the same reasons discussed above. ***Second***, whether state law imposes a fiduciary duty on brokers by statute versus by common law is a distinction without a difference; the source of law is not relevant to its substance. That leaves only alleged differences in whether (a) brokers have a fiduciary duty, and (b) whether aiding and abetting liability is recognized. As to the brokers' duty, Defendants' Chart does not identify anywhere that the existence of the duty is foreclosed or implausible. Rather, they identify three states where the duty is allegedly either "*likely* not," "no duty *likely*," or "if a duty exists, *likely fact specific*." But after discovery, if the element cannot be proven for these states, the class definition will be modified. In 15 states it is "potentially yes," "likely yes," or "yes." And in 32 states Defendants assert the answer is "unclear" or "may exist." This does not warrant striking claims on the pleadings, because the facts and evidence are clearly relevant to analyzing issues of duty. As to whether the tort of

---

multistate classes from being certified") (citing *Kimber Baldwin Designs*, 2016 WL 10520133, at *5–6); *Hoving v. L. Title Ins. Co.*, 256 F.R.D. 555, 570 (E.D. Mich. 2009) (similar); *Huskey v. Colgate-Palmolive Co.*, 486 F. Supp. 3d 1339, 1351 (E.D. Mo. 2020) (even "serious doubts" about nationwide class do not justify striking unjust enrichment class before discovery).

aiding and abetting fiduciary breach exists, they claim it is "likely not recognized" in nine states. This assessment is not reliable or accurate.[22] In most other states Defendants concede the tort "likely exists" (or in some is "unclear"). The claim is closely related to the consumer protection and RICO claims, and discovery should be permitted before the Rule 23 issues are decided.

**Civil Conspiracy.** Although there are few cases certifying large multistate civil conspiracy claims, at a minimum the law is uniform across each of the single-state subclasses of Plaintiffs' home states. Nevertheless, striking the claims would still be premature on the present record. Class certification discovery on the RICO claim will overlap with civil conspiracy. Separately, Defendants state the proposed conspiracy subclass 2 lacks a class representative. If it is plausible to certify a nationwide claim, the Court need not reach the alternative subclass proposals.

**Commercial Bribery.** Even if there were material differences in state bribery statutes, it would not warrant striking RICO claims for three independent reasons. *First*, the FAC alleges other predicate acts (based on violations of uniform federal fraud statutes) that are independently enough to establish liability. *Second*, not all Plaintiffs or class members must show injury from each predicate act anyway. For

---

[22] *See, e.g.*, *JKB Daira, Inc. v. OPS-Tech., LLC*, 2022 WL 4484146, at *14 (D. Conn. Sept. 27, 2022) (denying motion to dismiss aiding and abetting fiduciary breach); *Rosemann v. St. Louis Bank*, 858 F.3d 488, 499–500 (8th Cir. 2017); *Peel Payments, LLC v. First Data Corp.*, 2016 WL 6407432, at *2 (W.D. Okla. Oct. 28, 2016); *In re Amcast Indus. Corp.*, 365 B.R. 91, 112 (Bankr. S.D. Ohio 2007).

example, in *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1117 (9th Cir. 2017), it was immaterial that a class representative's RICO claim was based on a different predicate than the unnamed class members, because the "injuries stem from the same scheme, although the specific predicate act that caused her injury may differ from the acts that caused injury to other class members." *Id.; see also In re JUUL Labs, Inc.*, 609 F. Supp. at 978 (finding that RICO defendant "was only directly involved in *some* of the racketeering activity is not significant" to nationwide class certification) (emphasis in original). **Third**, Defendants' argument is based on a misunderstanding of RICO litigation. The enumerated predicate acts under 18 U.S.C. § 1961(1) include violations of 80-plus federal statutes (including the Travel Act, which prohibits violating state-law commercial bribery statutes by use of mails or wires), and violations of various categories of state statutes relating to bribery, extortion, etc. A civil litigant is no more limited than the United States in the number of predicate law violations that can be pled in support of a RICO claim, even if multiple state laws are implicated. *See, e.g.*, *Nat'l Org. for Women, Inc. v. Scheidler*, 897 F. Supp. 1047, 1078–80 (N.D. Ill. 1995) (denying motion to dismiss RICO class action complaint based on predicate violations of extortion statutes from 22 states).

## V.   Plaintiffs' RESPA Section 8 Claim Is Suitable for Class Treatment.

Defendants have not met their burden to demonstrate "it will be impossible to certify" the RESPA class "regardless of the facts plaintiffs may be able to prove

16

through discovery." *Mod. Holdings*, 2015 WL 1481459, at *2. RESPA Section 8 prohibits UWM from providing things of value to brokers for steering borrowers to UWM. The FAC plausibly pleads that UWM violated this provision because, among other things, "UWM made payments and/or gave things of value to brokers, pursuant to an agreement or understanding, in exchange for the assignment and referral of business" and paid brokers "kickbacks and unearned compensation" tied to the amount of "steering the broker provides to UWM." FAC ¶¶ 399, 425. Defendants nevertheless argue RESPA is uncertifiable because of the "safe harbor" exemption in Section 8(2)(c), which allows lenders to pay brokers "bona fide compensation for services actually performed." Defendants claim that whether a payment is an unlawful "kickback" versus a lawful "bona fide compensation" depends on a "loan by loan" analysis. This is both convoluted and wrong for multiple reasons.

*First*, UWM partly misconstrues the FAC. Plaintiffs allege UWM offered financial inducements to brokers in exchange for steering, i.e., a prohibited kickback scheme. In turn, UWM responds that whether these financial inducements may constitute a permissible "bona fide compensation for services actually performed" is a factual dispute. But UWM has not, in fact, identified *any* bona fide services brokers rendered for *UWM* to justify the kickbacks. The only services brokers provided to UWM were the referrals. While UWM alleges that brokers performed "bona fide services" for *borrowers*—e.g., by completing paperwork, submitting

17

applications, etc.—these services were not rendered for UWM. At a bare minimum, it is premature to determine the safe harbor will be material under the facts pled.

**Second**, Defendants ignore the many cases in which RESPA Section 8 classes have been certified. *See Palombaro v. Emery Fed. Credit Union*, 2017 WL 3437559, at *11-12 (S.D. Ohio Aug. 10, 2017) (certifying RESPA Section 8 claims despite objection that "inquiry must be made on a loan-by-loan basis").[23] Notably, the *Palombaro* court held that class certification would be appropriate "where the question is one of whether any title services *at all* were provided in exchange for kickbacks," which is the issue in the present case. *Id.* at *14 (emphasis in original).

**Third**, the possibility of limited individual inquiries—which will likely be mitigated through discovery—does not justify striking the class allegations. Here the proposed class definition, FAC ¶ 328, is designed to reduce if not eliminate the role of any individual inquiries. Further, Plaintiffs allege UWM paid brokers for services

---

[23] *See also Edwards v. First Am. Corp.*, 798 F.3d 1172, 1181 (9th Cir. 2015) (reversing denial of class certification, noting "[w]e hold that the district court abused its discretion in denying class certification" and that "cases alleging illegal kickbacks in violation of § 2607(a) are not necessarily unfit for class adjudication.") (cleaned up); *In re Comm. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380 (3d Cir. 2015) (finding class certification appropriate because "[t]he elements of the Plaintiffs' RESPA claims that are 'essential'—namely violations of the anti-kickback and unearned fee provisions of RESPA—can potentially be proven with common evidence"); *Baugh v. Fed. Savings Bank*, 337 F.R.D. 100 (D. Md. 2020) (certifying RESPA Section 8 claims); *Munoz v. PHH Mortg. Co.*, 478 F. Supp. 3d 945 (E.D. Cal. 2020) (declining to decertify class and granting summary judgment in favor of plaintiffs on first three elements of RESPA Section 8 claim).

the brokers did not provide, which plainly constitutes a violation of § 2607(b). *See, e.g.*, FAC ¶¶ 191–192, 223–224, 245, 252–253, 270, 277–278, 307–308; 12 CFR § 1024.2(b) (defining "settlement service" to include "counseling" of consumers).

Finally, Defendants' cases do not support striking the pleadings. All are from other federal circuits and post-discovery appeals following rulings on class certification motions.[24] None are from the Sixth Circuit. And none of the remaining allegedly "individualized issues" warrant striking RESPA class claims.

**Equitable Tolling.** Contrary to Defendants' argument, *Pettrey v. Enterprise Title Agency, Inc.*, 241 F.R.D. 268 (N.D. Ohio 2006) does not support striking the RESPA claim. *Pettrey* was decided on an evidentiary record at class certification, and it does not hold that a statute of limitations defense automatically bars certification. Discovery may yield evidence amounting to objective proof of UWM's fraudulent concealment, or that due diligence would have been futile as a matter of law. *See*, *e.g*., *Palombaro,* 2017 WL 34337559 at*10–11 (certifying RESPA class in which the majority of class members would have to rely on equitable tolling arguments); *Cunningham v. M & T Bank Corp*., 2013 WL 5876337, at *6 (M.D. Pa. Oct. 30, 2013) (finding allegation class members were unable to duly discover RESPA violation is enough to satisfy reasonable diligence requirement at pleading

---

[24] In *Howland*, *O'Sullivan*, *Bjustrom*, and *Glover*, the RESPA class allegations were decided after discovery, not stricken on the pleadings.

stage). Statute of limitations defenses also do not justify a motion to strike since the class definition can be modified to exclude untimely claims.

**Loan Purpose.** There is no genuine dispute that class members' loans are residential, not commercial. *See* FAC at ¶ 396 ("Plaintiffs and the class obtained federally-related *residential* mortgage loans through UWM" secured by liens on "*residential* real property").[25]

**Treble Damages/Fee-Shifting.** The availability of treble damages and fee-shifting under RESPA does not preclude the Court from finding a class action is superior—particularly since damages suffered by individual class members are small compared to the cost of prosecuting the claims, and the efficiencies of class treatment to the court and the public. FAC at ¶ 341-345.[26] Also, Defendants concede (b)(3) certification is plausible for consumer protection claims under Tennessee and Florida law, even though they allow treble damages and fee shifting, respectively.

## VI. Plaintiffs' RICO Claims Are Fit for Class Treatment.

Defendants contend that RICO class allegations should be stricken because

---

[25] This would not preclude (b)(3) certification anyway. The residential status of each loan "may be determined via a claim form sent to class members asking them a single question to determine whether they are entitled to relief." *Edwards v. First Am. Corp.*, 289 F.R.D. 296, 305 (C.D. Cal. 2012); *Palombaro*, 2017 WL 34337559, at *11 (finding "the suggestion to employ a questionnaire [to determine RESPA coverage] … could be a simple and effective solution for a majority" of the class).

[26] *Beattie*, 511 F.3d at 567 ("individual suits would yield only a small amount of damages … [and] would not encourage individuals to bring suit, thereby making a class action a superior mechanism").

the fraud and bribery predicate acts allegedly depend on individualized proof. This is wrong for multiple reasons. To establish a pattern of racketeering activity, Plaintiffs must prove "at *least two acts* of racketeering activity," 18 U.S.C. § 1961(5), and the FAC alleges multiple acts of mail fraud, wire fraud and other racketeering acts. *See* FAC Count 1. Defendants' central argument is that mail and wire fraud predicate acts are not susceptible to classwide proof because individualized "first-party reliance" issues predominate. That argument is meritless. The fraud predicate acts are based on mail, wire, and other federal statutes under 18 U.S.C. §§ 1341, 1343, and 1346—*not* common law fraud. FAC ¶¶ 361, 364. The Supreme Court has ruled unequivocally that "a plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establish proximate causation, that it relied on the defendant's alleged misrepresentations." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 661 (2008). The Sixth Circuit has made this equally clear with respect to both mail and wire fraud predicate acts. *Brown v. Cassens Transp. Co.*, 546 F.3d 347, 357 (6th Cir. 2008) ("After *Bridge*, plaintiffs need not plead or prove that they relied on defendants' alleged misrepresentations in order to establish the elements of their civil RICO claim based on mail *or wire* fraud"). Individual questions of reliance pose no barrier to class treatment here.[27]

---

[27] *See In re JUUL Labs*, 609 F. Supp. at 980, 985 (certifying nationwide RICO class

The clear differences between Plaintiffs' allegations here and the evidence in *In re Countrywide*, 277 F.R.D. 586 (S.D. Cal. 2011) illustrates why Plaintiffs' claims are certifiable. [28] There, the district court denied plaintiffs' *post*-discovery motion to certify a putative RICO mail fraud class where the "alleged nationwide scheme [was] not sufficiently supported by evidence of standardized or uniform fraudulent conduct." *In re Countrywide*, 277 F.R.D. at 601. The court distinguished the case from *In re First Alliance Mortg. Co.*, 471 F.3d 977 (9th Cir. 2006), a class action involving a "centrally orchestrated" fraudulent scheme by a mortgage lender, noting that unlike in *First Alliance*, the plaintiffs had "failed to demonstrate the alleged scheme was implemented through a common (or uniform) course of conduct likely to mislead the entire class." 277 F.R.D. at 601. There was no "common proof," for example, that a "standardized training program" or a "script or other mechanism designed to misrepresent and obfuscate was uniformly used by loan officers." *Id.* 601–02. Here, by contrast, the FAC alleges a "centrally orchestrated" scheme,

---

regardless of disputes about "whether [named plaintiffs] had seen any marketing materials"); *Compound Prop. Mgmt. LLC v. Build Realty, Inc.*, 343 F.R.D. 378, 408 (S.D. Ohio 2023) (certifying RICO class because plaintiffs did not "bring a common law fraud claim where reasonable reliance must be shown"). Defendants' contrary cases primarily involve *non-RICO* fraud claims.

[28] Numerous courts distinguish *Countrywide* when common proof is available. *See*, *e.g.*, *Bowe v. Public Storage*, 318 F.R.D. 160, 181 (S.D. Fla 2015) (inference of causation "based on classwide evidence that the same misrepresentations or omissions were made … via standard materials"); *Negrete v. Allianz Life Ins. Co.*, 287 F.R.D. 590 (C.D. Cal. 2012) (distinguishing *Countryside* and denying motion to decertify where claims based on common misrepresentations in sales brochures).

making this case analogous to *First Alliance* and different from *Countrywide*. UWM's systematic conduct deceived borrowers—no matter who their broker is.[29]

Defendants' claim that RICO predicates turn on "fraudulent statements made within each individualized consumer-broker relationship" is untrue. The evidence of Defendants' orchestration of the scheme—which is the RICO predicate here—is common and classwide, which satisfies Rule 23. *Compound Prop. Mgmt. LLC*, 343 F.R.D. at 408 (certifying RICO class where proof consists of "participation in the fraudulent scheme, without need to show reliance on an isolated misrepresentation").

## VII. Individual Issues Do Not Defeat Rule 23 Certification of the Aiding and Abetting Fiduciary Breach.

Defendants' contention that individualized issues predominate in the aiding and abetting fiduciary breach and unjust enrichment claims is wrong for five reasons. *First*, breach of fiduciary duty claims are not precluded from being certified as a matter of law. *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998) (reversing lower court's denial of class certification on breach of fiduciary duty

---

[29] For example, all brokers who originate a UWM loan must uniformly sign its Wholesale Broker Agreement. FAC ¶¶ 73–75, 158. That Agreement restricts brokers in material ways that are not disclosed to the borrowers they harm. *Id.* ¶¶ 74-89. And every broker is subject to UWM's loyalty incentive system, designed to cause steering. *Id.* ¶¶ 95–129. UWM exerts centralized control over brokers' marketing to borrowers, including through training programs (*id.* ¶¶ 59–60, 125), standardized website templates (*id.* ¶¶ 55–57), its comprehensive "Brand 360" marketing portal (*id.* ¶¶ 58–62, App'x A), and "Mortgage Matchup" (*id.* ¶¶ 97–115).

claim).[30] Neither are aiding and abetting breach of fiduciary duty.[31] **Second**, Defendants' argument hinges on their assertion there is no "per se" broker-borrower duties under Plaintiffs' home-state laws. But their Tennessee cases merely hold that "the dealings between a *lender* and borrower are not inherently fiduciary[.]" *Oak Ridge Precision Indus. v. First Tenn. Bank Nat. Ass'n*, 835 S.W.2d 25, 30 (Tenn. App. 1992); *Bowen v. Worldwide Mortg. Corp.*, 2007 WL 9706327, at *8 (W.D. Tenn. Mar. 27, 2007) (same). Here the alleged duty arises between *brokers* and borrowers, which is an agency relationship that falls within the "per se" categories. *See In re AME Church Emp. Ret. Fund Litig.*, 2023 WL 2562784, at *22 (W.D. Tenn. Mar. 17, 2023) (noting the duties "an agent owes . . . to its principal" fall in the category of "fiduciaries per se"). They also claim in a footnote the "per se" statutes of North Carolina and California do not apply. This is both incorrect (*see* MTD Opp. 34) and immaterial—because this argument *itself* presents a common merits issue that could be resolved classwide. **Third**, certification does not depend on proving a "per se" fiduciary duty anyway. At most, Defendants' cases stand for

---

[30] *See also Rankin v. Rots*, 220 F.R.D. 511, 519 (E.D. Mich. 2004) ("appropriate focus in a breach of fiduciary duty claim is the conduct of the defendants, not the plaintiffs"); *Compound Prop. Mgmt.*,343 F.R.D. at 411 ("breach of fiduciary duties claim can be properly resolved through class treatment under Rule 23(b)(3)").

[31] *Bruhl v. Price Waterhousecoopers Int'l*, 257 F.R.D. 684 (S.D. Fla. 2008) ("[c]lass certification of the claims for aiding and abetting a breach of a fiduciary duty is appropriate because none of the claim's elements requires reliance or any other factor unique to each class member.").

24

the unremarkable point that sometimes the existence of fiduciary duties depends on the general nature of the relationship. That is consistent with Plaintiffs' argument here, which is that the relationship between borrowers and brokers was the same in material respects across the class. *Fourth*, Defendants' contention that proving a *breach* requires individualized facts is contradicted, among other things, by the FAC's statistical allegations relating to brokers who agreed to UWM's uniform Wholesale Broker Agreements and steered effectively all their borrowers to UWM in violation of their duties. FAC ¶¶ 185, 217. *Fifth*, Defendants argue only that individual issues defeat (b)(3) certification for claims as a whole. This overlooks that Rule 23(c)(4) "permits district courts to limit class treatment to particular issues and reserve other issues for individual determination." *Chavez*, 108 F.4th at 318.

## CONCLUSION

For the foregoing reasons, the motion to strike should be denied.

**Dated: December 12, 2024**

By:  /s/ *Brandon C. Hubbard*
Brandon C. Hubbard (P71085)
**DICKINSON WRIGHT PLLC**
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226
Tel.: (517) 371-1730

John T. Zach
Marc Ayala
David L. Simons
Andrew P. Steinmetz
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards
New York, New York 10001
Tel.: (212) 446-2300

Tyler Ulrich
**BOIES SCHILLER FLEXNER LLP**
100 SE Second Street
Miami, Florida 33131 (305) 357-8422

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 12, 2024, I caused the foregoing

document to be filed with the Clerk of the Court using CM/ECF, which will

effectuate service upon all counsel of record.

/s/ *Brandon C. Hubbard*

Brandon C. Hubbard (P71085)
**DICKINSON WRIGHT PLLC**
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226
Tel.: (517) 371-1730

*Attorney for Plaintiffs*

26