**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Therisa D. Escue, Billy R. Escue, Jr., Kim Schelble, Brian P. Weatherill, Kenneth C. Morandi, Jill Jeffries, and Daniel Singh, on behalf of themselves and all others similarly situated,

*Plaintiffs*,

v.

United Wholesale Mortgage, LLC, UWM Holdings Corporation, SFS Holding Corp., and Mathew Randall Ishbia,

*Defendants*.

Case No. 2:24-cv-10853-BRM-DRG

Hon. Brandy R. McMillion,
United States District Judge

Hon. David R. Grand,
Magistrate Judge

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

**I. Plaintiffs' Suit Is Barred By Notice-and-Cure Provisions.** .................... 1
**II. The RICO Claims Fail (Counts I–II).** ................................................ 2
**III. The RESPA Claims Fail (Count III).** ................................................ 8
**IV. The Aiding-and-Abetting & Conspiracy Claims Fail (Counts IV–V).** ... 9
**V. The Consumer Protection Claims Fail (Counts VII–XI).** .................. 11
**VI. The Unjust Enrichment Claims Fail (Count VI).** ............................... 11
**VII. All Claims Against the Non-UWM Defendants Fail.** .......................... 12

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alston v. Countrywide Fin. Corp.*,
585 F.3d 753 (3d Cir. 2009)........................................................................8

*Augenstein v. Coldwell Banker Real Est. LLC*,
750 F. Supp. 2d 900 (S.D. Ohio 2010) ........................................................9

*BDM Invs. v. Lenhil, Inc.*,
264 N.C. App. 282 (2019) ..........................................................................9

*Brexendorf v. Bank of Am.*,
319 F. Supp. 3d 1257 (M.D. Fla. 2018) ....................................................11

*Bridge v. Phoenix Bond & Indem. Co.*,
553 U.S. 639 (2008) ...................................................................................4

*Cargill, Inc. v. Boag Cold Storage Warehouse, Inc.*,
71 F.3d 545 (6th Cir. 1995) .......................................................................7

*Cmty. For Creative Non-Violence v. Reid*,
490 U.S. 730 (1989) ...................................................................................7

*Cordaro v. Harrington Bank*,
260 N.C. App. 26 (2018)...........................................................................10

*Combs v. Int'l Ins. Co.*,
354 F.3d 568 (6th Cir. 2004).....................................................................10

*Charles v. Deutsche Bank Nat'l Tr.*,
2016 WL 950968 (S.D. Fla. Mar. 14, 2016))........................................1, 2

*De Los Angeles Aurora Gomez v. Bank of America*,
2013 WL 12165673 (C.D. Cal. Aug. 21, 2013) ...................................2, 3, 6

*Freeman v. Quicken Loans, Inc.*,
566 U.S. 624 (2012) .......... 9

*Galiano v. Fidelity Nat'l Title Ins. Co.*,
684 F.3d 309 (2d Cir. 2012) .......... 9

*Gen. Motors, LLC v. FCA US LLC*,
44 F.4th 548 (6th Cir. 2022) .......... 3, 4

*Grange Mut. Cas, Co. v. Mack*,
290 F. App'x 832 (6th Cir. 2008) .......... 4

*Heinrich v. Waiting Angels Adoption Servs., Inc.*,
668 F.3d 393 (6th Cir. 2012) .......... 4, 6

*Hemi Grp., LLC v. City of New York, N.Y.*,
559 U.S. 1 (2010) .......... 3

*Huron Tool & Eng. Co, v. Precision Consulting Serv., Inc.*,
532 N.W.2d 541 (Mich. Ct. App. 1995) .......... 7

*In re EpiPen Direct Purchaser Litig.*,
2023 WL 2860858 (D. Minn. Apr. 10, 2023) .......... 6

*In re Ins. Brokerage Antitrust Litig.*,
618 F.3d 300 (3d Cir. 2010) .......... 5

*In re Nexus 6P Prods. Liab. Litig.*,
293 F. Supp. 3d 888 (N.D. Cal. 2018) .......... 11

*In re SFNT Co.*,
288 F. Supp. 3d 1087 (D.N.M. 2017) .......... 12

*Insight Tel. Servs. v. Zip Mail Servs., Inc.*,
2014 WL 7012653 (E.D. Mich. Dec. 11, 2014) .......... 7

*Kerrigan v. ViSalus, Inc.*,
112 F. Supp. 3d 580 (E.D. Mich. 2015) .......... 4, 6, 12

*Kurzban v. Specialized Loan Serv., LLC*,
2018 WL 1570370 (S.D. Fla. Mar. 30, 2018) .......................................... 1, 2

*Lintz v. Bank of Am., N.A.*,
2013 WL 5423873 (N.D. Cal. Sept. 27, 2013).......................................... 10

*Lutz v. Chesapeake Appalachia, LLC*,
717 F.3d 459 (6th Cir. 2013)............................................................... 8

*Lutz v. Chesapeake Appalachia, LLC*,
807 F. App'x 528 (6th Cir. 2020) ........................................................... 9

*Nemir v. Mitsubishi Motors Corp.*,
381 F.3d 540 (6th Cir. 2004)............................................................... 8

*Norman v. FCA US LLC*,
696 F. Supp. 3d 359 (E.D. Mich. 2023) ..................................................... 6

*Pinney Dock & Transp. Co. v. Penn Cent. Corp.*,
838 F.2d 1445 (6th Cir. 1988)............................................................... 8

*Receiver of Lancer Offshore, Inc. v. Citco Group Ltd.*,
2008 WL 926512 (S.D. Fla. Mar. 31, 2008)............................................. 10

*Root, Inc. v. Silver*,
2024 WL 85057 (S.D. Ohio Jan. 8, 2024) .................................................. 5

*Ruth v. Unifund CCR Partners*,
604 F.3d 908 (6th Cir. 2010)............................................................ 8, 9

*Sepanossian v. Nat'l Ready Mix Co.*,
97 Cal. App. 5th 192, 208 (2023) ......................................................... 12

*Simms v. CIT Group/Consumer Fin.*,
2009 WL 973011 (W.D. Tenn. Apr. 9, 2009) .............................................. 9

*Solis v. Emery Fed. Credit Union*,
459 F. Supp. 3d 981 (S.D. Ohio 2020) ..................................................... 9

*Tenn. ex rel. Skrmetti v. Ideal Horizon Benefits, LLC*,
2024 WL 4351650 (E.D. Tenn. Sept. 30, 2024)....................................11

*Torres v. Vitale*,
954 F.3d 866 (6th Cir. 2020)....................................................7, 8

*Trollinger v. Tyson Foods, Inc.*,
370 F.3d 602 (6th Cir. 2004).......................................................4

*UWM v. Am.'s Moneyline*,
647 F. Supp. 3d 587 (E.D. Mich. 2022)...........................................7

*VanDenBroeck v. CommonPoint Mortg. Co.*,
210 F.3d 696 (6th Cir. 2000).......................................................5

*Wallace v. Midwest Fin. & Mortg. Servs., Inc.*,
714 F.3d 414 (6th Cir. 2013).................................................2, 3, 4

*Wyatt v. Union Mortg. Co.*,
598 P.2d 45 (Cal. 1979) ...........................................................10

*Yousefzadeh v. Wells Fargo Bank, N.A.*,
2023 WL 105092 (M.D. Tenn. Jan. 4, 2023)......................................11

**STATUTES**

12 U.S.C. § 2601 *et seq.* ..............................................................8

Cal. Penal Code § 641.3.................................................................6

**OTHER AUTHORITIES**

RESTATEMENT (THIRD) OF TORTS: LIAB. FOR ECON. HARM § 3.............................7

19 Wright & Miller, FED. PRAC. & PROC. § 4514.......................................7

75 Fed. Reg. 58,529 (Sept. 24, 2010)...................................................1

Fed. R. Civ. P. 9 ...........................................................................4

Plaintiffs' attack on UWM (and the entire wholesale mortgage industry) turns on two erroneous assumptions: that price is all that matters, and that brokers have a duty to canvass the entire market and pick the cheapest loan. But many other factors matter, like speed-to-close, lender reliability, and ability to make credit exceptions. *See* 75 Fed. Reg. 58,529 (Sept. 24, 2010). And regulations establish that brokers need only work with three lenders at most. MTD 20. Nevertheless, based on these mistaken premises, Plaintiffs filed an unprecedented class action lawsuit that recycles legal theories two courts have already rejected. As Defendants' motion demonstrated, each of their nine claims fails as a matter of law. Plaintiffs' response—which fails even to meaningfully engage with the key authorities that doom their claims—confirms that dismissal is required.

## I. Plaintiffs' Suit Is Barred By Notice-and-Cure Provisions.

Plaintiffs' mortgages—*which govern the price terms Plaintiffs now challenge*—required them to provide notice and an opportunity to cure before filing suit. MTD 8. Plaintiffs do not dispute that those provisions are enforceable or that they failed to give notice. They argue only that the provisions do not apply because their claims are "independent of the mortgage contracts." Resp. 7.

*Kurzban* (and the cases it cites) reject that argument. 2018 WL 1570370, at *2 (S.D. Fla. Mar. 30, 2018) (citing, *e.g.*, *Charles v. Deutsche Bank Nat'l Tr.*, 2016 WL 950968, at *2–3 (S.D. Fla. Mar. 14, 2016)). Plaintiffs all but ignore *Kurzban* and its

progeny. And the cases on which they rely are inapposite, as none of them challenged a plaintiff's contractual obligation to pay mortgage fees, as Plaintiffs do here: *Richards* addressed RESPA notices; *Colon* involved an unlawful automatic telephone dialer; and *McShannock* (which was later reversed) addressed failure to pay statutory escrow interest. Here, by contrast, the theory underlying *each* of Plaintiffs' claims—just as in *Charles*—is that the fees set in their contracts were "improper" and "excessive." FAC ¶ 1; *see Charles*, 2016 WL 950968, at *2 (allegedly "overcharged" for mortgage-related inspections). But for the mortgages, Plaintiffs would not have "overpaid." FAC ¶ 198. If any one claim in this "judicial action" arises from the mortgages, the notice provision bars it. *See Kurzban*, 2018 WL 1570370, at *2.

## II. The RICO Claims Fail (Counts I–II).

***Proximate Causation.*** In attempting to defend their attenuated theory of proximate causation, Plaintiffs principally invoke *Wallace*, in which a broker and lender generated an inflated home appraisal, and the borrower chose a larger loan "[b]ased on" that specific appraisal. 714 F.3d 414, 416–17 (6th Cir. 2013). That single-step false-appraisal-to-loan case is nothing like this one, where Plaintiffs rely on the nebulous, speculative, and multi-step causal chain set forth in the MTD at pages 12–14, which Plaintiffs ignore. Nor do they meaningfully distinguish *Gomez*, which supports dismissal here. 2013 WL 12165673, at *6–8 (C.D. Cal. Aug. 21,

2013). Because Plaintiffs' theory—like the one in *Gomez*—"move[s] well beyond the first step," their claim fails. *Hemi Grp. v. City of New York*, 559 U.S. 1, 10 (2010).

Plaintiffs try to fill the gap by gesturing to "other proximate cause standards" they purport to draw from *Wallace*—*i.e.*, "foreseeab[ility]" or "likelihood of injury." Resp. 8–9. But the Sixth Circuit has clarified that foreseeability "is not sufficient." *GM v. FCA*, 44 F.4th 548, 560–61 & n.7 (6th Cir. 2022) (citing *Hemi*, 559 U.S. at 12). "Nothing in *Wallace* … suggests that an injury that is foreseeable could satisfy RICO proximate cause even if the injury were indirect." *Id.* Plaintiffs argue there can be "multiple independent causes," Resp. 10, but one supporting case is a discrimination case, and the other predates *GM*, 44 F.4th at 563 ("The chain … had to pass through the independent actions" of "independent parties"). Nor does that argument relieve Plaintiffs from satisfying the "directness requirement." *Id.* at 560. And the fact that some cases rejecting proximate cause involve "intermediate victims," Resp. 12, does not help them either. One need only look at the FAC's table of contents to see that its theory *also* necessarily requires "intermediate victims": "UWM's" and/or "loyalist brokers[']" "competitors" did not make the loans at issue and were thus supposedly injured by UWM's alleged unfair "tactics." FAC §§ III–V. In turn, Plaintiffs' supposed injury flows from not being presented with other options from the other lenders and/or brokers. *Id.* §§ V, VIII. In any event, the presence of "intermediate victims" is just *one* way a theory can fail; multiple links

in the chain preclude proximate causation even sans "intermediate victims." *GM*, 44 F.4th at 563 ("'independent factors'" and "'separate actions'"); *Heinrich v. Waiting Angels Servs.*, 668 F.3d 393, 405 (6th Cir. 2012) ("too attenuated").[1]

Lastly, Plaintiffs claim they need not plead reliance to establish proximate cause. Resp. 12–13. That is both wrong and inconsistent with their own theory. Plaintiffs distort *Bridge*, which instructed: "[A] RICO plaintiff who alleges injury 'by reason of' a pattern of [] fraud can[not] prevail without showing that *someone* relied on *the defendant's* misrepresentations." 553 U.S. 639, 658 (2008) (second emphasis added). And Plaintiffs distort *Wallace* in suggesting that it holds (or could have held) otherwise. In a fraud-based case like this one, Plaintiffs must allege that they or a third party relied on a false statement from UWM. *Id.*; *see Grange Mut. v. Mack*, 290 F. App'x 832, 835 (6th Cir. 2008); *Kerrigan*, 112 F. Supp. 3d at 608. But Plaintiffs identify no specific false statement by UWM upon which they or their brokers relied to issue their loans. *See Bridge*, 553 U.S. at 658; *see, e.g.*, FAC ¶ 191. Even aside UWM, Plaintiffs do not allege per Rule 9(b) that they relied on any specific broker representations either. *See Heinrich*, 668 F.3d at 405; MTD 19–20.

***Enterprise.*** The RICO claim separately fails because Plaintiffs' "hub-and-spoke" enterprise (1) lacks a "rim" and (2) is impermissibly "nebulous." MTD 15–

[1] Citing *Trollinger*, 370 F.3d 602, 619 (6th Cir. 2004), Plaintiffs argue the Court should not dismiss on these grounds, but courts routinely do so at this stage. *See GM*, 44 F.4th at 563 (citing *id.*); MTD 11–12 & n.4.

18. On point one, Plaintiffs dispute that a "rim" is required. Resp. 17–18. But their cited cases do not support that assertation; they conclude that those plaintiffs—unlike these Plaintiffs—*had* adequately pled a "rim." *See, e.g.*, *Root, Inc. v. Silver*, 2024 WL 85057, at *11 (S.D. Ohio. Jan. 8, 2024). Alternatively, Plaintiffs suggest that the Court should infer a "rim" because without one, the alleged steering would "be contrary to [brokers'] economic self-interest." Resp. 16–18. But brokers allegedly had "incentive[]" to work with UWM independent of others joining in, FAC ¶ 425, and brokers consider myriad other factors, like reliability and speed. Plaintiffs then assert a conspiracy not to *disclose* the alleged steering. *Id.* at 16–17, 19. But "it is not plausible to infer [agreement from] each member's decision not to expose its competitors' use of [a] practice." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 350 (3d Cir. 2010). Plaintiffs' examples of "uniform[]" conduct (Resp. 19) are meaninglessly generic and consistent with individual choice. MTD 15–17.

On point two, Plaintiffs lean on the "2,502" "tracked[] and identified" brokers as evidence of structure. Resp. 14–15 & n.8. But their alleged enterprise is not limited to this or any other ascertainable number of members. FAC ¶ 354. And Plaintiffs' criteria for this "core" list is entirely arbitrary, especially because most were supposedly "steering" *before* the supposed enterprise formed. *See* MTD 17–18; FAC ¶¶ 135, 149. In other words, Plaintiffs still cannot say who is in and who is out. *See VanDenBroeck*, 210 F.3d at 700. And Plaintiffs do not dispute that an alleged

"industry practice" is insufficient to establish an enterprise, *Antitrust Litig.*, 618 F.3d at 351, which is exactly what they allege here. *See, e.g.*, FAC ¶ 146.

***Predicate Acts.*** The FAC also fails to adequately plead predicate acts of fraud. MTD 18–21. Plaintiffs point to allegedly "misleading statements," Resp. 21–22, but those are irrelevant because Plaintiffs never saw (much less relied on) a *single one*. *See Heinrich*, 668 F.3d at 405. Plaintiffs thus retreat to omissions, claiming that brokers should have disclosed their relationships with UWM. Resp. 22. But Plaintiffs never allege that UWM required or instructed their brokers to keep a single fact secret from their borrowers. *See Gomez*, 2013 WL 12165673, at *6–7; *see Kerrigan*, 112 F. Supp. 3d at 608–09. Moreover, Plaintiffs have identified no duty to disclose. MTD 31–33; *Norman v. FCA*, 696 F. Supp. 3d 359, 382 (E.D. Mich. 2023). Nor would a failure to disclose show intent to defraud, not least because the brokers' actions and disclosures complied with the governing regulations. MTD 20.

The FAC also fails to plead bribery. *Id.* 21–23. Plaintiffs offer no response to Defendants' argument that none of the alleged "things of value" could conceivably have induced "steering." *Id.* Nor do they grapple with their admissions that volume incentives are industry standard. *Id.* & n.6. Plaintiffs attempt to rewrite their California bribery claim, but even crediting their re-framing, the statute applies to "employees," not business entities. Cal. Penal Code § 641.3; *In re EpiPen Direct Purchaser Litig.*, 2023 WL 2860858, at *5 (D. Minn. Apr. 10, 2023).

***Economic Loss Doctrine.*** The economic loss doctrine bars the RICO claims. MTD 23–24. Plaintiffs complain that Defendants invoke both the Restatement's doctrine and Michigan's similar *Hart* rule. That is because courts look to the Restatement, *Cmty. For Creative Non-Violence v. Reid*, 490 U.S. 730, 740 (1989), and "the forum state's law," when "creating federal common law or determining its content." 19 WRIGHT & MILLER, § 4514. Contrary to their contentions, neither the Restatement nor *Hart* is limited to "sale of goods"; both apply to fraud claims. MTD 23–24; RESTATEMENT (THIRD), LIAB. FOR ECON. HARM § 3 cmt. b; *UWM v. Am.'s Moneyline*, 647 F. Supp. 3d 587, 595 (E.D. Mich. 2022) (citing *Hart*).[2]

Plaintiffs attempt to salvage their RICO claims—and distinguish *America's Moneyline*—by invoking "fraudulent inducement." Resp. 26. But Plaintiffs allege federal "mail fraud" claims, FAC ¶ 364, not the tort of "fraudulent inducement," Resp. 26; *see also id.* at 12–13 (claiming that "reliance" is not required); *Am.'s Moneyline*, 647 F. Supp. 3d at 596 (requiring "reliance" for fraudulent inducement).

***Preclusion.*** Finally, RESPA's specific remedies displace RICO's general ones. MTD 24–25. Plaintiffs cannot distinguish *Torres*: RESPA both "provides for criminal penalties" and contains "a detailed civil enforcement scheme that affords a

[2] *Cargill v. Boag Cold Storage*, 71 F.3d 545 (6th Cir. 1995), pre-dates Michigan precedent affirming that "the doctrine is not limited to the UCC." *Huron Tool v. Precision Consulting*, 532 N.W.2d 541, 546 (Mich. Ct. App. 1995); *see Insight Tel. Servs. v. Zip Mail*, 2014 WL 7012653, at *10 (E.D. Mich. Dec. 11, 2014).

private right of action." 954 F.3d 866, 872 (6th Cir. 2020); *see Alston v. Countrywide Fin.*, 585 F.3d 753 (3d Cir. 2009) (detailing RESPA's "enforcement" scheme). RESPA has "a savings clause" that preserves "more stringent state [] laws" but does "not exempt more general remedial schemes like RICO." *Torres*, 954 F.3d at 873; *see* 12 U.S.C. §§ 2607(d)(6), 2616. Plaintiffs cite a pre-*Torres* case from Arizona, Resp. 27, but that court did not apply the *Torres* framework that now controls. And the fact that some plaintiffs have brought RESPA *and* RICO claims is irrelevant, as this argument was "neither brought to the attention of the court[s] nor ruled upon." *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 559 (6th Cir. 2004).

## III. The RESPA Claims Fail (Count III).

All but one of the RESPA claims are time-barred. MTD 25–28. Plaintiffs invoke fraudulent concealment in an attempt to evade the statute of limitations, Resp. 30–32, but the FAC does not adequately plead misrepresentations or reliance. *Supra* 4, 6; MTD 18–20. Citing *Pinney Dock*, 838 F.2d 1445, 1471–72 (6th Cir. 1988), Plaintiffs falsely claim the "scheme" was self-concealing, but it was publicly known—as evidenced by the fact that they describe this supposed "scheme" in their complaint despite never having had direct contact with UWM. *See* FAC ¶¶ 80 & n.70, 117–18 & n.95. Plaintiffs justify their failure to plead efforts showing due diligence because they "had no reason" to inquire. Resp. 31 (citing *Lutz v. Chesapeake Appalachia*, 717 F.3d 459 (6th Cir. 2013) and *Ruth v. Unifund CCR*, 604

F.3d 908 (6th Cir. 2010)). But Plaintiffs cherry-picked an off-hand quip from *Ruth*, and *Lutz II* clarified that plaintiffs "must allege … facts regarding their efforts to compare" prices. *Solis v. Emery Fed. Credit Union*, 459 F. Supp. 3d 981, 994–96 (S.D. Ohio 2020) (citing *Lutz II*, 807 F. App'x 528 (6th Cir. 2020)); *see Simms v. CIT Grp.*, 2009 WL 973011, at *6 (W.D. Tenn. Apr. 9, 2009). Plaintiffs have not done so.

These claims also fail on the merits. MTD 28–29. Plaintiffs assert that their § 2607(a) claims allege a continuing arrangement connected to business volume. Resp. 27–29. But they fail to allege "specifics as to the date, time, or amount" of kickbacks in connection with *their* mortgages. *Galiano v. Fidelity Nat'l Title*, 684 F.3d 309, 315 (2d Cir. 2012). Plaintiffs also misrepresent UWM's "marketing templates and tools," Resp. 28, which are free to all brokers, and the "perks" reflect "industry practice." *Galiano*, 684 F.3d at 315; FAC ¶ 59; MTD 21–23 & n.6. As for the § 2607(b) claims, Plaintiffs do not "allege that they received *no* services," so they necessarily challenge "the reasonableness of fees in connection to the quality of services," *Augenstein v. Coldwell Banker*, 750 F. Supp. 2d 900, 906 (S.D. Ohio 2010). That is not viable. *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 638 (2012).

## IV. The Aiding-and-Abetting & Conspiracy Claims Fail (Counts IV–V).

These claims fail, too. MTD 30–35. Plaintiffs cling to their North Carolina claim but cite an unpublished trial court case that predates *BDM Investments v. Lenhil*, 264 N.C. App. 282, 302 (2019). Resp. 33 n.24. Plaintiffs resist the economic

loss doctrine's application to these claims for the same reasons as their RICO claims, Resp. 35 n.27, but whereas the RICO claims are barred by their contracts with *UWM* these claims are barred by their contracts with the *brokers*. MTD 30.

Plaintiffs also fail to adequately allege duty. They say that a North Carolina statute supplies a duty, Resp. 33–35, but their cited case speaks to negligence, not fiduciary duty, and analyzes an old statute. *See Cordaro v. Harrington Bank*, 260 N.C. App. 26, 33–34 (2018) (assuming "without deciding" SAFE Act can supply duty under negligence). Plaintiffs argue that brokers are common law fiduciaries but cite no cases holding *mortgage* brokers to be fiduciaries *per se*, and in "the absence of direct state precedent," courts must be "reluctan[t] to speculate" on theories that "greatly expand[] liability." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004). And the suggestion that brokers "cultivated" fiduciary duties by advertising (Resp. 34) is meritless because Plaintiffs do not claim to have seen any specific ads. *Receiver of Lancer Offshore, Inc. v. Citco Group Ltd.*, 2008 WL 926512, at *8 (S.D. Fla. Mar. 31, 2008).

On breach, Plaintiffs cite *Wyatt v. Union Mortgage*, 598 P.2d 45 (Cal. 1979). But *Lintz* analyzed *Wyatt* in a case where a broker steered a plaintiff into the "most expensive" mortgage and said that "it was the only [one] available." 2013 WL 5423873, at *1 (N.D. Cal. Sept. 27, 2013). Even then, *Lintz* found no "duty to inform borrowers of other mortgage options." *Id.* at *7. Plaintiffs ignore *Lintz* and write off

other points without substantive rebuttal. Resp. 36. They also fail to address that they have not pleaded UWM's "actual knowledge" of any specific breach. MTD 33.

## V. The Consumer Protection Claims Fail (Counts VII–XI).

Plaintiffs defend their CPA claims largely by deferring to their other arguments. Resp. 37. Those arguments are wrong. *Supra* 2, 6. Plaintiffs also say that Tennessee's exemption for "credit terms" does not apply because their claims involve misrepresentations, but their case did not address the exemption or involve refinancing. *Skrmetti v. Ideal Horizon Benefits*, 2024 WL 4351650, at *16 (E.D. Tenn. Sept. 30, 2024); *see Yousefzadeh v. Wells Fargo Bank*, 2023 WL 105092, at *3–6 (M.D. Tenn. Jan. 4, 2023). Plaintiffs say Florida's statute applies to "lending relationships," Resp. 38, but their case involved a *servicer* and considered a statutory exception Defendants did not invoke. *Brexendorf v. Bank of Am.*, 319 F. Supp. 3d 1257, 1266 (M.D. Fla. 2018). And they ignore the CFPB interpretations that immunize Defendants. Resp. 39 n.28. Plaintiffs say their failure to plead bribery does not defeat their North Carolina claim but do not address any other arguments against it. MTD 37. And California's pre-suit notice requirement applies in federal court. *In re Nexus 6P Liab. Litig.*, 293 F. Supp. 3d 888, 929 (N.D. Cal. 2018) (citing cases).

## VI. The Unjust Enrichment Claims Fail (Count VI).

Plaintiffs' unjust enrichment claims are precluded by both Plaintiffs' mortgages and their other claims. MTD 38–39. Their Florida case "stems from a …

misinterpretation" of an inapposite case. *In re SFNT Co.*, 288 F. Supp. 3d 1087, 1261 (D.N.M. 2017). Their North Carolina case underscores that unjust enrichment is barred where the UDTPA applies. *See id.* at 1263. Their California claims fail regardless of whether their other claims are "well-pled." *See Sepanossian v. Nat'l Ready Mix Co.*, 97 Cal. App. 5th 192, 208 (2023). And they do not bother to defend their Tennessee claim. MTD 39 n.6.

## VII. All Claims Against the Non-UWM Defendants Fail.

Finally, Plaintiffs' claims against the non-UWM Defendants are meritless. MTD 39–42. Plaintiffs cite allegations involving Defendant Ishbia, but Plaintiffs do not claim to have heard or relied on Ishbia's statements or those of "trade associations." *Id.* And not one allegation specifically ties him to any one predicate act. *Kerrigan*, 112 F. Supp. 3d at 602. Plaintiffs fail to identify specific allegations regarding the other Defendants. And Plaintiffs ignore the caselaw barring unjust enrichment claims against these Defendants. MTD 41–42.

Dated: January 16, 2025

Respectfully submitted,

/s/ *Jeffrey J. Jones*

Jeffrey J. Jones (P80231)
JONES DAY
150 W. Jefferson Ave, Suite 2100
Detroit, MI 48226
(313) 733-3939
jjjones@jonesday.com

Rebekah B. Kcehowski
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
(412) 391-3939
rbkcehowski@jonesday.com

Stephen J. Cowen (P82688)
Amanda K. Rice (P80460)
Andrew J. Clopton (P80315)
JONES DAY
150 W. Jefferson Ave, Suite 2100
Detroit, MI 48226
(313) 733-3939
scowen@jonesday.com
arice@jonesday.com
aclopton@jonesday.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2025, I caused the foregoing document to be filed with the Clerk of the Court using CM/ECF, which will effectuate service upon all counsel of record.

/s/ *Jeffrey J. Jones*

Jeffrey J. Jones
JONES DAY
150 W. Jefferson Ave, Suite 2100
Detroit, MI 48226
(313) 230-7950
jjjones@jonesday.com

*Counsel for Defendants*