UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| THERISA D. ESCUE, BILLY R. ESCUE, JR., KIM SCHELBLE, BRIAN P. WEATHERILL, KENNETH C. MORANDI, JILL JEFFRIES, and DANIEL SINGH on behalf of themselves and all others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>UNITED WHOLESALE MORTGAGE, LLC, UWM HOLDINGS CORPORATION, SFS HOLDING CORP., and MATHEW RANDALL ISHBIA,<br><br>　　　　　　Defendants. | Case No. 2:24-cv-10853-BRM-DRG<br><br>Hon. Brandy R. McMillion,<br>United States District Judge<br><br>Hon. David R. Grand,<br>United States Magistrate Judge |

**DECLARATION OF NICK GIBBONS**

I, Nick Gibbons, declare as follows pursuant to 28 U.S.C. § 1746:

　　1.　　I am an Adjunct Professor with the Leonard N. Stern School of Business at New York University and an Advisor at Hunterbrook Media. I am a Certified Fraud Examiner and a Master Analyst of Financial Forensics. I have been retained by counsel for the putative class in this matter.

1

2. I submit this Declaration based on my personal knowledge and my review of the materials identified below.

3. I have reviewed the December 13, 2024, Declaration of Alex Stricker ("Stricker Declaration") in which he expresses a number of opinions concerning the statistical analysis that Hunterbrook Media performed in support of its April 2, 2024, article (the "Statistical Analysis").

4. I have personal knowledge of the Statistical Analysis and the methodology behind it, which is described in detail and made publicly available for any interested party to review at: https://hntrbrk.com/how-we-crunched-the-numbers-behind-the-uwm-investigation. *See* Exhibit 1, "How We Crunched the Numbers Behind the UWM Investigation" (April 2, 2024).

5. Hunterbrook Media spent over a thousand hours designing the databases, algorithms and analytics that supported the Statistical Analysis featured in the article. I was a part of the multidisciplinary team that developed the Statistical Analysis and the work and data that supported it, a team that also included a machine learning financial data scientist and a former mortgage-backed securities trader and mortgage loan officer.

6. Our analysis "sorted millions of loans from the top 25 wholesale lenders each year into thousands of much smaller buckets containing exclusively what we defined as 'similar mortgages.'" Ex. A. Each smaller comparison "bucket" contains

only loans that share, among other characteristics, the same interest rate (rounded to the nearest 0.005%), month of closing, loan term (e.g., 30-year or 15-year), dwelling category (e.g., single-family or multi-family), rate type (e.g., fixed-rate or adjustable-rate), and loan-to-value ("LTV") and debt-to-income ("DTI") ranges.

7. The use of these comparison buckets controls for loan level price adjustments ("LLPA"). Within each comparison bucket, loans will be compared against other loans with materially similar LLPAs.

8. The Statistical Analysis includes only loans that were purchased by Fannie Mae, Freddie Mac, and Ginnie Mae. These government-sponsored agencies have strict requirements for the borrower and loan-level characteristics of the loans they purchase, including FICO score and loan-to-value ratio requirements.

9. To support Defendants' claim that grouping loans by month is "gamesmanship," Mr. Stricker opines that "comparisons of market alternatives for any particular borrower should look to mortgage rates on the same day, not over a one or two-month period." ECF. No. 38-1 at ¶ 5. I disagree for several reasons.

10. As an initial matter, a substantial part of the overcharges measured by the Statistical Analysis consists of compensation to brokerages ("Originator Compensation Fees"). Originator Compensation Fees are set either as a flat fee or a percentage of loan amount. They do not fluctuate based on interest rates and are unaffected by interest rate volatility. For example, as Defendants' own exhibits

3

demonstrate, the Originator Compensation Fees on the closing disclosures issued in connection with Plaintiff Morandi's loan remained unchanged at $7,250 (or 2.244% of Morandi's loan amount) despite fluctuations in the interest rate.

11. In addition, Mr. Stricker contends that one- or two-month comparison windows are ineffective due to interest rate volatility but his basis for that view is not sound for multiple reasons. As an initial matter, the Statistical Analysis generates substantially similar conclusions as to the expensiveness of the loans at issue when mechanisms to account for interest rate volatility are applied. He also relies on atypical data sets that do not accurately reflect interest rate volatility throughout the class period. Over the class period, the average monthly interest rate volatility (as measured from the highest point in a month to the lowest point in a month) was 0.30%, which is materially less than the volatility seen in the discrete periods that Mr. Stricker focuses on (0.56% volatility in May to June 2022 and 0.64% volatility from September to October 2023). And as another example, the Statistical Analysis protects against distortion caused by rate volatility because it utilizes comparison factors to select comparable loans. Limiting the analysis only to same-day comparisons would result in a less-effective comparison, including because it would likely obscure broader patterns of cost across the data set.

12. Mr. Stricker's reliance on rate spread continues to be misplaced. Dkt. No. 38-2 at ¶ 8-9. As I explained in my previous declaration, using rate spread as

4

the sole metric to evaluate the costs of obtaining a mortgage or to identify comparable loans is flawed. *See* Dkt. No. 28-1 at ¶ 13.

13. The Statistical Analysis utilizes the most comprehensive publicly available data set reflecting United States wholesale mortgage issuances. When looking at data sets featuring millions of entries in a category, individual variances between any individual entry and another do not materially affect the reliability of the data set as a whole in drawing reasonable inferences about the data.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 24, 2025.

_____
Nick Gibbons