# EXHIBIT C
# CRA Declaration No. 2

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Therisa D. Escue, Billy R. Escue, Jr., Kim Schelbe, Brian P. Weatherill, Kenneth C. Morandi, Jill Jeffries, and Daniel Singh on behalf of themselves and all others similarly situated, | Case No. 2:24-cv-10853-BRM-DRG |
| Plaintiffs, | Hon. Brandy R. McMillion, United States District Judge |
| v. | Hon. David R. Grand, United States Magistrate Judge |
| United Wholesale Mortgage, LLC, UWM Holdings Corporation, SFS Holding Corp., and Mathew Randall Ishbia, | |
| Defendants. | |

## DECLARATION OF ALEX STRICKER

I, Alex Stricker, declare as follow pursuant to 28 U.S.C. § 1746:

1.      I am a Principal at CRA International, Inc. ("Charles River Associates"), a consulting firm specializing in economic and financial analysis.

2.      I submit this Declaration based on my personal knowledge and my review of the materials described below.

3.      As mentioned in my prior June 21, 2024 Declaration, I have reviewed and analyzed the data sets identified in the Hunterbrook article published on April 2, 2024, including the Home Mortgage Disclosure Act ("HMDA") database.  During my 26 years of mortgage market experience, I have spent thousands of hours using

1

HMDA and other loan level data for analysis purposes. I have also analyzed the deed data that is available through a mortgage analytics platform that I understand is the same analytics platform used by Hunterbrook ("Deed Data").

4.      Due to daily interest rate volatility, mortgage rates cannot be reasonably and confidently compared among individual mortgages without knowing the exact date the rates were locked. According to the Freddie Mac historical mortgage interest rate data during 2023, for instance, the average 30-year fixed rate mortgage varied from 7.12% for the week ending September 7, 2023 to 7.76% for the week ending November 2, 2023.  Thus, market interest rates varied 0.64 percentage points over the two-month period during which the Amended Complaint compares the Jeffries and Singh mortgage to other rates offered by alternative lenders.

5.      Even when considering a shorter window of time, interest rates can vary substantially.  According to Freddie Mac historical mortgage interest rate data, average 30-year fixed rate mortgage rates varied from 5.25% for the week ending May 19, 2022 to 5.81% for the week ending June 23, 2022.  Thus, market interest rates varied 0.56 percentage points over the period during which Plaintiff Morandi sought to refinance his mortgage. Given such interest rate swings, comparisons of market alternatives for any particular borrower should look to mortgage rates on the same day, not over a one or two-month period.

6.      The FICO score for Plaintiffs Jeffries and Singh mortgage application

was 680 and the loan-to-value ratio for their loan was 97%.  According to Fannie Mae and Freddie Mac Selling Guidelines at that time, the Jeffries and Singh loan would be subject to a loan level price adjustment given the LTV and FICO score. The Fannie Mae loan level pricing adjustment for a 680 FICO/97 LTV home purchase loan was 1.125%.  This would have increased the cost of their mortgage relative to alternative 97% LTV mortgage interest rates and/or costs averaged over all FICO scores. The appropriate way to determine a meaningful alternative to the rate received by Jeffries and Singh would be to find other available interest rates and costs for a 97% LTV and 680 FICO score mortgage that was rate-locked on the same day. This is not possible using either the Deed Data or HMDA data relied upon by Hunterbrook in its analysis as described in my June 21, 2024 Declaration.

7.      Plaintiff Weatherill had a FICO score of 756 and an LTV of 80%.  The applicable loan level price adjustment for his FICO/LTV combination was 0.5%. Plaintiff Schelble had a FICO score of 802 and an LTV of 80%.  The applicable loan level price adjustment for a FICO/LTV combination was 0.5%.  All seven Plaintiffs had FICO/LTV combinations that were subject to Fannie Mae or Freddie Mac loan level price adjustments of varying magnitudes.  These adjustments are critical pieces in understanding whether their individual interest rates and origination charges were consistent with alternatives in the market.

3

8.     Also explained in my prior Declaration, the rate spread is the difference between the mortgage loan's APR and the average prime offer rate for a comparable transaction as of the date the interest rate is set.  The rate spread captures several costs of the loan in addition to the interest rate and origination fees charged. Plaintiffs Jeffries and Singh had a rate spread reported as 1.061%, indicating they paid a higher APR than the average 30-year fixed rate loan.   The loan level price adjustment charged for the increased risk of a high LTV and lower FICO score loan described above, could lead to a positive rate spread as observed with the Jeffries and Singh loan and make it appear more expensive than other 30-year mortgages without these qualities.

9.     As of May 12, 2022, Plaintiff Morandi had an Equifax credit score of 603, a Trans Union credit score of 659, and an Experian credit score of 600. [*See* 5.12.22 Certified Credit report].  As of June 13, 2022, Morandi had an improved credit score of 725, which was the FICO credit score used to price the Morandi mortgage. The applicable loan level price adjustment at that time for a 725 FICO/69.7% LTV cash-out refinance loan was 1.25%.  Even with the loan level price adjustment for his cashout refinance, the rate spread was -0.841 indicating he paid a lower APR than the average 30-year fixed rate loan (an average including mortgages that were not subject to any loan level price adjustments).

4

10.    According to their Closing Disclosure, the Escues' loan amount associated with their cash-out refinance was $243,200.  Their Closing Disclosure further shows the payoff amount for the mortgage they refinanced was $155,962.60 resulting in a cash-out amount of $87,237.40. The Closing Disclosure also shows the Escues received $2,452.89 at closing.  The loan level price adjustment charged on the Escues' loan was not solely a result of their receiving $2,452 at closing. It was charged because they used $81,543.28 of their home's equity to pay off other non-mortgage related debts as listed in the Closing Disclosure.

11.    The loan level price adjustment was applicable even if the Escues had not received any cash at closing.  Prior to closing, the estimated amount of cash due back to the Escues was $652.00. The amount paid to the Escues at closing increased from the estimated $652.00 to $2,452.89 because the final closing cost amount they owed was less than the estimated closing cost and the payoff amounts owed on their prior mortgage and other debts to be satisfied at closing decreased between the time of application and closing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 8, 2024.

Alex Stricker
Principal, CRA International, Inc.

6