# EXHIBIT 19-1



# WHOLESALE BROKER AGREEMENT

**THIS BROKER AGREEMENT ("Agreement")** is made and entered into as of _____ by and between Gold Star Mortgage Financial Group, Corporation ("Gold Star"), with its principal office located at 100 Phoenix Drive, Suite 300, Ann Arbor, Michigan 48108 and _____ ("Broker") with its principal office located at _____

## RECITALS:

**WHEREAS**, Gold Star is engaged in the business of, among other activities, purchasing and/or funding mortgage loans on residential real estate and reselling such loans in the secondary mortgage market; and

**WHEREAS**, Broker is engaged in the business of taking applications for residential mortgage loans; assisting borrowers in pre-qualifying for mortgage loans; selecting a mortgage product and completing an application; and processing those applications on behalf of others in exchange for a fee or other consideration; and

**WHEREAS**, During the term of this Agreement, Gold Star will advise Broker of Gold Star's various FHA, VA, USDA, conventional, jumbo and/or non-agency mortgage loan products, and Broker intends, from time to time, to offer to Gold Star for potential purchase and/or funding certain FHA, VA, USDA, conventional, jumbo and/or non-agency mortgage loans which fall within the parameters of Gold Star's mortgage loan products;

**NOW, THEREFORE**, in consideration of the mutual agreements and covenants hereinafter set forth, and other good and valuable consideration, the receipt and legal sufficiency of which is hereby severally acknowledged, Gold Star and Broker agree as follows:

## ARTICLE I
## DEFINITIONS

All words and phrases defined in this Article I (except as herein otherwise expressly provided or unless the context otherwise requires) shall, for the purposes of this Agreement, have the following respective meanings:

**1.01.** *"Agreement"* means this Broker Agreement and any written amendments or modifications hereto which are made in accordance with the terms of this Broker Agreement.

**1.02.** *"Borrower"* means the person or persons who submit a Mortgage Loan Application to Broker, receive a Mortgage Loan, and are liable on a Mortgage Note to Gold Star.

**1.03.** *"Closing"* means the funding of a Mortgage Loan by Gold Star.

**1.04.** *"Complaint"* means a consumer communication of dissatisfaction regarding a product, service and/or participant in the loan process.

1.05. *"Defect"* means a breach in any respect of any representation or warranty herein contained with respect to a Mortgage Loan or any failure by Broker to comply with any covenant or condition herein contained with respect to a Mortgage Loan which could reasonably be expected to result in a loss or damage to Gold Star or a subsequent purchaser of such Mortgage Loan.

1.06. *"Defective Loan"* means any Mortgage Loan that has a Defect.

1.07. *"FHA"* means the Federal Housing Administration.

1.08. *"Freddie Mac"* means the Federal Home Loan Mortgage Corporation or any successor thereto.

1.09. *"FIRREA"* means the Financial Institutions Reform, Recovery and Enforcement Act of 1989.

1.10.   *"Fannie Mae"* means the Federal National Mortgage Association or any successor thereto.

1.11.   *"Formal Complaint"* means a Complaint received via: (i) any means from any state or regulatory agency, including but not limited to Attorney General offices, Congressman offices, and the Consumer Financial Protection Bureau; and (ii) electronic mail, fax, or letter that is addressed to the Chief Executive Officer, Branch Manager, President or other member of Broker's senior management.

1.12.   *"Ginnie Mae"* means the Government National Mortgage Association or any successor thereto.

1.13.   *"Gold Star Guide"* means all verbal procedures and requirements delivered by Gold Star or its representatives as well as those procedures and requirements written in a Guide or contained on Gold Star's website and all links incorporated therein, as amended from time to time.

1.14.   *"Mortgage"* means a valid and enforceable Mortgage, Deed of Trust, or other Security Instrument creating a first lien upon described real property improved by a one-to-four family residential dwelling, which secures a Mortgage Note.

1.15.   *"Mortgage Documents"* means all documents and instruments required by Gold Star and applicable law pertaining to a particular Mortgage Loan.

1.16.   *"Mortgage Loan"* means a loan to individuals which is secured by a Mortgage and is subject to this Agreement.

1.17.   *"Mortgage Loans"* means each and every Mortgage Loan, which is subject to this Agreement.

1.18.   *"Mortgage Loan Application"* or *"Mortgage Loan Applications"* means an application for a Mortgage Loan processed by Broker in accordance with the lending requirements of Gold Star, including but not limited to those contained in the Gold Star Guide, the terms of this Agreement, all applicable governmental regulations, and the generally accepted practices and procedures within the mortgage industry.

1.19.   *"Mortgage Note"* means a written promise to pay a sum of money at a stated interest rate during a specified term that is secured by a Mortgage.

1.20.   *"Mortgagor"* means the obligor on a Mortgage Note.

1.21.   *"Repurchase"* means the obligation of Broker to purchase a Mortgage Loan from Gold Star which was previously transferred and/or sold to Gold Star by Broker.

1.22.   *"RESPA"* means the Real Estate Settlement Procedures Act of 1974 (12 U.S.C. 2601, et seq.), as amended from time to time.

1.23.   *"Servicing Rights"* or *"Servicing"* means the rights, title, and interest in and to the servicing of the Mortgage Loans and the maintenance and servicing of the escrow accounts, along with the right to receive the servicing fee income and any and all ancillary income arising from or connected with all such Mortgage Loans.

1.24.   *"Training and Information Services"* means the training, marketing and/or information services provided to Broker in furtherance of Broker's business, including but not limited to licensing related training and/or discounts, sample communications and/or related templates.

1.25.   *"Underwrite"* or *"Underwriting"* means the examination of a Borrower's application, credit history, income and financial resources for the purpose of determining whether to extend credit to such Borrower.

1.26.   *"USDA"* means the United States Department of Agriculture or any successor thereto.

1.27.   *"VA"* means the United States Department of Veterans Affairs.

ARTICLE II
**PURCHASE & FUNDING OF LOANS**

**2.01. Purchase and/or Funding of Loans by Gold Star.** Gold Star agrees to consider purchasing and/or funding certain Mortgage Loans from Broker, provided that all of the following requirements are met:

(a) Upon payment by Gold Star of the purchase price for each such Mortgage Loan so purchased and/or funded, all rights, title and interest in and to said Mortgage Loan shall be assigned and transferred by Broker to Gold Star free and clear of all claims, liens and encumbrances whatsoever;

(b) Each Mortgage Loan shall be transferred and/or sold to Gold Star on a "servicing-released" basis meaning that Broker shall release, transfer, convey and assign in a form and manner acceptable to Gold Star, all of Broker's rights, title and interest in and to the Mortgage Loan, including, without limitation, the right to provide mortgage servicing in connection therewith;

(c) All Mortgage Loans shall be closed in the name of Gold Star, unless another name is specifically authorized by Gold Star in writing in advance of closing; and

(d) All such Mortgage Loans shall meet Gold Star's lending requirements, including but not limited to, those contained in the Gold Star Guide, and any other terms and conditions required by Gold Star, in its sole and absolute discretion, which may be amended from time to time.

**2.02. Gold Star Loan Requirements.** Gold Star will advise Broker from time to time regarding the types of FHA, VA, USDA, conventional, jumbo and/or non-agency Mortgage Loan products it is interested in considering purchasing and/or funding (individually, a "**Mortgage Loan Product**" and collectively, the "**Mortgage Loan Products**"), including, without limitation, information concerning interest rates, loan limits, loan-to-value, ratios, points, fees and underwriting requirements. Any commitment from Gold Star to Broker to purchase and/or fund any Mortgage Loan or Mortgage Loans or Mortgage Loan Applications will be issued in accordance with Gold Star's current lending policies and shall be in  Gold Star's  sole  and absolute discretion. Such commitment must  be in writing and be signed by an authorized employee of Gold Star and the terms of such commitment will be applicable only to the Mortgage Loan or Mortgage Loans specified therein. Gold Star may, in its sole and absolute discretion, cancel or discontinue any of the Mortgage Loan Products, with or without notice to Broker. Gold Star will attempt to give advance notice of such changes but shall have no obligation to do so. Broker agrees to follow all practices and procedures required by Gold Star, as modified from time to time, including but not limited to those contained in the Gold Star Guide, as well as those required under applicable law.

**2.03. Pricing of Loans;** Lock-in Rates. Gold Star shall provide, on a periodic basis, pricing information applicable to Mortgage Loan Products offered by Gold Star. Such pricing information shall be issued by Gold Star by facsimile, electronic mail, or by posting on the applicable Gold Star website, and shall be subject to change by Gold Star without notice. Broker covenants to Gold Star that Broker shall comply with all applicable requirements (including, without limitation, any applicable guidelines set forth in the Gold Star Guide concerning interest rates and rate-locks that apply to the particular Mortgage Loan Products offered by Gold Star). In the event that a rate-lock expires prior to the Closing of the related (prospective) Mortgage Loan, Gold Star shall have no further obligations with respect to such Mortgage Loan, and Broker shall take no action suggesting otherwise.

**2.04. Broker's Fees.** Any fee payable to Broker for its provision of goods, services or facilities in connection with any Mortgage Loan shall be paid in compliance with Regulation Z Loan Originator Compensation Rules (12 CFR 1026.36) and any other applicable statutes or regulations. Subject to all other provisions of this Agreement, Broker's fee shall be paid when a Mortgage Loan is closed and funded by Gold Star and Broker has: (a) obtained in writing from Gold Star a firm commitment for Gold Star's interest rate, discount rate and ancillary fees; (b) successfully negotiated with the Borrower(s) any fees in excess of Gold Star's fees for the Mortgage Loan; and (c) negotiated a spread premium fee from Gold Star for the Mortgage Loan, if applicable. Gold Star's pricing is published on a daily basis and is often adjusted several times throughout the day and reflects market conditions, the efficiency of Gold Star's operations and the value of the services (including Training and Information Services) that Gold Star provides. All pricing is subject to change without notice and no Mortgage Loan is price- protected until Gold Star has issued a written lock confirmation. Broker shall not be entitled to any fee if a Mortgage Loan does not fund, regardless of the reason.

In the event that any fees negotiated by Broker exceed those payable under applicable law, Gold Star may reduce such fees to a level which is in compliance with applicable law, without notice to Broker. Broker's fees are payable only after Gold Star has first deducted all of its fees and charges from the loan proceeds. Broker covenants to Gold Star that the total compensation earned by Broker will constitute reasonable payment for the goods, facilities and services actually provided by Broker, and Broker will not retain duplicative payments for any of those goods, fees or services.

(a) **Lender-Paid Broker Compensation.** "Lender-Paid Broker Compensation" is compensation paid by Gold Star to Broker. If Broker receives Lender-Paid Broker Compensation for a particular Mortgage Loan, Broker will not receive compensation from any other party, and will provide the Borrower an anti-steering loan options disclosure in compliance with Regulation Z safe harbor provisions under 12 CFR 1026.36(e)(2).

(b) **Borrower-Paid Broker Compensation.** "Borrower-Paid Broker Compensation" is negotiated by the Broker directly with the Borrower, is compensation paid by the Borrower to the Broker using the Borrower's own funds, and may vary on each individual loan transaction but, may not exceed the amount that the Broker selects for its Lender-Paid Broker Compensation. By choosing to be paid by the Borrower, the Broker may not receive any compensation directly or indirectly from any other party or entity to the transaction, or outside the transaction, including the lender. In connection with being paid by the Borrower, Broker is responsible for providing Borrower with any written agreements and disclosure statements required by applicable laws and regulations, and providing Gold Star with copies as required.

## ARTICLE III
## DUTIES, WARRANTIES & REPRESENTATIONS

**3.01. Duties of Broker.** Broker shall exercise its best efforts in connection with the performance of the following duties:

(a) Broker shall take Mortgage Loan Applications in accordance with applicable law at its offices in its own name through its employees and agents;

(b) Broker shall comply with all procedures established by Gold Star from time- to- time for the submission of Mortgage Loan Applications under the Mortgage Loan programs made available to Broker, including but not limited to those contained in the Gold Star Guide;

(c) Broker shall confirm whether each Mortgage Loan Application meets the terms, conditions and requirements established by Gold Star with respect to the Mortgage Loan programs;

(d) After securing the requisite authority from the applicant(s), Broker shall secure financial and credit information from the applicant(s) and analyze the income and indebtedness of the applicant(s) to determine the maximum reasonable Mortgage Loan obligations that the applicant(s) can bear;

(e) Broker shall: (i) educate the applicant(s) in regard to the home buying and financing process; (ii) advise the applicant(s) about the different Mortgage Loan programs made available by Gold Star; and (iii) explain to the applicant(s) how the closing costs and monthly payments would vary under each of the Mortgage Loan programs for which the applicant(s) may be eligible;

(f) Broker shall also: (i) verify the employment of the applicant(s); (ii) verify the deposits required; (iii) initiate requests for mortgage loan verifications and payoffs; (iv) order an appraisal of the property through an approved appraisal management company, as required; (v) order the necessary title commitment; (vi) order a mortgage survey of the property, as required; (vii) provide the applicant(s) with all notices and disclosures required by law; and (viii) assist Gold Star in obtaining any additional information reasonably required by Gold Star in order to consider the Mortgage Loan Applications and/or facilitate the closing of all Mortgage Loans;

(g) Broker shall communicate with the applicant(s), real estate agent(s), and Gold Star in an effort to keep them informed as to the status of the application and/or the Mortgage Loan transaction and any changes in the terms of a Mortgage Loan within a reasonable time, and if Gold Star and other lenders represented by Broker deny credit to the applicant, Gold Star will prepare and deliver to the applicant a denial notice meeting all requirements of applicable law;

   (h)  Broker shall assist the applicant(s) in understanding and clearing credit problems;

   (i)  Broker shall notify Gold Star within five (5) business days of receipt of any Formal Complaint relating to a loan application submitted to, underwritten and/or closed by Gold Star and provide a copy of the Formal Complaint received;

   (j)  Broker shall perform such closing services as shall be reasonably required by Gold Star; and

   (k)  Broker shall further: (i) maintain, and will ensure that its employees and agents maintain, the confidentiality of all non-public personal information collected in connection with Mortgage Loan Applications; (ii) comply, and will ensure that its employees and agents comply, with all applicable privacy laws and other laws with respect to the completion and processing of Mortgage Loan Applications; (iii) maintain an information security program; and (iv) originate and process each Mortgage Loan in full compliance with applicable law, the requirements of investors, and other written communications of Gold Star, including but not limited to, those contained in the Gold Star Guide.

   (l)  Broker agrees that it will not use for its own benefit or the benefit of any other person or entity, will hold in complete confidence in compliance with applicable law, and will not disclose to any person or entity (other than Broker's employees or agents who need access to the Confidential Information, as defined below, for the purpose of assisting Broker in fulfilling its obligations hereunder): (a) the confidential information relating to Gold Star which it has acquired or which it may acquire during the term of this Agreement; (b) any information that it has received or which it may receive during the term of this Agreement from Gold Star, its employees or agents of a confidential nature; (c) all notes, documents or materials prepared by Broker, its employees or agents which contain, reflect or are based upon, in whole or in part, the information described in subparagraphs (a) and (b) above (collectively the "Confidential Information"). Gold Star makes no representations or warranties of any kind, express, implied or statutory, with respect to the Confidential Information. Broker will return to Gold Star or destroy upon demand, all Confidential Information acquired by Broker, its employees or agents, including all copies thereof. Broker will ensure that its employees and agents comply with the terms of this paragraph.

**3.02.** **Duties of Gold Star.** Gold Star shall exercise commercially reasonable efforts in connection with the performance of the following duties:

   (a)  Gold Star shall Underwrite or cause to be Underwritten every Mortgage Loan submitted by Broker under this Agreement, provided, however, Gold Star shall have no obligation to issue a commitment for or close a Mortgage Loan which it determines, in its sole and absolute discretion, does not meet Gold Star's Underwriting requirements;

   (b)  Gold Star shall: (i) issue a loan approval if the Mortgage Loan Application complies with all Gold Star requirements, including but not limited to those contained in the Gold Star Guide, and Gold Star elects to accept a Mortgage Loan Application; or (ii) issue a notice of rejection in compliance with law if Gold Star determines that any Mortgage Loan Application submitted hereunder does not meet its Underwriting standards, in its sole and absolute discretion. If Gold Star declines any Mortgage Loan Application and in the event it requests of Broker, Broker shall (i) notify the Borrower promptly upon receipt of notice of Gold Star's decision and deliver the required adverse action notice to the Borrower in accordance with applicable law; and (ii) maintain evidence that such adverse action notice was in fact received by the Borrower;

   (c)  Gold Star shall duly consider each and every Mortgage Loan Application submitted by Broker and may rely upon the materials and information supplied to it by Broker as well as the authenticity and accuracy of all signatures appearing on documents and instruments delivered to Gold Star;

   (d)  Gold Star shall notify Broker of the disposition of a Mortgage Loan Application as set forth in the Gold Star Guide. Broker may not represent that Gold Star has approved or will approve any Mortgage Loan Application until Gold Star informs Broker in writing that it has done so;

   (e)  Upon the issuance of a commitment in Gold Star's name to the Borrower, Gold Star shall generally proceed with Closing of the Mortgage Loan in accordance with the terms and conditions set forth in the commitment to the Borrower but Gold Star reserves the right, in its sole and absolute discretion, to cancel the purchase and/or funding of any Mortgage Loan or Mortgage Loans for any reason which Gold Star determines to be material, in its sole and absolute discretion. Gold Star shall prepare the closing package and close the Mortgage Loan in its name and with its own funds; and

    (f)  Gold Star shall have no liability to Broker for Gold Star's failure to Underwrite or close any Mortgage Loan in accordance with the Gold Star Guide or any other applicable requirements, except to the extent such failure constitutes willful misconduct by Gold Star.

    (g)  Gold Star agrees to supply such Training and Information Services as it believes in its reasonable discretion will be productive and feasible to provide.

**3.03.**  **Broker Warranties & Representations.** Broker warrants, represents and covenants to Gold Star with regard to each Mortgage Loan submitted to Gold Star for underwriting, purchase and/or funding that the following are true, complete and correct in all material respects as of the date of such submission, as if such warranties, representations and covenants are again made by Broker on those dates and shall continue to be valid and accurate throughout the entire lending process:

    (a)  Broker is duly organized, validly existing and in good standing in each jurisdiction in which it originates Mortgage Loans delivered to Gold Star pursuant to this Agreement, and Broker has complied with all applicable statutes, laws, rules and regulations, orders and decrees of all federal, state, county and municipal authorities in connection with all such Mortgage Loans, including, but not limited to all applicable federal consumer financial laws. Broker further has qualified, registered, obtained and maintains all licenses and permits, and has taken all other requisite actions required in order to originate all Mortgage Loans delivered to Gold Star pursuant to this Agreement. The execution and delivery of this Agreement and the transactions contemplated herein are duly authorized and binding on Broker. Broker shall provide Gold Star with documentation to substantiate such existence and/or compliance upon the request of Gold Star;

    (b)  All Mortgage Loans which Broker submits to Gold Star have met all material requirements of federal, state, or local laws, as amended from time to time, including, but not limited to those contained in the Gold Star Guide, and (i) usury; (ii) the Federal Truth-in-Lending Act of 1969 and Federal Regulation Z thereunder; (iii) RESPA and Regulation X thereunder; (iv) the Federal Equal Credit Opportunity Act and Regulation B thereunder; (v) the Federal Fair Credit Reporting Act; (vi) the Flood Disaster Protection Act of 1973; (vii) the Fair Housing Act; (viii) the Home Mortgage Disclosure Act; (ix) the FIRREA; (x) New York Executive Law Article 15, Section 296-a; (xi) the Secure and Fair Enforcement for Mortgage Licensing Act of 2008, (xii) the Gramm-Leach-Bliley Act (Pub. L. No. 106-102, 113 Stat. 1338), as amended from time to time; (xiii) the Fair and Accurate Credit Transactions Act; (xiv) the Home Ownership Equity Protection Act; (xv) all rules, regulations and guidelines promulgated by the Consumer Financial Protection Bureau; (xvi) The Dodd-Frank Wall Street Reform and Consumer Protection Act; (xviii) any and all licensing requirements relating to Broker's rights to originate and sell Mortgage Loans; (xix) the requirements of all governmental authorities regulating Broker; and (xx) any and all laws, rules, ordinances, and regulations concerning adjustable rate mortgages, negative amortization, and graduated payment mortgages, and Broker shall maintain in its possession, and make available for Gold Star's inspection, and shall deliver to Gold Star upon demand, evidence of compliance with all such laws and requirements;

    (c)  Broker has no knowledge of any circumstances or conditions with respect to any Mortgage Loan submitted to Gold Star for underwriting, purchase and/or funding, that the mortgaged property, the Mortgagor or the Mortgagor's credit standing could cause an institutional investor to regard the Mortgage Loan as an unacceptable investment, or otherwise cause the Mortgage Loan to become delinquent or materially adversely affect the value or marketability of the Mortgage Loan;

    (d)  With regard to FHA, VA or USDA insured Mortgage Loans, the Federal Housing Commissioner, VA or USDA, as applicable, has or will issue the mortgage insurance certificate or loan guaranty certificate; and all payments due for mortgage insurance premiums have been paid to the insuring authority; nothing has been done or omitted, and no circumstances exist, the effect of which act, omission or circumstances would invalidate the contract of mortgage insurance with the FHA, VA or USDA as applicable; and the Mortgage Loan complies with the regulations of the FHA, VA or USDA as applicable;

(e) All of the appraisers who have performed appraisals in connection with the Mortgage Loans submitted to Gold Star for purchase and/or funding have been properly licensed and are currently approved in accordance with applicable law and any appraisal management company utilized has passed Gold Star's approval process;

(f) The appraisal submitted in connection with each Mortgage Loan meets the requirements of FIRREA, and the Underwriting for each Mortgage Loan, if performed by Broker, has been performed in accordance with all of the provisions of applicable law, Gold Star's lending requirements, including but not limited to those contained in the Gold Star Guide, and the terms of this Agreement;

(g) No legal actions are pending or threatened which might reasonably affect any Mortgage Loan or Broker's ability to transfer any Mortgage Loan to Gold Star free and clear of all claims and liens, or otherwise perform its obligations hereunder, except as previously disclosed by Broker to Gold Star in writing;

(h) Broker is not in default with respect to any material agreement to which it is party or by which it is bound, and the execution and performance of this Agreement will not violate any law, or term of its organizational and governance documents, as amended, or any material agreement to which Broker is a party or by which it is bound, and will not violate or conflict with any other restriction of any kind or character to which Broker is subject;

(i) All information submitted by Broker to Gold Star with regard to the Mortgage Loan, including all written materials, is presented and warranted by Broker to be true, correct, currently valid, and genuine in all material respects, as to all information within Broker's knowledge and as reported by each applicant and do not omit to state any facts necessary to make the statements contained therein not misleading;

(j) The Mortgage Documents and all other materials submitted to Gold Star in connection with the Mortgage Loan do not contain any fraudulent information or misstatement or omission of fact, and the Mortgage Loan has been originated in a manner consistent with prudent mortgage banking practices and consistent with the guidelines and policies established by Gold Star, Ginnie Mae, Fannie Mae, Freddie Mac, a Bond Authority, FHA, USDA, VA, or other investor, as applicable;

(k) There are no undisclosed agreements between the Mortgagor and Broker concerning any facts or conditions, whether past, present or future, which might in any material way affect the payment and performance obligations of the Mortgagor or otherwise make the Mortgage Loan non-salable in the secondary market. Broker did not unduly influence or otherwise steer the Borrower into selecting a higher cost Mortgage Loan program;

(l) Broker is solvent, will, at all times, maintain the minimum net-worth requirements as set by Gold Star, and has adequate capitalization and financial resources to properly engage in the business of originating and processing Mortgage Loans;

(m) Broker shall promptly advise Gold Star of any material change concerning Broker, including, but not limited to, any change in ownership, financial condition or senior management, as well as the termination of any manager, mortgage loan officer or mortgage loan originator;

(n) Broker has no interest or direct or indirect ownership of all or any part of the property subject to a Mortgage Loan and Broker has no ownership interest in, or familial relationship with, the seller(s), Borrower(s), broker(s), Realtor(s), inspectors, appraisers or other persons performing any settlement services relating to any Mortgage Loan and shall not receive any fees or payments, either directly or indirectly, in violation of applicable law (unless such relationship has been disclosed to and approved by Gold Star in its sole discretion);

(o) All Mortgage Loan Applications and/or Mortgage Loans presented to Gold Star by Broker for underwriting, purchase and/or funding have been originated by Broker, and no such Mortgage Loan Applications and/or Mortgage Loans have been originated by a third party;

(p) Broker acknowledges that it does not and shall not discriminate against applicants on the basis of age, race, color, gender, ethnic background, national origin, religion, marital status, familial status, veteran status, handicap, sexual orientation, receipt of public assistance, because rights have been exercised by the applicant under any consumer protection law, or any other prohibited basis;

(q) If Broker submits a Mortgage Loan Application to Gold Star, Broker will not submit an application for a loan to be secured by the same property to any lender other than Gold Star until the later of (i) the date Gold Star declines the Mortgage Loan Application; or (ii) sixty (60) days after the date of the Mortgage Loan Application;

(r) With respect to subsections (a) through (q), inclusive, of this Section 3.03, Broker will promptly notify Gold Star if Broker becomes aware that any terms, conditions, warranties, representations or covenants hereunder become untrue or incomplete in any material respect in the future;

(s) The representations and warranties of Broker set forth in this Agreement are applicable whether or not non-employee contractors are used in lieu of employees of Broker in fulfilling any of Broker responsibilities and obligations set forth in this Agreement;

(t) Broker will immediately notify Gold Star if: (i) Broker fails to maintain any license or registration in violation of subsection (a) above, or if any such license or registration is cancelled or suspended; or (ii) Broker becomes subject to any enforcement and/or investigative proceeding by any licensing or regulatory authority or agency (subject to any confidentiality restrictions imposed by such licensing or regulatory authority or agency); or (iii) Broker is named as a party or becomes involved in any litigation; or (iv) Broker and/or any of its principal director(s) or owner(s) becomes the debtor in any voluntary or involuntary bankruptcy proceeding; or (v) Broker and/or any of its principal director(s) or owner(s) suffers the appointment of a receiver, custodian or trustee; or (vi) Broker and/or any of its principal director(s) or owner(s) has incurred or is likely to incur a material, adverse change in its/their financial condition; or (vii) Broker suffers a levy, execution or seizure upon material business assets;

(u) All representations, warranties and covenants contained in this Agreement shall inure for the benefit of Gold Star and its successors and assigns;

(v) Broker appoints Gold Star and its directors, officers, employees, agents, successors and assigns, as its true and lawful attorney-in-fact, which appointment shall be deemed to be coupled with an interest, without right of revocation and with full power of substitution for and in its place and stead to: (i) demand and control all sums due on Mortgage Loans closed and funded pursuant to this Agreement and to enforce all rights with respect thereto; (ii) endorse, mark, place or otherwise evidence Broker's name as payee on all checks, drafts, acceptances or other form of partial or full payment delivered or tendered to Gold Star with respect to a Mortgage Loan; (iii) endorse, mark, place or otherwise evidence Broker's name on all Notes, Mortgages, Deeds of Trust, and other forms of security instruments or collateral and all assignments, full or partial releases or satisfactions of said Mortgages, Deeds of Trust, and other forms of security instruments or collateral for all Mortgage Loans closed and funded pursuant to this Agreement. Broker agrees to execute such other documents as Gold Star may reasonably request to evidence the appointment of Gold Star, as Broker's attorney-in- fact;

(w) Broker has in full force and effect and will continue to maintain an errors and omissions policy or policies or mortgage bankers blanket bond covering all of its activities under this Agreement, and shall provide to Gold Star, on an annual basis or as required by Gold Star satisfactory evidence thereof, and Broker also has and will continue to comply with any and all fidelity bond and surety bond requirements of Fannie Mae, Freddie Mac, and/or any state agency having or claiming to have jurisdiction over Broker.

3.04. **Gold Star's Warranties & Representations.** Gold Star represents and warrants that Gold Star possesses all necessary licenses from all regulatory authorities having jurisdiction over the Mortgage Loans to engage in the activities contemplated by this Agreement.

3.05.  **Survival**. All representations, warranties and covenants of Broker contained in this Agreement shall survive the expiration and termination of this Agreement and shall continue in effect as to each Mortgage Loan for so long as any amount due from the Borrower remains outstanding and unpaid.

## ARTICLE IV
## POST-CLOSING DOCUMENTATION

4.01.  **Broker's Obligation Regarding Post-Closing Documents.** Broker agrees that it is responsible for assisting in obtaining and delivering post-closing documents required to complete closed Mortgage Loan packages within the time frames established by Gold Star in its lending requirements or otherwise. Gold Star, in its sole and absolute discretion, may exercise its option to NOT fund a Mortgage Loan if all underwriting and/or closing conditions are not satisfied prior to funding. Broker understands that it is not authorized or empowered to accept or clear any lending conditions of Gold Star. Broker further understands and agrees that if Broker fails, neglects or refuses to obtain and deliver any post-closing documents reasonably required by Gold Star, Gold Star shall have the right to offset the reasonable costs associated with securing such post-closing documents against any amounts due Broker by Gold Star. Broker shall upon request from Gold Star, exercise its best efforts to take all actions necessary, in a timely and accurate manner, to obtain corrections to any and all loan documents deemed appropriate or desirable in Gold Star's sole and absolute discretion and to otherwise assist Gold Star in remedying any matter not in compliance with applicable law, regulations, or the Gold Star, including assisting Gold Star in obtaining recorded documentation related to a Mortgage Loan and requirements of title policies from closing agents, or to enable Gold Star to sell, convey, obtain guaranty for, or market loans. The failure, refusal and/or neglect of Broker to secure post-closing documentation in a timely manner shall entitle Gold Star to exercise a right of set off with respect to any amounts due Broker, and/or the right to require the repurchase of the Mortgage Loan in question by Broker, in the sole and absolute discretion of Gold Star.

## ARTICLE V
## INDEMNIFICATION & REPURCHASE BY BROKER

5.01.  **Indemnification by Broker.** Broker agrees to indemnify, defend (by counsel acceptable to Gold Star), and hold Gold Star harmless from and against any and all liabilities, claims, losses, damages and out of pocket costs (individually, a "Claim" and collectively, the "Claims"): (a) resulting from any breach of this Agreement; (b) resulting from any act or omission by Broker in connection with any Mortgage Loan subject to this Agreement; (c) arising from or in connection with Broker's use of any non-industry standard form not provided or approved by Gold Star in connection with any Mortgage Loan; (d) concerning miscalculations and other errors which result from Broker's independent application and processing procedures as well as for its misuse of forms required by Gold Star; (e) asserted against Gold Star under provisions of RESPA, including without limitation, claims based upon, or arising as a result of, any payments received by Broker in the nature of rate spread premium, service release premium, back points, discount points, broker rebates, and the like; (f) incurred or paid by Gold Star as a result of the exercise of a right of cancellation or right of rescission by any Borrower in connection with a Mortgage Loan; and (g) extraordinary servicing costs or carrying costs related to any Mortgage Loan as a result of any of the following circumstances: (i) any breach of any representation, warranty or covenant contained herein, or any material breach of this Agreement; or (ii) if Gold Star is required to repurchase any Mortgage Loan which it has sold to an investor, or which it has placed or pledged to a mortgage pool, which repurchase requirement is a result of the Mortgage Loan being classified as a Defective Loan as the result of any act or omission of Broker; (each a "Repurchase Event"). Broker shall be obligated to promptly repurchase such Mortgage Loan. If any Claim shall be asserted or brought against Gold Star by reason of any such act or omission of Broker, Broker shall upon demand, obtain representation by legal counsel acceptable to Gold Star to defend Gold Star against any such Claim and Broker shall pay all costs and attorney's fees incurred in such defense. All of the provisions of this Article V shall survive the closing of each Mortgage Loan transaction and shall inure to the benefit of Gold Star and future assignees of Gold Star.

5.02.  **Terms of Indemnification.**

(a)  Broker may be required (at Gold Star's option) to remit to Gold Star immediately upon demand a good faith advance to be applied by Gold Star to cover any such Claim arising from such Repurchase Event, and

    (b)  Broker may be required (at Gold Star's option) to remit to Gold Star immediately upon demand a non-refundable loan administration fee, and

    (c)  Broker shall immediately upon receipt of notice from Gold Star confirming the occurrence of a Repurchase Event, fully reimburse Gold Star for the rate premium and/or service release premium originally paid to Broker at the time the Mortgage Loan was purchased by Gold Star, whether such premium was included in the gross price paid or referenced separately, and

    (d)  Broker may additionally be required to remit to Gold Star immediately upon demand following a Repurchase Event, any additional amount to cover actual loss to Gold Star not otherwise reimbursed by the good faith advance or loan administration fee, as outlined above. Any good faith advance and additional amounts required under Section 5.02(a) and/or 5.02(b) herein in excess of actual losses will be returned to Broker upon final loss reconciliation by Gold Star. Broker agrees that its failure to comply with the terms of the indemnification sections within this Agreement shall give Gold Star the right to demand full repurchase of said Mortgage Loan, and upon any such demand, Broker shall promptly repurchase such Mortgage Loan and reimburse Gold Star for all costs and expenses associated therewith.

**5.03.**  **Right of Set-Off.** Broker grants Gold Star the right of set-off and Gold Star may deduct any fees, penalties, damages, or other sums owed by Broker to Gold Star hereunder from the purchase price or loan funding of any Mortgage Loans purchased from Broker and/or funded by Gold Star. Broker shall be responsible for compensating Gold Star for any tolerance cure(s) that Gold Star is required to make to the Borrower because of Broker's acts or omissions in connection with the Mortgage Loan as determined by Gold Star in its sole and absolute discretion. Gold Star may also withhold, set-off and apply any fees, expenses, tolerance cures or other matters otherwise due and payable to Broker to any obligations of Broker to Gold Star. Gold Star shall have the right to withhold any fees or payments until the Loan file is complete and Broker has performed all of its obligations under this Agreement.

**ARTICLE VI**
**<u>BROKER USE OF DESKTOP UNDERWRITER</u>**

**6.01.**  **Definitions.** Any capitalized terms used in ARTICLE VI and not otherwise defined in ARTICLE VI or this Agreement have the meanings given to them in the License Agreement (as hereinafter defined). Gold Star has entered into the Fannie Mae Licensed Application Master Terms and Conditions ("Master Terms") and its Desktop Underwriter® Schedule and associated Redistribution Addendum thereto ("DU Schedule" and "Addendum", respectively, and together with the Master Terms, the "License Agreement") with Fannie Mae governing the rights and obligations of Gold Star and Fannie Mae with respect to Gold Star's use of Desktop Underwriter (the "Licensed Application"). Broker is an Affiliate or Subsidiary of Gold Star and desires to use the Licensed Application in connection with Prequalification Analysis, mortgage loan origination, and/or underwriting activities.

All words and phrases defined in this Article VI shall, for the purposes of this Article VI only, have the following respective meaning:

    (a)  *"Affiliate"* shall mean a mortgage lending entity or Third Party Originator that performs Prequalification Analyses, origination or underwriting in relation to mortgage loans intended to be closed by Gold Star or assigned or sold to Gold Star.

    (b)  *"Consumer Credit Data"* shall mean any information obtained by Broker, either directly or indirectly, which bears on a consumer's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living (the "Seven Factors") and which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in underwriting a Mortgage Loan Application or performing a Prequalification Analysis. Such data may include, but are not limited to, data contained in: (i) residential mortgage credit reports, "in-file" credit reports, or "consumer reports," as defined in the FCRA; (ii) the Uniform Residential Loan Application, including any attachments and/or supplements thereto; and (iii) any correspondence or communication from the consumer or any third party which includes information relating to one of the Seven Factors.

    (c) **"Mortgage Loan Application"** shall mean the submission by a mortgage loan applicant of financial information and identification of the specific property to secure the mortgage loan for the purpose of obtaining an underwriting decision

    (d) **"Prequalification Analysis"** shall mean the evaluation of Consumer Credit Data with respect to a prospective mortgage loan applicant for the purpose of evaluating such prospective applicant's qualification for mortgage financing, other than in connection with a Mortgage Loan Application.

    (e) **"Subsidiary"** shall mean a mortgage lending entity more than fifty percent (50%) of whose controlling interest or outstanding voting shares or securitites are owned or controlled, directly or indirectly, by Gold Star.

**6.02. License Agreement.** Broker represents that it is an Affiliate or Subsidiary of Gold Star and that it has received and read the License Agreement and understands and agrees that it shall be fully obligated to comply with each and every provision of such License Agreement in connection with its use of the Licensed Application.

**6.03. Licensing Rights.** Gold Star agrees that, as and to the extent set forth in this ARTICLE VI, its license rights under the License Agreement shall extend to Broker in connection with the Licensed Application. Broker agrees that the rights granted to it shall not extend to any third party, including, but not limited to, Broker's customers, subsidiaries and/or affiliates.

**6.04. Gold Star Agent.** Broker expressly appoints Gold Star as its agent, as that term is defined in the FCRA, in connection with any use of the Licensed Application by Broker with respect to Mortgage Loan Applications or Prequalification Analyses. Broker also expressly acknowledges, understands, and agrees that Gold Star's role as Broker's agent shall not extend beyond the limited purposes set forth in this Section 6.04, and for all other purposes, there shall be no such principal and agent relationship. Moreover, Broker shall in no way misrepresent to third parties the limited extent of this principal/agent relationship. Broker further acknowledges, understands, and agrees that any recommendation rendered by the Licensed Application in the evaluation of Consumer Credit Data will not constitute an approval or denial of the Mortgage Loan Application by Gold Star or a commitment to lend by Gold Star.

**6.05. Fannie Mae Agent.** In connection with the processing and evaluation of Consumer Credit Data by the Licensed Application for purposes of making an underwriting recommendation or performing a Prequalification Analysis (if applicable), Broker expressly appoints Fannie Mae, as owner of the Licensed Application, as its agent, as that term is defined in the FCRA. As Broker's agent, Fannie Mae shall, and is hereby expressly authorized by Broker to, obtain Consumer Credit Data for the sole purpose of performing a Prequalification Analysis and/or making an underwriting recommendation. Broker also expressly acknowledges, understands, and agrees that Fannie Mae's role as Broker's agent shall not extend beyond the limited purposes set forth in this Section 6.05, and for all other purposes, there shall be no such principal and agent relationship. Moreover, Broker shall in no way misrepresent to third parties the limited extent of this principal/agent relationship. Broker further acknowledges, understands, and agrees that any recommendation rendered by the Licensed Application in the evaluation of Consumer Credit Data will not constitute an approval or denial of the Mortgage Loan Application by Fannie Mae or a commitment to purchase the loan by Fannie Mae. Broker shall disclose any secondary use of Consumer Credit Data that is facilitated by use of the Licensed Application to the issuing consumer reporting agency.

**6.06. Affiliate Relationship.** If Broker is an Affiliate, Broker shall use the Licensed Application for the primary purpose of (i) originating or underwriting mortgage loans intended to be closed by Gold Star, or assigned or sold to Gold Star, and/or (ii) performing Prequalification Analyses for Gold Star (to the extent that the performance of Prequalification Analyses utilizing the Licensed Application is permitted under the License Agreement). If Broker is an Affiliate, Broker shall not be permitted to use the Licensed Application's wholesale lending ("DU® wholesale") functionality pursuant to this ARTICLE VI. If Broker is a Subsidiary, Broker shall use the Licensed Application only in connection with its own Mortgage Loan Applications and/or Prequalification Analyses and/or those of Gold Star (to the extent that the performance of Prequalification Analyses utilizing the Licensed Application is permitted under the License Agreement)

6.07.  **Requesting Additional Consumer Reports.** Notwithstanding anything to the contrary in that Section of the DU Schedule captioned "Use of Licensed Application," Broker must first obtain written permission from the mortgage loan applicant to request additional consumer reports before using the Licensed Application as described below:

(a)   With respect to Mortgage Loan Applications previously approved but not yet closed:

(i)   to request and receive additional Consumer Reports through the Credit Retrieval Module, when Broker is requesting such reports in connection with its own Mortgage Loan Applications and/or Prequalification Analyses, or because other circumstances exist which Broker believes justify the request for such additional consumer reports under the FCRA;

(ii)   to analyze or evaluate Consumer Credit Data, including Consumer Reports, when Broker determines that data obtained subsequent to its initial approval may affect its prior underwriting approval decision;

(iii)   to request and receive Consumer Reports and/or analyze or evaluate Consumer Credit Data when the loan applicant(s) request different loan terms or a different loan product than that originally requested by the loan applicant(s); and

(b)   With respect to Mortgage Loan Applications previously denied by Broker, which denial decision has been communicated to the applicant(s):

(i)   to request and receive Consumer Reports through the Credit Retrieval Module, when Broker is requesting such reports in connection with its own Mortgage Loan Applications and/or Prequalification Analyses;

(ii)   to analyze or evaluate Consumer Credit Data, including Consumer Reports, when (A) Broker determines that data obtained subsequent to its initial denial decision may affect its prior underwriting decision, and (B) Broker intends to make and communicate an offer of credit to the applicant(s) if an approval recommendation decision is rendered by the Licensed Application as a result of consideration of the additional data obtained.

6.08.  **Intended Beneficiary.** Broker and Gold Star acknowledge and agree that Fannie Mae is an intended beneficiary of Article VI.

6.09.  **Termination of Article VI.** ARTICLE VI shall remain in full force and effect unless terminated pursuant to the provisions of this Section or terminated pursuant to Section 7.06 of this Agreement. The parties acknowledge and agree that ARTICLE VI is subject to the License Agreement and that ARTICLE VI shall automatically terminate upon termination of the Desktop Underwriter Schedule and/or the Redistribution Addendum by Fannie Mae and/or Gold Star. The parties acknowledge that, pursuant to the terms of that Section of the Redistribution Addendum captioned "Termination of Affiliates and Subsidiaries", Fannie Mae may, in its absolute discretion, immediately terminate access by Broker to the Licensed Application for any breach of (a) the License Agreement, (b) ARTICLE VI of the Agreement, or (c) any other agreement between Broker and any lender (including Gold Star) that has access to the Licensed Application. Upon termination of ARTICLE VI, the other terms and conditions of this Agreement shall continue in full force and effect unless otherwise terminated or amended pursuant to the terms hereof..

6.10.  **Licensed Materials.** Immediately upon termination of either ARTICLE VI or this Agreement, Broker shall cease using the Licensed Materials, and destroy or return all copies of the Licensed Materials in its possession to Gold Star. Promptly upon request from Gold Star or Fannie Mae, Broker shall provide Gold Star or Fannie Mae with written certification of its compliance with the foregoing, executed by a duly authorized officer of Broker.

6.11.  **DU Support.** Gold Star, and not Fannie Mae, shall be responsible for providing Broker with (i) first line support with respect to Broker questions and comments concerning Fannie Mae's automated underwriting guidelines and policies, including, but not limited to, questions concerning the interpretation and applicability of the Licensed Application's findings reports and questions relating to Fannie Mae's Selling Guide, and (ii) appropriate training relating to the use of the Licensed Application and such guidelines and policies.

6.12.   **Article VI Conflict with License Agreement.** In the event of a conflict between the terms of ARTICLE VI and the terms of the License Agreement, the terms of the License Agreement shall govern.

6.13.   **Assignment of Article VI Rights.** Rights under Article VI may not be assigned by Broker to any other person(s), firm(s), corporation(s) or other entities without the prior express written consent of Fannie Mae and Gold Star.

6.14.   **Notification**. This Section 6.14 applies only to notices required by ARTICLE VI. All other notices required pursuant to this Agreement shall be provided according to Section 7.21 of this Agreement. All notices, requests, demands, and other communications with required pursuant to ARTICLE VI (other than routine operational communications) shall be in writing and shall be deemed to have been received by a party (i) when actually received in the case of hand delivery, (ii) one (1) business day after being given to a reputable overnight courier with a reliable system for tracking delivery, (iii) when sent by confirmed facsimile with a copy sent by another means specified in this paragraph, or (iv) seven (7) days after the date of mailing, when mailed by United States mail, registered or certified mail, return receipt requested, postage prepaid, and addressed to the recipient's contact person/address set forth below:

    Gold Star:   Gold Star Mortgage Financial Group
                 100 Phoenix Drive, Suite 300
                 Ann Arbor, Michigan 48108
                 Attention: Gold Star Wholesale Broker Approval Team

    Broker:      _____
                 _____
                 _____
                 Attention: _____

    In the event that the recipient does not so specify a contact person/address, notices shall be addressed to the general counsel at the recipient's corporate headquarters. A party may from time to time change its address or designee for notification purposes by giving the other party prior written notice of the new address or contact person.

6.15.   **Conflict.** In the event that any provision of Article VI conflicts with the law under the Article VI is to be construed, or if any such provision is held unvalid, void or unenforceable by a court with jurisdiction over the parties to Article VI, such provision shall be deemed to be restated to reflect as nearly as possible the original intention of the parties in accordance with applicable law, and the reminder of Article VI and the Agreement shall remain in full force and effect.

**ARTICLE VII**
**<u>MISCELLANEOUS PROVISIONS</u>**

7.01.   **Amendment of Agreement.** Except as set forth in Section 7.08, this Agreement may not be amended except in writing executed by authorized representatives of both Broker and Gold Star.

7.02.   **Waiver Nonbinding.** The failure of Gold Star to insist in any one or more instances upon strict performance of any of the covenants, agreements, or conditions of this Agreement, or to the exercise of any rights hereunder, shall not be construed as a waiver or a relinquishment for the future of such covenants, agreements, conditions or rights, and any and all waivers must be in writing and be signed by the party waiving its rights.

7.03.   **No Obligations to Make Loans.** Nothing contained in this Agreement shall be construed to require Gold Star to approve, purchase and/or fund any Mortgage Loan or Mortgage Loans submitted by Broker pursuant to the terms hereof. Approval and funding of any such Mortgage Loan or Mortgage Loans shall be in the sole and absolute discretion of Gold Star, and said decision will be made on a loan-by-loan basis. Broker shall not be obligated to submit any particular mortgage loan applications or any minimum number of loan applications to Gold Star.

7.04. **No Agency or Employment Relationship.** Both parties understand and agree that it is not intended that this Agreement create or establish a relationship of employer and employee between Gold Star and Broker, nor is it intended that Broker will be Gold Star's partner, joint venturer or agent. Broker is an independent contractor, and is expressly prohibited from holding itself out as an agent, representative or employee of Gold Star or of having any endorsement from or afiliation with Gold Star.

7.05. **Term.** This Agreement is for an initial term of one (1) year and shall automatically renew for successive terms of one (1) year each, unless terminated pursuant to Section 7.06 below.

7.06. **Terminations.** This Agreement may be terminated by either party for any reason, with or without cause, breach or other justification, upon seven (7) days prior written notice, and may be terminated immediately: (a) for breach of any covenant, obligation, or duty herein contained; or (b) for violation of any law, ordinance, statute rule or regulation governing the conduct of either party hereto; or (c) upon the suspension, cancellation, or termination of any license or permit required by a party to conduct business and/or perform its obligations hereunder; or (d) if any warranty, representation or statement made by a party to this Agreement was false in any material respect when made or furnished; or (e) in the event a party becomes a debtor in any voluntary or involuntary bankruptcy proceeding; or (f) in the event that a party shall become insolvent, fails to pay its debts as they become due, or makes an assignment for the benefit of its creditors; or (g) in the event of a seizure, execution or levy upon material assets of a party; or (h) in the event of a dissolution of a party; or (i) upon the sale or disposition of a significant portion of the assets or equity interests of a party; or (j) in the event that a trustee, custodian or receiver shall be appointed in connection with material assets of a party. Termination shall not affect the obligations with respect to any Mortgage Loans submitted prior to such termination, except that Gold Star shall not be obligated to purchase and/or fund any such Mortgage Loans approved prior to termination if Gold Star terminates this Agreement for breach by Broker on the basis of fraud, dishonesty, misrepresentation, negligence or other breach of this Agreement. In addition, termination shall not afect either party's obligations with respect to amounts previously owed to the other party pursuant to this Agreement, or Broker's indemnification and confidentiality obligations to Gold Star

7.07. **Current Financials and Document Retention.** At Gold Star's request, Broker shall provide to Gold Star its year-end financial statements, including a balance sheet and income statement. If Gold Star acts as FHA or VA sponsor for Broker, copies of all closing documents for Mortgage Loans funded by Gold Star shall be retained by Broker for the time period required by FHA or VA. Broker is responsible for maintaining a complete origination file containing all documents that were used in processing and underwriting a Mortgage Loan.

7.08. **Gold Star Amendments & Website.** This Agreement, and Gold Star's policies, procedures, requirements and instructions concerning Mortgage Loan Applications and Mortgage Loans, including but not limited to those contained in the Gold Star Guide, may be amended by Gold Star from time-to-time, and Gold Star will endeavor to provide Broker with prompt notice thereof, which may occur by posting any such amendments on Gold Star's website, which Broker is required to regularly check and monitor as a condition of this Agreement. Broker agrees that the submission of any Mortgage Loan Applications or Mortgage Loans to Gold Star after such amendment shall be Broker's agreement to the amendment without further signature or consent of any kind. Any such amendment shall apply to pending, and/or future Mortgage Loan Applications submitted by Broker.

7.09. **Quality Control.** Broker agrees to provide Gold Star upon its request copies of Broker's policies and procedures, training materials and other applicable documentation related to Broker's business practices for review by Gold Star. Broker shall also permit any oficer, employee or designated representative of Gold Star, at any reasonable time during regular business hours, to examine, reproduce and make audits of any of the processes implemented and documents in the possession or control of Broker regarding any Mortgage Loan or Mortgage Loan Application submitted to Gold Star pursuant to this Agreement. If upon the request of Gold Star, Broker fails to timely deliver all documents and records associated with or related to any Mortgage Loan or Mortgage Loan Application submitted to Gold Star pursuant to this Agreement, Broker shall give Gold Star and its oficers, employees, or designated representatives reasonable access to Broker's premises in order to allow Gold Star to retrieve, prepare, reproduce and otherwise obtain all such documents and records. Broker shall also make its oficers, employees, and/or designated representatives available to Gold Star and shall cooperate with Gold Star in connection with all such examinations, audits and document and record collection activities. Further, Broker consents and gives Gold Star permission to record telephone calls between employees and independent contractors of Gold Star and Broker for quality control purposes and further, Broker represents and warrants that it has obtained or will obtain all required consents and approvals of Broker's current and future employees and independent contractors authorizing Gold Star to record such phone calls.

7.10. **Unacceptable Applications and Submissions.** Under no circumstances shall Broker submit any Mortgage Loan Applications for Mortgage Loans that could be considered to constitute a "high cost loan" or "predatory loan" as defined in: (a) the Home Ownership and Equity Protection Act, as amended; or (b) any other federal, state or local law or regulations.

7.11. **Broker Advertising & Customer Privacy.** Broker may advertise to the public the availability of various loan programs and Broker's services, but Broker may not, in any way, directly or indirectly identify Gold Star or related parties in any such advertising unless: (i) required by applicable laws or regulations; or (ii) Gold Star has, in advance, approved use of Gold Star's name by Broker in writing. Broker agrees to provide Gold Star upon its request with model advertising samples in use at the time of application to do business with Gold Star, as well as to notify Gold Star with questions on any substantive changes to those advertisements, or of any new advertisements Broker uses. Without the prior consent of Gold Star Broker shall not sell or distribute any customer or contact list incorporating the names, addresses or any non-public personal information of such Borrower(s) or Mortgagors.

7.12. **Licensing.** Gold Star grants a limited license to Broker on its proprietary loan origination system, solely for the purpose of submitting Mortgage Loan Applications, submitting Mortgage Loan documents and review and oversight related to the foregoing. Broker's failure to comply with this limited use will constitute breach of this Agreement and will violate Gold Star's copyright, trademark, and other proprietary and intellectual property rights. Broker assumes all responsibility and risk with respect to its use of Gold Star's system. All information contained in Gold Star's system is provided to you "AS IS" and Gold Star disclaims all warranties, representations and endorsements, express or implied, with regard to information accessed from or via its system, including, but not limited to, all express and implied warranties, such as warranty of title, merchantability, non-infringement and fitness for a particular purpose.

7.13. **Entire Agreement.** The arrangements and relationships contemplated in this Agreement and/or any document referred to herein constitute the sole understanding and agreement of the parties. This Agreement supersedes all other agreements, covenants, representations, warranties, understandings and communications between the parties, whether written or oral, with respect to the transactions contemplated by this Agreement.

7.14. **Invalidity & Severability.** The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions of this Agreement, and any provision determined to be invalid and/or unenforceable by a court or tribunal of competent jurisdiction shall be revised and reformed to make such provision valid and/or enforceable, if possible, to the fullest extent permitted by law, otherwise this Agreement shall be construed as if such invalid or unenforceable provision was omitted.

7.15. **Benefit & Assignment.** Broker may not assign its rights and/or delegate its duties and obligations under this Agreement without the written consent of Gold Star. Gold Star may assign its rights and/or delegate its duties and obligations under this Agreement to any subsidiary, afiliate or successor-in-interest without the consent of Broker. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the parties and their respective heirs, legal representatives, successors and assigns.

7.16. **Governing Law; Jurisdiction & Venue.** This Agreement shall be governed by, and construed and enforced in accordance with, applicable federal laws and the laws of the State of Michigan, without reference to conflict of laws principles. The parties to this Agreement unconditionally and irrevocably: (a) submit to the exclusive jurisdiction of the Washtenaw County (Michigan) Circuit Court, or in the event that original jurisdiction may be established, the United States District Court for the Eastern District of Michigan, Southern Division, sitting in Ann Arbor, Michigan (hereinafter the "Courts"), in any action arising out of this Agreement; (b) agree that all Claims in any action must be decided in one of said Courts; and (c) waive, to the fullest extent that they may efectively do so, the defenses of: (i) lack of subject matter jurisdiction of such Courts; (ii) the absence of personal jurisdiction by such Courts over the parties to this Agreement; and (iii) forum non-conveniens.

7.17. **Attorney Fees.** In the event a dispute arises under this Agreement between Broker and Gold Star, which dispute results in legal action being taken by one or both of the parties, the prevailing party shall be entitled to recover its reasonable attorney fees, costs and other expenses associated with the enforcement of its rights under this Agreement, and the non-prevailing party agrees to promptly pay same.

**7.18.** **Early Payoffs/Curtailment.** Gold Star is committed to the long-term performance of its loans. As such, should any Mortgage Loan delivered hereunder be paid of within one hundred eighty (180) days of the funding of such Mortgage Loan for any reason, Broker shall promptly reimburse Gold Star an amount equal to the total of all compensation paid to Broker from any source, including all Borrower-Paid and Lender-Paid compensation. For any Mortgage Loan where a curtailment occurs in any amount during the Early Payoff period, Broker shall promptly reimburse Gold Star the proportionate amount of the Lender-Paid Compensation or the Borrower-Paid Compensation paid to Broker. Broker shall pay Gold Star within fifteen (15) days from notification of an early payofs or curtailment.

**7.19.** **Enforceability & Construction.** Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be inefective to the extent of such prohibition or unenforceability without invalidating the remaining portions hereof or afecting the validity or enforceability of such provision in any other jurisdiction, and to this end, the provisions hereof are severable. In the event any of the terms or provisions contained in this Agreement conflict with those contained in other documents executed in connection with this Agreement, the terms and provisions of this Agreement shall govern and control. In the event of any conflict, inconsistency or ambiguity between the terms of this Agreement and those contained in any Addendum hereto or Amendment hereof, the terms and conditions of such Addendum or Amendment shall be deemed to govern and control. Notwithstanding the foregoing, in the event of any conflict, ambiguity or inconsistency between the terms and conditions contained in this Agreement and those set forth in the Gold Star Guide, the terms and conditions of the Gold Star Guide shall be deemed to supersede and control.

**7.20.** **Counterparts & Electric Signatures.** This Agreement may be executed in one or more counterparts, each of which shall constitute an original and all of which shall constitute the same Agreement. The parties to this Agreement further agree that due to their distant locations and/or difering schedules, this Agreement may be executed via facsimile, electronic mail or electronic signature and that a facsimile or electronic signature of this Agreement containing counterpart facsimile or electronic or other signature shall be valid and binding for all purposes.

**7.21.** **Notices.** Any notices necessary to be given under the provisions of the Agreement will be suficient if in writing and delivered personally, by U.S. certified mail, return receipt requested or by any nationally recognized express courier service to the addresses set forth below, or to such other address as may hereafter be furnished by either party to the other party by like notice, or via electronic mail if consented to by the parties;

> Gold Star: Gold Star Mortgage Financial Group
> 100 Phoenix Drive, Suite 300
> Ann Arbor, Michigan 48108
> Attention: General Counsel
>
> Broker: _____
> _____
> _____
> _____

**7.22.** **No Third-Party Beneficiaries.** The parties to the Agreement do not intend to confer benefits upon any person or entity who or which is not signatory to this Agreement.

**7.23.** **Time Is Of The Essence.** Time shall be of the essence for purposes of this Agreement as well as with respect to all the documents and instruments executed in connection herewith.

**7.24.** **Interpretation.** This Agreement (and all agreements, documents, instruments and/or exhibits referred to or incorporated into this Agreement) is being entered into among competent persons, who are experienced in business and represented by counsel, and has been reviewed by the parties and their counsel. Therefore, any conflicting or ambiguous language contained in this Agreement (and all agreements, documents, instruments and/or exhibits referred to or incorporated herein) shall not necessarily be construed against any particular party as the drafter of such language.

7.25. **Waiver of Jury Trial.** Broker and Gold Star acknowledge that the right to trial by jury is a constitutional right, but that it may be waived. Gold Star and Broker, after consulting counsel of their choice, each knowingly and voluntarily, without coercion, waive all rights to a trial by jury of all disputes between them.

7.26. **Authorization.** Broker represents that it is authorized to sign this Agreement and grant consent on behalf of the firm for the purposes of establishing and maintain a business relationship with Gold Star. Broker consents and gives Gold Star permission to obtain information about Broker. Broker agrees to provide written confirmation to Gold Star that is has conducted background checks on any and all employees and independent contractors of Broker that include, without limitation, professional history information, criminal record information, credit information and other public information. Further, at Gold Star's request, Broker agrees to provide Gold Star with the adjudication criteria associated with such background checks as well as the results indicating conformance to such criteria. At Gold Star's request, Broker also agrees to confirm writing that the background checks of its employees and independent contractors produced no violation(s) of applicable agency guidelines as well as all federal, state and/or local laws by said employees and independent contractors. Broker consents to the release of information to regulators and law enforcement agencies about any Mortgage Loan or loan application that may be suspected to contain misrepresentations and/or irregularities. It is understood and agreed that Broker and its employees may be named as the originator or loan oficers on such Mortgage Loans, whether or not Broker or its employees are implicated in any allegations of wrongdoing. Broker releases and agrees to indemnify, defend and hold Gold Star harmless from and against any and all liability for damages, losses, costs and expenses that may arise from the reporting or use of any information submitted by Gold Star or used in any way by Gold Star.

7.27. **Authorization Release.** Broker consents to a review and confirmation of any and all documents, records and other information related to its oficers, directors, principals, and similarly situated persons with strategic decision making authority in Broker and Broker as to their and its business professional and financial reputation and standing, personal financial standing, fitness as a mortgage broker, a concurrent funding broker and/or wholesale correspondent, and such other information as may be received during the review and confirmation to be provided to Gold Star. Every firm, company, governmental agency, court, association or institution having control of any documents, records and other information pertaining to Broker or any of its officers, directors, principals, and similarly-situated persons with strategic decision making authority in Broker is authorized and requested to furnish, allow to be copied or otherwise provide, information of the kind described above to Gold Star or its representatives, conducting the review and confirmation. This authorization and request includes, but is not limited to, documents, records or files regarding any charges or complaints filed against any of the aforementioned individuals, including any complaints erased by law, whether formal or informal, pending or closed. Broker specifically authorizes and requests consumer credit reporting agencies to provide personal credit history on any owner of Broker, executive officer of Broker, or similarly situated person with strategic decision-making authority in Broker to Gold Star. In consideration of the time and expense incurred in reviewing and evaluating the application and qualifications of Broker and its officers, directors, principals, employees and similarly-situated persons with strategic decision making authority in Broker as to its fitness as a broker for Gold Star, and to facilitate the providing of information for the review and confirmation by Gold Star, on behalf of the aforementioned persons and Broker, on behalf of itself and its officers, directors, principals, employees and similarly-situated persons with strategic decision-making authority in Broker, releases, discharges, exonerates and covenants not to sue any person, company or governmental organization providing information in the review and confirmation, any recipient of information, including Gold Star, its representative, its parent, sister and affiliate companies and its and their officers, agents, employees and independent contractors, from any and all liability of every nature and kind arising from or in connection with the furnishing of information, the inspection of documents, records and other information, and the preparation of the review and confirmation of the information provided to Gold Star.

**WHEREFORE**, the parties hereto have executed the above and foregoing Agreement as of the day and year first above written.

**GOLD STAR**
Gold Star Mortgage Financial Group, Inc.

By: _____

Name: _____

Its: _____

**BROKER**

_____

By: _____

Name: _____

Its: _____