# EXHIBIT 38

# JONES DAY

150 WEST JEFFERSON • SUITE 2100 • DETROIT, MICHIGAN 48226.4438

TELEPHONE: +1.313.733.3939 • JONESDAY.COM

DIRECT NUMBER: +1.313.230.7950
JJJONES@JONESDAY.COM

May 2, 2024

VIA EMAIL & OVERNIGHT MAIL

John T. Zach
Marc Ayala
David L. Simons
Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY 10001

Brandon C. Hubbard
Dickinson Wright PLLC
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226

Re: Follow-up to Cease and Desist Letter

Dear Counsel:

We are writing as a follow-up to our meet-and-confer call on April 25 and your letter dated April 26. During our meet-and-confer call and in your letter, you indicated that you had stopped using private investigators to contact putative class members; that you would ask Hunterbrook to remove the Solicitation Page; and that you had stopped sending the overbroad preservation letters previously discussed to brokers. We appreciate these representations and are relying on them, but we ask that you resolve the outstanding matters set forth below. We also address your other contentions below, which have no basis in law or fact.

## I. Improper Contacts By Plaintiffs' Counsel

### A. Improper Investigator Solicitations

Boies Schiller's response regarding its private investigators' outreach starts from the incorrect premise that UWM "object[s] to a single text and a single voicemail from one investigator." *See* Apr. 26 Ltr. at 8. That is not correct. As we indicated in our letter, the text and voicemail quoted in UWM's letter are only two examples from the larger communications campaign employed by Boies Schiller's private investigators. *See* Apr. 17 Ltr. at 3 ("Examples include . . . ."); *id.* at 4 (addressing "solicitation of this kind"). Of course, you are familiar with the larger universe of communications at issue; we are not. Based on the information available to us to date, however, the improper campaign not only predated the filing of the *Escue* lawsuit and was used to solicit plaintiffs, but also continued after filing. Contrary to the assertions in your

JONES DAY

Boies Schiller Flexner LLP
May 2, 2024
Page 2

letter, such communications cannot be properly described or shielded as "fact investigation" for at least the reasons set out below.

First, no matter how Boies Schiller might try to reframe the private investigators' requests now, the text and telephone communications plainly solicit individuals as to whether they "wish to be included" in a class action lawsuit. The example text message reads, in pertinent part: "I am a private investigator working on behalf of a consumer protection investigation looking into illegally inflated mortgage costs. We believe you may have been a victim, and we are doing research to support a class action lawsuit. *If you wish to be included*, please call . . . ." The phrase "if you wish to be included" follows directly on the assertion that the recipient of the message may be a "victim" and refers to participation in a class action lawsuit. Your post-hoc suggestion that the messages were meant merely to "investigate" does not square with the plain language of the communications. During our meet-and-confer, you indicated that you were not willing to identify the investigators at issue. Accordingly, we ask you to preserve the information that relates to such outreach and request your hired investigators to do so as well.

Second, your letter fails to address the false or misleading nature of the investigators' communications. *See* Apr. 17 Ltr. at 6–7. As previously explained, the text messages purport to be on behalf of a "consumer protection investigation looking into *illegally* inflated mortgage costs," labeling the recipient of the call or text message as a potential "victim." *See id.* at 4 (emphasis added). These statements both masquerade as official public service communications from a government body and falsely suggest a court or other authority has deemed UWM's conduct "illegal." The same language appears in the voicemail—noting a "class action lawsuit against a mortgage company that *illegally* overcharged for interest rates, fees, and costs." *Id.* (emphasis added). In other cases, courts have barred these kinds of assumed assertions of liability without any fact-finding by a court or jury as materially misleading communications. *See, e.g., Katz v. DNC Servs. Corp.*, 275 F. Supp. 3d 579, 582–83 (E.D. Pa. 2017) (ordering changes to a website because "as constructed, this sentence implies that Defendants' liability has been proven or is virtually uncontested as it relates to the issue of unpaid overtime," and collecting cases); *Self v. TPUSA, Inc.*, 2008 WL 4372928, at *3 (D. Utah Sept. 19, 2008) ("[T]he court orders Plaintiffs to modify the website to qualify or remove the conclusory language.").

Third, the two authorities cited in your letter fail to authorize the investigators' sweeping conduct here. In both *Jerry Gradl Motors v. ACV Auctions*, 2022 WL 949795, at *6–7 (W.D.N.Y. Mar. 30, 2022), and *Mahboob v. Educ. Credit Mgmt. Corp.*, 2021 WL 7448532 (S.D. Cal. Mar. 31, 2021), the courts addressed a single instance of in-person communication, not the campaign of communications present here, and the *Jerry Gradl* decision recognized the "'potential problems' that can arise out of communications with potential class members and that 'this potential for abuse' provides district courts 'the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties.'" 2022 WL 949795, at *5. Examples of abusive and improper conduct recognized there "include[d]," as here, "providing false, misleading, or intimidating information, or other misconduct such as concealing material information . . . ." *Id.* at *6. The investigators' contacts here were not limited to a single outreach and were not limited to post-suit fact investigation. Our cited cases—ignored in your letter—establish that courts grant relief against these kinds of targeted and misleading

JONES DAY

Boies Schiller Flexner LLP
May 2, 2024
Page 3

communications. *See, e.g., Jones v. Casey's Gen. Stores*, 517 F. Supp. 2d 1080, 1085–87 (S.D. Iowa 2007) (ordering plaintiff to cease communications with putative members without prior permission of court or defendant); *Abdallah v. Coca-Cola Co.*, 186 F.R.D. 672, 678–79 (N.D. Ga. 1999) (allowing contact with putative class members only to the extent that contact is initiated by the class members); *see also Hamm v. TBC Corp.*, 597 F. Supp. 2d 1338, 1351 (S.D. Fla. 2009) (barring future representation of class members acquired through improper solicitations and barring collection of fees for same).

During our discussions, you represented that you have ceased contacting putative class members with these investigators and will not resume such contacts without discussing with us in advance. We appreciate that representation and are relying on it, but we do not agree that it moots any past calls, and we reserve any rights to pursue relief regarding such matters.

### B.     Improper Website Solicitations and Misleading Advertising

Your arguments in support of Hunterbrook's publicity and advertisements for Boies Schiller are not responsive to the basic problems we have highlighted.

First, Boies Schiller cannot now distance itself from Hunterbrook and the contents of Hunterbrook's publications regarding the firm by claiming that Boies Schiller did not "direct" those communications. *See* Apr. 26 Ltr. at 9. As explained in our April 17 letter, and discussed by phone, Hunterbrook publicly stated that it has an agreement with Boies Schiller regarding this litigation (*see* Apr. 17 Ltr. at 2), and Boies Schiller conceded working with Hunterbrook in developing the lawsuit. That cooperation included the UWM-branded Boies Schiller email address the firm provided to Hunterbrook for publication on the Solicitation Page, and the firm's acceptance of Hunterbrook's promotion as, among other things, "a litigation firm known for winning billions in damages from companies." This is not some arms-length relationship, a fact evidenced in part by your refusal to provide a copy of the agreement Boies Schiller entered with Hunterbrook. But, as your response letter recognizes, an attorney cannot do through a third party what they cannot do themselves under the Rules of Professional Conduct. *See* N.Y. R.P.C. 8.4(a) ("A lawyer or law firm shall not violate or attempt to violate [the rules of ethics], knowingly assist or induce another to do so, or do so through the acts or another."); Fla. R.P.C. 4-8.4(a) (same); Mich. R.P.C. 8.4(a) (same); Cal. R.P.C. 8.4(a) (same).

Second, your letter's suggestion that the references to Boies Schiller are excused because they "were not 'directed to, or targeted at' a specific recipient or group of recipients," *see* Apr. 26 Ltr. at 9, is unsupported by the cited cases and ignores relevant authority. None of your cases involves a parallel text and phone communications campaign or a misleading Solicitation Page like the one at issue here, and at least one of the cases notes that "counsel should not initiate direct connect (*e.g.*, emails, letters, text messages, telephone calls) with members of the collective beyond authorized notice." *See Campo v. Granite Servs. Int'l, Inc.*, 584 F. Supp. 3d 1337, 1348–49 (N.D. Ga. 2022); *see also Collado v. 450 N. River Drive, LLC*, 2023 WL 3567857, at *6 (S.D. Fla. May 18, 2023); *Hamric v. True N. Holdings, Inc*, 2016 WL 3912482, at *2 (N.D. Ohio July 20, 2016). Nor do any of your cited cases address the applicable New York Rules of Professional Conduct, which define solicitations to include "any advertisement initiated by *or on behalf of* a

JONES DAY

Boies Schiller Flexner LLP
May 2, 2024
Page 4

lawyer or law firm that is directed to, or targeted at, a specific recipient or group of recipients . . . the primary purpose of which is the retention of the lawyer or law firm, and a significant motive for which is pecuniary gain." N.Y. R.P.C. 7.3(b) (emphasis added). That expressly includes websites "designed for and directed to or targeted at persons affected by . . . *an identifiable prospective defendant.*" *Id.* 7.3(c)(5)(ii) (emphasis added). The Hunterbrook Report and Solicitation Page undoubtedly target a group of persons allegedly "affected by an identifiable prospective defendant"—*i.e.*, UWM—and therefore are improper solicitations under the New York Rules that your letter fails to address.

Third, as to pecuniary gain, the letter's half-hearted attempt to suggest that Boies Schiller has no prospect of financial gain from its work on this class action is without basis. *See* Apr. 26 Ltr. at 9–10. A contingent-fee arrangement or other potential fee recovery presents the prospect of pecuniary gain. *See, e.g., Hamm*, 597 F. Supp. 2d at 1350 (the rules of professional conduct "prohibit[] a lawyer from entering into an agreement for a fee, or from collecting a fee, for employment obtained in violation of this solicitation rule"); *see also Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 461 (1978) (explaining that ABA rules against solicitation are meant to prevent lawyers from "stirring up litigation . . . where the lawyer's exercise of judgment on behalf of the client will be clouded by his own pecuniary self-interest"); *see also id.* at 461 n.19 ("Even if unintentionally, the lawyer's ability to evaluate the legal merit of his client's claims may falter when the conclusion will affect the lawyer's income.").

Fourth, in virtually every jurisdiction, the rule is clear that attorney advertising—whether direct solicitations or not—cannot be materially false or misleading. *See* N.Y. R.P.C. 7.1(a)(1) ("A lawyer or law firm shall not use or disseminate or participate in the use or dissemination of any advertisement that contains statements or claims that are false, deceptive or misleading."); Fla. R.P.C. 4-7.13(a) (similar); *id.* 4-7.14(a) (barring even "potentially misleading advertising"); Mich. R.P.C. 7.1(a) (similar); Cal. R.P.C. 7.1(a) (similar); Cal. Bus. & Prof. Code § 6158 (legal advertising "as a whole may not be false, misleading, or deceptive"). This rule applies whether or not the Hunterbrook Report is a news story, as you assert—the applicable rules cover all communications offering legal services. *See, e.g.*, Mich. R.P.C. 7.1(a), cmt. ("This rule governs all communications about a lawyer's services . . . . Whatever means are used to make known a lawyer's services, statements about them should be truthful."); Cal. R.P.C. 7.1(a) ("A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services."); *id.* cmt. 1 ("This rule governs all communications of any type whatsoever about the lawyer or the lawyer's services . . . ."); Fla. R.P.C. 4-7.11 ("The terms 'advertising' and 'advertisement' as used in chapter 4-7 refer to all forms of communication seeking legal employment, both written and spoken.").

As we explained at length in our previous letter, many of the communications in the Hunterbrook and Boies Schiller campaign are materially misleading. The Solicitation Page, in particular, purports to be able to determine the validity of any person's legal claims with the input of a single number, as if there had been a prior legal determination of wrongdoing by specific brokers that could be looked up in a database. *See, e.g., Vogt v. Texas Instruments, Inc.*, 2006 WL 4660133, at *4–5 & n.7 (N.D. Tex. Aug. 8, 2006) (granting relief against misleading communications, including one that purported to tell plaintiffs how to formulate their unpaid

JONES DAY

Boies Schiller Flexner LLP
May 2, 2024
Page 5

overtime with a simple formula). Solicitations or not, misleading advertisements like the Solicitation Page are improper and should be taken down.

For all of these reasons, the Solicitation Page should be removed, as Boies Schiller reported it would request both during our April 25 meet-and-confer and again in its April 26 response letter. *See* Apr. 26 Ltr. at 10 ("BSF will request that Hunterbrook remove what you have incorrectly referred to as the 'Solicitation Page' in your letter."). Based on our inquiries, Hunterbrook has made some changes to the Solicitation Page, but the changes are insufficient, and the Solicitation Page and Hunterbrook Report referrals remain active. Removing Boies Schiller's name from the Hunterbrook Report and substituting reference to a "national litigation firm," continues to advertise for Boies Schiller:

> **Editorial Position:**
>
> Hunterbrook Media believes change starts with awareness, but doesn't end there. Accountability requires action. Hunterbrook Media and its affiliates have taken several actions:
>
> - Submitted data analysis and research — as well as the planned date of publication — to a national litigation firm. Hunterbrook's nonprofit affiliate has entered an agreement with the law firm in exploration of a class action lawsuit against UWM seeking restitution for homebuyers. If you think you are paying too much on your mortgage, visit WasIRippedOff.com to learn if you might have used an independent broker who doesn't shop.

And the substituted link to a Hunterbrook email address on the Solicitation Page continues to mislead viewers:

> # WERE YOU RIPPED OFF?
>
> If you received a loan from United Wholesale Mortgage, please enter the NMLS ID of your independent mortgage broker below. (You can look it up by searching your broker's name here.)
>
> If you're a match, you may contact ideas@hntrbrk.com.
>
> [ Loan Officer ID ]   **SEARCH**

Given (a) the history of these pages and Boies Schiller's association with them, (b) the admitted Boies Schiller agreement with Hunterbrook regarding the class action, and (c) Hunterbrook's continued solicitation for putative class members, the same problems exist with these modified webpages. The Solicitation Page remains misleading, as does the Hunterbrook Report referral text, and the Solicitation Page and referral text in the Hunterbrook Report should be taken down in full. Please advise as soon as possible whether Boies Schiller will make arrangements to take down this content.

JONES DAY

Boies Schiller Flexner LLP
May 2, 2024
Page 6

### C. Overbroad and Threatening Preservation Letters

Boies Schiller agreed during our meet-and-confer call on April 25 that it would stop sending to brokers the overbroad preservation letters previously discussed and provide notice to UWM before any further preservation letters were issued. We appreciate those commitments and are relying on them. The April 26 letter, however, fails to substantiate the contested preservation letters already sent to third-party brokers.

Notably, your April 26 letter does not dispute that the preservation letters overstate third-party preservation obligations and fail to include protections embodied in the Federal Rules of Civil Procedure for third parties. *See, e.g., Centner v. TMG Utility Advisory Servs. Inc.*, 2022 WL 3040884, at *1 (D. Ariz. Aug. 2, 2022) ("Further, the lack of any specificity in the litigation hold letter and its expansive scope could work a significant burden on the third-party recipients of the letter should they attempt to comply with it. Even should there be no direct rule of civil procedure that addresses such potential abuse to third parties . . . there is a substantial likelihood that such conduct is prohibited by the Rules of Professional Conduct . . . ."); Model Order Relating to Discovery of ESI, Principle 2.03(a) (E.D. Mich.), https://www.mieb.uscourts.gov/file/1528 ("Vague and overly broad preservation requests do not further the goals of these Principles and are therefore disfavored. . . . The information sought to be preserved through the use of a preservation letter request or order should be reasonable in scope and mindful of the factors set forth in Rule 26(b)(2)(C)."). Indeed, the letters do not reference and ignore all of the protections afforded third parties (and parties) by Federal Rules of Civil Procedure 26 and 45 and do not disclose any of the protections noted on the federal third-party subpoena form—protections that inform and define the scope of any third-party production or preservation obligation. *See, e.g.,* Fed. R. Civ. P. 45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."); *id.* 45(d)(3)(A) (providing that a court must quash or modify a subpoena that invades the attorney-client privilege or subjects a person to undue burden).

You indicated that we can communicate with the brokers to clarify or supplement any obligations that we feel may be appropriate, but Boies Schiller has not yet identified the recipients of the preservation letters, as we requested. That failure precludes any reasonable UWM follow-up with the recipients. Accordingly, we request the identity of the third-party brokers that received Boies Schiller's letter.

### D. UWM's Right to Relief

Finally, the actions and conduct at issue here are not shielded by a litigation privilege from liability as tortious interference, defamation, or disparagement, as claimed. *See* Apr. 26 Ltr. at 11. Instead, the sole authority on this issue cited in the April 26 letter makes clear that the litigation privilege does not extend to many of the types of pre-complaint or extrajudicial communications at issue. *See Oesterle v. Wallace*, 725 N.W.2d 470, 475 (Mich. Ct. App. 2006) (citing *Timmis v. Bennett*, 89 N.W.2d 748 (1958)). The *Oesterle* holding—that there is some privilege in communications during the course of judicial proceedings—does not cover the expansive, misleading, and disruptive pre- and post-suit communications campaign by Hunterbrook, Boies

JONES DAY

Boies Schiller Flexner LLP
May 2, 2024
Page 7

Schiller, and the hired private investigators here. *See Timmis*, 89 N.W.2d at 359 ("[T]he statements which plaintiff claims to have been false and libelous as to her were not made in the course of any judicial proceeding. The mere fact that defendant contemplated starting an action for damages . . . does not bring the situation within the generally recognized rule. . . . [A]n attorney . . . may not claim absolute immunity with respect to slanderous and libelous statements otherwise published.").

Again, as explained in our April 17 letter, we believe the coordinated attack on UWM is actionable, and UWM is entitled to relief from the *Escue* Court. We reserve all rights in this regard while we continue to discuss these matters.[1]

## II. UWM and Its Counsel Have Not Engaged in Any Improper Conduct

The portion of your letter that tries to articulate "improper conduct" by UWM raises a number of matters that are both irrelevant to your communications with putative class members and, in any event, groundless. That portion of your letter appears to take the merits of your allegations as a given and then asserts various arguments regarding "wrongdoing" or "misleading" representations based on the merits of those claims. In our view, plaintiffs' claims are wholly groundless and, in fact, amount to the functional equivalent of a fraud on the Court and so, too, is the underlying premise of your letter. Nonetheless, we will address the matters you raised for completeness.

### A. Dickinson Wright's Potential Conflicts of Interest

Your allegations regarding Dickinson Wright PLLC ("Dickinson") are both meritless and irrelevant. As you presumably know, Dickinson has worked with Matt Roslin for many years in his capacity as Of Counsel for another client of Dickinson, *see, e.g.*, https://alidadecapital.com/team/, and, in the course of that representation, has been privy to discussions regarding UWM or affiliates of UWM, strategic considerations, and/or other litigation matters. Matt Roslin contacted Dickinson to express his belief that Dickinson's representation in the *Escue* matter raises a significant potential conflict of interest, that Dickinson should consider withdrawing from the representation in light of the potential conflicts, and that Dickinson needs to make a determination regarding those potential conflicts and report back regarding its determinations. Mr. Roslin has every right to raise such concerns since such conflicts implicate multiple Rules of Professional Conduct. *See, e.g.*, Mich. R.P.C. 1.6(c) (discussing rules applicable to confidential information); Mich. R.P.C. 1.6(b)(3) (confidential information may not be used "for the advantage of the lawyer or of a third person, unless the client consents after full disclosure"); Mich. R.P.C. 1.7(b) (a lawyer may not represent a client if "the representation of that client may

---

[1] Your reference to our description of Console's activity as "false" is also puzzling, because we stated that Console "appears" to be "assisting" with the improper solicitation of plaintiffs for the class action, which Console was in fact doing on the face of its ads. Notably, you do not address the content of Console's ads in your letter. Our description of those efforts was, in fact, entirely accurate. The fact that you now claim you were unaware of Console's activities does not change the impropriety of such efforts, the need to bring them to an end, or the accuracy of our statements.

Boies Schiller Flexner LLP
May 2, 2024
Page 8

JONES DAY

be materially limited by the lawyer's responsibilities to another client or to a third person" without first obtaining the client's consent). These circumstances are nothing like the two Michigan Ethics Opinions you cite in your letter. UWM reserves its rights with regard to any potential conflicts, but whether Dickinson should be disqualified from representing the plaintiffs in this action bears no relevance to your improper solicitation of plaintiffs and other improper contacts with class members.

### B. Preservation of Public-Facing Webpages

Your allegations of spoliation and improper witness communications are similarly unfounded. Of course, UWM has every right to update its own company communications or videos on its own websites and, not surprisingly, ethics committees have so held. American Bar Association, ANN. MODEL RULES OF PROF. CONDUCT, § 3.4 (10th Ed. 2023). Notably, Hunterbrook, who entered into an agreement with your firm regarding this litigation, has also changed its website multiple times. We assume you cast no aspersions on Hunterbrook for doing so. There is nothing wrong with updating websites or company videos in the ordinary course of business. If you contend there is any evidence on these public-facing pages that relates to this action, we can of course address those questions as part of the proceedings.

### C. Information about the Lawsuit

Your allegations regarding UWM's April 9, 2024 statement and the lawsuit are similarly unfounded. Again, your arguments appear to assume that plaintiffs' allegations in this lawsuit have merit; in our view, they do not. To the contrary, plaintiffs' claims fail to rise even to a cognizable claim. Thus, the premise of your letter is fundamentally flawed. Similarly, UWM has every right to issue statements to the brokers with whom it does business and discuss its views of the plaintiffs' lawsuit. Other than repeating the misguided allegations made in your complaint, your letter does not identify any factual evidence on which you contend anything in UWM's statement is inaccurate. Nor does UWM's statement violate Mich. R.P.C. 4.2. To the contrary, defendants and their counsel may communicate with others in the ordinary course of business.

### D. Broker Communications

Your claims regarding Mr. Elkins are likewise misplaced. Based on our inquiries, we understand that Mr. Elkins has known the Escues for years, and they have attended many family and/or other social gatherings and events together. It is not surprising that Mr. Elkins may reach out to someone he knows well regarding your filings, which reference him by name. Nor is there anything wrong with that. Mr. Elkins is not a party to this litigation. Nor is he a lawyer or counsel to a party. If you contend there were discussions with unnamed "third party intermediar[ies]," please identify the intermediaries and the dates, form, and nature of the communications, so we can follow-up as needed. If you contend there is any evidence that relates to your claims, we can address those matters in the proceedings.

Thank you for your assistance with these matters.

Boies Schiller Flexner LLP  
May 2, 2024  
Page 9

**JONES DAY**

Sincerely,

Jeffrey J. Jones

cc: Tyler Ulrich (Boies Schiller Flexner LLP)  
Mark C. Mao (Boies Schiller Flexner LLP)  
Andrew P. Steinmetz (Boies Schiller Flexner LLP)  
Rebekah Kcehowski (Jones Day)  
Stephen J. Cowen (Jones Day)