# EXHIBIT 39



Jeffrey J. Jones
Stephen J. Cowen
Jones Day
150 West Jefferson, Suite 2100
Detroit, Michigan 48226

Rebekah Kcehowski
Jones Day
500 Grant Street, Suite 450
Pittsburgh, Pennsylvania 15219

>    Re: *Therisa D. Escue, et al. v. United Wholesale Mortgage, LLC, et al.* No. 2:24-cv-10853
>        (E.D. Mich.)

Dear Counsel:

We write on behalf of Plaintiffs in the above-referenced action (the "Action") in response to your May 2, 2024 letter. Much of your letter is a retread of your prior correspondence dated April 17, 2024 and there is no need to rehash the majority of the parties' positions.  However, for the reasons set forth below, UWM and its counsel have failed to address the obvious misconduct UWM has engaged in since the outset of the Action.

## I.     **Improper Conduct by UWM and Defense Counsel**

As set forth in our letter of April 26, UWM and its counsel appear to have been engaged in an improper effort to: (i) interfere with Plaintiffs' attorney-client relationships with both Boies Schiller Flexner LLP ("BSF") and Dickinson Wright PLLC ("DW"); (ii) disseminate false and disparaging statements regarding Plaintiffs and their counsel; (iii) inappropriately contact material witnesses; and (iv) improperly contact and harass Plaintiffs in the action, as well as potential members of the class.  This conduct, which violates applicable law and rules of professional ethics, remains a continuing concern.

### A.     **Interfering with Plaintiffs' Attorney-Client Relationships**

UWM's attempt to justify its blatant attempt to interfere with Plaintiffs' already established attorney-client relationship with DW by couching it as an effort to address potential conflicts of interest and protect "confidential information" does not pass muster.  As an initial matter, your letter not only wildly mischaracterizes the threatening communications made to DW, but it also fails to address all of the individuals who delivered those threats (which, of course, calls into question the credibility of UWM's response).  To be clear, through its representative, UWM made



essentially extortionate, quid-pro-quo communications—including the loss of business opportunities—if DW did not withdraw from its already existing attorney-client relationship with Plaintiffs in favor of a different DW client. UWM then arranged for Howard & Howard attorney Jon Steiger to contact DW, essentially threatening to sue DW on behalf of UWM under the guise of an alleged conflict with that different DW client. Setting aside the tortious nature of those contacts, the applicable ethical rules prohibit such conduct, and you do not bother to address same. *See* Mich. Ethics Op. RI-78 (1991) (lawyers cannot use the assertion of purported ethical breaches "to suggest to the client that the duty be vitiated for compensation or other concessions or emoluments"); Mich. Ethics Op. RI-88. (a lawyer cannot use purported lawyer-misconduct "as a means of obtaining an advantageous resolution of the client's own matter.").

In our meet and confer on April 25, Plaintiffs asked for the courtesy of a representation that such threats cease and desist immediately. Your letter offers no such basic assurances. Instead, UWM concocts a false narrative that in no way reflects the actual threats made to DW. We reiterate – this needs to stop and we expect that you will advise your client to cease and desist this campaign against DW.

### B.      Deletion of Evidence and Improper Communications with Witnesses

As set forth in our prior letter, after Plaintiffs filed their Complaint, UWM immediately began to delete evidence from the public domain. UWM did not "update" its website. It removed clearly incriminating portions of the website directly related to the allegations in the Complaint as specifically identified in our prior letter. As sophisticated counsel (whom we have genuine respect for), we respectfully doubt that you truly believe those deletions constituted "updat[ing] websites or company videos in the ordinary course of business." Regardless, we trust your client understands that Jones Day, as its now retained counsel, has an affirmative duty to prevent its clients from causing spoliation of relevant evidence. *See* Ethics Op. RI-345 (2008). We are confident that you will adhere to those obligations and cease and desist further deletions, and that measures have been taken to ensure that all documents and materials removed from the public websites are preserved so that they may be produced in discovery.

### C.      UWM's Offers of Brokers and Efforts to Obstruct Justice

Your letter fails to address our concerns about UWM's offer to provide its co-conspirator brokers with a blanket offer to pay attorneys' fees and its obvious instruction to them to obstruct our investigation. In the wake of the filing of the Complaint, the April 9, 2024, statement issued by UWM to its "valued" mortgage brokers stating that "[t]he only way [Plaintiffs] win is if UWM or brokers don't change behavior" and that "UWM will cover your attorneys' fees" was improper and illegal.

First, as UWM is certainly aware, offering brokers things of value such as attorneys' fees is improper, unethical, and potentially illegal, both as a violation of section 2607(a) of the Real Estate Settlement Procedures Act and an effort to influence the testimony of known witnesses. This is particularly so in the context where UWM is telling those same brokers to not "change



[their] behavior" of, in the case of thousands of brokers, sending 99% of their business to UWM. In addition, to the extent it is UWM's position that brokers have a pre-existing contractual entitlement to indemnity from UWM, please so state and provide us copies of any such contractual provisions.

Second, UWM's offer to brokers is a transparent attempt to prevent them from cooperating with Plaintiffs' continuing investigation of UWM's wrongdoing. As set forth in our prior letter, in addition to being illegal, such an offer violates MRPC 3.4(f)'s prohibition on lawyers requesting any person other than a client, agent of a client, or employee to refrain from voluntarily giving relevant information to another party, unless the lawyer "reasonably believes that the person's interests will not be adversely affected by refraining from giving such information." UWM knows full well that the "interests" of brokers are not aligned and that its offer is a tactic to keep potential broker witnesses from cooperating with our investigation.

###    D.    Improper Contact with and Harassment of Plaintiffs.

With respect to your response to the harassing communications made to our clients, Mr. and Mrs. Escue, it fails to accurately reflect Mr. Elkins actual contacts. Regardless of his prior relationship with the Escues, Mr. Elkins made repeated contacts with them *even after* the Escues explained that they were represented by counsel and referred him to us. Your response notably fails to answer the question posed in our letter: has UWM been paying his attorney's fees? In addition, regardless of whether those fees are being paid, did UWM instruct him to cease and desist from further contact with them?

More broadly, we requested that UWM confirm whether it is paying the attorneys' fees for any brokers associated with Plaintiffs. UWM's offer to fund the fees incurred by co-conspirators who commit not to "change [their] behavior"—i.e., behavior that violates federal mail and wire fraud statutes as well as state commercial bribery laws, among other violations—is improper for the reasons set forth above and creates a substantial risk of prohibited contacts with our clients and other putative class members. We again respectfully ask that UWM commit to cease and desist any contact with our clients and other putative class members through brokers whom UWM is directing, paying attorneys' fees for, or through any other similar proxies.

## II.    Plaintiffs' Counsel Has Not Engaged in Any Improper Communications

With respect to your allegations pertaining to counsel's purported improper communications, your letter is simply a rehash of your prior April 17 letter. For the reasons set forth in our letter of April 26, those allegations are baseless and a transparent attempt at gamesmanship. We will not spill ink going over those issues again, except to address a few specific points from your recent letter. We understand that you "reserve all rights," which of course is your prerogative.

With respect to the Hunterbrook website, you correctly note—as we discussed—that, despite strongly disagreeing with UWM's contentions for all the reasons stated in prior telephone



calls and correspondence, we nonetheless requested that Hunterbrook remove BSF's name from their website and from what you describe as the "Solicitation Page." Hunterbrook is its own entity, with its own counsel and its own disclosure obligations. The reference to the "national law firm" that you now complain of obviously is not attorney advertising. As you can well see, that statement comes below Hunterbrook's "Editorial Position" in which it sets forth a disclosure of the various uses it has made of its investigative reporting. Those uses include sending the information to, among others, state attorneys general, federal regulatory agencies, civic advocates and shareholder litigation firms. This disclosure does not single out who the particular lawyers are, where they are located, or how to contact them, whether they be the shareholder litigation firms, civic advocates, a particular state attorney general or a national law firm. Rather, it is a disclosure Hunterbrook has elected to make on its website to make clear to the public how it has utilized its investigative reporting.

With respect to the so-called "Solicitation Page," it no longer contains any reference to BSF. As we have explained, that page never has been and continues not to be intended for solicitation—it is there for investigatory purposes. Hunterbrook conducts investigative journalism—as you can see from the numerous stories on their website that have nothing to do with UWM—and they evidently intend to supply potential whistleblowers and/or victims with a means of reaching out to them in connection with their reporting. The new email on the page is Hunterbrook's general contact address and is in no way linked to BSF.

With respect to your request that we identify the brokers to whom BSF sent document preservation letters, while being under no obligation to do so, we will supply you with a list of those broker names in a good faith effort to accommodate your request. We will send those along next week after the holiday weekend.

*    *    *



For the reasons set forth above, UWM has engaged in a pattern of misconduct and it must cease and desist from engaging in more such actions. Further, the allegations set forth in your letter continue to be unfounded and the attendant demands are without basis. That being said, we appreciate your efforts to work through these issues and are available to discuss further. Plaintiffs reserve all rights.

Sincerely,

/s/ John Zach

DICKINSON WRIGHT PLLC                    BOIES SCHILLER FLEXNER LLP
Brandon C. Hubbard                       John T. Zach
James A. Plemmons                        Marc Ayala
                                         Tyler Ulrich
                                         David L. Simons
                                         Andrew P. Steinmetz