## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Therisa D. Escue, Billy R. Escue, Jr.,
Kim Schelbe, Brian P. Weatherill,
Kenneth C. Morandi, Jill Jeffries, and
Daniel Singh on behalf of themselves
and all others similarly situated,

*Plaintiffs*,

v.

United Wholesale Mortgage, LLC,
UWM Holdings Corporation, SFS
Holding Corp., and Mathew Randall
Ishbia,

*Defendants.*

Case No. 2:24-cv-10853-BRM-DRG

Hon. Brandy R. McMillion,
United States District Judge

Hon. David R. Grand,
Magistrate Judge

## REPLY IN SUPPORT OF DEFENDANTS' CONSOLIDATED MOTION
## FOR RELIEF UNDER RULE 11,
## 28 U.S.C. § 1927, AND THIS COURT'S INHERENT POWERS

i

## TABLE OF CONTENTS

I.      This Suit Was Filed for an Improper Purpose. ................................................1

II.     Counsel Failed to Conduct a Reasonable Pre-Filing Inquiry. ........................4

III.    Counsel's Core Theory Relies on Facially Unreliable Data...........................6

# TABLE OF AUTHORITIES

Page

CASES

*Garr v. U.S. Healthcare, Inc.*,
  22 F.3d 1274 (3d Cir. 1994) ................................................................5

*In re Kunstler*,
  914 F.2d 505 (4th Cir. 1990) ..............................................................4

*In re Se. Eye Ctr.*,
  2024 WL 5201576 (N.C. Super. Dec. 19, 2024) ................................6

*Jonna v. GIBF GP, Inc.*,
  2023 WL 3244832 (E.D. Mich. May 4, 2023) ....................................1

*King v. Whitmer*,
  71 F.4th 511 (6th Cir. 2023) ........................................................4, 6, 7

*Noblee Bottling, LLC v. Gora LLC*,
  2023 WL 4750124 (W.D.N.C. July 25, 2023) ....................................6

*Rasmussen v. Fleetwood Enters., Inc.*,
  2007 WL 1106138 (E.D. Mich. Apr. 10, 2007) ..................................3

*Silva v. Witschen*,
  19 F.3d 725 (1st Cir. 1994) ................................................................3

*Stanford v. Corbin*,
  2011 WL 893111 (E.D. Mich. Mar. 14, 2011) ....................................3

*Whitehead v. Food Max of Miss., Inc.*,
  332 F.3d 796 (5th Cir. 2003) (en banc) ..............................................3

**OTHER AUTHORITIES**

Fed. R. Civ. P. 11 ................................................................................*passim*

28 U.S.C. § 1927 ...................................................................................1

Plaintiffs argue that Rule 11 is a serious matter. We agree. Indeed, this is the first case in 20-plus years in which undersigned counsel has filed a Rule 11 motion. But this lawsuit raises unprecedented questions about whether federal courts can be used as part of a short-selling scheme. This suit was filed in coordination with an activist hedge fund and timed to crater UWM's stock for private profit—an improper (and arguably illegal) purpose. In furtherance of that scheme, Plaintiffs' complaints were littered with false allegations. The Court should put a stop to this abuse under Rule 11, § 1927, and this Court's inherent authority, dismiss this suit, and award sanctions. At minimum, the Court should order the disclosure of all communications between Plaintiffs' Counsel and Hunterbrook and hold a hearing on this matter.

## I.    This Suit Was Filed for an Improper Purpose.

Counsel's response does nothing to refute—and indeed, confirms—that this suit is infected by an "improper purpose." Fed. R. Civ. P. 11(b)(1). Counsel confess to having an "agreement" with a "Hunterbrook entity," Opposition ("Opp."), ECF 53 at 4,[1] and that "an Advisor at Hunterbrook" has been "retained by counsel," ECF 53-2 at 1. They do not dispute that Hunterbrook shorted UWM's stock before releasing its report. *See* ECF 51-6 at 3. They admit this action "was filed shortly after the story was published." Opp. 7. They do not deny that Hunterbrook expects to earn "[p]roceeds … from such litigation." ECF 51-53 at 3. In short, the central facts

---

[1] The agreement should be produced not only to the Court, Opp. 4, but also to UWM. *Cf. Jonna v. GIBF GP, Inc.*, 2023 WL 3244832, at *2 (E.D. Mich. May 4, 2023) (engagement letter not privileged).

underlying the short-selling scheme all stand undisputed. Remarkably, Plaintiffs never discuss *Lemelson* or the SEC pronouncements which provide that circulating false or misleading statements as part of a short-selling scheme can be unlawful.

Unable to deny their coordinated efforts, Counsel claim the scheme failed. Opp. 5. That is both wrong and irrelevant. Counsel's own evidence shows that on April 2, 2024, UWM's stock price opened at $6.53. *See* Ex. A (S. Cowen Decl.), Ex. 1; ECF 53-6 at 9. That day, Hunterbrook released its report, sending trading into a frenzy—with *nearly 3 million* more shares of UWM stock traded than the day before. *Id.* Notably, the report itself announced (before Counsel filed) that Hunterbrook had "entered an agreement" with "Boies Schiller Flexner LLP" to explore "a class action lawsuit against UWM." ECF 51-6 at 3. UWM's stock price fell sharply, closing at $6.00. *See* Ex. 1. Counsel then filed their complaint. *Within five minutes of the market opening the next day*, UWM's stock dropped *even more* to $5.86. *See* Ex. 1; Ex. 2 (minute-by-minute data). All told, Hunterbrook's and Counsel's coordinated efforts caused a 10%+ drop in UWM's stock within 24 hours. The fact that the stock later rebounded makes no difference: A short-and-distort scheme is accomplished by a quick trade when stock value suddenly dips. And, in any event, the success of the scheme is irrelevant: Rule 11 prohibits *improper purpose*, not *improper effect*.

Counsel's remaining responses all fail. *First*, they assert (without declarations) that Hunterbrook is not "paying Counsel," and that Counsel currently

2

"has no interest" in Hunterbrook's UWM trades. Opp. 4. That, too, is irrelevant: Coordinating the filing of a lawsuit (especially one with false statements) to benefit a hedge fund is improper in itself; a direct financial tie is not required. If, for example, A sues B to harm B for C's improper purpose, A is culpable. *See Silva v. Witschen*, 19 F.3d 725, 730 (1st Cir. 1994). And Counsel's carefully worded statements raise more questions than they answer. Why is Hunterbrook providing "advisor(s)" to counsel? Is Hunterbrook providing free "expert" witnesses? How does Hunterbrook intend to earn "proceeds" from the litigation? The list goes on.

*Second*, Counsel argue their claims are not frivolous, which "[p]recludes" a "finding of improper purpose." Opp. 6. That is wrong. Their argument flouts Rule 11's text, which lists "improper purpose" *separately* from frivolous "claims." Fed. R. Civ. P. 11(b)(1), (2). It also ignores precedent. *Rasmussen v. Fleetwood Enters., Inc.*, 2007 WL 1106138, at *10 (E.D. Mich. Apr. 10, 2007); *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 805 & n.4 (5th Cir. 2003) (en banc) (improper purpose suffices for sanctions). The only in-circuit case Counsel cite confirms that an improper purpose can warrant sanctions. *Stanford v. Corbin*, 2011 WL 893111, at *7 (E.D. Mich. Mar. 14, 2011) (may be warranted in "unusual" cases). And, in any event, Plaintiffs *did* file frivolous claims based on false allegations.

*Third*, Counsel say that "there is nothing improper about" the timing of their complaint, insisting that they just wanted to be "the first to file." Opp. 7. That is

3

disingenuous. Counsel had an agreement with Hunterbrook and had access to its analysis long before the report issued. *Id*. at 8 (claiming "extensive" investigation). There is no indication that Hunterbrook engaged any other firm. And if Counsel's concern was being "first to file," they could have filed the complaint long before the report issued. Instead, they coordinated with Hunterbrook to file suit within hours, aiding the short-bet against UWM's stock. That timing demonstrates this suit's improper purpose. *See, e.g.*, *In re Kunstler*, 914 F.2d 505, 519-20 (4th Cir. 1990).

## II.    Counsel Failed to Conduct a Reasonable Pre-Filing Inquiry.

Counsel also violated Rules 11(b)(2) and (b)(3) by making false legal claims and "factual assertions they know—or after reasonable investigation should have known—are false." *King v. Whitmer*, 71 F.4th 511, 521 (6th Cir. 2023). These violations also warrant sanctions and further evidence the suit's improper purpose.

***False claims in original complaint.*** Counsel do not defend the false claims that appear in their original complaint, and merely state that they cannot be held responsible for them because they were later withdrawn. Opp. 19 at n.11. That misses the point: The spurious claims *further evidence the complaint's improper purpose*. *In re Kunstler*, 914 F.2d at 519 (that "many allegations in the complaint lacked a basis in law or in fact strongly supports [a] finding of improper purpose").

***Failure to investigate their own documents.*** Counsel also failed to investigate Plaintiffs' mortgage documents, which flatly contradict their claims. *See*

4

Consolidated Motion, ECF 51 ("Mot."), at 17-19. Confronted with Morandi/Schelble's own documents, Counsel try to rewrite their claims, arguing they were not told *why* they were paying discount points. Opp. 17-18. The pivot is disingenuous—they alleged they "did not realize at any point prior to closing" that they would pay "discount points" to secure their interest rates, FAC ¶¶ 230, 282, and their own loan documents show otherwise. *See Garr v. U.S. Healthcare, Inc*., 22 F.3d 1274, 1281 (3d Cir. 1994) (no reasonable inquiry where complaint predicated on "documents which they have not bothered to read"). It is also baseless. Plaintiffs' loan documents expressly state they "received" the CFPB's "Your Home Loan Toolkit," ECF 51-64 at 1; ECF 51-65 at 1, which explains *why* discount points are charged, *see* ECF 51-27 at 9, 19.

As for the Escues, Counsel deny that the FAC presents a "new liability theory." Opp. 18. But it clearly does: Counsel had to *withdraw* their original false allegations involving the Escues. Mot. 12. As to the new theory, Counsel do not deny that the Escues' documents undermine the claim that they were somehow misled into taking out a cash-out refinance loan. So the new liability theory is frivolous too.

***False Legal Claims.*** Counsel's defenses of their false legal claims fail too. On the **All-In Provision**, Counsel have no meaningful response to the fact that the provision limits just two out of hundreds of possible lenders. Mot. 14. On the **federal disclosures**, they do not dispute that Plaintiffs' brokers followed federal regulations

that contradict their assumptions about a broker's duty to present loan options. On the **"corrupt" broker claims**, they cite isolated FAC paragraphs that discuss only brokers who originated at least five loans. Opp. 14. But that does not excuse the rest of the FAC, which disparages *thousands* of additional brokers as "corrupt." Mot. 21. And, on **aiding and abetting**, their North Carolina claim (a named Plaintiff's home state) is frivolous. Citing an older 2012 case, they claim it is "an open issue whether North Carolina recognizes aiding and abetting breach of fiduciary duty." Opp. 15 n.9. But today, there can be "no dispute that … claims for aiding and abetting breach of fiduciary duty … are not cognizable." *Noblee Bottling, LLC v. Gora LLC*, 2023 WL 4750124, at *2 (W.D.N.C. July 25, 2023); *see In re Se. Eye Ctr.*, 2024 WL 5201576, at *6 (N.C. Super. Dec. 19, 2024) (collecting cases).

## III. Counsel's Core Theory Relies on Facially Unreliable Data.

Counsel's core theory also relies on "technical analys[e]s" and "statistical extrapolations" that are "facially unreliable." *King*, 71 F.4th at 524. The crux of nearly every claim is that Plaintiffs "overpaid" for their loans because UWM charged more than other lenders for "similar loan[s]" with the "same interest rates." FAC ¶¶ 138-39; 198; 260; 286; 427-431; *see* Mot. 21-22.[2] Those overpayment allegations are false and sanctionable under Rule 11(b)(3). *See* Mot. 22-25.

---

[2] Counsel's suggestion that their claims are not centered on alleged overpayments, Opp. 21-22, is a transparent attempt to rewrite their complaint. The about-face is troubling: It suggests they may abandon the core false claims that aided Hunterbrook's short sale, underscoring this lawsuit's improper purpose. Moreover, absent the alleged overpayments, Plaintiffs suffered no injury and have no claim.

Counsel argue that *King* shields their unreasonable analysis because they relied on experts. But *King* says the opposite: "[A]n attorney's reliance upon a putative expert opinion must itself meet the standard of reasonableness imposed by Rule 11." 71 F.4th at 522. And any layperson can see that the "expert" analysis reflected in the FAC is facially unreliable because it does not take into account credit scores, employment histories, and other relevant factors. ECF 51-20 at 22; ECF 51-3 ¶ 14. Counsel try to minimize this by arguing that their analysis only includes loans that satisfy Freddie and Fannie's minimum credit score. But that score is only 620, which *eighty-four percent* of Americans with credit meet. Ex. 3 at 3; Ex. 4 at 3. So that is no help to Counsel; attempting to compare those loans is facially unreliable.

Counsel offer a similarly weak response to the other glaring problem with their overpayment allegations: rate volatility. They accuse Defendants of cherry-picking months in 2023 to show rate volatility. Opp. 24. But those months were chosen because they *appear in the FAC itself*. FAC ¶ 314. Counsel clearly exploited the rate volatility in those months to support their misleading claims.

Dated: July 3, 2025                    Respectfully submitted,

                                       /s/ *Jeffrey J. Jones*
                                       Jeffrey J. Jones (P80231)
                                       JONES DAY
                                       150 W. Jefferson Ave, Suite 2100
                                       Detroit, MI 48226
                                       (313) 733-3939
                                       jjjones@jonesday.com

Rebekah B. Kcehowski
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
(412) 391-3939
rbkcehowski@jonesday.com

Stephen J. Cowen (P82688)
Amanda K. Rice (P80460)
Andrew J. Clopton (P80315)
scowen@jonesday.com
arice@jonesday.com
aclopton@jonesday.com

*Counsel for Defendants*

8

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2025, I caused the foregoing document to be filed with the Clerk of the Court using CM/ECF, which will effectuate service upon all counsel of record.

/s/ *Jeffrey J. Jones*
Jeffrey J. Jones (P80231)
JONES DAY
150 W. Jefferson Ave, Suite 2100
Detroit, MI 48226
(313) 733-3939
jjjones@jonesday.com

*Counsel for Defendants*