## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

Therisa D. Escue, Billy R. Escue, Jr.,
Kim Schelble, Brian P. Weatherill,
Kenneth C. Morandi, Jill Jeffries, and
Daniel Singh on behalf of themselves
and all others similarly situated,

        Plaintiffs,

    v.

United Wholesale Mortgage, LLC,
UWM Holdings Corporation,
SFS Holding Corp., and
Mathew Randall Ishbia,

        Defendants.

Case No. 2:24-cv-10853-BRM-DRG

Hon. Brandy R. McMillion,
United States District Judge

Hon. David R. Grand,
United States Magistrate Judge

## PLAINTIFFS' MOTION FOR RECONSIDERATION

Plaintiffs respectfully request that the Court reconsider its Opinion and Order Granting in Part and Denying in Part Defendants' Motion to Dismiss (ECF No. 62, the "Order") pursuant to E.D. Mich. LR 7.1(h)(2).  In support of their Motion, Plaintiffs rely on the facts and authorities in the accompanying Brief in Support.

Pursuant to E.D. Mich. LR 7.1(1)(a), Plaintiffs' counsel sought concurrence in the relief requested herein from Defendants' counsel and explained the nature of the motion and its legal basis, but concurrence was not obtained.

WHEREFORE, Plaintiffs respectfully request that the Court grant the Motion.

Respectfully submitted,

**Dated:  October 14, 2025**

John T. Zach
Marc Ayala
Andrew P. Steinmetz
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards
New York, New York 10001
Tel.: (212) 446-2300

By:  /s/ *Brandon C. Hubbard*
Brandon C. Hubbard (P71085)
**DICKINSON WRIGHT PLLC**
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226
Tel.: (517) 371-1730

Tyler Ulrich
**BOIES SCHILLER FLEXNER LLP**
100 SE Second Street
Miami Florida 33131
Tel.: (305) 357-8422

# **TABLE OF CONTENTS**

STATEMENT OF ISSUES PRESENTED.................................................................vi

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................ viii

INTRODUCTION ...............................................................................................1

LEGAL STANDARD...........................................................................................5

ARGUMENT ......................................................................................................7

    I.     The Court Misapplied Binding Precedent in Concluding That Brokers'
          Conduct in the RICO Enterprise Precludes Proximate Cause. .................7

    II.    The Court Misapplied Binding Precedent and Overlooked Plaintiffs'
          Allegations in Holding Plaintiffs Failed to Plausibly Allege Predicate
          Acts of Mail, Wire, and Honest Services Fraud......................................13

    III.   The Court Misconstrued and Misapplied the Economic Loss Doctrine. .21

    IV.   The Court Should Reconsider its Dismissal "With Prejudice."...............23

CONCLUSION ..................................................................................................25

i

# <u>TABLE OF AUTHORITIES</u>

## CASES

*All Care Nursing Service, Inc. v. High Tech Staffing Services, Inc.*,
  135 F.3d 740 (11th Cir. 1998) ......................................................26

*Anderson v. Apple Inc.*,
  500 F. Supp. 3d 993 (N.D. Cal. 2020).........................................26

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006)............................................................... 13, 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................18

*Bardfield v. Chisholm Properties Circuit Events, LLC*,
  2009 WL 1940575 (N.D. Fla. July 6, 2009)..................................27

*Bridge v. Phoenix Bond & Indem. Co.*,
  553 U.S. 639 (2008)........................................................... 3, 10, 12

*Brown v. Matauszak*,
  415 F. App'x 608 (6th Cir. 2011)..................................................28

*Burkeen v. A.R.E. Accessories, LLC*,
  758 F. App'x 412 (6th Cir. 2018)...............................................5, 28

*Empress Casino Joliet Corp. v. Johnston*,
  763 F.3d 723 (7th Cir. 2014) ........................................................10

*Foman v. Davis*,
  371 U.S. 178 (1962)............................................................... 28, 30

*Forman v. Meridian Bioscience, Inc.*,
  387 F. Supp. 3d 791 (S.D. Ohio 2019)...........................................6

*Gen. Motors, LLC v. FCA US, LLC*,
  44 F.4th 548 (6th Cir. 2022) ............................................. 3, 10, 15

*Heinrich v. Waiting Angels Adoption Services, Inc.*,
  668 F.3d 393 (6th Cir. 2012) ........................................................17

*Holmes v. Securities Investor Protection Corp.*,
    503 U.S. at 258 (1992)....................................................................................13

*Howard v. United States*,
    533 F.3d 472 (6th Cir. 2008) ...........................................................................7

*In re Duramax Diesel Litig.*,
    298 F. Supp. 3d 1037 (E.D. Mich. 2018) ......................................................16

*Intera Corp. v. Henderson*,
    428 F.3d 605 (6th Cir. 2005) ...........................................................................7

*Kuber v. Berkshire Life Ins. Co. of Am.*,
    2020 WL 646870 (S.D. Fla. Jan. 27, 2020)....................................................27

*LD v. United Behav. Health*,
    2021 WL 930624 (N.D. Cal. Mar. 11, 2021) .................................................11

*Maisano v. Sterling Heights Dodge, Inc.*,
    2022 WL 446741 (E.D. Mich. Feb. 14, 2022) ...............................................15

*Nelson v. City of Albuquerque*,
    925 F.3d 1187 (10th Cir. 2019) ........................................................................8

*Newberry v. Silverman*,
    789 F.3d 636 (6th Cir. 2015) .........................................................................29

*Otto Candies, LLC v. Citigroup Inc.*,
    137 F.4th 1158 (11th Cir. 2025).....................................................................18

*Petition of U. S. Steel Corp.*,
    479 F.2d 489 (6th Cir. 1973) ...........................................................................8

*Priorities USA v. Nessel*,
    628 F. Supp. 3d 716 (E.D. Mich. 2022) ..........................................................8

*Pulte Home Corp. v. Osmose Wood Preserving, Inc.*,
    60 F.3d 734 (11th Cir. 1995) .........................................................................26

*Rattagan v. Uber Techs., Inc.*,
    17 Cal. 5th 1 (Cal. 2024) ...............................................................................28

iii

*Rodriguez v. Tennessee Laborers Health & Welfare Fund*,
 89 F. App'x 949 (6th Cir. 2004) .......................................................................8

*Roe v. Ford Motor Co.*,
 439 F. Supp. 3d 922 (E.D. Mich. 2020) .................................................. 1, 6, 7

*Scharpf v. Gen. Dynamics Corp.*,
 137 F.4th 188 (4th Cir. 2025) .......................................................................23

*Smith v. FirstEnergy Corp.*,
 518 F. Supp. 3d 1118 (S.D. Ohio 2021) .......................................................11

*Swierkiewicz v. Sorema N.A.*,
 534 U.S. 506 (2002).......................................................................................16

*Tiara Condo. Ass'n v. Marsh & McLennan Co.*,
 110 So. 3d 399 (Fla. 2013). ...........................................................................27

*Trollinger v. Tyson Foods, Inc.*,
 370 F.3d 602 (6th Cir. 2004) .........................................................................16

*United States v. Bortnovsky*,
 879 F.2d 30 (2d Cir. 1989) .............................................................................11

*United States v. Daniel*,
 329 F.3d 480 (6th Cir. 2003) ................................................................. 18, 24

*United States v. Davis*,
 490 F.3d 541 (6th Cir. 2007) .........................................................................18

*United States v. Goodwin*,
 748 F. App'x 651 (6th Cir. 2018)....................................................... 4, 18, 23

*United States v. Stapleton*,
 293 F.3d 1111 (9th Cir. 2002) .......................................................................11

*United States v. Winkle*,
 477 F.3d 407 (6th Cir. 2007) .........................................................................18

*Wallace v. Midwest Fin. & Mortg. Servs., Inc.*,
 714 F.3d 414 (6th Cir. 2013) ................................................................ passim

*Willingham v. Kneeland Indus., Inc.*,
    415 F.2d 755 (6th Cir. 1969) ........................................................................29

**STATUTES**

18 U.S.C. § 1962(c) .........................................................................................1

**RULES**

E.D. Mich. L.R. 7.1(h)(2) ............................................................................5, 6

Fed. R. Civ. P. 12(b)(6) ....................................................................................2

Fed. R. Civ. P. 15(a)(1) ..............................................................................5, 25

Fed. R. Civ. P. 9(b) ....................................................................................2, 19

**TREATISES**

6 Fed. Prac. & Proc. Civ. § 1483 ....................................................................24

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.   Should the Court reconsider and correct its holding that Plaintiffs failed to adequately allege proximate causation with respect to their RICO claims because that holding rests on a clear misapplication of controlling law?

      Plaintiffs' answer: Yes.

      This Court should answer: Yes.

2.   Should the Court reconsider and correct its holding that Plaintiffs failed to adequately allege the specific intent necessary to plead predicate acts of mail and wire fraud because that holding rests on a clear misapplication of controlling law and overlooks numerous factual allegations in the Amended Complaint from which specific intent may be reasonably inferred?

      Plaintiffs' answer: Yes.

      This Court should answer: Yes.

3.   Should the Court reconsider and correct its holding that Plaintiffs failed to adequately allege honest services fraud—which rests on the finding that "[t]he only payment or 'kickback' alleged in the Amended Complaint was the commission paid for closing the loan"—because the Court's analysis overlooks the numerous other offers of value, going well beyond commissions, that the Court acknowledged in other sections of the Order?

      Plaintiffs' answer: Yes.

      This Court should answer: Yes.

4.   Should the Court reconsider and correct its holding that the Florida and California Plaintiffs' RICO claims fail under the economic loss doctrine because that holding rests on a clear misapplication of controlling law?

      Plaintiffs' answer: Yes.

      This Court should answer: Yes.

5.   Should the Court reconsider and correct its holding that Plaintiffs failed to adequately allege Defendants' actual knowledge of brokers' and loan officers' breaches of fiduciary duties because that holding overlooks numerous allegations of such knowledge and fails to accord Plaintiffs the benefit of all reasonable inferences as required under Rule 12?

> Plaintiffs' answer: Yes.

> This Court should answer: Yes.

6.   Should the Court reconsider and correct its holding that Plaintiffs failed to adequately allege a civil conspiracy claim because that holding overlooks numerous allegations of underlying tortious conduct and fails to accord Plaintiffs the benefit of all reasonable inferences as required under Rule 12?

> Plaintiffs' answer: Yes.

> This Court should answer: Yes.

7.   Should the Court hold a hearing on this motion for reconsideration and Defendants' motion to dismiss, including to discuss the issues addressed herein?

> Plaintiffs' answer: Yes.

> This Court should answer: Yes.

8.   At a minimum, should the Court reconsider and correct its decision to dismiss Plaintiffs' claims "with prejudice" because Plaintiffs should be afforded an opportunity to amend and amendment would not be futile?

> Plaintiffs' answer: Yes.

> This Court should answer: Yes.

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

**Reconsideration Standard**

E.D. Mich. L.R. 7.1(h)(2)

*Roe v. Ford Motor Co.*, 439 F. Supp. 3d 922 (E.D. Mich. 2020)

*Forman v. Meridian Bioscience, Inc.*, 387 F. Supp. 3d 791 (S.D. Ohio 2019)

**Proximate Cause**

*Gen. Motors, LLC v. FCA US, LLC*, 44 F.4th 548 (6th Cir. 2022)

*Wallace v. Midwest Fin. & Mortg. Servs., Inc.*, 714 F.3d 414 (6th Cir. 2013)

*Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602 (6th Cir. 2004)

**Predicate Acts and Fraudulent Intent**

*United States v. Goodwin*, 748 F. App'x 651 (6th Cir. 2018)

*United States v. Daniel*, 329 F.3d 480 (6th Cir. 2003)

**Economic Loss Doctrine**

*Pulte Home Corp. v. Osmose Wood Preserving, Inc.*,
  60 F.3d 734 (11th Cir. 1995)

*All Care Nursing Serv., Inc. v. High Tech Staffing Servs., Inc.*,
  135 F.3d 740 (11th Cir. 1998)

*Tiara Condo. Ass'n v. Marsh & McLennan Co.*, 110 So. 3d 399 (Fla. 2013)

*Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1 (Cal. 2024)

**Dismissals With Prejudice**

*Burkeen v. A.R.E. Accessories, LLC*, 758 F. App'x 412 (6th Cir. 2018)

*Willingham v. Kneeland Indus., Inc.*, 415 F.2d 755 (6th Cir. 1969)

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

Therisa D. Escue, Billy R. Escue, Jr.,
Kim Schelble, Brian P. Weatherill,
Kenneth C. Morandi, Jill Jeffries, and
Daniel Singh on behalf of themselves
and all others similarly situated,

                Plaintiffs,

      v.

United Wholesale Mortgage, LLC,
UWM Holdings Corporation,
SFS Holding Corp., and
Mathew Randall Ishbia,

              Defendants.

Case No. 2:24-cv-10853-BRM-DRG

Hon. Brandy R. McMillion,
United States District Judge

Hon. David R. Grand,
United States Magistrate Judge

# BRIEF IN SUPPORT OF
# PLAINTIFFS' MOTION FOR RECONSIDERATION

## **INTRODUCTION**

Reconsideration of interlocutory orders is relatively rare and for good reason: "a district court puts considerable thought and effort into its initial decision, and so that decision should not be readily changed." *Roe v. Ford Motor Co.*, 439 F. Supp. 3d 922, 926 (E.D. Mich. 2020). This, however, is one of the rare cases in which reconsideration is warranted.

The Court correctly found in its Opinion and Order, dated September 30, 2025 (ECF No. 62) ("Order"), that Plaintiffs adequately alleged the existence of an "association-in-fact" enterprise under 18 U.S.C. § 1962(c) involving UWM and a host of corrupted mortgage brokers, which had a common purpose to maximize "profitability of the enterprise's members" by deceiving borrowers.[1] Against that backdrop, Plaintiffs respectfully submit the Court made other, inconsistent findings that overlook binding precedent regarding proximate causation and intent in RICO cases, as well as scores of well-pled allegations in the Amended Complaint (ECF No. 21) ("Am. Compl."), resulting in the erroneous dismissal of Counts 1 and 2.[2]

---

[1] *See, e.g.*, Order at PageID.3729 (finding that Plaintiffs adequately alleged that "UWM executed a 'deliberate scheme, in coordination with a host of corrupted mortgage brokers, to deceive hundreds of thousands of borrowers into paying billions of dollars in improper fees and excessive interest rates to finance their homes.'"); *id.* at PageID.3736–37 (finding Plaintiffs' "allegations to be sufficient to establish an association-in-fact enterprise").

[2] While this motion focuses on Plaintiffs' RICO claims (Counts 1 and 2), many of the allegations the Court overlooked are also relevant to Plaintiffs' claims for aiding and abetting breach of fiduciary duty (Count 4) and civil conspiracy (Count 5),

*First*, it was legal error for the Court to conclude at this stage that misrepresentations by brokers constitute a second "step" in the causal chain that defeats proximate causation.  Plaintiffs alleged that UWM and the brokers were coordinating in a scheme to sell mortgages by deceiving Plaintiffs about material facts.  The Court correctly found these allegations were adequate under Rules 9(b) and 12(b)(6) to plead a RICO enterprise.  The proximate cause element of Plaintiffs' RICO claims, however, does not turn on *which* particular enterprise member deceived Plaintiffs; whether it was brokers, UWM, or both.  Rather, it depends on whether Plaintiffs were deceived directly *by the fraudulent scheme* in which Defendants took part.  Because the Court found Plaintiffs' injuries were proximately caused by brokers' misrepresentations as part of an adequately alleged RICO enterprise (Order at PageID.3734), it follows under controlling law that Plaintiffs' proximate cause allegations were sufficient.  But the Court held the opposite.

The Order thus reflects a misapplication of controlling precedent, including the Sixth Circuit decision reviewing the district court opinion the Court cited in its proximate cause analysis (*Gen. Motors, LLC v. FCA US, LLC*, 44 F.4th 548, 561 (6th Cir. 2022)).  As the Sixth Circuit explained in *FCA*, "many [schemes] at the heart of RICO conspiracies[] use a middleman to accomplish their goals" and that

---

rendering the Court's dismissal of those claims with prejudice worthy of reconsideration and correction as well.

"does not foreclose relief." *Id.* (citing, *e.g.*, *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 657–58 (2008)).  Sixth Circuit and Supreme Court precedent make it clear: The relevant question is not *which* participant in the common scheme had the most direct interaction with the Plaintiffs, but rather, whether the plaintiffs alleged they suffered "an injury proximately ***caused by that scheme***." *Wallace v. Midwest Fin. & Mortg. Servs., Inc.*, 714 F.3d 414, 416–18, 420 (6th Cir. 2013) (citing *Bridge*, 553 U.S. at 649–50) (emphasis added).  Proximate causation does not require direct interaction between the Plaintiffs and UWM at all, as long as the enterprise's collective scheme directly caused the injury (which it did here).

***Second***, the Court erred in concluding Plaintiff failed to plead cognizable predicate acts.  In particular, the Court's finding that Plaintiffs' allegations of intent are "insufficient" and "conclusory" conflicts with controlling law.  Intent to defraud may be established by circumstantial evidence and inferred from, among other things, "efforts to conceal the unlawful activity, from misrepresentations, from proof of knowledge, and from profits." *United States v. Goodwin*, 748 F. App'x 651, 655 (6th Cir. 2018). As set forth below (*infra* at 16–19), the Amended Complaint pleads *extensive* facts from which intent may be inferred.  Because Rule 12 requires the Court to draw all reasonable inferences in Plaintiffs' favor, concluding that it is *implausible* that UWM acted with requisite intent was reversible error.

**Third**, the Court also erred in finding that the RICO claims asserted by the Plaintiffs from Florida and California were barred by the economic loss doctrine. As the Court found elsewhere in its Order, the RICO claims are independent of any contract because "the mortgages themselves are not the basis for the injurious conduct.  Rather, as Plaintiffs argue, these causes of action arise from the alleged false misrepresentations made by Defendants and their brokers in presenting the loans to Plaintiffs *prior to* entering into the mortgages." Order at PageID.3725. Neither Florida nor California law bar the RICO claims asserted here.  And, in all events, the economic loss doctrine does not bar the Tennessee and North Carolina Plaintiffs' RICO claims, and the Court did not find otherwise—thus the RICO claims brought by Plaintiffs from those states should not have been dismissed on that basis.

**Finally**, the Court should reconsider its decision to dismiss Plaintiffs' claims "with prejudice."  The Sixth Circuit has a "well-established preference for allowing claims to be decided on their merits where possible." *Burkeen v. A.R.E. Accessories, LLC*, 758 F. App'x 412, 416 (6th Cir. 2018).  Accordingly, courts avoid deploying the harsh remedy of "with prejudice" dismissal where claims may be saved by amendment.  And here, because the Court determined Plaintiffs stated at least some plausible claims for relief, the Court should have, at a minimum, provided Plaintiffs an opportunity to amend or supplement their pleading with additional facts. Plaintiffs previously amended their complaint only once as a matter of course under

4

Rule 15(a)(1). Because amendment would not be futile, dismissal with prejudice is not justified under the circumstances.

For all these reasons, Plaintiffs respectfully submit that the Order contains outcome-altering errors of law that require correction. Accordingly, the Court should grant Plaintiffs' motion for reconsideration and deny Defendants' motion to dismiss, including with respect to Counts 1, 2, and 4. The Court should also schedule a hearing to address the issues raised in this motion to the extent it would aid in the Court's reconsideration of Defendants' motion to dismiss. Alternatively, even if the Court does not find any substantive error in its Order, justice requires that Plaintiffs be given an opportunity to fix the perceived pleading deficiencies. Plaintiffs therefore request that the Court, at a minimum, amend its Order to provide for dismissal *without* prejudice so that Plaintiffs may amend the pleadings.

## LEGAL STANDARD

Local Rule 7.1 permits a party to move for "rehearing or reconsideration" of a non-final order "within 14 days after entry…." E.D. Mich. L.R. 7.1(h)(2). "Motions for reconsideration are treated as motions to amend a judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure." *Forman v. Meridian Bioscience, Inc.*, 387 F. Supp. 3d 791, 796 (S.D. Ohio 2019); *see also Roe*, 439 F. Supp. 3d at 925 (noting that E.D. Mich. L.R. 7.1(h) is the "corresponding local rule" to Rule 59, though it is "broader in the sense that it permits reconsideration of

5

interlocutory orders too"). "A court may grant a Rule 59(e) motion to alter or amend if there is … a clear error of law … or … a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005). Local Rule 7.1(h) similarly provides that reconsideration is appropriate where "[t]he court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision." E.D. Mich. L.R. 7.1(h)(2)(A).

"The primary purpose of a motion for reconsideration … is to allow a district court to correct its own mistakes before the Court of Appeals corrects them." *Roe*, 439 F. Supp. 3d at 925 (citing *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008)). "[W]hen a district court corrects its own interlocutory mistake, it prevents litigation from heading down the wrong path to judgment (only to have to completely backtrack upon reversal on appeal) and saves the time and money of an appeal after judgment is entered." *Id.* Correcting mistakes also "makes known that [the Court] is striving for the 'right' outcome and thus increases public confidence in the court system." *Id.* at 925–26 (citing *Nelson v. City of Albuquerque*, 925 F.3d 1187, 1192 (10th Cir. 2019) (Hartz, J., dissenting)). Accordingly, district courts retain "'significant discretion' to review interlocutory orders" and are encouraged to "deviate from their prior rulings when they find 'some cogent reason' to do so." *Priorities USA v. Nessel*, 628 F. Supp. 3d 716, 724 (E.D. Mich. 2022) (quoting

*Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 n.7

(6th Cir. 2004) and *Petition of U. S. Steel Corp.*, 479 F.2d 489, 494 (6th Cir. 1973)).

## ARGUMENT

### I.   The Court Misapplied Binding Precedent in Concluding That Brokers' Conduct in the RICO Enterprise Precludes Proximate Cause.

The Court held that "because Plaintiffs' allegations fail to show proximate

cause, the civil RICO claim fails as a matter of law."  Order at PageID.3734.[3]  That

holding was based on the Court's conclusion that the conduct of mortgage brokers—

who participated in the RICO enterprise by amplifying UWM's false statements and

making numerous false statements of their own—constitutes a second "step" in the

causal chain, rendering UWM's conduct insufficiently "direct" to have proximately

caused Plaintiffs' injuries. *Id.* at PageID.3733–34.  As the Court put it:

> [A]s alleged, the false representation[s] would be the
> proximate cause of Plaintiffs' injuries.  But the false
> representations about shopping the loan originated from
> the brokers, ***not*** UWM.

*Id.* at PageID.3734.  Binding precedent contradicts the Court's holding.

The core error underlying the Court's holding is the presumption that an injury

attributable to the conduct of a *co-conspiring participant* in an alleged RICO

---

[3] To be clear, the Amended Complaint asserts two civil RICO claims, not one.  *See* Am. Compl., PageID.547–69 ¶¶ 346–74 (asserting claim under 18 U.S.C. § 1962(c)), PageID.570–74 ¶¶ 375–90 (asserting claim under 18 U.S.C. § 1962(d), for RICO conspiracy).  The Court's holding, however, applies to both. Order at PageID.3749–50.

7

enterprise (as opposed to the defendant alone) cannot meet the "directness" requirement for proximate cause under RICO. *See* Order at 34–36. That is clearly wrong. Indeed, the very case on which the Court relied demonstrates as much. *See FCA*, 44 F.4th at 561. As the Sixth Circuit explained in *FCA*: "***Using an intermediary in a RICO scheme does not alone preclude liability***." *Id.* (emphasis added). To the contrary, "many [schemes] at the heart of RICO conspiracies[] use a middleman to accomplish their goals" and that "does not foreclose relief." *Id.* (citing *e.g.*, *Bridge*, 553 U.S. at 657–58; *Wallace*, 714 F.3d at 416–18, 420–22; *Empress Casino Joliet Corp. v. Johnston*, 763 F.3d 723, 725, 732–34 (7th Cir. 2014)).[4]

The fact that a plaintiff's injury may have been caused by a defendant's *co-conspirator* in a RICO mail fraud, wire fraud, or bribery scheme is not an impediment to finding that proximate cause was adequately alleged. *See, e.g.*, *Wallace*, 714 F.3d at 420–22 (holding factual disputes precluded summary judgment dismissing RICO claim against mortgage lender where fraudulent appraisal on

---

[4] In *FCA*, the Sixth Circuit affirmed the dismissal on proximate cause grounds not because of an intermediate perpetrator in the RICO scheme, but because there was an "intermediate *victim*." 44 F.4th at 561 (emphasis in original). But as Plaintiffs explained (ECF No. 35 at PageID.2074–75) and discuss further below, the scheme alleged here has no intermediate victim. Rather, the *only* victims are the borrowers—including Plaintiffs and the thousands of similarly situated consumers who entered into UWM loans on false pretenses. *E.g.*, Am. Compl., PageID.566–69 ¶¶ 367–74. Plaintiffs' injuries are thus not derivative of injuries suffered by any other class of victims who are "better situated to sue." *FCA*, 44 F.4th at 548. That makes this case fundamentally different.

which plaintiff relied was issued by co-conspiring appraiser, not lender itself); *Smith v. FirstEnergy Corp.*, 518 F. Supp. 3d 1118, 1133 (S.D. Ohio 2021) (holding proximate cause plausibly alleged in RICO bribery scheme, despite the independent misconduct of implicated government officials who accepted bribes, because the scheme caused the harm); *LD v. United Behav. Health*, 2021 WL 930624, at *6 (N.D. Cal. Mar. 11, 2021) ("Because the element of 'scheme to defraud' required to state a claim for wire fraud or mail fraud is treated similarly to a conspiracy, '[a] knowing participant in a scheme to defraud is vicariously liable for substantive acts of mail fraud or wire fraud committed by co-schemers.'" (quoting *United States v. Stapleton*, 293 F.3d 1111, 1117 (9th Cir. 2002)); *United States v. Bortnovsky*, 879 F.2d 30, 36 (2d Cir. 1989) ("it is not significant for purposes of the mail fraud statute that a third-party, rather than the defendant, wrote and sent the letter at issue, providing … the defendants could reasonably have foreseen that the third-party would use the mail in the ordinary course of business as a result of defendants' act").

*Wallace* is particularly instructive.  There, the Sixth Circuit held that the plaintiff satisfied RICO's "direct" causation requirement by alleging that a mortgage lender defendant (like UWM here) enlisted a corrupt third-party appraiser (like the brokers here) to provide the plaintiff with a fraudulent valuation of his home, which enticed the plaintiff to enter into a second mortgage with the defendant lender (much like Plaintiffs allege here).  714 F.3d 414, 416–18, 420–22.  In *Wallace*, as here, the

misrepresentation at the core of the mail fraud scheme was made *not* by the lender defendant, but rather by another participant in the scheme (the appraiser). *Id.*

That was no bar to liability, the Sixth Circuit explained, because "[a] plaintiff need only show use of the mail in furtherance of a scheme to defraud and an injury proximately ***caused by that scheme***." *Id.* at 420 (citing *Bridge*, 553 U.S. at 649–50) (emphasis added). The Sixth Circuit went on to find—at the summary judgment stage—that there were triable issues of fact on proximate causation, explaining that:

> Once we accept that Wallace was an intended target of the defendants' alleged scheme to induce borrowers to agree to loans with high interest rates and other unfavorable terms—as we must at this stage in the litigation—the link between the scheme and the type of injury Wallace suffered is plain to see. Wallace's confidence in his ability to afford a larger mortgage and confusion regarding the underlying terms might well have "led directly" to his decision to enter into the option ARM at issue.

*Id.* at 416–18, 420–22.

Cases like *Anza* and *Holmes*, which the Court relied on in its Order, addressed a different proximate causation obstacle that has no application here. In those cases, the RICO claims were dismissed because the RICO plaintiffs were one or more steps removed from the injury itself—*i.e.*, there were *more directly injured **victims*** of the scheme. In *Holmes v. Securities Investor Protection Corp.*, the Supreme Court precluded plaintiffs' RICO claims relating to stock manipulation because their injury was purely contingent on the injury of more directly injured broker-dealers. 503

10

U.S. at 258, 269–71 (1992).  The Court held that "recognizing claims of the *indirectly injured* would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts."  *Id.*  Similarly, in *Anza v. Ideal Steel Supply Corp.*, the Supreme Court upheld dismissal of claims by RICO plaintiffs who were business rivals of a group of retailers that allegedly cheated on their taxes.  547 U.S. 451, 457–61 (2006).  The Court found that the immediate victim of the tax scheme (the government) could be expected to vindicate the laws by pursuing its own claims, and therefore the Court found "no need to broaden the universe of actionable harms to permit RICO suits by parties who have been injured only indirectly."  *Id.* at 460.  Here, the borrowers are the *only* level of injured persons—there is no argument that Plaintiffs are "indirectly injured parties" that are one step removed from the more directly injured victims. The "remoteness" or "contingent injury" doctrine simply does not apply.

Indeed, the Court correctly observed that Plaintiffs adequately allege that (i) "UWM executed a 'deliberate scheme, in coordination with a host of corrupted mortgage brokers, to deceive hundreds of thousands of borrowers into paying billions of dollars in improper fees and excessive interest rates to finance their homes" (Order at PageID.3729); (ii) "UWM gave brokers a 'thing of value' when UWM offered brokers the opportunity to participate in their marketing programs… these things were conferred in connection with the continued referral of business to

UWM" (*id.* at PageID.3753); and (iii) "the brokers did not actually shop the loan[s] despite a representation that they would, [and] Plaintiffs allege that the brokers were compensated [by UWM] for doing so" (*id.* at PageID.3754).  Just as in *Wallace*, Plaintiffs thus allege that they were an "intended target of the defendants' alleged scheme to induce borrowers to agree to loans with high interest rates and other unfavorable terms" which makes "the link between the scheme and the type of injury [Plaintiffs] suffered [] plain to see." 714 F.3d at 420.

Consequently, the Court's finding that "the actions of the brokers are the proximate cause of Plaintiffs' injuries" (Order at PageID.3734) does not *foreclose* proximate causation at the pleading stage.  To the contrary, *it establishes that the allegations are sufficient to meet Plaintiffs' pleading burden*.  As the Court acknowledged, the Amended Complaint adequately alleges that brokers were acting as part of a cognizable association-in-fact enterprise.  *See* Order at PageID.3735–37. If the brokers' conduct, as part of that enterprise, and in furtherance of the RICO scheme UWM directed, "proximately caused" Plaintiffs injuries, that is sufficient to state a claim.  *See, e.g.*, *FCA*, 44 F.4th at 561; *Wallace*, 714 F.3d at 420–22.[5]

---

[5] Where a court's rulings are internally inconsistent, reconsideration is warranted. *See, e.g.*, *Maisano v. Sterling Heights Dodge, Inc.*, 2022 WL 446741, at *4–6 (E.D. Mich. Feb. 14, 2022) (granting in part plaintiff's motion to vacate and revisit court's order on summary judgment because "the Court's reasoning was inconsistent").

Finally, even if the brokers' conduct could be considered an "intervening cause" that attenuates the chain of causation (and for the reasons discussed above, it cannot), the Sixth Circuit has held that "alleged weaknesses in the chain of causation [are] matters for summary judgment, not dismissal on the pleadings." *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 619 (6th Cir. 2004). Because a district court may dismiss a complaint "'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations,'" a "RICO case with a … traditional proximate-cause problem" is usually not well suited to dismissal on the pleadings. *Id.* at 615 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)); *see also In re Duramax Diesel Litig.*, 298 F. Supp. 3d 1037, 1073 (E.D. Mich. 2018) ("A challenge to a RICO suit based on asserted lack of proximate causation … is often best resolved at summary judgment, not at the pleading stage.").

## II. The Court Misapplied Binding Precedent and Overlooked Plaintiffs' Allegations in Holding Plaintiffs Failed to Plausibly Allege Predicate Acts of Mail, Wire, and Honest Services Fraud.

The Order also holds that Plaintiffs' RICO claims are deficient because Plaintiffs failed to allege cognizable predicate acts, including mail, wire, and honest services fraud. Order at PageID.3737–45. That holding is based on two legal errors that should be fixed on reconsideration.

***First***, the Court correctly held that Plaintiffs adequately alleged that UWM engaged in (1) a scheme to defraud, and (2) use of the mails or wires in furtherance

of that scheme (Order at PageID.3739), but it erroneously concluded that Plaintiffs failed to plausibly allege UWM had the requisite intent to commit mail or wire fraud. *Id.* at PageID.3738–43.

"The intent element" of a predicate act of mail or wire fraud "is satisfied by showing the Defendants acted either with a specific intent to defraud or with reckless disregard for potentially misleading information." *Id.* at PageID.3741 (citing *Heinrich v. Waiting Angels Adoption Services, Inc.*, 668 F.3d 393, 404 (6th Cir. 2012)). The requisite intent exists if "the defendant by material misrepresentations intends the victim to accept a substantial risk that otherwise would not have been taken." *United States v. Daniel*, 329 F.3d 480, 487 (6th Cir. 2003). "Because it is difficult to prove intent to defraud from direct evidence, 'specific intent to defraud may be established by circumstantial evidence and by inferences [therefrom].'" *Goodwin*, 748 F. App'x at 655 (quoting *United States v. Winkle*, 477 F.3d 407, 413 (6th Cir. 2007)). Intent may be inferred, among other things, "'from efforts to conceal the unlawful activity, from misrepresentations, from proof of knowledge, and from profits.'" *Id.* (quoting *United States v. Davis*, 490 F.3d 541, 549 (6th Cir. 2007)). *See also Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1179–80 (11th Cir. 2025) ("a plaintiff rarely will be able to plead a defendant's actual state of mind—particularly before it has access to discovery. In assessing a defendant's knowledge, we therefore ask whether 'the plaintiff pleads factual content that allows

14

the court to draw the reasonable inference' that a defendant knew about the alleged fraud.") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The Court found that "Plaintiffs have not sufficiently alleged intent because the underlying fraudulent acts focus on the brokers' conduct, not UWM['s]." Order at PageID.3741. Accordingly, the Court concluded, the Amended Complaint's allegations as to UWM's intent were "conclusory," and it is "void of any specific factual allegations" establishing such intent existed. *Id.* at PageID.3741–42.

At the outset, Plaintiffs note that this conclusion is difficult to square with the fact that Order seemed to credit some of Plaintiffs' allegations of UWM's knowledge and intent as being plausible. *See, e.g*., Order at PageID.3710 ("UWM was aware of [brokers'] fiduciary responsibilities to their clients, including the Escues, but still induced and assisted in breaching these duties" and "UWM provided value to [brokers] in exchange for steering clients to UWM, knowing it breached fiduciary duties."); *id*. at PageID.3718 ("UWM's scheme was designed to ensure that [brokers] prioritized UWM's financial interests over the borrowers' by restricting [brokers'] ability to shop independently and offering benefits for steering clients to UWM."). The Court also recognized Plaintiffs' allegations that UWM portrayed brokers "as independent professionals who represent the customer, not the lender, and are not limited in the products they can offer" (*id.* at PageID.3702)—which UWM clearly knew to be false, given that UWM did, in fact, restrict the products

15

brokers could offer, and knew they were funneling as much as 100% of their business to UWM. Am. Compl., PageID.428–40 ¶¶ 74–94.

In addition to the small number of "intent"-related allegations cited by the Court, however, the Amended Complaint contains numerous additional allegations that, taken as true, provide substantial circumstantial proof of UWM's fraudulent intent, which the Court's analysis overlooked. Indeed, Plaintiffs plead extensive facts in each of the categories of allegations from which intent may be inferred.

| | |
|---|---|
| Misrepresentations | UWM draws borrowers—like the named Plaintiffs here—into the wholesale lending market by routinely making and amplifying false statements concerning broker "independence," perpetuating the false impression among consumers that brokers are shopping on their behalf. *Id.*, PageID.406–21 ¶¶ 46–63.<br><br>UWM's CEO, Mat Ishbia, has falsely stated, for example:<br><br>• "Mortgage brokers are completely independent. They are not captive or connected to my company or any company. They are independently shopping…" *Id.*, PageID.387 ¶ 6;<br><br>• "You find a local mortgage broker. And they shop. They send you to me at UWM, or to Quicken, or whoever the best deal for you is..." *Id.*, PageID.387–88 ¶ 8;<br><br>• "Brokers are independent loan officers that are not captive to one lender, not captive to me, not captive to anyone…." *Id.*, PageID.409 ¶ 47i.<br><br>UWM's social media accounts parrot these same false messages. *Id.*, PageID.409–10 ¶ 49, fig.3.<br><br>UWM's broker directory site, which deliberately steers users to UWM loyalist brokers, knowingly misrepresents that Plaintiffs' brokers are "independent, licensed professionals" who "shop on your behalf." *Id.*, PageID.410–11 ¶¶ 101. |

16

| | |
|---|---|
| | UWM supplies brokers with and instructs them to use marketing materials misrepresenting the brokers' purported "independence" and advised brokers not to change the UWM-authored marketing content.  *Id.*, PageID.412–21 ¶¶ 53–62.<br><br>The named Plaintiffs here unwittingly retained their UWM-loyalist brokers on "the expectation that [they] would shop for the best loan on their behalf" which was "the entire reason why the [named Plaintiffs] hired [their respective brokers] in the first place." *Id.*, PageID.410–11 ¶¶ 191, 223, 252, 277, 307.  "Th[at] result"—the named Plaintiffs being drawn into the wholesale mortgage market to retain brokers that UWM characterized as "independent" but who, in fact, funneled loans to UWM—"is precisely what UWM's scheme and the steering enterprise is designed to produce." *Id.*, PageID.410–11 ¶¶ 204, 237, 289, 318. |
| Knowledge of Falsity | UWM built a sophisticated data gathering and analysis operation to monitor and track broker loyalty.  *Id.*, PageID.436–40 ¶¶ 90–94, PageID.469 ¶ 149.<br><br>UWM's internal database enables it to know, at all times, among other things: (i) how many loans each broker has sent to UWM over various time ranges, (ii) the percentage of total loans and loan volume each broker has sent to UWM, and (iii) whether the broker is in compliance with UWM's "All-In" policy. *Id.*, PageID.437–38 ¶ 91.<br><br>UWM thus knows precisely how false both its own and brokers' representations of "independence" are.  *Id.*, PageID.436–40 ¶¶ 90–94, PageID.468–69 ¶¶ 148–49.<br><br>Each of Plaintiffs' own brokers here parroted UWM's misrepresentations of their purported "independence." PageID.488–532 ¶¶ 181, 211–14, 242, 269, 296–98; *id.* App'x A at 24.<br><br>UWM knew that its and Plaintiffs' brokers' were not, in fact, independent and that, they respectively referred over 90% of their loans to UWM. *Id.*, PageID.437–38 ¶ 91, PageID.491–527 ¶¶ 185, 217, 248, 273, 301. |

17

| | |
|---|---|
| | UWM rewarded Plaintiffs' brokers in particular for funneling loans to UWM by featuring them prominently on findamortgagebroker.com and mortgagematchup.com. *Id.*, PageID.441–52 ¶¶ 97–115. |
| Efforts to conceal | UWM conceals its involvement in creating false marketing materials for brokers, instructing them to not change any of the content because "***there is nothing UWM on it***." *Id.*, PageID.419–20 ¶¶ 60–62. |
| | With respect to each of Plaintiffs' loans, UWM "concealed and failed to disclose the material facts surrounding the true nature of the relationship between UWM and Plaintiffs' brokers, among other times." *Id.*, PageID.567–68 ¶ 369. |
| | "Defendants failed to disclose, actively concealed, and affirmatively misled Plaintiffs and the class about the corrupt relationship between UWM and brokers. Defendants falsely represented and advertised the brokers listed on UWM['s] website as having value or functions that they did not have, with intent that Plaintiffs and the class would pay for products or services they did not receive." *Id.*, PageID.618 ¶ 548. |
| | "In the course of their business, Defendants failed to disclose and actively concealed the corrupt relationship between UWM and brokers, including UWM's funding, promotion, and support of the brokers' careers and marketing efforts to proclaim to proclaim the brokers' supposed independence to borrowers." *Id.*, PageID.614 ¶ 531. |
| | As to each named Plaintiff specifically, "[n]either [the broker] *nor UWM* ever disclosed… that [the broker] had signed an agreement—UWM's Wholesale Broker Agreement—which meaningfully restricted his ability to shop for mortgage loans in their best interest. [The broker] *and UWM* also never disclosed to [each Plaintiff] that [the broker] sent the vast majority of his[/her] clients to UWM, and that he[/she] received valuable benefits from UWM in exchange." *Id.*, PageID.493–531 ¶¶ 193–94, 225–26, 254–55, 279–80, 309–10. |

18

| | |
|---|---|
| | With full knowledge that Plaintiffs' brokers were funneling clients to UWM, that UWM was providing using a system of rewards and threats to elicit that funneling, and that UWM was disseminating false claims that its broker loyalists were "independent" brokers, UWM—who was the direct counterparty on the Plaintiffs' mortgage loans—failed to disclose to Plaintiffs these facts and thus the true nature of the relationship between UWM and Plaintiffs' brokers. *Id.* |
| Profit | UWM has reaped enormous rewards from the scheme. Between 2020 and 2023, its market share in the wholesale mortgage industry increased from 33.5% to 48.1%. *Id.*, PageID.422–23 ¶ 65, PageID.470–72 ¶¶ 150–55.<br><br>Controlling for interest rate and loan type, between 2021 and 2023, UWM borrowers who got mortgages through brokers who sent at least 75% of their business to UWM paid at least $400,000,000 more in origination fees than those borrowers would have paid if their brokers had simply shopped around and obtained a loan for them with the median amount of origination fees. *Id.*, PageID.472 ¶ 154.<br><br>In particular, UWM profited by deceiving the named Plaintiffs here into agreeing to mortgage loans that generate additional revenue for UWM in the form of above-market origination fees and/or interest payments. *Id.*, PageID.494–532 ¶¶ 201, 229–34, 259–61, 285–87, 314–17. |

The Order does not address these well-pled factual allegations. But under binding Sixth Circuit precedent, they are precisely the type of allegations through which a plaintiff may plead specific intent to commit mail or wire fraud. *See Goodwin*, 748 F. App'x at 655. *See also, e.g.*, *Scharpf v. Gen. Dynamics Corp.*, 137 F.4th 188, 201 (4th Cir. 2025) ("Courts usually must infer intent from circumstantial evidence. That is why Rule 9(b) states that *'intent ... may be alleged generally,'* and

19

why we do not apply a heightened pleading standard to the intent elements of fraudulent allegations.") (emphasis added). To the extent there is any question as to whether these facts are sufficient to satisfy the standard, that is a question of "fact to be resolved by the trier of facts"—not the Court. *Daniel*, 329 F.3d at 487.[6]

**Second**, the Court erroneously concluded that Plaintiffs failed to plausibly allege honest services fraud because "Plaintiffs simply allege a mere failure to disclose a conflict of interest" and "[t]he only payment or 'kickback' alleged in the Amended Complaint was the commission paid for closing the loan." Order at PageID.3744. That is incorrect. The payments or "kickbacks" brokers received from UWM—including the named Plaintiffs' brokers specifically—are not limited to "commissions." Rather, the Amended Complaint describes numerous other offers of value including, among other things, (i) preferential listing on UWM's powerful broker search engine, Am. Compl., PageID.446–52 ¶¶ 105–115; (ii) preferential

---

[6] Plaintiffs respectfully suggest that because the Court did not adequately credit these allegations, nor the reasonable inferences therefrom, the Court should also reconsider its dismissal of the aiding and abetting breach of fiduciary duty claims under Florida, California, and Tennessee law, which the Court dismissed for Plaintiffs' failure to plead UWM's actual knowledge. In addition to the allegations summarized above, the Court noted in its Order that, at a minimum, UWM would have known there was a statistical probability brokers were breaching their duties, *i.e.*, if they "predominantly work with UWM." Order at PageID.3706–07. The allegations here established as much, since many brokers—*including the named Plaintiffs' brokers specifically*—gave UWM nearly 100% of their business, and UWM knew this because, as alleged, it meticulously tracked the brokers funneling. Am. Compl., PageID.437–38 ¶ 91, PageID.491–527 ¶¶ 185, 217, 248, 273, 301.

20

underwriting turn times, *id.*, PageID.453–55 ¶¶ 119–21; (iii) all expenses paid trips and vacations, *id.*, PageID.457–59 ¶¶ 125–27, 129; and (iv) lavish meals, parties, and live entertainment, *id.* PageID.457–59 ¶¶ 125–29.  As discussed above, the Court acknowledged these very allegations elsewhere in its Order where it found that Plaintiffs adequately alleged a kickback scheme under RESPA.  *See* Order at PageID.3753–54.)  Likewise, the Court found in its Order elsewhere that Plaintiffs adequately alleged that UWM and the brokers participated in a scheme to deceive borrowers into UWM loans based on the misrepresentation that the brokers would provide the service of shopping the loans, when they did not.  *Id.* at PageID.3769–70, 3737.  Plaintiffs' allegations of bribes and kickbacks offered in exchange for funneling behavior are therefore far from "conclusory."

## III.  The Court Misconstrued and Misapplied the Economic Loss Doctrine.

The Court should also grant reconsideration of its conclusions regarding the "economic loss doctrine," which does not bar RICO claims under Florida and California law.  The Court's contrary analysis was incorrect for three reasons.

***First***, as the Court itself recognized, Plaintiffs' claims do not arise under the mortgage contracts.  *See* Order at PageID.3725 ("the mortgages themselves are not the basis for the injurious conduct.  Rather, as Plaintiffs argue, these causes of action arise from the alleged false misrepresentations made by Defendants and their brokers in presenting the loans to Plaintiffs *prior to* entering into the mortgages.").  Indeed,

21

Plaintiffs allege Defendants were engaged in a fraudulent scheme to steer Plaintiffs into UWM mortgages through a series of deceptions and breaches of fiduciary duty. Even if the economic loss rule could otherwise apply, Florida and California recognize an exception for fraudulent inducement claims. *Pulte Home Corp. v. Osmose Wood Preserving, Inc.*, 60 F.3d 734, 742 (11th Cir. 1995) ("Although the economic loss rule bars recovery for tort claims arising from breach of a contract, the doctrine does not preclude a claim for damages occasioned by an independent tort, including fraud in the inducement of a contract."); *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1021 (N.D. Cal. 2020) (under California law the economic loss doctrine does not bar claims for fraudulent inducement to a contract).

***Second***, the economic loss doctrine under Florida and California law does not and cannot bar Plaintiffs' federal RICO claims. *All Care Nursing Service, Inc. v. High Tech Staffing Services, Inc.*, 135 F.3d 740, 745 (11th Cir. 1998) (holding that Florida and federal RICO claims are not barred by the economic loss rule); *Bardfield v. Chisholm Properties Circuit Events, LLC*, 2009 WL 1940575, at *1 (N.D. Fla. July 6, 2009) (same); *Kuber v. Berkshire Life Ins. Co. of Am.*, 2020 WL 646870, at *2, n.5 (S.D. Fla. Jan. 27, 2020) (holding that neither Florida nor California bar RICO claims under the economic loss rule).[7] Put differently, if Plaintiffs adequately

---

[7] *See also, e.g.*, *Aetna Inc. v. People's Choice Hosp., LLC*, 2019 WL 12536916, at *17–18 (W.D. Tex. Mar. 28, 2019) (holding that the economic loss doctrine is not "meant to apply to bar RICO claims" and "the damages Plaintiffs seek from their

allege federal RICO claims, state common law cannot bar (*i.e.*, does not preempt) the federally mandated relief afforded to Plaintiffs.

**Third**, under Florida law the economic loss rule applies only in products liability cases.  This limitation has been explicitly stated in multiple cases, including by the Florida Supreme Court.  *Tiara Condo. Ass'n v. Marsh & McLennan Co.*, 110 So. 3d 399, 401 (Fla. 2013).  And under California law, the rule does not apply to intentional torts. *Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 38 (Cal. 2024).

## IV.    The Court Should Reconsider its Dismissal "With Prejudice."

Even if the Court does not believe it erred, Plaintiffs should have an opportunity to fix perceived pleading deficiencies.  There is a "well-established preference for allowing claims to be decided on their merits where possible." *Burkeen v. A.R.E. Accessories, LLC*, 758 F. App'x 412, 416 (6th Cir. 2018) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Accordingly, "[w]hen a motion to dismiss a complaint is granted, courts typically permit the losing party leave to amend." *Brown v. Matauszak*, 415 F. App'x 608, 614 (6th Cir. 2011).  "[D]ismissal with prejudice and without leave to amend is not appropriate unless it is clear on *de novo* review that the complaint could not have been saved by an amendment." *Burkeen*, 758 F. App'x at 416 (quoting *Newberry v. Silverman*, 789 F.3d 636, 645–

---

RICO claims do not wholly overlap with the economic losses related to any agreement, as RICO expressly provides for the recovery of treble damages.").

46 (6th Cir. 2015)); *see also* 6 Fed. Prac. & Proc. Civ. § 1483 ("if it is at all possible that the party against whom a dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend").

Where, as here, a district court has dismissed claims with prejudice, but "without indicating any reason to believe that amendment would have been futile and without providing any other justifications for granting dismissal with prejudice," the Sixth Circuit has found such dismissals should have been "without prejudice and with leave to amend." *See, e.g.*, *Burkeen*, 758 F. App'x at 416; *Newberry*, 789 F.3d at 645–46; *Willingham v. Kneeland Indus., Inc.*, 415 F.2d 755, 756 (6th Cir. 1969).

Here, as discussed above, Plaintiffs believe the Court should reconsider its Order and reinstate at least Plaintiffs' RICO claims because, under binding Sixth Circuit precedent, the Plaintiffs' allegations are sufficient to meet their pleading burden.  However, at a minimum, the reasons set forth above make clear Plaintiffs' claims are not futile.  Indeed, as the Court has acknowledged, "Plaintiffs have at least stated some plausible claims for relief."  Order at PageID.3784.  As such, and consistent with the liberal standard for allowing pleading amendments, the Court should modify its dismissal of Plaintiffs' claims to dismissals without prejudice, so that Plaintiffs may supplement their allegations to the extent necessary.

Plaintiffs filed their original Complaint on April 2, 2024.  ECF No. 1.  After the parties extended Defendant's time to respond, on August 30, 2024, Plaintiffs

amended their Complaint as a matter of course under Rule 15(a)(1).  ECF No. 21.

There have been no other amendments nor "repeated failures to cure deficiencies."

*Foman*, 371 U.S. at 182.  An opportunity to amend is therefore appropriate.

## CONCLUSION

For the reasons set forth above, to prevent manifest injustice and in the interest of efficiency, Plaintiffs respectfully submit that the Court should grant the Motion for Reconsideration and deny Defendants' motion to dismiss as to Counts 1 and 2, and amend the Court's findings regarding Defendants' lack of knowledge as it relates to the claims for Defendants' aiding and abetting breach of fiduciary duty and civil conspiracy claims.  The Court should also schedule a hearing for oral argument on the motion to dismiss to the extent it would aid its reconsideration. Finally, even if the Court does not believe reconsideration of any rulings in the Order is warranted, the Court should amend the dismissal with prejudice of at least Counts 1, 2, 4, and 5 to dismissal without prejudice and with leave to amend.

**Dated:  October 14, 2025**

John T. Zach
Marc Ayala
Andrew P. Steinmetz
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards
New York, New York 10001
Tel.: (212) 446-2300

By:  */s/ Brandon C. Hubbard*
Brandon C. Hubbard (P71085)
**DICKINSON WRIGHT PLLC**
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226
Tel.: (517) 371-1730

Tyler Ulrich
**BOIES SCHILLER FLEXNER LLP**
100 SE Second Street
Miami Florida 33131
Tel.: (305) 357-8422

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 14, 2025, I caused the foregoing document to be filed with the Clerk of the Court using CM/ECF, which will effectuate service upon all counsel of record.

/s/ *Brandon C. Hubbard*

Brandon C. Hubbard (P71085)
**DICKINSON WRIGHT PLLC**
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226
Tel.: (517) 371-1730

*Attorney for Plaintiffs*