## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

BRIAN P. WEATHERILL, *et al.*

                        Plaintiffs,

v.

UNITED WHOLESALE
MORTGAGE, LLC

                        Defendant.

Case No. 2:24-cv-10853-BRM-DRG

Hon. Brandy R. McMillion,
United States District Judge

Hon. David R. Grand,
Magistrate Judge

## DEFENDANT UNITED WHOLESALE MORTGAGE, LLC'S
## <u>RENEWED MOTION TO STRIKE CLASS ALLEGATIONS</u>

In its September 30, 2025 Order, ECF 62 ("Order"), the Court dismissed nine of the eleven claims in the Amended Complaint, ECF 21 ("Complaint" or "FAC"), as well as four named Plaintiffs and three Defendants, leaving only the claims of named Plaintiffs Brian P. Weatherill, Jill Jeffries, and Daniel Singh against United Wholesale Mortgage, LLC ("UWM"). Given the dismissals and "rather than try to parse through the issues in this motion [to strike class allegations] related to claims that have already been dismissed," the Court granted UWM leave to refile a motion to strike class allegations focused on the remaining Plaintiffs and claims. Order, ECF 62 at PageID.3782; *id.* at PageID.3781 (noting that UWM had reserved all rights). Now, with the Court's leave, UWM moves, pursuant to Fed. R. Civ. P.

23(c)(1) and 23(d)(1)(D), for an order striking all class allegations from the Complaint, as described further below and in the attached Memorandum of Law.

The face of the Complaint makes plain that, as a matter of law, class certification pursuant to Fed. R. Civ. P. 23 is improper for Plaintiffs' remaining claims. Indeed, both (1) Plaintiffs' proposed nationwide class under the Real Estate Settlement Procedures Act ("RESPA") and (2) their sprawling multi-state class of 41 or more consumer protection claims are wholly unprecedented in the Sixth Circuit—no such litigation classes have ever been certified. For fairness and efficiency and to avoid unnecessary expense and waste of resources, at this "early practicable time," Fed. R. Civ. P. 23(c)(1)(A), the Court should strike the class allegations pursuant to Fed. R. Civ. P. 23(d)(1)(D).

More specifically, UWM requests that the Court grant this motion and strike all class allegations remaining in the Complaint, *see, e.g.*, FAC ¶ 327-45, including: (1) any nationwide class for Plaintiffs' remaining RESPA claim, *see id.* ¶¶ 328, 392; (2) any multi-state subclass allegedly supported by the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim, *see id.* ¶¶ 332, 541; and (3) any statewide subclass for the FDUTPA claim, *see id.* ¶ 541.

Pursuant to E.D. Mich. Local Rule 7.1(a), Counsel for UWM sought concurrence in the relief requested here from Counsel for Plaintiffs. Concurrence was not obtained.

2

Dated:  October 28, 2025

Respectfully submitted,

*/s/ Jeffrey J. Jones*

Rebekah B. Kcehowski
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
(412) 391-3939
rbkcehowski@jonesday.com

Jeffrey J. Jones (P80231)
Stephen J. Cowen (P82688)
Amanda K. Rice (P80460)
Andrew J. Clopton (P80315)
JONES DAY
150 W. Jefferson Ave, Suite 2100
Detroit, MI 48226
(313) 733-3939
jjjones@jonesday.com
scowen@jonesday.com
arice@jonesday.com
aclopton@jonesday.com

*Counsel for Defendant*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

|  |  |
|---|---|
| BRIAN P. WEATHERILL, *et al*. | |
| Plaintiffs, | Case No. 2:24-cv-10853-BRM-DRG |
| v. | Hon. Brandy R. McMillion,<br>United States District Judge |
| UNITED WHOLESALE<br>MORTGAGE, LLC | Hon. David R. Grand,<br>Magistrate Judge |
| Defendant. | |

# DEFENDANT UNITED WHOLESALE MORTGAGE, LLC'S MEMORANDUM OF LAW IN SUPPORT OF <u>RENEWED MOTION TO STRIKE CLASS ALLEGATIONS</u>

# **TABLE OF CONTENTS**

**Page**

STATEMENT OF ISSUES PRESENTED.................................................................ix

CONTROLLING OR MOST APPROPRIATE AUTHORITY .............................xi

INTRODUCTION ................................................................................................1

BACKGROUND ..................................................................................................2

LEGAL STANDARD............................................................................................5

ARGUMENT .......................................................................................................7

I.     As Every Federal Circuit To Consider The Issue Agrees, Plaintiffs'
       RESPA Section 8 Claims Demand Loan-by-Loan Analysis That Bars
       Class Treatment As A Matter Of Law............................................................7

II.    Plaintiffs' FDUTPA Claim Cannot Support a Multi-State Class.................12

       A.     Plaintiffs lack out-of-state standing to bring a multi-state class ........13

       B.     Broad legal variation also negates any multi-state class...................16

III.   On The Face Of The Complaint, Plaintiffs' State-Wide FDUTPA
       Claim Requires Fact-Dependent Analysis Of Unique Consumer
       Circumstances..............................................................................................19

CONCLUSION ....................................................................................................25

i

# TABLE OF AUTHORITIES

Page

CASES

*Amar Shakti Enters. v. Wyndham Worldwide*,
2011 WL 3687855 (M.D. Fla. 2011)...................................................................13

*Anderson v. New Dimen. Fin. Servs.*,
2001 WL 883700 (N.D. Ill. 2001) .......................................................................9

*Angelo v. Parker*,
275 So. 3d 752 (Fla. Dist. Ct. App. 2019).........................................................19

*Anger v. Accretive Health*,
2015 WL 5063269 (E.D. Mich. 2015)..........................................................15, 16

*Bennett v. Quest Diagnostics*,
2023 WL 3884117 (D.N.J. 2023) ..................................................................20, 21

*Bjustrom v. Trust One Mortg.*,
322 F.3d 1201 (9th Cir. 2003) .............................................................................9

*Black Diamond Props. v. Haines*,
940 So. 2d 1176 (Fla. Dist. Ct. App. 2006).......................................................21

*BMW v. Gore*,
517 U.S. 559 (1996)............................................................................................17

*Boyer v. Div. Consults.*,
306 F.R.D. 536 (E.D. Mich. 2015) .......................................................................7

*California v. Texas*,
593 U.S. 659 (2021)............................................................................................14

*Carriuolo v. GM*,
823 F.3d 977 (11th Cir. 2016) ...........................................................................24

*Chapman v. GM*,
2024 WL 698789 (E.D. Mich. 2024)...................................................................14

*Cohen v. Implant Innovations*,
259 F.R.D. 617 (S.D. Fla. 2008)...............................................................17, 21

*Colley v. P&G*,
2016 WL 5791658 (S.D. Ohio 2016) .............................................7, 17, 19, 24

*Conomos v. Chase Corp.*,
1998 WL 118154 (S.D.N.Y. 1998).........................................................................9

*Corder v. Ford*,
272 F.R.D. 205 (W.D. Ky. 2011) .........................................................................17

*Davis v. Colerain Twp.*,
51 F.4th 164 (6th Cir. 2022) ...............................................................................14

*Deere Constr. v. CEMEX Constr. Materials*,
2016 WL 8542540 (S.D. Fla. 2016) .......................................................20, 21, 23

*Fallick v. Nationwide Mut. Ins.*,
162 F.3d 410 (6th Cir. 1998) ...............................................................................14

*Flores v. FCA*,
2021 WL 1122216 (E.D. Mich. 2021).............................................................15, 16

*Fox v. Saginaw Cnty.*,
67 F.4th 284 (6th Cir. 2023) .........................................................................14, 15

*Frank v. Gaos*,
586 U.S. 485 (2019)..............................................................................................15

*Glass v. Tradesmen Intl., LLC*,
505 F. Supp. 3d 747 (N.D. Ohio 2020) .............................................................19

*Glover v. Standard Fed. Bank*,
283 F.3d 953 (8th Cir. 2002) .............................................................8, 9, 10, 12

iii

*Heimmermann v. First Union Mortg. Corp.*,
    305 F.3d 1257 (11th Cir. 2002) ............................................................9

*Howland v. First Am. Title Ins.*,
    672 F.3d 525 (7th Cir. 2012) ...............................................8, 9, 11, 12

*Hummel v. Tamko Bldg. Prods.*,
    303 F. Supp. 3d 1288 (M.D. Fla. 2017)............................................21

*In re Am. Med. Sys.*,
    75 F.3d 1069 (6th Cir. 1996) ...............................................................17

*In re Bridgestone/Firestone*,
    288 F.3d 1012 (7th Cir. 2002) .............................................................17

*In re Ford*,
    2012 WL 379944 (D.N.J. 2012) .........................................................21

*In re Insulin Pricing Litig.*,
    2024 WL 416500 (D.N.J. 2024) .........................................................17

*In re Motions to Certify Classes*,
    715 F. Supp. 2d 1265 (S.D. Fla. 2010)..............................................20

*In re Nissan*,
    122 F.4th 239 (6th Cir. 2024) ..............................................................18

*In re Packaged Ice Antitrust Litig.*,
    779 F. Supp. 2d 642 (E.D. Mich. 2011) ..............................................7

*In re Sears*,
    2012 WL 1015806 (N.D. Ill. 2012) ....................................................21

*Ivanoff v. Walmart*,
    2025 WL 2207924 (S.D. Ohio 2025) .................................................17

*Jones v. Lubrizol Adv. Materials*,
    583 F. Supp. 3d 1045 (N.D. Ohio 2022) ..............................................7

*Jones v. Micron*,
    400 F. Supp. 3d 897 (N.D. Cal. 2019) ................................................................15

*Karnuth v. Rodale*,
    2005 WL 1683605 (E.D. Pa. 2005) ....................................................................17

*Kiefaber v. HMS*,
    284 F.R.D. 370 (E.D. Va. 2012) ...........................................................................9

*Lewis v. Casey*,
    518 U.S. 343 (1996) ............................................................................................15

*Loreto v. P&G*,
    2013 WL 6055401 (S.D. Ohio 2013) .........................................................6, 7, 24

*Lyon v. Caterpillar*,
    194 F.R.D. 206 (E.D. Pa. 2000) ....................................................................17, 19

*Miami Auto. Retail v. Baldwin*,
    97 So. 3d 846 (Fla. Dist. Ct. App. 2012) .....................................................passim

*Miller v. GM*,
    773 F. Supp. 3d 461 (E.D. Mich. 2025) .............................................................15

*Norman v. FCA*,
    696 F. Supp. 3d 359 (E.D. Mich. 2023) .............................................................15

*O'Neill v. Home Depot*,
    243 F.R.D. 469 (S.D. Fla. 2006) ........................................................................21

*O'Sullivan v. Countrywide Home Loans*,
    319 F.3d 732 (5th Cir. 2003) ...............................................................................9

*Oom v. Michaels Cos.*,
    2017 WL 3048540 (W.D. Mich. 2017) ..............................................................17

*Pettrey v. Enter. Title Agency*,
    241 F.R.D. 268 (N.D. Ohio 2006) ................................................................11, 12

*Pilgrim v. Univ. Health Card*,
  660 F.3d 943 (6th Cir. 2011) ........................................................................passim

*Pilgrim v. Univ. Health Card*,
  2010 WL 1254849 (N.D. Ohio 2010) ....................................................................6

*Pop's Pancakes v. NuCO2*,
  251 F.R.D. 677 (S.D. Fla. 2008) ..........................................................................21

*Porsche Cars v. Diamond*,
  140 So. 3d 1090 (Fla. Dist. Ct. App. 2014) .........................................................21

*Rikos v. P&G*,
  799 F.3d 497 (6th Cir. 2015) ........................................................................20, 24

*Rivers of Life Int'l Mins. v. GuideOne Ins.*,
  2022 WL 17261845 (W.D. Tenn. 2022) ..........................................................14, 15

*Rollins v. Butland*,
  951 So. 2d 860 (Fla. Dist. Ct. App. 2006) ......................................................21, 24

*Rosen v. Tenn. Comm'r*,
  288 F.3d 918 (6th Cir. 2002) ........................................................................14, 15

*Serrano v. Campbell Soup Co.*,
  773 F. Supp. 3d 127 (D.N.J. 2025) ......................................................................15

*Snowdy v. Mercedes-Benz*,
  2024 WL 1366446 (D.N.J. 2024) .........................................................................15

*Soo v. Lorex Corp.*,
  2020 WL 5408117 (N.D. Cal. 2020) ....................................................................15

*Speerly v. GM*,
  143 F.4th 306 (6th Cir. 2025) ........................................................................13, 18

*Spokeo v. Robins*,
  578 U.S. 330 (2016) ............................................................................................14

*Stevenson v. Louis Dreyfus Corp.*,
   811 P.2d 1308 (N.M. 1991) ...............................................................................17

*Szep v. GM*,
   491 F. Supp. 3d 280 (N.D. Ohio 2020) ............................................................14

*Toldy v. Fifth Third Mortg.*,
   2011 WL 4634154 (N.D. Ohio 2011)................................................................11

*Townhouse Rest. v. NUCO2*,
   2020 WL 5440581 (S.D. Fla. 2020) ............................................................17, 21

*Townhouse Rest. v. NuCO2*,
   2021 WL 230021 (S.D. Fla. 2021) ...................................................................20

*TransUnion v. Ramirez*,
   594 U.S. 413 (2021).........................................................................................14

*Withrow v. FCA*,
   2021 WL 2529847 (E.D. Mich. 2021).........................................................13, 16

*Wozniak v. Ford*,
   2019 WL 108845 (E.D. Mich. 2019).................................................................15

## Statutes

12 U.S.C.
   § 2602..........................................................................................................9, 10
   § 2607.......................................................................................................passim

Ariz. Rev. Stat. § 44-1522 ......................................................................................17

5 Okla. Stat. § 761.1...............................................................................................17

S.C. Code § 39-5-140..............................................................................................17

## Other Authorities

Fed. R. Civ. P. 23 ...............................................................................................passim

12 C.F.R.
  § 1024.2.........................................................................................10
  § 1024.14............................................................................................8

RESPA Policy Statement 2001-1, 66 Fed. Reg. 53052.......................................8, 11

CFPB, RESPA Docs., at
  https://files.consumerfinance.gov/f/documents/cfpb_RESPA_Other
  _Applicable_Documents-HUD.pdf ....................................................................8

## <u>STATEMENT OF ISSUES PRESENTED</u>

**1.     In a case that expressly pleads brokers provided RESPA "services," do the individualized analyses required by 12 U.S.C. § 2607(c)(2) preclude class certification as numerous courts have held, including all federal circuit courts to have considered the issue?**

Defendant's answer: Yes

Plaintiffs' answer: No

This Court should answer: Yes

**2.     Do the remaining three Florida-based named Plaintiffs lack standing to pursue multi-state class claims under the consumer protection laws of 40 or more states to which they allege no connection?**

Defendant's answer: Yes

Plaintiffs' answer: No

This Court should answer: Yes

**3.     Alternatively, and independently, does the substantial legal variation among state consumer protection statutes preclude class certification of a multi-state class, as a matter of law, as the Sixth Circuit has held under similar circumstances?**

Defendant's answer: Yes

Plaintiffs' answer: No

This Court should answer: Yes

ix

**4.     In a case premised on individual circumstances and not uniform representations, as the allegations in the Complaint make plain, do the individualized analyses required by FDUTPA preclude class certification of even a Florida-only class, as many courts have held in similar cases?**

Defendant's answer: Yes

Plaintiffs' answer: No

This Court should answer: Yes

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

**Motion to Strike Standard:**

*Pilgrim v. Univ. Health Card*, 660 F.3d 943 (6th Cir. 2011)

*Jones v. Lubrizol*, 583 F. Supp. 3d 1045 (N.D. Ohio 2022)

*Loreto v. P&G*, 2013 WL 6055401 (S.D. Ohio 2013)

*Colley v. P&G*, 2016 WL 5791658 (S.D. Ohio 2016)

**RESPA:**

*Howland v. First Am. Title Ins.*, 672 F.3d 525 (7th Cir. 2012)

*O'Sullivan v. Countrywide Home Loans*, 319 F.3d 732 (5th Cir. 2003)

*Glover v. Standard Fed. Bank*, 283 F.3d 953 (8th Cir. 2002)

*Bjustrom v. Trust One Mortg.*, 322 F.3d 1201 (9th Cir. 2003)

*Heimmermann v. First Union Mortg. Corp.*, 305 F.3d 1257 (11th Cir. 2002)

*Pettrey v. Enter. Title Agency*, 241 F.R.D. 268 (N.D. Ohio 2006)

*Toldy v. Fifth Third Mortg.*, 2011 WL 4634154 (N.D. Ohio 2011)

RESPA Policy Statement 2001-1, 66 Fed. Reg. 53052

**Standing:**

*Fox v. Saginaw Cnty.*, 67 F.4th 284 (6th Cir. 2023)

*Rosen v. Tenn. Com'r*, 288 F.3d 918 (6th Cir. 2002)

*Davis v. Colerain Twp.*, 51 F.4th 164 (6th Cir. 2022)

*Withrow v. FCA*, 2021 WL 2529847 (E.D. Mich. 2021)

*Rivers of Life v. GuideOne*, 2022 WL 17261845 (W.D. Tenn. 2022)

*Anger v. Accretive Health*, 2015 WL 5063269 (E.D. Mich. 2015)

*Chapman v. GM*, 2024 WL 698789 (E.D. Mich. 2024)

*Norman v. FCA*, 2023 WL 6388926 (E.D. Mich. 2023)

*Snowdy v. Mercedes-Benz*, 2024 WL 1366446 (D.N.J. 2024)

*Jones v. Micron*, 400 F. Supp. 3d 897 (N.D. Cal. 2019)

**Legal Variation:**

*Pilgrim v. Univ. Health Card*, 660 F.3d 943 (6th Cir. 2011)

*In re Am. Med. Sys.*, 75 F.3d 1069 (6th Cir. 1996)

*Lyon v. Caterpillar*, 194 F.R.D. 206 (E.D. Pa. 2000)

*Speerly v. GM*, 143 F.4th 306 (6th Cir. 2025)

*In re Nissan*, 122 F.4th 239 (6th Cir. 2024)

*In re Bridgestone/Firestone*, 288 F.3d 1012 (7th Cir. 2002)

*Townhouse Rest. v. NUCO2*, 2020 WL 5440581 (S.D. Fla. 2020)

**FDUTPA:**

*Miami Auto. Retail v. Baldwin*, 97 So. 3d 846 (Fla. Dist. Ct. App. 2012)

*Rollins v. Butland*, 951 So. 2d 860 (Fla. Dist. Ct. App. 2006)

*Porsche Cars v. Diamond*, 140 So. 3d 1090 (Fla. Dist. Ct. App. 2014)

*Black Diamond Props. v. Haines*, 940 So. 2d 1176 (Fla. Dist. Ct. App. 2006)

*In re Motions to Certify Classes*, 715 F. Supp. 2d 1265 (S.D. Fla. 2010)

*Pop's Pancakes v. NuCO2*, 251 F.R.D. 677 (S.D. Fla. 2008)

*Deere Constr. v. CEMEX Constr. Materials*, 2016 WL 8542540 (S.D. Fla. 2016)

*O'Neill v. Home Depot*, 243 F.R.D. 469 (S.D. Fla. 2006)

# INTRODUCTION

The three named Plaintiffs left in this action—Brian Weatherill, Jill Jeffries, and Daniel Singh ("Plaintiffs")—bought homes within a 90-minute drive of Tampa, Florida, but purport to represent sprawling nationwide and multi-state classes of mortgage borrowers allegedly deceived by thousands of different independent mortgage brokers in hundreds of thousands of separate, unrelated transactions, each with differing agreements, terms, and disclosures, in every state in the nation. After the Court dismissed the majority of the Complaint, two claims remain—a federal claim under the Real Estate Settlement Procedures Act ("RESPA") and a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). Both are fundamentally unfit for class treatment for the reasons set out below. Because Plaintiffs' proposed nationwide and multi-state classes are wholly unprecedented and these issues are plain from the pleadings, federal law, fairness, and efficiency require the Court to strike the improper class allegations at the outset.

**First,** Plaintiffs' RESPA Section 8 class cannot be certified as a matter of law because Plaintiffs allege in the Complaint—over and again—that brokers who originated UWM loans provided some "services" as defined by RESPA. In such cases, **all five federal circuit courts** to consider the issue (plus two federal agencies) have agreed unanimously that liability requires transaction-by-transaction analyses that foreclose class treatment as a matter of law.

1

**Second,** the FDUTPA claim cannot support a wide-ranging, multi-state class with claims and putative members from 40 other states, as the Complaint purports to do—without even citing (let alone alleging any claims under) those other states' laws.  The Florida-based Plaintiffs lack out-of-state standing to invoke other states' consumer protection laws, and broad legal variation among those consumer laws forecloses class treatment as a matter of law, as the Sixth Circuit has held.

**Third,** even a Florida-only FDUTPA class is improper because the Complaint makes clear this case does not involve uniform misrepresentations made in the same circumstances for all class members, depending instead on thousands of one-on-one individualized alleged "frauds" between brokers and borrowers.  Courts consistently hold that such individual circumstances preclude certification of FDUTPA claims.

The Sixth Circuit has never allowed a RESPA class like this or anything close to the 41-statute consumer protection litigation class put forward here.  These unprecedented class allegations are improper, will wrongly consume the Court's and the parties' resources, and should be stricken at the outset.

## BACKGROUND

Plaintiffs allege claims against UWM, a wholesale mortgage lender, based on hundreds of thousands of individual transactions originated by independent mortgage brokers across the country.  The Complaint attempts to frame UWM as "orchestrating … a deliberate scheme"—citing UWM's websites, social media, SEC

filings, and CEO statements.  FAC ¶¶ 1, 40, 47, 49-51, 103.  But these allegations are all atmospheric, as Plaintiffs also repeatedly plead that the transactions at issue are unique, one-on-one interactions between borrowers and brokers.  As the Court has explained, the allegedly "false representations" and "underlying fraudulent acts focus on the brokers' conduct, not UWM."  Order at PageID.3734, .3741.

Start with Plaintiff Brian Weatherill.  The Complaint alleges he bought his home in Bushnell, Florida, on June 8, 2021, using a Florida-based mortgage broker. FAC ¶¶ 239-42, 256.  Weatherill does not allege seeing or hearing any UWM ad or statement.  Instead, Weatherill says he received and relied on **personal advice provided by his broker** in selecting UWM as his lender.  *Id.* ¶ 252.  The Complaint goes on to allege that Weatherill's broker advertised on her firm's Facebook that she "[p]rovides consumers multiple loan options."  *Id.* ¶ 242 & Fig. 34.  Weatherill also signed an agreement that expressly states his broker was "an independent contractor," "not [his] agent" and "cannot guarantee the lowest price or best terms available."  *See* ECF 30-5 at PageID.1629.  The broker then "originated Weatherill's … conventional 30-year mortgage loan at a fixed interest rate of 2.999%," for $343,200.  FAC ¶ 256.  Weatherill allegedly paid "$10,682.50 in closing costs," including "an origination fee of $3,071.64," with his broker earning "a commission of $9,438.00 (2.75% of the loan amount) … paid by UWM."  *See id*. ¶¶ 257-58.

Plaintiffs Jill Jeffries and Daniel Singh together bought their home two years

later in 2023, 147 miles away in North Port, Florida, using a different Florida broker, *id.* ¶¶ 291-93, but only after "visit[ing] his Facebook page to understand more about his business," *id.* ¶ 305. That broker's Facebook page included a post showing a plaque "from [his] partners at UWM" for being a Top 1% UWM broker in 2022, as well photos from a trip to New York with UWM. *Id.* ¶¶ 296, 302, Figs. 36, 38. The broker later "originated [their] loan from UWM," a "30-year mortgage loan at a fixed interest rate of 7.5% for … $320,100." *Id.* ¶ 311. Jeffries and Singh allegedly paid $14,497.15 in closing costs, "of which $8,933.85 was categorized as loan costs," including a $4,304.40 commission. *Id.* ¶¶ 312-13.

As the Complaint admits, Plaintiffs' stories are just a few "among thousands." *Id.* ¶ 203. Indeed, "hundreds of thousands." *Id.* ¶ 1. Each involves a unique deal between a putative class member and a mortgage broker, each on its own facts, in different years, involving different representations, including on broker social media and websites, embodied in separate mortgage contracts, with different broker agreements and terms, in different states—all unrelated but resulting in a UWM loan.

On September 30, 2025, the Court granted and denied in part UWM's motion to dismiss the Complaint, eliminating nine of eleven claims and four of seven named Plaintiffs based on individual varying circumstances for each. The Court, for example, dismissed the alleged RESPA claims for all Plaintiffs except Jeffries and Singh because they "were the only two … that had a mortgage close within" the

RESPA statute of limitations. *See* Order at PageID.3751 & n.9. The Court also considered the statutory consumer protection claims state by state. *See id.* at PageID.3761-74. The Court dismissed Plaintiff Kim Schelble's North Carolina consumer protection claim for lack of proximate cause and failure to allege requisite commercial bribery. *Id.* at PageID.3762-3764. The Court dismissed the Escue Plaintiffs' Tennessee statutory consumer protection claim for lack of proximate cause. *Id.* at PageID.3766. And the Court rejected Ken Morandi's two California consumer protection claims due to waiver, lack of proximate cause, and failure to comply with notice requirements. *Id.* at PageID.3769-3774. Only the Florida Plaintiffs' statutory consumer protection claims survived. *Id*. at PageID.3769. So, "[t]he only remaining claims are the RESPA claim for Jeffries and Singh, and the [FDUTPA] claim as to Weatherill, Jeffries, and Singh." *Id.* at PageID.3781.

Plaintiffs seek a "Nationwide Class" for their RESPA claim. FAC ¶¶ 328, 392. On the FDUTPA claim, Plaintiffs seek a multi-state class "of all class members who purchased UWM mortgages in (a) Florida, and (b) all states with substantially similar" law. *Id.* ¶ 541, ¶ 332 & Table F. Failing that, they seek a Florida-only class. *Id.* Plaintiffs define their classes, in relevant part, as "[a]ll persons … who obtained a UWM mortgage … that was originated by a mortgage broker." *Id.* ¶¶ 328, 332.

## LEGAL STANDARD

Fed. R. Civ. P. 23 "governs class actions in federal court." *Pilgrim v. Univ.*

5

*Health Card*, 660 F.3d 943, 945-46 (6th Cir. 2011).  Under Rule 23, "a claimant must satisfy two sets of requirements:" (1) "the four prerequisites under Rule 23(a)," *i.e.*, numerosity, commonality, typicality, and adequacy, and "(2) the prerequisites [under] Rule 23(b)."  *Id.*  For a damages class under Rule 23(b)(3), the additional prerequisites include (a) predominance ("questions of law or fact common to class members predominate over [those] affecting only individual[s]") and (b) superiority ("a class action is [a] superior … method [for] adjudicating the controversy").  "A failure on either front dooms the class."  *Pilgrim*, 660 F.3d at 946; *see Loreto v. P&G*, 2013 WL 6055401, at *5-6 (S.D. Ohio 2013) (striking allegations).

The Court must determine whether class treatment is appropriate "[a]t an early practicable time."  Fed. R. Civ. P. 23(c)(1)(A).  "[N]othing in the rules says that the court must await a motion by the plaintiffs."  *Pilgrim*, 660 F.3d at 949.  Indeed, in *Pilgrim*, the district court granted a pre-discovery motion to strike class allegations for failure to meet the commonality and predominance requirements under Rule 23(a)(2) and (b)(3).  2010 WL 1254849, at *5 (N.D. Ohio 2010).  The Sixth Circuit affirmed, holding the order was not "premature" and the lower court was right in its "legal determination" that the class allegations were improper, especially when there was no basis to conclude "discovery … would have helped them."  660 F.3d at 949.

So, under *Pilgrim* and Rule 23(d), early motions to strike class allegations should be granted where there is a "central defect" that is plain from the pleadings

and that "preclude[s] class certification" as a matter of law. *Id*. As many cases have held, courts must assess these issues on the pleadings and strike legally insufficient class claims. *See Jones v. Lubrizol Adv. Materials*, 583 F. Supp. 3d 1045, 1054-55 (N.D. Ohio 2022) (striking "a class as pleaded … as a matter of law."); *Colley v. P&G*, 2016 WL 5791658, at *2 (S.D. Ohio 2016) ("Striking deficient class allegations comports with Rule 23's directive."); *cf. In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 655 (E.D. Mich. 2011) (holding courts should not "indulge" in "expensive" delay "only to be faced with the same problem months down the road"). Where a class is "legally impermissible" on the Complaint's face, as here, "fairness and efficiency require that the Court address the issue" by early motion. *Boyer v. Div. Consults.*, 306 F.R.D. 536, 538 (E.D. Mich. 2015).

## ARGUMENT

I.   **As Every Federal Circuit To Consider The Issue Agrees, Plaintiffs' RESPA Section 8 Claims Demand Loan-by-Loan Analysis That Bars Class Treatment As A Matter Of Law**

Plaintiffs' RESPA Section 8 claims are unfit for class certification as a matter of law because they implicate the inherently individualized RESPA safe harbor. 12 U.S.C. § 2607 (Section 8). Where, as here, it is clear from the face of the Complaint that a RESPA class would require "individual inquiries of each class member," such a class is improper and should be stricken. *Loreto*, 2013 WL 6055401, at *5.

RESPA's Section 8 safe harbor is inherently individualized. RESPA prohibits

companies like UWM from paying (a) kickbacks for referrals or (b) using improper fee-splitting arrangements, but there is a safe harbor for "bona fide [] compensation … for services actually performed." 12 U.S.C. § 2607(a), (b), (c)(2). In many RESPA cases, as here, "the [alleged] kickbacks [are] to persons already involved in the [mortgage] process," like mortgage brokers or title insurers, and RESPA recognizes those parties deserve payment for their services. *Howland v. First Am. Title Ins.*, 672 F.3d 525, 530-31 (7th Cir. 2012). The safe harbor thus requires "individual analysis" of whether "services actually performed" by a broker were "reasonably related" to compensation provided. *Id.*; *see* 12 C.F.R. § 1024.14(g)(2). That individual analysis must consider all factors relevant to compensation in a "particular transaction," including "credit ratings, employment status, … debt" and other factors that raise "the level of difficulty" in processing a loan. RESPA Policy Statement 2001-1, 66 Fed. Reg. 53052, 53055-56; CFPB, RESPA Docs. (adopting same at link). The analysis must also compare compensation for a particular loan to other loans with similar "characteristics" in "similar geographic markets." *Id.*

"That transaction-specific inquiry prevents class treatment," *see Howland*, 672 F.3d at 532, as many courts have held. For example, the Eighth Circuit in *Glover*, 283 F.3d 953-959, considered class claims involving mortgage brokers who allegedly received lender payments for delivering "above par" rates and reversed certification under abuse of discretion review. Because "brokers perform many

8

unique services," the court explained that the safe harbor requires "loan-specific analysis" whether a broker's compensation was for the particular "services rendered or an illegal referral," making class treatment "impracticable." *Id.* at 964-66.

For these reasons, every federal circuit court addressing the issue agrees that class treatment is improper where services are provided. *See, e.g., id.*; *Howland*, 672 F.3d at 535; *O'Sullivan v. Countrywide Home Loans*, 319 F.3d 732, 742 (5th Cir. 2003); *Bjustrom v. Trust One Mortg.*, 322 F.3d 1201, 1209 (9th Cir. 2003); *Heimmermann v. First Union Mortg. Corp.*, 305 F.3d 1257, 1264 (11th Cir. 2002).[1] These cases all agree that, as a matter of law, in a case with some actual services, liability is "established by making individual comparisons of compensation to actual services, not by presuming fire where there is smoke." *O'Sullivan*, 319 F.3d at 742.

Here, the Complaint plainly alleges "services actually performed," triggering the loan-by-loan analysis under 12 U.S.C. § 2607(c)(2). In fact, Plaintiffs expressly admit as much in their RESPA count: "[T]he mortgage brokers provided 'settlement services.'" FAC ¶ 394. Further, Plaintiffs define the class as "[a]ll persons … who obtained a UWM mortgage … that was **originated by a mortgage broker**." *Id.* ¶ 328 (emphasis added). And RESPA expressly defines "[s]ettlement service" to include "the origination of a … mortgage loan." 12 U.S.C. § 2602(3); *Glover*, 283

---

[1] District courts also agree. *Anderson v. New Dimen. Fin. Servs.*, 2001 WL 883700, at *6-8 (N.D. Ill. 2001); *Conomos v. Chase Corp.*, 1998 WL 118154, at *4 (S.D.N.Y. 1998); *cf. Kiefaber v. HMS*, 284 F.R.D. 370, 374 (E.D. Va. 2012).

F.3d at 966 (looking to "services defined at § 2602(3)").

The Complaint goes on to allege over and over again that brokers provided specific "settlement services."  Those expressly alleged services include:

- **"taking of loan applications,"** *compare* 12 U.S.C. § 2602(3) *and* 12 C.F.R. § 1024.2(b) *with, e.g.*, FAC ¶ 80 ("[B]rokers submitted 17,000 more loan applications to UWM than they had in February.");

- **"obtaining verifications,"** *compare* 12 C.F.R. § 1024.2(b) *with, e.g.*, FAC ¶ 112 (alleging brokers get points for "verifying borrower information");

- **"preparation of documents,"** *compare* 12 U.S.C. § 2602(3) *and* 12 C.F.R. § 1024.2(b) *with, e.g.*, FAC ¶ 120 (noting that UWM requests "additional documentation" from brokers); and

- **"[p]rovision of any services related to the origination, processing or funding,"** *compare* 12 C.F.R. § 1024.2(b) *with, e.g.*, FAC ¶ 31 ("collect[ing] relevant information about the borrower's finances"), *and id.* ¶ 120 (submitting "new loan file[s] … for underwriting").

The Complaint even alleges that Plaintiffs' specific brokers received their commissions "[a]s a fee for [their] services." *E.g.*, FAC ¶ 312.  Indeed, the existence of these various services is unsurprising because, as the Court explained, in the wholesale industry, "borrowers never meet with the lenders," so brokers "clos[e] the loan."  Order at PageID.3701, .3744.  "That is how the business works." *Id.*; *see Glover*, 283 F.3d at 965 (explaining this is why "lenders use brokers at all").

Plaintiffs' remaining claims highlight the inherent problem with a RESPA class.  Jeffries and Singh's broker "originated [their] loan from UWM" and, "[a]s a fee for his services," earned a "commission … totaling  $4,302.40," which was less than 1.5% of the total principal of the loan.  FAC ¶¶ 311, 312.  According to

Plaintiffs, he was also given other supposed benefits such as visits to UWM's campus, "meals," and "a paid VIP trip to the New York Stock Exchange." *See* FAC ¶ 302 & Fig. 38. It is highly individualized whether that broker's commission and mix of so-called benefits are compensation "reasonably related" to the services performed in originating a "30-year mortgage loan at a fixed interest rate of 7.5%" for $320,100 with less than 10% down in the North Port, Florida housing market in Fall 2023. *Id.* ¶¶ 291-92, 311-313. The Court would need to repeat that individualized analysis for every class member, comparing services actually performed, including the difficulty in originating the loan based on "credit ratings [and] employment," while "comparing total compensation" for similar loans within the "geographic market[]," 66 Fed. Reg. at 53055, to the unique benefits allegedly provided to that broker. These individualized questions, hundreds of thousands of times over, defy class treatment. *Howland*, 672 F.3d at 535.

Additionally, the RESPA class suffers from another fundamental defect: Because RESPA provides for treble damages and fee-shifting, 12 U.S.C. § 2607(d)(2), (5), courts in the Sixth Circuit have repeatedly held those attributes "bar a finding of superiority under Rule 23(b)(3)." *Toldy v. Fifth Third Mortg.*, 2011 WL 4634154, at *3 (N.D. Ohio 2011); *see also Pettrey v. Enter. Title Agency*, 241 F.R.D. 268, 284 (N.D. Ohio 2006). After all, given these financial incentives and

11

state and federal regulatory oversight of mortgages, "a class action is not necessary for justice to be done." *Glover*, 283 F.3d at 965; *Pettrey*, 241 F.R.D. at 284.

Plaintiffs' RESPA claims cannot be certified where, as here, the Complaint confirms that at least some services were provided. *See, e.g.*, *Howland*, 672 F.3d at 535. Because in such a case RESPA requires loan-by-loan analysis (while also incentivizing individual plaintiffs to bring individual suits), class treatment is improper as a matter of law. The nationwide RESPA class should be stricken.

## II. Plaintiffs' FDUTPA Claim Cannot Support a Multi-State Class

The Complaint puts forward a confusing and disconnected set of multi-state class allegations for its FDUTPA claim. First, Plaintiffs offer a barebones chart of 41 states making up a supposed multi-state class. FAC ¶ 332 & Table F. Later, Plaintiffs assert a class of Florida homebuyers plus all those from "states with substantially similar," but unidentified, consumer statutes. *Id.* ¶ 541. Any such multi-state class fails at the outset because, as the Court has explained, "[t]he only remaining claims" "are the RESPA claim … and the [FDUTPA] claim…." Order at PageID.3781. Plaintiffs have not actually alleged claims under the laws of 40 other states in their multi-state class, failing to identify any other statutes, articulate what the elements are, or allege they meet any elements of such unnamed statutes.

In any event, whether in their table grouping or their undefined "substantially similar" formulation, Plaintiffs' multi-state subclasses are inherently improper for

two other independent and separately dispositive reasons: (1) Plaintiffs lack standing to pursue claims under other states' laws; and (2) legal variation among consumer protection laws forecloses class treatment under Rule 23 as a matter of law. The Sixth Circuit has never affirmed a multi-state consumer protection class like this—instead warning of the "perils that multi-state[,] multi-claim classes pose." *E.g.*, *Speerly v. GM*, 143 F.4th 306, 321 (6th Cir. 2025) (en banc, vacating 26 subclasses); *Pilgrim*, 660 F.3d at 948-49. The Court should strike this unprecedented class.

### A.    Plaintiffs lack out-of-state standing to bring a multi-state class

Plaintiffs cannot bring a multi-state class under Florida law alone, *see* FAC ¶ 541(b), as FDUTPA does not allow "nonresident plaintiffs [to] su[e] nonresident defendants for actions occurring outside of Florida." *Amar Shakti Enters. v. Wyndham Worldwide*, 2011 WL 3687855, at *3 (M.D. Fla. 2011). And the named Plaintiffs cannot avoid this limitation on the scope of the Florida statute by purporting to allege a multi-state class including statutory consumer protection claims under other states' laws. Plaintiffs lack standing to assert out-of-state claims.

In prior briefing, the parties identified a split of authority on this issue, both within the Sixth Circuit and beyond. *See, e.g.*, *Withrow v. FCA*, 2021 WL 2529847, at *8 (E.D. Mich. 2021) (discussing split and finding no out-of-state standing).[2] The better-reasoned cases hold that "named plaintiffs lack standing to assert claims under

---

[2] Briefing pending in the Sixth Circuit addresses the split. *Generation Changers Church v. Church Mutual Ins.*, No. 24-5700 (6th Cir.), ECF 22, 26, 39.

the laws of the states in which they do not reside or in which they suffered no injury." *Rivers of Life Int'l Mins. v. GuideOne Ins.*, 2022 WL 17261845, at *2 (W.D. Tenn. 2022) (quoting *Szep v. GM*, 491 F. Supp. 3d 280, 291 (N.D. Ohio 2020)). These cases are better reasoned because they analyze and faithfully apply basic standing rules from Sixth Circuit and Supreme Court caselaw. *E.g.*, *Chapman v. GM*, 2024 WL 698789, at *10 (E.D. Mich. 2024) (dismissing multi-state class).

For example, because standing is a threshold issue for named plaintiffs in the Sixth Circuit, a court "must immediately concern itself with their standing." *Fox v. Saginaw Cnty.*, 67 F.4th 284, 293 (6th Cir. 2023). And, "[i]t is black-letter law that standing is a claim-by-claim issue." *Rosen v. Tenn. Comm'r*, 288 F.3d 918, 928 (6th Cir. 2002); *TransUnion v. Ramirez*, 594 U.S. 413, 431 (2021) (Standing "is not dispensed in gross."). In other words, "standing to bring one claim does not create standing to bring another one."[3] *Davis v. Colerain Twp.*, 51 F.4th 164, 171 (6th Cir. 2022). Because a plaintiff must suffer injury "fairly traceable to the defendant's allegedly *unlawful* conduct," *California v. Texas*, 593 U.S. 659, 674 (2021), a plaintiff who suffers an injury from one violation "does not thereby obtain a license to sue anyone over anything," *Fox*, 67 F.4th at 293. Moreover, Rule 23 "adds nothing to the question of standing." *Id.* at 288; *Spokeo v. Robins*, 578 U.S. 330,

---

[3] So, cases like *Fallick v. Nationwide Mut. Ins.*, 162 F.3d 410, 423 (6th Cir. 1998), with a single federal claim that was "legally identical" for the class, do not resolve this issue, *Chapman*, 2024 WL 698789, at *10.

338 n.6 (2016) (same).  A federal court "lack[s] jurisdiction if no named plaintiff has standing" to bring a claim, *Frank v. Gaos*, 586 U.S. 485, 492 (2019), because named Plaintiffs cannot "piggyback off the injuries" of others.  *Fox*, 67 F.4th at 294.

Taken together, these principles preclude out-of-state standing, so courts dismiss out-of-state claims at an early stage.  *See Miller v. GM*, 773 F. Supp. 3d 461, 492-93 (E.D. Mich. 2025) (dismissing on this point, citing *Fox*); *Norman v. FCA*, 696 F. Supp. 3d 359, 372-75 (E.D. Mich. 2023) (changing the court's prior position, dismissing on this point, citing *Fox*); *Anger v. Accretive Health*, 2015 WL 5063269, at *4-5 (E.D. Mich. 2015) ("[I]ndividual standing is a prerequisite for all actions, including class actions," citing *Lewis v. Casey*, 518 U.S. 343 (1996)); *Rivers of Life*, 2022 WL 17261845, at *3-6 (dismissing on this point, citing *Rosen*, *Lewis*).[4]

By contrast, Plaintiffs and the cases on which they rely are wrong that standing for one claim lets a Plaintiff pursue other state law claims "provided Rule 23 is satisfied."  Opp. to Mot. to Strike, ECF 36 at PageID.2124.  The basic rules of standing negate that argument—*e.g.*, *Fox*, 67 F.4th at 297 ("a class-action request 'adds nothing' to the question of standing")—and Plaintiffs' cases simply ignore

---

[4] *See also, e.g.*, *Flores v. FCA*, 2021 WL 1122216, at *24-25 (E.D. Mich. 2021); *Wozniak v. Ford*, 2019 WL 108845, at *1 (E.D. Mich. 2019); *Snowdy v. Mercedes-Benz*, 2024 WL 1366446, at *4-7 (D.N.J. 2024) (collecting Third Circuit cases); *Serrano v. Campbell Soup Co.*, 773 F. Supp. 3d 127, 147-51 (D.N.J. 2025); *Jones v. Micron*, 400 F. Supp. 3d 897, 908-11 (N.D. Cal. 2019) (collecting Ninth Circuit cases); *Soo v. Lorex Corp.*, 2020 WL 5408117, at *10-11 (N.D. Cal. 2020).

rather than analyze those rules.  As Judge Michelson explained in *Withrow*, after addressing these Article III principles, the "proper jurisdictional question is whether the named plaintiffs have standing to pursue **each** and **every** claim of their complaint." 2021 WL 2529847, at *7.  When asked the right way, the question itself "gives away the answer." *Id.* at *9.  Plaintiffs allege harm only in Florida—indeed, the Complaint does not even identify the other statutes Plaintiffs hope to pursue, FAC ¶ 332 & Table F (naming states, not laws), so it is "unclear what the requirements of those statutes are" or how UWM's alleged conduct even "implicates those statutes," particularly as to the Plaintiffs, *Anger*, 2015 WL 5063269, at *5; *Flores*, 2021 WL 1122216, at *25 (similar).  Plaintiffs do not have standing to bring out-of-state claims, and their overreaching multi-state class should be stricken.

### B.    Broad legal variation also negates any multi-state class

Independently, any multi-state consumer protection class fails as a matter of law under Rule 23 due to broad legal variation among such state laws.  In *Pilgrim*, the Sixth Circuit affirmed a pre-discovery strike of nationwide class allegations under the "consumer-protection laws of many States," holding legal variation among state law claims is a "key defect" precluding certification and making a nationwide class "neither … workable nor … consistent with the requirements of Rule 23."  660 F.3d at 945, 948-49.  The Sixth Circuit said:  "If more than a few of the laws of the fifty states differ, [a court] would face an impossible task of instructing a jury." *Id.*

(quoting *In re Am. Med. Sys.*, 75 F.3d 1069, 1085 (6th Cir. 1996)).  *Pilgrim* holds this is a "legal determination" requiring no discovery. *Id.*

Courts across the country have similarly held that "[s]tate consumer protection acts vary on a range of fundamental issues." *Lyon v. Caterpillar*, 194 F.R.D. 206, 219-20 (E.D. Pa. 2000).[5]  In prior briefing, Plaintiffs conceded there is a split on how these statutes treat scienter; two separate 3-way splits on reliance (the substantive standard and methods of proof); and a wide-range of rules on statute of limitations, accrual, and discovery.  Opp. to Mot. to Strike, ECF 36, at PageID.2127-2129.  Those concessions alone prove UWM's point, yet still significantly underplay the relevant variation.[6]  They also fail to account for other material variations among

---

[5] *E.g.*, *In re Bridgestone/Firestone*, 288 F.3d 1012, 1018 (7th Cir. 2002) ("State consumer-protection laws vary considerably."); *In re Insulin Pricing Litig.*, 2024 WL 416500, at \*47 (D.N.J. 2024) ("The differences among the sixteen state consumer protection laws present individualized issues that overwhelm common questions … and defeat predominance."); *Townhouse Rest. v. NUCO2*, 2020 WL 5440581, at \*6 (S.D. Fla. 2020) (collecting cases); *Ivanoff v. Walmart*, 2025 WL 2207924, at \*22 (S.D. Ohio 2025); *Karnuth v. Rodale*, 2005 WL 1683605, at \*4 (E.D. Pa. 2005); *Colley*, 2016 WL 5791658, at \*6-7; *Oom v. Michaels Cos.*, 2017 WL 3048540, at \*7 (W.D. Mich. 2017); *Corder v. Ford*, 272 F.R.D. 205, 213-14 (W.D. Ky. 2011); *Cohen v. Implant Innovations*, 259 F.R.D. 617, 643 (S.D. Fla. 2008); *cf. BMW v. Gore*, 517 U.S. 559, 570 (1996) (describing such claims as a "patchwork of rules representing the diverse policy judgments [the] 50 States").

[6] *Compare, e.g.*, Ariz. Rev. Stat. § 44-1522(A) ("intent that others rely"), *with* 5 Okla. Stat. § 761.1(B) ("knew or had reason to know that price grossly exceeded the price [for] similar … services … in similar transactions"), *with* S.C. Code § 39-5-140(d) ("knew or should have known that his conduct was a violation"), *with Stevenson v. Louis Dreyfus Corp.*, 811 P.2d 1308, 1311 (N.M. 1991) (with "exercise of reasonable diligence should have been aware [a] statement was false").

the statutes including: whether prohibited acts are defined specifically by act and industry or broad general language; whether, to whom, and with what showing certain remedies are available; and whether class actions are permitted under the statute, among others. *See* Appx. A (survey of consumer protection statutes). The legions of *Erie* guesses required to apply 41 states' laws further compound the complexity, as "not all high courts have addressed all of the relevant claims[, and] the court must 'anticipate' through an educated guess 'how the relevant state's highest court would rule.'" *See Speerly*, 143 F.4th at 320.[7]

The Complaint fails to address this substantial legal variation. In fact, beyond Plaintiffs' home-state statutes, the Complaint does not even identify what other statutes it invokes, FAC ¶ 332 & Table F (states not statutes), let alone what sections of any such statutes are relevant or what elements they require. *See In re Nissan*, 122 F.4th 239, 248 (6th Cir. 2024) (requiring review of elements of "each state law claim"); *Speerly*, 143 F.4th at 317-18 (same). What's more, the Court's Order (at PageID.3762-74) has already demonstrated why the multi-state table grouping cannot be certified, "address[ing] … in turn" each named Plaintiff's home state consumer protection claim and reaching different outcomes based on different

---

[7] The inherent defect here "turns on plaintiffs' decision to bring [41 or more] claims in one class action." *Speerly*, 143 F.4th at 320; *Pilgrim*, 660 F.3d at 948 ("such a class is rarely, **if ever**, appropriate" (emphasis added)).

arguments—dismissing the California and Tennessee claims but not the Florida claims—even though all three are listed in the table of supposedly similar statutes.

Nor can Plaintiffs fall back to a generic reference to "substantially similar" laws to support a vague multi-state class. *See* FAC ¶ 541. To start, there are no "substantially similar" laws to FDUTPA: "[E]ach state's consumer fraud act is unique." *Lyon*, 194 F.R.D. at 219-20; *see also* Appx. A. And, in any event, Plaintiffs cannot rely on the phrase "substantially similar" to avoid the central defect of legal variation while unlocking burdensome nationwide discovery. *See Colley*, 2016 WL 5791658, at *7 & n.7 (striking "doomed class allegations" where "Plaintiffs [made] no effort to … propose any workable groups"); *Glass v. Tradesmen Intl., LLC*, 505 F. Supp. 3d 747, 769 (N.D. Ohio 2020) (striking overbroad class definition).

## III.   On The Face Of The Complaint, Plaintiffs' State-Wide FDUTPA Claim Requires Fact-Dependent Analysis Of Unique Consumer Circumstances

Even within a Florida-only subclass, FAC ¶ 541, class treatment is improper because, on the face of the Complaint, these FDUTPA claims require individualized analysis of each putative class member's circumstances. A FDUTPA claim requires three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Angelo v. Parker*, 275 So. 3d 752, 755-56 (Fla. Dist. Ct. App. 2019). An alleged "overcharge does not establish a violation." *Id.* Instead, there must be "[a] deceptive act or unfair practice" that is "likely to deceive a consumer acting

19

reasonably in the same circumstances."[8]  *Deere Constr. v. CEMEX Constr. Materials*, 2016 WL 8542540, at *2 (S.D. Fla. 2016); *Townhouse Rest. v. NuCO2*, 2021 WL 230021, at *3 (S.D. Fla. 2021) (for both "unfair" and "deceptive" claims).

That "in the same circumstances" analysis is a "hybrid standard" that is "objective[] … as to mindset" but "subjective[] as to context."  *In re Motions to Certify Classes*, 715 F. Supp. 2d 1265, 1282 (S.D. Fla. 2010), *aff'd*, 439 F. App'x 849 (11th Cir. 2011).  At bottom, FDUTPA as applied here requires a court to look at each class member's individual circumstances (*i.e.*, what representations they saw, what disclosures they received, what terms they agreed to, what other facts they were exposed to, etc.) and ask whether a reasonable person in those same circumstances would have been deceived.  *See id.*; *Bennett v. Quest Diagnostics*, 2023 WL 3884117, at *13-14 (D.N.J. 2023) (collecting cases).

Given that analysis, courts split FDUTPA cases into two groups: those "involving a uniform representation" on the one hand and those focused on "the communications made … to each customer" on the other.  *See, e.g.*, *Miami Auto. Retail v. Baldwin*, 97 So. 3d 846, 857 (Fla. Dist. Ct. App. 2012) (cited in *Rikos v. P&G*, 799 F.3d 497, 497 (6th Cir. 2015)); *In re Motions to Certify*, 715 F. Supp. 2d at 1282-83 (similar).  And courts consistently reject FDUTPA classes that lack

---

[8] Where the FDUTPA claim "rest[s] on … RESPA," Order at PageID.3769, class allegations supporting that claim are improper for the same reasons.

uniform misrepresentations and focus instead on individualized representations and interactions.  *See Rollins v. Butland*, 951 So. 2d 860, 871-73 (Fla. Dist. Ct. App. 2006) (finding "class-wide proof of causation" in such a case "impossible").[9]

That is precisely the case as alleged in this Complaint.  As the Court has stated, the uniquely detailed Complaint spends "138 pages … explaining the mortgage industry [and] the alleged 'tactics' UWM employs," Order at PageID.3733, and includes dozens of paragraphs describing the individual circumstances of each Plaintiff's loan transaction, start to finish, *see* FAC ¶¶ 239-64 (Weatherill), ¶¶ 291-319 (Jeffries & Singh).  Based on these allegations, it is clear that this case does not involve "uniform representations" but relies on thousands of one-on-one interactions with varying communications, representations, agreements, and disclosures between individual brokers and consumers.  Plaintiffs do not allege they viewed any uniform

---

[9] *See Miami Auto.*, 97 So. 3d at 857 (reversing class of FDUTPA claims based "on specific representations [a] salesman made to her"); *Black Diamond Props. v. Haines*, 940 So. 2d 1176, 1179 (Fla. Dist. Ct. App. 2006) (reversing class as "each plaintiff still must demonstrate that the misrepresentation occurred and actually caused damage"); *Pop's Pancakes v. NuCO2*, 251 F.R.D. 677, 685-87 (S.D. Fla. 2008) ("[O]ral representations, the verbiage on the back of the invoice, and any other interaction … with the consumer must be considered …"); *Deere*, 2016 WL 8542540, at *3 ("A consumer [with a] different set of information may not have been reasonably deceived …"); *see also O'Neill v. Home Depot*, 243 F.R.D. 469, 480-82 (S.D. Fla. 2006); *Hummel v. Tamko Bldg. Prods.*, 303 F. Supp. 3d 1288, 1300 (M.D. Fla. 2017); *Townhouse Rest.*, 2020 WL 5440581, at *9; *Bennett*, 2023 WL 3884117, at *13-14; *In re Ford*, 2012 WL 379944, at *29-30 (D.N.J. 2012); *Cohen*, 259 F.R.D. at 628; *In re Sears*, 2012 WL 1015806, at *7-11 (N.D. Ill. 2012); *Porsche Cars v. Diamond*, 140 So. 3d 1090, 1100 (Fla. Dist. Ct. App. 2014).

representations from UWM but instead allege they were "advised" by their brokers and "relied on" their broker's representations. *Id.* ¶ 252 (Weatherill), ¶ 305 (Jeffries and Singh), ¶¶ 546-47 (same for the entire class). That makes this case is improper for class treatment as a matter of law. *See, e.g.*, *Miami Auto.*, 97 So. 3d at 857.

The starkly different circumstances pleaded for the remaining Plaintiffs illustrate the futility of class treatment. For example, Jeffries and Singh "visited [their broker's] Facebook page to understand more about his business" before hiring him. *Id.* ¶ 305. As expressly alleged in the Complaint, their broker's Facebook page included various posts—*e.g.*, one boasting about his "Top 1%" partnership with UWM and another describing a trip to New York with UWM:



*Figure 36*

*Figure 38*

*Id.* ¶¶ 296, 302 (excerpted).  Jeffries and Singh's FDUTPA claim requires the Court

to ask if a reasonable consumer would have been deceived in these individualized

circumstances.  *See Deere Constr.*, 2016 WL 8542540, at *3, *5.

Plaintiff Weatherill's circumstances were materially different.  Among other

things, as the Court recognized in ruling on UWM's motion to dismiss, *see* Order at

PageID.3756-57,[10] Weatherill signed an agreement that Jeffries and Singh did not,

defining and disclosing his relationship with his broker, excerpted below:

## MORTGAGE LOAN ORIGINATION AGREEMENT

**SECTION 1. NATURE OF RELATIONSHIP.** In connection with this mortgage loan:
- We are acting as an independent contractor and not as your agent.
- We will enter into separate independent contractor agreements with various lenders.
- While we seek to assist you in meeting your financial needs, we do not distribute the products of all lenders or investors in the market and cannot guarantee the lowest price or best terms available in the market.

| MORTGAGE LOAN ORIGINATOR | APPLICANT(S) |
| --- | --- |
| The Florida Mortgage Firm<br>Company Name<br>2216 S. Alexander St., Plant City, FL 33563 | Brian P Weatherill     *Brian weatherill*<br>Borrower Signature |
| *NCA*<br>Broker Authorized Agent Signature | Borrower Signature |

*See* ECF 30-5 at PageID.1629.  Weatherill's broker also advertised at a different

website and Facebook page, with different text and different claims than the Jeffries

and Singh broker, including that buyers should "talk to an independent brokerage

[because] the lender … can have a greater impact on your interest rate than your

---

[10] The Court recognized in its Order that this origination agreement, by which Weatherill hired his broker to originate his loan, is "referred to in the complaint" and "central to the claims."  *See* Order, PageID.3721; *see also* FAC ¶¶ 240, 256.

actual credit score," *id.* ¶ 242 & Fig. 34, and committing to "ensure you get the loan … and rates that fit your … needs, all with service that is unsurpassed." *Id.* ¶ 244.

Thus, the Complaint itself establishes individual broker engagements under different circumstances, with different conversations, disclosures, social media, websites, agreements, and more. *See also* FAC ¶¶ 181, 220, 269 & Figs. 27, 33, 35 (other Plaintiffs).  Given the diversity of circumstances alleged for the three remaining Plaintiffs alone, the existence of a deceptive act or practice "cannot be established on a classwide basis" as nothing was "uniformly communicated to the entire class" but rather "individual inquiries" must be made into individual circumstances. *See Loreto*, 2013 WL 6055401, at *6 (striking class in "precisely the type of case … *Pilgrim* anticipated"); *Pilgrim*, 2010 WL 1254849, at *4 ("[J]ust reviewing these three allegations makes it clear that a member-by-member inquiry would be required for each putative class member"); *Colley*, 2016 WL 5791658, at *6 (same).  "Such individualized factual determinations … defeat the predominance requirement." *Miami Auto.*, 97 So. 3d at 856; *see also Rollins*, 951 So. 2d at 873.

Plaintiffs will likely attempt to—but cannot—rely on cases involving broad uniform misrepresentations. *See, e.g.*, *Rikos*, 799 F.3d at 515 (affirming a uniform misrepresentation class but explaining that without "a generally uniform material misrepresentation" courts find plaintiffs "need to show individualized causation"); *Carriuolo v. GM*, 823 F.3d 977, 986 (11th Cir. 2016) (all "leased the same model

vehicle with the same … sticker attached").  Such cases are critically different from cases like this one that plainly allege, on the face of the Complaint itself, individualized representations made within each customer relationship through a third-party broker, and individual circumstances vary as widely as just described.

The FDUTPA class here, which must prove its claims through individual circumstances rather than uniform representations, cannot be certified as a matter of law.  *See, e.g.*, *Miami Auto.*, 97 So. 3d at 857.  It should be stricken.

## CONCLUSION

The Court should grant the motion and strike the classes as outlined above.

Dated:  October 28, 2025                    Respectfully submitted,

                                            */s/ Jeffrey J. Jones*
                                            Jeffrey J. Jones (P80231)
Rebekah B. Kcehowski                        Stephen J. Cowen (P82688)
JONES DAY                                   Amanda K. Rice (P80460)
500 Grant Street, Suite 4500                Andrew J. Clopton (P80315)
Pittsburgh, PA 15219                        JONES DAY
(412) 391-3939                              150 W. Jefferson Ave, Suite 2100
rbkcehowski@jonesday.com                    Detroit, MI 48226
                                            (313) 733-3939
                                            jjjones@jonesday.com
                                            scowen@jonesday.com
                                            arice@jonesday.com
                                            aclopton@jonesday.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2025, I caused the foregoing document to be filed with the Clerk of the Court using CM/ECF, which will effectuate service upon all counsel of record.

/s/ Jeffrey J. Jones
Jeffrey J. Jones
JONES DAY
150 W. Jefferson Ave, Suite 2100
Detroit, MI 48226
(313) 733-3939
jjjones@jonesday.com

*Counsel for Defendant*