# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

Brian Weatherill, Jill Jeffries, Daniel Singh on behalf of themselves and all others similarly situated,

            Plaintiffs,

    v.

United Wholesale Mortgage, LLC,

            Defendant.

Case No. 2:24-cv-10853-BRM-DRG

Hon. Brandy R. McMillion,
United States District Judge

Hon. David R. Grand,
United States Magistrate Judge

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE

## <u>TABLE OF CONTENTS</u>

STATEMENT OF ISSUES PRESENTED.............................................................. vii

CONTROLLING OR MOST APPROPRIATE AUTHORITY .............................ix

INTRODUCTION ...............................................................................................1

ARGUMENT ......................................................................................................3

I.     UWM's Motion Is Premature. ...................................................................3

II.    UWM Does Not Dispute the Viability of a Rule 23(b)(2) Class. ..............5

III.   There Is No Basis to Strike the RESPA Class Allegations. ......................6

     A.     RESPA's Safe Harbor Does Not Raise Individual Inquiries. ..........7

     B.     RESPA's Fee Shifting and Treble Damages Provisions Do Not Warrant Striking Class Allegations.................................................11

IV.   Plaintiffs' FDUTPA Claim Can Be Certified for a Florida Class............13

V.    The Florida Plaintiffs Have Standing to Represent Class Members from Other States with Substantially Identical Consumer Protection Claims..17

VI.   Potential Variations in State Law Do Not Warrant Striking Allegations. 21

CONCLUSION .......................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ahearn v. Mayo Clinic*,
    180 So. 3d 165 (Fla. Dist. Ct. App. 2015) ............................................................6

*Albright v. Sherwin-Williams Co.*,
    2019 WL 5307068 (N.D. Ohio Jan. 29, 2019) ....................................................4

*Baugh v. Fed. Savings Bank*,
    337 F.R.D. 100 (D. Md. 2020) ..........................................................................11

*Bearden v. Honeywell Int'l Inc.*,
    720 F. Supp. 2d 932 (M.D. Tenn. 2010) ..........................................................24

*Beattie v. CenturyTel, Inc.*,
    511 F.3d 554 (6th Cir. 2007) ............................................................................24

*Benson v. Newell Brands, Inc.*,
    2021 WL 5321510 (N.D. Ill. Nov. 16, 2021) ....................................................22

*Bentley v. Honeywell Int'l, Inc.*,
    223 F.R.D. 471 (S.D. Ohio 2004) ....................................................................24

*Bowe v. Pub. Storage*,
    318 F.R.D. 160 (S.D. Fla. 2015) ......................................................................14

*Bowles v. Sabree*,
    121 F.4th 539 (6th Cir. 2024) ............................................................................2

*Carnegie v. Household Int'l, Inc.*,
    376 F.3d 656 (7th Cir. 2004) ..............................................................................5

*Carriuolo v. Gen. Motors Co.*,
    823 F.3d 977 (11th Cir. 2016) ..........................................................................15

*Coleman v. Burger King Corp.*,
    2023 WL 5507730, (S.D. Fla. 2023) ................................................................21

*Cox v. Porsche Fin. Servs., Inc.*,
    337 F.R.D. 426 (S.D. Fla. 2020) ......................................................................13

*Droesser v. Ford Motor Co.*,
2023 WL 2746792, (E.D. Mich. Mar. 31, 2023) .................................................17

*Edwards v. First Am. Corp.*,
798 F.3d 1172 (9th Cir. 2015) ...........................................................................11

*Fallick v. Nationwide Mut. Ins. Co.*,
162 F.3d 410 (6th Cir. 1998) .............................................................................17

*Fisher v. FCA US LLC*,
712 F. Supp. 3d 930 (E.D. Mich. 2024) ............................................................20

*Fitzpatrick v. Gen. Mills, Inc.*,
635 F.3d 1279 (11th Cir. 2011) .........................................................................14

*Fox v. Saginaw County*,
67 F.4th 284 (6th Cir. 2023) ..............................................................................20

*Frank v. Gaos*,
586 U.S. 485 (2019)............................................................................................18

*Generation Changers Church v. Church Mut. Ins. Co.*,
693 F. Supp. 3d 795 (M.D. Tenn. 2023) ...........................................................20

*Gooch v. Life Inv'rs Ins. Co. of Am.*,
672 F.3d 402 (6th Cir. 2012) ...............................................................................5

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ...........................................................................22

*Hicks v. State Farm Fire & Cas. Co.*,
965 F.3d 452 (6th Cir. 2020) .............................................................................24

*In re Am. Med. Sys., Inc.*,
75 F.3d 1069 (6th Cir. 1996) .............................................................................19

*In re Asacol Antitrust Litig.*,
907 F.3d 42 (1st Cir. 2018)................................................................................18

*In re Carter*,
553 F.3d 979 (6th Cir. 2009) ...............................................................................7

*In re Chevrolet Bolt EV Battery Litig.*,
  633 F. Supp. 3d 921 (E.D. Mich. 2022) ............................................................4

*In re Comm. Bank of N. Va. Mortg. Lending Practices Litig.*,
  795 F.3d 380 (3d Cir. 2015) ...........................................................................11

*In re Papa John's Empl. and Franchise Empl. Antitrust Litig.*,
  2019 WL 5386484, (W.D. Ky. Oct. 21, 2019) ...................................................1

*In re Pork Antitrust Litig.*,
  665 F. Supp. 3d 967 (D. Minn. 2023) ..............................................................22

*In re Telectronics Pacing Sys., Inc.*,
  172 F.R.D. 27 (S.D. Ohio 1997) .......................................................................22

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Pracs. & Prod. Liab.*
  *Litig.*, 2012 WL 4904412 (C.D. Cal. Sept. 20, 2012)......................................24

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*,
  722 F.3d 838 (6th Cir. 2013) .......................................................................4, 24

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,
  2022 WL 16729170 (11th Cir. Nov. 7, 2022) ..................................................17

*Keilholtz v. Lennox Hearth Prod. Inc.*,
  268 F.R.D. 330 (N.D. Cal. 2010)......................................................................23

*Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*,
  2016 WL 10520133 (S.D. Ohio Dec. 15, 2016) ...............................................22

*Kirkbride v. Kroger* Co.,
  2022 WL 2703960 (S.D. Ohio July 12, 2022)..............................................2, 22

*Krzalic v. Republic Title Co.*,
  314 F.3d 875 (7th Cir. 2002) .............................................................................8

*Langan v. Johnson & Johnson Consumer Companies, Inc.*,
  897 F.3d 88 (2d Cir. 2018) ...............................................................................17

*Lauber v. Bellford High Sch.*,
  2012 WL 5822243 (E.D. Mich. Jan. 23, 2012) ................................................23

iv

*Lizama v. Venus Lab'ys, Inc.*,
   679 F. Supp. 3d 848 (E.D. Mo. 2023) ...................................................6

*Lott v. Louisville Metro Gov't*,
   2021 WL 1031008 (W.D. Ky. Mar. 17, 2021) ...................................23

*Martin v. Behr Dayton Thermal Prod. LLC*,
   896 F.3d 405 (6th Cir. 2018) ........................................................2, 25

*Mayor of Baltimore v. Actelion Pharms. Ltd*.,
   995 F.3d 123 (4th Cir. 2021) .............................................................18

*Mejdrech v. Met-Coil Sys. Corp.*,
   319 F.3d 910 (7th Cir. 2003) .............................................................24

*Mell v. Anthem, Inc.*,
   264 F.R.D. 312 (S.D. Ohio 2009)......................................................23

*Mod. Holdings, LLC v. Corning Inc.*,
   2015 WL 1481459 (E.D. Ky. Mar. 31, 2015) ...................................1, 3

*Morrison v. YTB Int'l, Inc.*,
   649 F.3d 533 (7th Cir. 2011) .............................................................18

*Munoz v. PHH Mortg. Co.*,
   478 F. Supp. 3d 945 (E.D. Cal. 2020) ...............................................11

*Palombaro v. Emery Fed. Credit Union*,
   2017 WL 3437559, (S.D. Ohio 2017) ................................................11

*Powers v. Fifth Third Mortg. Co.*,
   2011 WL 3811129, (N.D. Ohio Aug. 12, 2011)..................................10

*Reynolds v. Lifewatch, Inc*.,
   136 F. Supp. 3d 503 (S.D.N.Y. 2015) ..................................................5

*Sowders v. Scratch Fin., Inc.*,
   2023 WL 7525900 (S.D. Ohio Nov. 14, 2023). ...................................3

*Speerly v. Gen. Motors, LLC*,
   143 F.4th 306, 326 (6th Cir. 2025) ....................................................16

*Stanich v. Travelers Indem. Co.,*
    249 F.R.D. 506 (N.D. Ohio 2008) ......................................................................23

*State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics &*
    *Neurosurgery, LLC*, 278 F. Supp. 3d 1307 (S.D. Fla. 2017) ............................16

*Sterling v. Velsicol Chem. Corp.,*
    855 F.2d 1188 (6th Cir. 1988) ...........................................................................10

*Weathers v. Peters Realty Corp.*,
    499 F.2d 1197 (6th Cir. 1974) ...........................................................................13

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.    Should the Court strike from the pleadings the class allegations under the RESPA claim in Count 3?

       Plaintiffs' answer: No

       Defendant's answer: Yes

       This Court should answer: No

2.    Should the Court strike from the pleadings the class allegations under the FDUTPA claim?

       Plaintiffs' answer: No

       Defendant's answer: Yes

       This Court should answer: No

3.    Do Florida Plaintiffs have standing to represent non-Florida class members in asserting consumer protection claims if the applicable law is substantially the same?

       Plaintiffs' answer: Yes

       Defendant's answer: No

       This Court should answer: Yes

4.    Should the Court decide the scope of a potential state law consumer protection class before class certification?

       Plaintiffs' answer: No

       Defendant's answer: Yes

This Court should answer: No

**CONTROLLING OR MOST APPROPRIATE AUTHORITY**

**Standard for Motion to Strike**

*Albright v. Sherwin-Williams Co.*, 2019 WL 5307068, at *17 (N.D. Ohio Jan. 29, 2019)

*Kirkbride v. Kroger* Co., 2022 WL 2703960 at *13 (S.D. Ohio July 12, 2022)

*In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 947 (E.D. Mich. 2022)

*Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*, 2016 WL 10520133, at *5–6 (S.D. Ohio Dec. 15, 2016)

**RESPA**

*Edwards v. First American Corp.*, 798 F.3d 1172, 1181 (9th Cir. 2015)

*In re Comm. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380 (3d Cir. 2015)

*Baugh v. Fed. Savings Bank*, 337 F.R.D. 100 (D. Md. 2020)

*Palombaro v. Emery Fed. Credit Union*, 2017 WL 3437559 (S.D. Ohio Aug. 10, 2017)

*Powers v. Fifth Third Mortg. Co.*, 2011 WL 3811129 (N.D. Ohio Aug. 12, 2011)

**FDUTPA**

*Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016)

*Cox v. Porsche Fin. Servs., Inc.*, 337 F.R.D. 426, 433, 2020 WL 8269306 (S.D. Fla. 2020)

**Standing**

*In re Zantac (Ranitidine) Prod. Liab. Litig.*, 2022 WL 16729170, at *6 (11th Cir. Nov. 7, 2022)

*Droesser v. Ford Motor Co.*, 2023 WL 2746792 (E.D. Mich. Mar. 31, 2023)

*Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 95 (2d Cir. 2018)

ix

**<u>Individualized Issues / Legal Variation Do Not Defeat Certification</u>**

*In re Whirlpool Corp.*, 722 F.3d at 861 (6th Cir. 2013)

*Martin v. Behr Dayton Thermal Prod. LLC*, 896 F.3d 405, 413 (6th Cir. 2018)

*Kirkbride v. Kroger* Co., 2022 WL 2703960 at *13 (S.D. Ohio July 12, 2022)

*In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 27 (S.D. Ohio 1997)

*Benson v. Newell Brands, Inc*., 2021 WL 5321510 (N.D. Ill. Nov. 16, 2021)

# **INTRODUCTION**

UWM has not met its burden to demonstrate it would be impossible to certify the Plaintiffs' claims. Rather, it has distorted the Plaintiffs' RESPA theory to create the appearance of alleged "individual" issues that do not exist. And the class allegations under Florida's Unfair and Deceptive Trade Practices Act ("FDUTPA") should not be stricken either. Courts regularly certify similar claims, and there is no obstacle to certification of a consumer protection claim here. Considering the "Florida only" class is certifiable—and that the Plaintiffs have Article III standing to represent similarly-situated borrowers whose state-law claims arise under the law of their home states—the question of whether the Court should certify a class including Florida and non-Florida borrowers should await class certification.

Motions to strike class allegations are rarely filed, and even more rarely granted.[1] There is even less reason to grant the motion here, since UWM has not challenged Plaintiffs' proposed Rule 23(b)(2) class for injunctive relief, and none of UWM's objections to an opt-out damages class under Rule 23(b)(3) bear on whether there are significant common issues—whether common factual issues, or legal

---

[1] "[S]triking a plaintiff's class allegations prior to discovery and a motion for class certification is a rare remedy." *In re Papa John's Empl. and Franchise Empl. Antitrust Litig.*, 2019 WL 5386484, at *11 (W.D. Ky. Oct. 21, 2019) (*quoting Mod. Holdings, LLC v. Corning Inc.*, 2015 WL 1481459, at *2 (E.D. Ky. Mar. 31, 2015) (collecting cases)).

issues under uniform law—that could be certified under Rule 23(a) and 23(c)(4).[2] Now that the FDUTPA and RESPA claims have survived motions to dismiss, the Court will eventually receive evidence at a Rule 23 hearing to decide, at a bare minimum, if Plaintiffs can pursue class-wide relief on one or more unchallenged theories of class certification, and to determine the scope, and organization of the potential class action. Much of UWM's motion focuses on arguing the Court *could* narrow the scope now. But UWM has offered no compelling reason why the Court *should* decide these issues now. Waiting would not necessarily impose substantially higher discovery burdens—and regardless, UWM's asserted burdens at most "counsel for a careful plan of discovery management, not for preemptively striking dozens of states in which viable subclasses still might be formulated." *Kirkbride v. Kroger* Co., 2022 WL 2703960 at *13 (S.D. Ohio July 12, 2022). On the other hand, preemptively striking class allegations requires assessing factual issues without evidence, something the Sixth Circuit has counseled against.[3] Indeed, for now it is enough to say that UWM's arguments about "overbreadth [of the proposed classes]

---

[2] *See Martin v. Behr Dayton Thermal Prod. LLC*, 896 F.3d 405, 411 (6th Cir. 2018) (permitting "utilizing Rule 23(c)(4) even where predominance has not been satisfied for the cause of action as a whole.").

[3] *Bowles v. Sabree*, 121 F.4th 539, 549 (6th Cir. 2024) ("[o]rdinarily, courts need more information than the pleadings provide to analyze [Rule 23] matters thoroughly. That usually entails some opportunity for the parties to gather evidence, develop a record, or depose the other side.").

may be raised again in this case after some factual development" and the court has "procedural mechanisms to prune the class" later should that be warranted. *Sowders v. Scratch Fin., Inc.*, 2023 WL 7525900, at *8–9 (S.D. Ohio Nov. 14, 2023).

Finally, on October 14, 2025, Plaintiffs filed a Motion for Reconsideration of the Court's order dismissing certain claims in Plaintiffs' First Amended Complaint ("FAC"). If reconsideration is granted, Defendant's Renewed Motion to Strike Class Allegations would become moot. Even if the Court denies reconsideration, the Court may be inclined to certify its dismissal order for an appeal upon a motion under Federal Rule 54(b) or 28 U.S.C. 1292(b). The Court may wish to postpone consideration of the merits of the motion to strike until then.

## ARGUMENT

### I.    UWM's Motion Is Premature.

Because UWM is pursuing an extraordinary Rule 12(f) motion, it must accept all well-pled allegations and demonstrate the FAC itself establishes that no evidence *could possibly* support a class certification of the RESPA claims, nor of a multi-state consumer protection class that includes non-Florida members. *Mod. Holdings.*, 2015 WL 1481459, at *2  (the party moving to strike has "burden of demonstrating from the face of the plaintiffs' complaint that it will be ***impossible*** to certify the class as alleged, regardless of the facts plaintiffs may be able to prove through discovery.").[4]

---

[4] *See also Albright v. Sherwin-Williams Co.*, 2019 WL 5307068, at *17 (N.D. Ohio

But analyzing class certification almost always requires evidence. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) ("[C]lass determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.").[5] "Ordinarily . . . the class determination should be predicated on evidence presented by the parties concerning the maintainability of the class action." *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 851 (6th Cir. 2013).

This standard cannot be met here because UWM's arguments are targeted only at (b)(3) certification of the broadest possible scope of the classes pled in the FAC (including a proposed consumer protection class action formulated when there were plaintiffs from three other states). However, the FAC contains ***alternative*** potential formulations of the consumer protection class that includes only Florida members and borrowers from additional states with substantially identical consumer protection law. Plaintiffs have also proposed certification of common issues of fact or law under Rule 23(c)(4) (FAC ¶ 345), which would moot UWM's arguments

---

Jan. 29, 2019) (denying motion to strike nationwide class by plaintiffs from five states because "Defendants have not met their burden to establish that it would be impossible to certify either a nationwide class or five state classes."); *In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 947 (E.D. Mich. 2022) (finding it premature to strike nationwide class because "state law does not need to be universal").

[5] Emphases are added and internal citations are omitted unless otherwise noted.

about "individualized circumstances." While UWM argues that class litigation would be too complex or unwieldy, this is both entirely speculative and immaterial. Potential complexity alone is not enough to strike claims, as the concerns may not materialize, or they may be resolved by application of Rule 23(c)(4) or (c)(5). *See, e.g.*, *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 518–19 (S.D.N.Y. 2015); *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("a class action has to be unwieldy indeed before it can be pronounced an inferior alternative—no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied—to no litigation at all.").

## II.     UWM Does Not Dispute the Viability of a Rule 23(b)(2) Class.

UWM previously argued that Plaintiffs may not plead both a Rule 23(b)(2) class for injunctive relief and a 23(b)(3) class for damages in the same complaint, as pled in the FAC. *See* FAC ¶¶ 341–342 (alleging elements of (b)(2) and (b)(3) certification). But, as UWM now implicitly concedes, there is no such prohibition. Courts frequently certify classes under both provisions. *Gooch v. Life Inv'rs Ins. Co. of Am.,* 672 F.3d 402, 428 n. 15, 429 (6th Cir. 2012) (certifying a (b)(2) class even when "the declaratory relief serves as a predicate for later monetary relief, which would be certified under Rule 23(b)(3)"). The FAC alleges facts supporting injunctive relief, including that UWM and others acted uniformly towards the class through uniform misrepresentations, policies, and contractual agreements; plaintiffs

suffered common injuries; and the wrongful conduct is ongoing. And the FAC appropriately seeks injunctive relief.[6] Thus, nationwide or multi-state certification under Rule 23(b)(2) is well-pled and unchallenged.

## III. There Is No Basis to Strike the RESPA Class Allegations.

UWM cannot demonstrate that it will be "impossible to certify" the RESPA class "regardless of the facts plaintiffs may be able to prove through discovery." *Mod. Holdings, LLC v. Corning, Inc.*, 2015 WL 1481457 at *2 (E.D. Ky. Mar. 31, 2015). Notwithstanding that high bar, UWM presents two arguments. First, UWM claims that the RESPA class is uncertifiable because of the "safe harbor" exemption in Section 8(2)(c), which allows lenders to pay brokers "bona fide" compensation for "services actually performed." Ignoring Plaintiffs' allegations and this Court's findings regarding the RESPA claim, UWM erroneously asserts a "loan by loan" analysis is necessary to distinguish an unlawful "kickback" or unearned compensation from lawful "bona fide" compensation for services "actually performed." UWM also claims, in the face of many cases to the contrary, that the availability of treble damages and fee-shifting for RESPA is a "fundamental defect" that bars a finding of superiority under Rule 23(b)(3). Neither argument provides a

---

[6] *See, e.g., Ahearn v. Mayo Clinic*, 180 So. 3d 165, 172–73 (Fla. Dist. Ct. App. 2015) (finding FDUTPA allows class representative to seek injunction without proof of plaintiff's future injury or actual damages); *Lizama v. Venus Lab'ys, Inc.*, 679 F. Supp. 3d 848, 870–72 (E.D. Mo. 2023) (denying motion to strike class, finding plaintiff has standing to seek injunction for ongoing deceptive conduct).

sound reason to strike the RESPA class allegations before any factual discovery—
which is likely to negate or resolve the safe harbor arguments—has taken place.

### A.    RESPA's Safe Harbor Does Not Raise Individual Inquiries.

RESPA's safe harbor does not require a loan-by-loan analysis. *See In re Carter,* 553 F.3d 979, 986 n.5, 986 (6th Cir. 2009) (because RESPA is a remedial statue, it is construed broadly, and its exceptions are construed narrowly). The statute simply states that bona fide salary or compensation for services actually performed are not illegal kickbacks or forms of unearned compensation. 12 U.S.C. § 2607(c)(2). In attempting to apply the safe harbor here, UWM's motion is conspicuously silent regarding a key set of allegations: the services brokers were paid for but never "actually performed." Plaintiffs specifically alleged they hired—and paid—brokers to shop the market for a competitive loan and provide Plaintiffs "independent" advice as to available options. *See, e.g.*, FAC ¶ 307. But the brokers did not provide such services; instead, they simply funneled Plaintiffs to UWM. FAC ¶ 308. This Court already recognized as much. Opinion, ECF No. 62, PageID.3754 (finding that under UWM's scheme, "brokers did not actually shop [Plaintiffs'] loan despite a representation that they would," but that "the brokers were compensated for doing so"). Under such alleged facts, the safe harbor is inapplicable on its face. There is no "bona fide" compensation for services that were not actually performed.

Given the straightforward application of the safe harbor to the Amended Complaint, UWM attempts to muddy the waters and turns to a line of non-binding cases interpreting a policy statement issued twenty-four years ago in response to litigation concerning yield spread premiums. *See* RESPA Policy Statement 2001-1, 66 Fed. Reg. 53052. That reliance is misplaced for two reasons.

***First***, the Policy Statement—along with the non-binding cases applying it—dealt with practices that have no application here.[7] The Policy Statement was specifically issued "with respect to those lender payments to mortgage brokers characterized as yield spread premiums and to overcharges by settlement service providers." Policy Statement, at 66 Fed. Reg. at 53052. This case does not concern—and is not analogous to—yield spread premiums or overcharges. While the Policy

---

[7] The line of cases applying the Policy Statement include *Heimmermann v. First Union Mortg. Corp.*, 305 F.3d 1257 (11th Cir. 2002); *O'Sullivan v. Countrywide Home Loans*, 319 F.3d 732 (5th Cir. 2003), *Glover v. Standard Fed. Bank*, 283 F.3d 953 (8th Cir. 2002), *Bjustrom v. Trust One Mortg.*, 322 F.3d 1201 (9th Cir. 2003); and *Howland v. First Am. Title Ins.*, 672 F.3d 525 (7th Cir. 2012). All of these cases were decided before the Supreme Court's opinions in *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) (overturning *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)) and *Kisor v. Wilkie*, 588 U.S. 558 (2019) (modifying *Auer v. Robbins*, 519 U.S. 452, 454 (1997)). Accordingly, the persuasive force of several of these cases is doubtful, at best, given the deference afforded may not comport with current precedent. Indeed, some of the decisions did not comport with the then-current standards on agency deference. *See, e.g.*, *Krzalic v. Republic Title Co.*, 314 F.3d 875, 882–83 (7th Cir. 2002) (Easterbrook, J., concurring) ("*Heimmermann* and *Schuetz* erred in thinking that the Real Estate Settlement Procedures Act Statement of Policy 2001–1 is itself conclusive under *Chevron*"). In any event, the Policy Statement concerning yield spread premiums and overcharges does not apply to the allegations raised in the FAC.

Statement has been applied in a limited number of other settings, those are also inapplicable here. *O'Sullivan*, 319 F.3d 732 (concerning payments to laws firms); *Howland*, 672 F.3d 525 (concerning payments made to attorney title agents). The Policy Statement addressed the contention that a specific payment is a disguised kickback or unearned fee. *See* Policy Statement, at 66 Fed. Reg. at 53054 (addressing *Culpepper v. Irwin Mortgage Corp*., 253 F.3d 1324 (11th Cir. 2001)). Critically, the Policy Statement does not address a scenario in which a promised service went unperformed but was nevertheless compensated. Instead, to determine whether the safe harbor applies to a given yield spread premium or overcharge, the Policy Statement calls for a comparison of the services provided in exchange for the compensation received through two formal steps. *Id.* at 53055.

This case is fundamentally different than those UWM relies upon and goes to the heart of RESPA's statutory text. Unlike in the cases applying the Policy Statement, Plaintiffs allege brokers were paid to provide an independent search of available loan options and to provide counseling regarding such options. *See, e.g.*, FAC ¶¶ 307–08. In failing to actually perform those services for which they were paid, the safe harbor is inapplicable on its face. Compensation for services that were ***never performed*** can never fall under the safe harbor, which expressly only concerns compensation "for services ***actually performed***." § 2607(c)(2). Plaintiffs' allegations must be accepted as true and although UWM ignores this Court's

analysis, this Court already recognized the viability of Plaintiffs' theory and allegations regarding brokers' compensation for services never actually performed. Opin., ECF 62, PageID.3754. Those allegations of compensation for services never actually performed precludes an application of the safe harbor. Plaintiffs are entitled to discovery to show the safe harbor is uniformly inapplicable through common proofs regarding brokers' failure to provide services for which they were paid.

***Second***, even if the Court felt compelled to apply the equation set out in the Policy Statement, UWM has not shown at this stage that it would be impossible for Plaintiffs to satisfy the equation through common issues of fact and law. Indeed, the "mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Powers v. Fifth Third Mortg. Co.*, 2011 WL 3811129, at *6 (N.D. Ohio Aug. 12, 2011) (citing *Sterling v. Velsicol Chem. Corp.,* 855 F.2d 1188, 1197 (6th Cir. 1988)). As discussed above, the Amended Complaint alleges UWM engaged in a scheme where the putative class members' brokers were paid for, but failed to provide, services that were promised. *See, e.g.*, FAC ¶¶ 307–08. On the other side of the ledger, such brokers received lavish trips and hidden marketing contributions in the form of templates and elevated placement on UWM's mortgagematchup.com platform ***in addition*** to the customary commission brokers receive. *See, e.g., id.* at ¶¶ 302, 304, 312. Common proof

10

regarding the unperformed services and the unusual, hidden, and valuable forms of compensation is expected show the benefits the brokers received were uniformly so disproportionate to the services performed that the Policy Statement can be applied on a classwide basis. For good reason, courts have certified RESPA classes, notwithstanding the defendants' claim the safe harbor applies. *See Palombaro v. Emery Fed. Credit Union*, 2017 WL 3437559, at *13 (S.D. Ohio 2017).[8] The fact it is possible that Plaintiffs could discover such facts is all Plaintiffs must presently show to obtain class discovery. *See, e.g., Mod. Holdings, LLC*, 2015 WL 1481457 at *2 (motion to strike class allegations improper unless it will be "impossible to certify" the RESPA class).

## B. RESPA's Fee Shifting and Treble Damages Provisions Do Not Warrant Striking Class Allegations.

UWM also argues that because RESPA provides for treble damages and fee shifting, courts in the Sixth Circuit have "repeatedly held those attributes bar a

---

[8] *See also Edwards v. First Am. Corp.*, 798 F.3d 1172, 1181 (9th Cir. 2015) (reversing denial of class certification, noting "[w]e hold that the district court abused its discretion in denying class certification" and that "cases alleging illegal kickbacks in violation of § 2607(a) are not necessarily unfit for class adjudication.") (cleaned up); *In re Comm. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380 (3d Cir. 2015) (finding class certification appropriate because "[t]he elements of the Plaintiffs' RESPA claims that are 'essential'—namely violations of the anti-kickback and unearned fee provisions of RESPA—can potentially be proven with common evidence"); *Baugh v. Fed. Savings Bank*, 337 F.R.D. 100 (D. Md. 2020) (certifying RESPA Section 8 claims); *Munoz v. PHH Mortg. Co.*, 478 F. Supp. 3d 945 (E.D. Cal. 2020) (declining to decertify class and granting summary judgment in favor of plaintiffs on first three elements of RESPA Section 8 claim).

11

finding of superiority under Rule 23(b)(3)." Mot. at PageID.3853. While there are cases that have cited those attributes, among others, in denying certification under some circumstances, there are also many cases that do not, and there is good reason to think that, even with such provisions, it would not be economically feasible for those who suffered from this scheme to obtain relief through a multiplicity of small individual suits for damages, such that "aggrieved persons may be without any effective redress unless they may employ the class-action device." *Deposit Guaranty Nat'l Bank v. Roper,* 445 U.S. 326, 339 (1980).[9]

UWM cites *Pettrey* in support of its claim that the existence of other remedies precludes class treatment as a matter of law, but *Pettrey* was decided only after "discovery related to class certification." *Pettrey v. Enter. Title Agency, Inc.*, 241 F.R.D. 268, 272 (N.D. Ohio 2006). The court in *Pettrey* noted that "it is also necessary to probe behind the pleadings" and that "ordinarily, the determination should be predicated on more information than the pleadings provide."

---

[9] Recent executive actions threatening the Consumer Financial Protection Bureau's—the agency charged with enforcing RESPA—ability to operate emphasizes the need for consumer class actions. *See generally*, *National Treasury Employees Union v. Vought*, Case No. 1:25-cv-00380 (D.D.C.). Indeed, this Court has witnessed the effects of the CFPB's diminished enforcement firsthand. *CFPB v. Rocket Homes Real Estate LLC, et al.*, Case No. 2:24-cv-13442 (E.D. Mich.) (CFPB voluntarily dismissing complaint against Rocket Homes and real estate agents regarding alleged kickback scheme two months after commencing the action).

The parties should be afforded an opportunity to present evidence on the maintainability of the class action. *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974). "The Sixth Circuit has not definitively ruled" on whether "the fee shifting and treble damages provisions in the RESPA statute prohibit the finding that a class action is superior to individual suits. *Palombaro*, 2017 WL 3437559, at *14 (granting motion for class certification of a class of plaintiffs injured by a RESPA-violating kickback scheme). Moreover, the majority of circuit courts have concluded, explicitly or implicitly, that RESPA claims are suitable for class actions. *Powers*, 2011 WL 3811129, at *19 (collecting cases). There is no reason for this Court to grant UWM's extraordinary motion to strike the RESPA class allegations from the FAC at this point in the litigation simply because additional remedies exist.

## IV. Plaintiffs' FDUTPA Claim Can Be Certified for a Florida Class.

Plaintiffs Weatherill, Jeffries, and Singh's "home state" consumer protection class is plausibly pled under Rules 23(a), 23(b)(2), 23(b)(3), 23(c)(4), and/or 23(c)(5). There are enough factual and legal similarities across the claims of all putative class members in Florida that Plaintiffs can certify the class and plausibly prove the claims with common proof. Courts in Florida and elsewhere regularly certify consumer protection classes under FDUTPA. *See, e.g.*, *Cox v. Porsche Fin. Servs., Inc.*, 337 F.R.D. 426, 433 (S.D. Fla. 2020) ("A determination of whether Defendant's conduct is deceptive or unfair will have a direct impact on every Class

member's effort to establish liability and thus predominates over any individualized issues.") (internal quotations omitted); *Bowe v. Pub. Storage*, 318 F.R.D. 160, 182 (S.D. Fla. 2015) (because FDUTPA is based on an objective standard "determining whether [defendants'] allegedly deceptive acts caused class members' injuries can be based on classwide proof."); *Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1282–83 (11th Cir. 2011) ("whether that allegedly deceptive conduct would deceive an objective reasonable consumer is a common issue for all the putative class members").

UWM's main argument against certification of a FDUTPA class ignores these cases. UWM argues that FDUTPA liability would depend on "one-on-one interactions with varying communications, representations, agreements, and disclosures between individual brokers and consumers." As much as UWM would like to mischaracterize the complaint to shift focus to Plaintiffs' interactions with brokers (who are not defendants), that is not the claim presented. The FDUTPA claim is based on *UWM* engaging in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce" (FAC ¶ 543), including allegations that:

- "While representing that consumers are entitled to rely on 'completely independent' brokers to shop for the best price, free from restrictions on their independent judgment, UWM was secretly . . . causing brokers to systematically violate their fiduciary duties to steer business to UWM." FAC ¶ 545.

14

- "Defendants failed to disclose, actively concealed, and affirmatively misled Plaintiffs and the class about the corrupt relationship between UWM and brokers. Defendants falsely represented and advertised the brokers listed on UWM['s] website as having value or functions that they did not have, with intent that Plaintiffs and the class would pay for products or services they did not receive." FAC ¶ 548.

- Allegations throughout the FAC about Defendants' uniform misrepresentations and deceptive omissions included UWM's public statements, deceptive marketing and promotional materials, deceptive websites, unscrupulous agreements with brokers to deprive borrowers from receiving benefits, all of which constitute unfair and/or deceptive practices in violation of FDUTPA.

UWM's argument that some class members may not have been directly impacted by UWM's false advertising, or they may have relied on additional false statements from brokers, is immaterial under FDUTPA and impossible to evaluate before discovery anyway. For example, in *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016), "each [proposed class] member negotiated the purchase or lease price [of vehicles] individually with the dealer from whom the member purchased or leased the vehicle." The Eleventh Circuit nevertheless upheld class certification based on alleged misrepresentations by the manufacturer. *Id.* Moreover, the Eleventh Circuit held that it was irrelevant whether any given class member "saw the [defendant's misrepresentation] and was subjectively deceived by it," as "these arguments simply seek a reliance inquiry by another name." *Id.*

Notably, the Sixth Circuit itself has recently confirmed that alleged violations of a consumer protection statutes like FDUTPA that "do not require reliance as part of their consumer statutes" "avoid . . . predominance pitfalls" and are thus amenable

15

to class certification. *Speerly v. Gen. Motors, LLC*, 143 F.4th 306, 326, 332 (6th Cir. 2025) (en banc). And even if there were no alleged misrepresentations by UWM (although the FAC alleges many), UWM's practice of requiring brokers to agree to exclusivity provisions in the Wholesale Broker Agreement and to withhold information from borrowers would itself count as an "unfair" practice under FDUTPA, as it "'offends established public policy' or is 'immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.'" *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1326 (S.D. Fla. 2017) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)).[10]

Only weeks ago, the Court sustained the FDUTPA claims under Rule 12(b). But now UWM moved to strike them under Rule 12(f), purporting to forecast (before

---

[10] UWM's cases are inapposite. In *Miami Auto. Retail, Inc. v. Baldwin*, 97 So. 3d 846, 856–58 (Fla. Dist. Ct. App. 2012), named plaintiff relied only on an oral misrepresentation, did not allege or submit evidence "that similar representations were made to **any** of the other class members," and created the issue by telling defendant incorrect information. *Loreto v. Procter & Gamble Co.*, 2013 WL 6055401 (S.D. Ohio Nov. 15, 2013) and *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011) did not involve FDUTPA, and therefore have little bearing on whether a FDUTPA claim can be certified. *Rikos v. Procter & Gamble Co.*, 799 F.3d 497 (6th Cir. 2015) did not hold that there must be precisely uniform misrepresentations (which Plaintiffs have alleged), but merely noted that, at most, the minority rule of *Miami Auto* only applies when a defendant's communications lacked a "generally uniform *theme*"—here, that "theme" is UWM's overwhelming false marketing that brokers were independent, while UWM orchestrated a scheme to prevent that.

16

discovery) Plaintiffs will not prove uniform representations, Plaintiffs will not demonstrate unscrupulous conduct to the class that qualifies for relief under the statute, Plaintiffs were more directly harmed by brokers, etc. These arguments are plainly improper at this stage, and they certainly do not justify striking allegations.

## V.   The Florida Plaintiffs Have Standing to Represent Class Members from Other States with Substantially Identical Consumer Protection Claims.

UWM does not dispute the Florida Plaintiffs have individual Article III standing to assert their own claims. That is all that is required under Article III for the named plaintiffs to represent class members from other states, provided Rule 23 is satisfied. *See Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998). UWM's contrary argument should be rejected for three reasons.

***First***, "[a]ll five circuits to have addressed the question hold that a plaintiff's ability to assert state law claims on behalf of out-of-state class members is a matter of representation under Rule 23, not a question of Article III standing." *Droesser v. Ford Motor Co.*, 2023 WL 2746792, at *6 (E.D. Mich. Mar. 31, 2023); *see also Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 95 (2d Cir. 2018) ("[C]lass action plaintiffs are not required to have individual standing to press any of the claims belonging to their unnamed class members.").[11]

---

[11] *See also In re Zantac (Ranitidine) Prods. Liab. Litig.*, 2022 WL 16729170, at *6 (11th Cir. Nov. 7, 2022) ("[A]ll circuits which have addressed whether a plaintiff can represent unnamed class members whose claims fall under different states' laws have concluded that it is a question that concerns Rule 12(b)(6) or Rule 23—not

None of UWM's out-of-context quotes from the Supreme Court support its position. In fact, at least one of their cited cases undercuts them. In *Frank v. Gaos*, 586 U.S. 485, 492 (2019), three named plaintiffs sued Google on behalf of a nationwide class under federal and state law. The Supreme Court remanded for consideration of whether the named plaintiffs adequately alleged *their own* injuries to establish Article III standing. Under UWM's argument asserted here, however, the three named plaintiffs in *Gaos* lacked standing to represent out-of-state class members under non-federal claims—even though the Supreme Court seemed to assume that such standing existed, provided the plaintiffs themselves were injured (otherwise the Court could have decertified the state law claims on that basis).[12]

---

Article III."); *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011) ("If the Illinois Consumer Fraud Act law does not apply because events were centered outside Illinois, then plaintiffs must rely on some other state's law; this application of choice-of-law principles has nothing to do with *standing*"); *In re Asacol Antitrust Litig.*, 907 F.3d 42, 51 (1st Cir. 2018) ("So the question of standing is not: Are there differences between the claims of the class members and those of the class representative? Rather, the pertinent question is: Are the differences that do exist the type that leave the class representative with an insufficient personal stake in the adjudication of the class members' claims? Here, with one exception, we think not."); *Mayor of Baltimore v. Actelion Pharms. Ltd.*, 995 F.3d 123, 134 (4th Cir. 2021) (rejecting "no standing" argument).

[12] UWM's references to other Supreme Court cases are inapplicable. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021) was similar to *Gaos*. The issue was just whether the there was an Article III injury in the first place. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (May 24, 2016) was the same, as evidenced from the portion of the quotation below that Defendants elected not to include in their quotation: "That a suit may be a class action adds nothing to the question of standing, ***for even named plaintiffs who represent a class must allege and show that they personally have been injured*[.]**") (alterations omitted). And in *California v. Texas*, 593 U.S. 659,

*Second*, although the Sixth Circuit has not directly addressed the issue, UWM has cited no cases suggesting the Sixth Circuit would depart from uniform rulings of the other federal appellate courts. For example, in *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996)—which UWM cited elsewhere in its motion—the named plaintiffs from three states brought product liability claims under the laws of all 50 states, including 47 states which had no class representative. The Sixth Circuit analyzed application of Rule 23 for about six pages before decertifying the class based on manageability concerns. *Id*. at 1085. If the named plaintiffs were not allowed to assert claims in a representative capacity that would arise under out-of-state law, presumably the Sixth Circuit would have mentioned it, since it would have been an easier basis for decertification. *See also Droesser*, 2023 WL 2746792, at *7 ("In light of [*Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998)], the Court concludes that the Sixth Circuit would side with its sister circuits and hold that a plaintiff's ability to assert state law claims on behalf of out-of-state class members is a matter of representation under Rule 23.").

*Third*, UWM relies on reasoning in a small number of district court cases that it suggests (without much explanation) are better reasoned than the five unanimous

---

670 (2021), which was not a class action, the plaintiffs lacked standing to seek a declaration that certain statutory text was unenforceable—because challenged text had already been amended. *Id*. at 660.

appellate opinions in the First, Second, Fourth, Seventh, and Eleventh Circuits. But these district court cases mostly ignore Article III and fail to address the relevant federal appellate cases. *Cf. Generation Changers Church v. Church Mut. Ins. Co.*, 693 F. Supp. 3d 795, 806 (M.D. Tenn. 2023) (identifying several of UWM's cases as examples in which courts all "make[] the same conceptual error" about standing, and noting "courts rarely deny certification simply because the class spans many states and asserts state-law claims."). UWM has argued that Plaintiffs do not address the few district court cases on which UWM relies; that is because they are thoroughly addressed by the district court cases that disagree with them (see note 13, *infra*).

**Finally**, UWM's implication that *Fox v. Saginaw County*, 67 F.4th 284 (6th Cir. 2023) supports its position is wrong, as subsequent cases confirm.[13]

---

[13] *Fox* addressed the so-called "juridical link" doctrine. The court merely found that a class action plaintiff lacks standing to sue defendants who were not alleged to have injured plaintiff. That presents a standing question entirely different form the one here. Both pre-*Fox* and post-*Fox* cases hold that named plaintiffs can represent class members from other states, and *Fox* did not purport to change this. *Fisher v. FCA US LLC*, 712 F. Supp. 3d 930, 939, 2024 WL 186071 (E.D. Mich. 2024) (rejecting argument that *Fox* prevents plaintiffs from asserting nationwide claims under state law); *Tapply v. Whirlpool Corp.*, 2023 WL 4678789, at *7 (W.D. Mich. 2023) (*Fox* did not support striking class allegations for lack of standing); *Generation Changers Church*, 693 F. Supp. 3d at 806 (M.D. Tenn. 2023) (*Fox* does not alter the fact that "courts rarely deny certification simply because the class spans many states and asserts state-law claims."); *Walton v. Grammer Indus. Inc.*, 2021 WL 4458761, at *4 (E.D. Mich. 2021) ("The Court declines to dismiss nationwide or state-specific claims simply because there is no named plaintiff representing that state."); *Johnson v. FCA US LLC*, 555 F. Supp. 3d 488, 499 (E.D. Mich. 2021) (declining to dismiss nationwide class claims based on lack of Article III standing).

## VI.   Potential Variations in State Law Do Not Warrant Striking Allegations.

UWM's argument that a multi-state class is not viable as a matter of law should be denied because it (1) incorrectly assumes the Florida Plaintiffs will seek to represent borrowers from 41 states under the consumer protection claim, (2) exaggerates the alleged variance in state law, and (3) is premature because discovery may prove some differences in the law to be immaterial.

The Florida Plaintiffs, collectively with the plaintiffs from North Carolina, California, and Tennessee (who are now dismissed), identified 41 states in the proposed consumer protection subclass(es) in Paragraph 332 of the FAC. This is the appropriate process to plead a consumer protection claim in which the class representative(s) also seeks to represent consumers from other states. *See, e.g., Coleman v. Burger King Corp.*, 2023 WL 5507730, at *3 (S.D. Fla. 2023) ("[I]f the Florida Plaintiff believes that FDUTPA is materially identical to Georgia's consumer-protection statute, then he may assert a FDUTPA claim in which he may put us all [on] notice of his intention . . . to represent the Georgia claims of Georgia class members."). While the 41-state grouping was the broadest formulation, Plaintiffs expressly reserved the right to modify class definitions and establish subclasses as the evidence and case developed. FAC ¶ 334. The Court's dismissal of the California, Tennessee, and North Carolina claims is the kind of development contemplated by Paragraph 334. Based on motion to dismiss rulings, Plaintiffs

21

would revise the class definitions before class certification or on whatever timeframe the Court deemed appropriate. But given the Florida Plaintiffs alone would not be seeking to represent class members from 41 states (and did not allege otherwise in the FDUTPA count), it is unhelpful for UWM to focus on the broadest possible class definition only to argue it is overbroad.[14]

UWM cannot credibly argue that *none* of the consumer protection laws of 40 other states are the same as FDUTPA, given that many courts have found substantial similarity across state statutes, including FDUTPA.[15] Courts allow class members

---

[14] *Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*, 2016 WL 10520133, at *5–6 (S.D. Ohio 2016) (noting overbreadth in class definition "may never materialize" since "Plaintiffs specifically reserved the right" to modify the class definition); *see also In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271, 294 (S.D. Ohio 1997) (grouping subclasses based on similarities of law and holding that variations within a subclass "can be managed with proper jury instructions").

[15] *Benson v. Newell Brands, Inc*., 2021 WL 5321510, at *9 (N.D. Ill. 2021) (finding variations in statutes of CA, FL, IL, NJ, NY, MA, MI, MN, MO, and WA are "distinctions without a difference" and certifying a class represented by Illinois plaintiff); *Mullins v. Direct Digital, LLC*, 2014 WL 5461903 (N.D. Ill. 2014), aff'd, 795 F.3d 654 (7th Cir. 2015) (similar); *In re Pork Antitrust Litig.*, 665 F. Supp. 3d 967, 1000 (D. Minn. 2023) (finding statutes of 28 states "sufficiently parallel" and certifying class without named plaintiffs from each state); *Suchanek v. Sturm Foods, Inc*., 311 F.R.D. 239 (S.D. Ill. 2015) (certifying a consumer class including consumers from California, North Carolina, and Tennessee on the basis that the consumer protection laws were substantially similar); *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1022–23 (9th Cir. 1998) ("[A]lthough some class members may possess slightly differing remedies based on state statute or common law, the actions asserted by the class representatives are not sufficiently anomalous to deny class certification"); *Kirkbride*, 2022 WL 2703960, at *12 (denying motion to strike because "[d]ifferences in law do not necessarily preclude some combination of state and multistate classes from being certified") (internal citation omitted).

22

from different states to be group together when legal differences are "not material because they do not significantly alter the central issue or the manner of proof in this case." *Keilholtz v. Lennox Hearth Prod. Inc.*, 268 F.R.D. 330, 341 (N.D. Cal. 2010).

Although UWM contends several "elements" of a consumer protection claim are different from state to state, the most significant issue is "reliance." As explained above, however, FDUTPA has no reliance requirements, and it is not unique in that respect. *See, e.g.*, *Speerly v. Gen. Motors*, LLC, 143 F.4th 306 (6th Cir. 2025) (en banc) (grouping Florida, Michigan, New Hampshire, New York, Kentucky, and Tennessee together as states that do not require reliance). UWM's argument also overlooks that even in states where reliance is required, it is not always required for omissions or can be presumed across the class in some circumstances.[16]

Nor does variance in other issues preclude certification. "[T]he law is settled that '[t]he existence of a statute of limitations issue does not compel a finding that individual issues predominate over common ones.'" *Lott v. Louisville Metro Gov't*, 2021 WL 1031008, at *13 (W.D. Ky. 2021) (quoting *Lauber v. Bellford High Sch.*, 2012 WL 5822243, at *9 (E.D. Mich. 2012)). Nor will alleged variances in available remedies or damages subsume the common issues. Actual damages are available

---

[16] *See, e.g.*, *Stanich v. Travelers Indem. Co.,* 249 F.R.D. 506, 518 (N.D. Ohio 2008) ("Where there are uniform presentations of allegedly misleading information, or common omissions throughout the entire class, especially through form documents, courts have found that the element of reliance may be presumed class-wide"); *Mell v. Anthem, Inc.,* 264 F.R.D. 312, 321 (S.D. Ohio 2009) (similar).

under all the consumer protection laws. Plaintiffs will show on a classwide basis that their "formula [for damages] calculates damages based only on their theory of liability," which is all that is required. *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 460 (6th Cir. 2020). There are numerous accepted approaches to do so. For example, actual damages equivalent to the amounts class members paid to brokers or UWM could be determined from UWM's own records. Even if individualized damages issues exist, common issues can still predominate.[17] The issues can also be deferred to a remedies phase after adjudication of class issues, if necessary.[18]

In summary, none of UWM's arguments about "individualized" circumstances—whether related to FDUTPA or RESPA—justify the relief they are seeking here. At a minimum, "discovery will allow the court to assess whether individual reliance is at the factual core" of any claims under the facts alleged. *Bearden v. Honeywell Int'l Inc.*, 720 F. Supp. 2d 932, 942–45 (M.D. Tenn. 2010). If it turns out after discovery there are material differences between FDUTPA and the

---

[17] *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007); *Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 487 (S.D. Ohio 2004) (finding individualized issues related to causation and damages could "be handled separately after a trial"); *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003) (affirming class certification even when harm and damages are reserved for individual hearings).

[18] *In re Whirlpool Corp.*, 722 F.3d at 861 ("it remains the 'black letter rule' that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members"); *Olden*, 383 F.3d at 509 (liability can be bifurcated from issues of class damages).

24

consumer protection laws applicable to the claims of class members the Florida

Plaintiffs seek to represent, the Court will deny class certification. Or the Court could

issue certification as to liability only.[19] UWM's own cases—most of which were

class certification ruling *after* discovery—acknowledge that "sometimes it may be

necessary for the court to probe behind the pleadings before coming to rest on the

certification question." *Pilgrim*, 660 F.3d at 949 (6th Cir. 2011) (quoting *Gen. Tel.

Co. v. Falcon,* 457 U.S. 147, 160 (1982)).

## <u>CONCLUSION</u>

For the foregoing reasons, the motion to strike should be denied.

**Dated: November 25, 2025**

John T. Zach
Marc Ayala
David L. Simons
Andrew P. Steinmetz
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards
New York, New York 10001
Tel.: (212) 446-2300

By:  /s/ *Brandon C. Hubbard*
Brandon C. Hubbard (P71085)
**DICKINSON WRIGHT PLLC**
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226
Tel.: (517) 371-1730

Tyler Ulrich
**BOIES SCHILLER FLEXNER LLP**
100 SE Second Street
Miami, Florida 33131
Tel.: (305) 357-8422

---

[19] *Martin*, 896 F.3d at 415 ("[C]ertification may remain 'proper' even if 'important matters' such as actual injury, causation, and damages will have to be tried separately."); *Chavez v. Plan Benefit Servs., Inc.*, 108 F.4th 297, 318 (5th Cir. 2024), ("common and individual issues can be divided and tried into multi-phase trials under Rule 23(c)(4), which permits district courts to limit class treatment to particular issues and reserve other issues for individual determination.").

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 25, 2025, I caused the foregoing document to be filed with the Clerk of the Court using CM/ECF, which will effectuate service upon all counsel of record.

/s/ *Brandon C. Hubbard*

Brandon C. Hubbard (P71085)
DICKINSON WRIGHT PLLC
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226
Tel.: (517) 371-1730

*Attorney for Plaintiffs*

4938-3293-1196 v8 [109270-1]

26